Shiloh S. Hernandez (MT Bar No. 9970)
Melissa Hornbein (MT Bar No. 9694)
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
Ph: (406) 204-4861
hornbein@westernlaw.org
hernandez@westernlaw.org

*Counsel for Plaintiffs*

Nathaniel Shoaff, *pro hac vice pending* (CA Bar No. 256641)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
Ph: (415) 977-5610
nathaniel.shoaff@sierraclub.org

*Counsel for Sierra Club*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS; MONTANA ENVIRONMENTAL INFORMATION CENTER; POWDER RIVER BASIN RESOUCE COUNCIL; NORTHERN PLAINS RESOURCE COUNCIL; CENTER FOR BIOLOGICAL DIVERSITY, WILDEARTH GUARDIANS, and SIERRA CLUB, <br><br> Plaintiffs, <br><br> vs. | Case No. CV-20-76-GF-BMM-JTJ <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

1

UNITED STATES BUREAU OF
LAND MANAGEMENT,

              Defendant.

## INTRODUCTION

1.      The Powder River Basin is an area of stark beauty with its rolling grasslands, badlands, abundant wildlife, and remote wilderness areas. Its grass and water support extensive, sustainable livestock grazing and small agricultural producers. It is also ground zero for fossil fuel development in the United States, producing approximately 40% of the coal in the United States, along with vast amounts of oil and gas.

2.      In 2018 this Court held that the U.S. Bureau of Land Management (BLM) violated the National Environmental Policy Act (NEPA) by approving two resource management plans (RMPs) in the Powder River Basin (the RMPs for the Miles City and Buffalo Field Offices) because the agency: (1) failed to consider any alternative that reduced the amount of coal available for strip-mining and; (2) failed entirely to address or disclose the toxic and harmful impacts of fossil fuel combustion enabled by BLM's actions.

3.      On remand, BLM failed to remedy these errors. Instead, BLM's supplemental environmental impact statements (SEISs) again considered alternatives that would result in identical amounts of coal development—the strip-

mining and combustion of approximately 6 billion tons of low grade, highly polluting sub-bituminous coal—and identical impacts.

4.     With respect to the impacts of downstream combustion, BLM failed entirely to address or disclose *any* impacts of fossil fuel combustion except greenhouse gas emissions. This myopic approach ignores the fact, as documented in the record, that combustion of billions of tons of coal and large amounts of oil and gas will result in tens of thousands of premature deaths and countless cases of respiratory and cardiac illness.

5.     BLM's SEISs and approval of the remanded Powder River Basin RMPs violated the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 *et seq.*, and NEPA's implementing regulations promulgated by the Council on Environmental Quality, 40 C.F.R. §§ 1500 *et seq*.

6.     Accordingly, Plaintiffs Western Organization of Resource Councils, Montana Environmental Information Center, Northern Plains Resource Council, Powder River Basin Resource Council, the Center for Biological Diversity, WildEarth Guardians, and the Sierra Club bring the present action.

## JURISDICTION AND VENUE

7.     This action arises under NEPA, 42 U.S.C. §§ 4321-4370h, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706.

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the action raises a federal question. The Court has authority to issue the requested declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202, and 5 U.S.C. §§ 705, 706.

9.      This action reflects an actual, present, and justiciable controversy between the Conservation Groups and BLM. The Conservation Groups' interests will be adversely affected and irreparably injured if BLM continues to violate NEPA and affirmatively implements the decisions, as alleged herein. These injuries are concrete and particularized and fairly traceable to BLM's challenged decisions, providing the requisite standing in the outcome of this controversy necessary for this Court's jurisdiction.

10.      The requested relief would redress the actual, concrete injuries to the Conservation Groups caused by BLM's failure to comply with duties mandated by NEPA and its implementing regulations.

11.      The challenged agency actions represent the consummation of BLM's actions on remand. They are final and subject to judicial review pursuant to 5 U.S.C. §§ 702, 704, and 706.

12.      The Conservation Groups have exhausted any and all available and required administrative remedies.

4

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the property that is the subject of the action—the 2.76 million surface acres of public land and 11 million acres of subsurface mineral estate administered by the BLM's Miles City Field Office—is located in Montana. Venue is also proper under 28 U.S.C. § 1391(e)(1) because an agency of the United States is named as defendant, and a substantial part of the events and omissions giving rise to this case occurred in the BLM Miles City Field Office located in Montana. Plaintiffs Western Organization of Resource Councils, Montana Environmental Information Center, and Northern Plains Resource Council reside in Montana. Additionally, Plaintiff Sierra Club has a Montana Chapter located in Missoula, Montana. Plaintiff WildEarth Guardians maintains a major office in Missoula, Montana. Venue is proper with respect to claims related to BLM's Buffalo Field Office in Wyoming because the Montana and Wyoming portions of the Powder River Basin are inextricably intertwined with respect both to the natural environment (it is a shared river basin) and energy development (which is physically tied together with railroads, pipelines, and other infrastructure).

14.     Venue is proper in the Great Falls Division of this Court because the Miles City Field Office encompasses Daniels, Sheridan, and Valley Counties, which are within the jurisdiction of the Great Falls Division.

## PARTIES

15.     Plaintiff Western Organization of Resource Councils (WORC) is a non-profit corporation with its principle office in Billings, Montana and additional offices in Washington, D.C. and Montrose, Colorado. WORC is a regional network of grassroots community organizations that includes 39 local chapters and 18,132 members. WORC's mission is to advance the vision of a democratic, sustainable, and just society through community action. WORC's members live, work, and recreate on lands impacted by BLM's resource management plans for the Miles City and Buffalo Field Offices. WORC brings this action on its own behalf and on behalf of its affected members.

16.     Plaintiff Montana Environmental Information Center (MEIC) is a nonprofit organization founded in 1973 with approximately 5,000 members and supporters throughout the United States and the State of Montana. MEIC is dedicated to the preservation and enhancement of the natural resources and natural environment of Montana and to the gathering and disseminating of information concerning the protection and preservation of the human environment through education of its members and the general public concerning their rights and obligations under local, state, and federal environmental protection laws and regulations. MEIC is also dedicated to assuring that federal officials comply with and fully uphold the laws of the United States that are designed to protect the

environment from pollution. MEIC and its members have intensive, long-standing recreational, aesthetic, scientific, professional, and spiritual interests in the responsible production and use of energy, the reduction of greenhouse gas pollution as a means to ameliorate the climate crisis, and the land, air, water, and communities impacted by fossil fuel development. MEIC members live, work, and recreate in areas that will be adversely impacted by approval of the Miles City and Buffalo RMPs. MEIC brings this action on its own behalf and on behalf of its adversely affected members.

17.     Plaintiff Powder River Basin Resource Council (PRBRC) is a nonprofit organization founded in 1973 and located in Sheridan, Wyoming. Powder River Basin Resource Council has approximately 1,000 landowner and citizen members in Wyoming dedicated to the stewardship of Wyoming's water, air, land, and wildlife resources. The organization's many agricultural members ranch and derive a livelihood from the land, many above federal split estate minerals managed by BLM. Others live in, use, and enjoy the communities and landscapes affected by BLM's actions. Powder River Basin Resource Council's mission includes the preservation and enrichment of Wyoming's agricultural heritage and rural lifestyle, the conservation of Wyoming's unique land, mineral, water, and clean air resources consistent with responsible use of those resources to sustain the livelihood of present and future generations, as well as the education

and empowerment of Wyoming's citizens to raise a coherent voice in the decisions that will impact their environment and lifestyle. Powder River Basin Resource Council members live, work, and recreate in areas that will be adversely impacted by approval of the Miles City and Buffalo RMPs. Powder River Basin Resource Council brings this action on its own behalf and on behalf of its adversely affected members.

18.     Plaintiff Northern Plains Resource Council (Northern Plains) is a grassroots conservation and family agriculture non-profit organization based in Billings, Montana. Northern Plains organizes Montana citizens to protect water quality, family farms and ranches, and Montana's unique quality of life. Northern Plains is dedicated to providing the information and tools necessary to give citizens an effective voice in decisions that affect their lives. Northern Plains formed in 1972 over the issue of coal strip-mining and its impacts on private surface owners who own the land over federal and state mineral reserves as well as the environmental and social impacts of mining and transporting coal. While Northern Plains was founded on coal issues, the group quickly expanded into helping preserve the land, air, and water of its members from similar threats caused by irresponsible oil and gas development. Many of the organization's roughly 3,000 members farm, ranch, and recreate adjacent to or above minerals covered by the Miles City RMP, and their livelihoods depend entirely on clean air and water, a

8

healthy climate, native soils and vegetation, and lands that remain intact. Accordingly, Northern Plains members are adversely affected by approval of the Miles City RMP and will be injured by its implementation. Northern Plains brings this action on its own behalf and on behalf of its affected members.

19.    Plaintiff Center for Biological Diversity (the Center) is a non-profit membership corporation with offices in Arizona, New Mexico, California, Nevada, Oregon, Washington, Alaska, Illinois, Minnesota, Vermont, and Washington D.C. The Center works through science, law, and policy to secure a future for all species, great or small, hovering on the brink of extinction. The Center has 320,000 members and online activists throughout the United States, Montana, Wyoming, and the world. The Center is actively involved in species and habitat protection issues worldwide, including throughout the western United States. The Center, its members, and staff members use the lands in and near the Miles City and Buffalo planning areas—for recreational, scientific, and aesthetic purposes. They also derive recreational, scientific and aesthetic benefits from these lands through wildlife observation, study, and photography. The Center and its members have an interest in preserving their ability to enjoy such activities in the future. As such, the Center and its members have an interest in helping to ensure their continued use and enjoyment of the activities on these lands. The Center brings this action on its own behalf and on behalf of its adversely affected members.

9

20.     Plaintiff WildEarth Guardians (Guardians) is a nonprofit conservation organization with more than 200,000 members and activists throughout the United States, including nearly 900 in Montana. Guardians' mission is to protect and restore the wildlife, wild rivers, wild places, and health of the American West. Through its Climate and Energy Program, Guardians is dedicated to protecting the American West from the dangers it faces from the climate crisis. Guardians' members and staff have recreational, aesthetic, scientific, professional, and spiritual interests in a protected and stable climate, and an environment that is sustained by a protected and stable climate. Guardians' members use and plan to continue to use and enjoy landscapes impacted by the Miles City and Buffalo RMPs. Guardians brings this action on its own behalf and on behalf of its adversely affected members.

21.     Plaintiff Sierra Club is America's largest grassroots environmental organization, with more than 2 million members and supporters nationwide. In addition to creating opportunities for people of all ages, levels and locations to have meaningful outdoor experiences, the Sierra Club works to safeguard the health of our communities, protect wildlife, and preserve our remaining wild places through grassroots activism, public education, lobbying, and litigation. Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and

10

ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. Sierra Club members live, work, and recreate in areas that will be adversely impacted by approval of the Miles City and Buffalo RMPs. Sierra Club's concerns encompass the exploration, enjoyment, and protection of the land and air of Montana and Wyoming. Sierra Club brings this action on its own behalf and on behalf of its adversely affected members.

22.    The Conservation Groups' and their members' interests are deeply rooted in the communities of the American West where the Conservation Groups and their members live, work, and recreate. These interests are also bound to the land, wildlands, air, rivers, streams, habitat, wildlife, topography, and other components of healthy, intact landscapes in the Miles City and Buffalo planning areas—all of which are threatened by coal, oil and gas development, human-caused climate change, and the myriad pollution impacts caused by the continued burning of fossil fuels. The Conservation Groups and their members use and enjoy these landscapes for hiking, hunting, camping, photography, aesthetic enjoyment, spiritual contemplation, ranching, and other vocational, scientific, and recreational activities. Some of Conservation Groups' members own surface lands overlying federal minerals that are subject to the Miles City and Buffalo RMPs. Conservation Groups and their members intend to continue to use and enjoy lands managed by

11

BLM, and other public lands, wildlands, wildlife habitat, rivers, streams, and healthy environments located in Montana and Wyoming frequently, and on an ongoing basis in the future, including this summer, fall, winter, and spring.

23.    The aesthetic, recreational, scientific, educational, religious, and procedural interests of the Conservation Groups and their members have been adversely affected and irreparably injured by the process in which BLM approved the SEISs for the Miles City and Buffalo RMPs, and by the resulting RODs. The adverse impacts that will result from BLM's processes and decisions threaten actual, imminent, concrete, and particularized harm to the interests of the Conservation Groups and their members.

24.    The relief sought would remedy the injuries suffered by the Conservation Groups and their members by requiring the agencies to evaluate alternatives limiting and reducing the myriad impacts of fossil fuel development.

25.    Federal Defendant U.S. Bureau of Land Management is a Federal agency within the United States Department of the Interior that is responsible for the management of more than 245 million acres of public lands in the United States and nearly 700 million acres of federal subsurface mineral estate.

## STATEMENT OF FACTS

26.    The Miles City planning area covers 25.8 million acres of federal, state, and private lands. Of the total area, there are 2.75 million federal surface

acres and 10.6 million acres of federal minerals in Carter, Custer, Daniels, Dawson, Fallon, Garfield, McCone, Powder River, Prairie, Richland, Roosevelt, Rosebud, Sheridan, Treasure, Wibaux, and portions of Big Horn and Valley counties in eastern Montana.

27.    The adjacent Buffalo planning area covers 7.4 million acres of federal, state, and private lands. Of the total area, there are 780,000 federal surface acres and 4.8 million acres of federal minerals in Campbell, Johnson, and Sheridan counties in northeastern Wyoming.

28.    Together, the contiguous Miles City and Buffalo planning areas compose the northern and southern portions of a broader region known as the Powder River Basin, an area of stark beauty with rolling grasslands, badlands, abundant wildlife, and remote wilderness. The region's grass and water support extensive, sustainable livestock grazing and small agricultural producers. The Powder River Basin is also one of the nation's most prolific energy producing regions. The Powder River Basin is the largest coal producing region in the United States, accounting for nearly 40% of all domestic production. The Powder River Basin also produces significant amounts of natural gas and oil, about 1% and 1.3% of total U.S. natural gas and oil production, respectively.

29.    In 2015, BLM approved RMPs for the Miles City and Buffalo Field Offices. The RMPs made vast amounts of fossil fuels in the Powder River Basin

available for development. However, the agencies' accompanying environmental

impact statements (EISs), issued pursuant to NEPA, failed to analyze any

alternative development scenarios, specifically scenarios that would result in the

availability of less coal for leasing and development, and failed to disclose to the

public the results of combustion of the vast amounts of fossil fuels that the Powder

River RMPs made available for development.

30.     In 2018, the U.S. Federal District Court for the District of Montana

held that BLM's NEPA analyses for these RMPs were deficient and ordered the

agency to remedy its errors through remand.

31.     In October 2019, BLM issued supplemental EISs for both the Miles

City and the Buffalo Field Offices and issued two records of decision in November

2019. The Miles City supplemental EIS and the Buffalo supplemental EIS are

mirror documents, which suffer from virtually identical shortcomings.

32.     BLM's supplemental EISs, did not remedy the agency's inadequate

alternatives analysis or its failure to analyze and disclose the impacts of fossil fuel

combustion.

33.     Regarding coal alternatives, BLM again considered alternatives that

would result in identical amounts of coal development. Under all alternatives, 775

million tons of coal from 9,730 acres would be strip-mined over 20 years in the

Miles City Field Office, and under all alternatives 4.9 billion tons of coal from
36,620 acres would be strip-mined over 20 years in the Buffalo Field Office.

34.     Regarding the impacts of fossil fuel combustion, BLM discussed the
greenhouse gas emissions that would result from fossil fuel development under the
RMPs; however, the agency refused entirely to analyze or disclose the toxic and
harmful impacts of non-greenhouse gas pollution from fossil fuel combustion.

35.     The record before the agency showed that combustion of fossil fuels
from the planning areas would result in tens of thousands of premature deaths,
countless respiratory and cardiac illnesses, and significant harm to the brain
development of children and fetuses across the nation. The record documented that
the widespread fossil fuel combustion envisioned and enabled by the RMPs would
cause increased risks of cancer, premature births, and widespread exposure of
children and fetuses to lead and mercury, which impair brain development.
Further, drawing on a robust body of science, comments in the record showed that
the cumulative economic harm to the public from this toxic and harmful air
pollution would range from $95 billion (low estimate) to $1.8 trillion.

36.     Despite this compelling evidence in the record, BLM refused to
acknowledge or disclose the devastating impacts of this air pollution from fossil
fuel combustion or the monetary costs of this pollution. Nevertheless—in an

entirely one-sided account of benefits (but not costs)—the agency's analyses

detailed at length the purported monetary benefits from fossil fuel development.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (NEPA Violation: Failure to Consider Adequate Alternatives)

37.     The Conservation Groups incorporate by reference all preceding

paragraphs.

38.     NEPA requires federal agencies to "study, develop, and describe

appropriate alternatives to recommended courses of action in any proposal which

involves unresolved conflicts concerning alternative uses of available resources."

42 U.S.C. § 4332(2)(E). An EIS must consider "alternatives to the proposed

action." *Id.* § 4332(2)(C)(iii).

39.     Federal Defendants were required to "[r]igorously explore and

objectively evaluate all reasonable alternatives" to the proposed action. 40 C.F.R.

§ 1502.14(a). The alternatives analysis is the "heart" of the EIS. *Id.*

40.     The supplemental EISs for the Miles City and Buffalo RMPs violated

NEPA by failing to consider a reasonable range of coal alternatives. In the Miles

City and Buffalo supplemental EISs, BLM only considered alternatives that would

result in identical amounts of coal development and identical impacts. By

16

considering only alternatives that would have identical impacts on the ground, BLM reduced the NEPA process to a meaningless paper exercise.

41.     BLM's failure to consider any alternative that would result in reduced coal development or reduced impacts from coal development was arbitrary and capricious and unlawful in violation of NEPA, in 42 U.S.C. § 4332(2)(C)(iii), (E), its implementing regulations, 40 C.F.R. § 1502.14(a), and the APA, 5 U.S.C. § 706(2)(A).

## SECOND CAUSE OF ACTION

### (NEPA Violation: Failure to Consider Non-GHG air pollution impacts of coal combustion)

42.     The Conservation Groups incorporate by reference all preceding paragraphs.

43.     NEPA requires a federal agency's EIS to consider "any adverse environmental effects which cannot be avoided." 42 U.S.C. § 4332(2)(C)(ii).

44.     Agencies are required to take a hard look at the indirect impacts of a proposed action. 40 C.F.R. § 1502.16(b).

45.     BLM is required to provide a hard look analysis of these impacts before making "any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented." 42 U.S.C. § 4332(2)(C)(v); *see also* 40 C.F.R. §§ 1501.2, 1502.5(a).

46.    "Indirect effects" are those "which are caused by the action and are later in time or farther removed in distance, but are still reasonably foreseeable. Indirect effects may include growth inducing effects and other effects related to induced changes in the pattern of land use, population density or growth rate, and related effects on air and water and other natural systems, including ecosystems." 40 C.F.R. § 1508.8(b).

47.    In the supplemental EISs, BLM acknowledged that virtually all of the fossil fuels developed pursuant to the Powder River Basin RMPs would be burned. BLM further analyzed the greenhouse gas emissions from fossil fuel combustion. Nevertheless, despite abundant record evidence demonstrating widespread deleterious impacts to the public from non-greenhouse gas emissions from fossil fuel combustion, BLM refused to analyze or disclose such impacts.

48.    BLM's complete failure to consider these impacts is arbitrary, capricious, an abuse of discretion, and contrary to NEPA, in 42 U.S.C. § 4332(2)(C)(ii), its implementing regulations, 40 C.F.R. § 1508.8(b), and the APA, 5 U.S.C. § 706(2)(A).

## REQUEST FOR RELIEF

WHEREFORE the Conservation Groups respectfully request that this Court:

A.    Declare that BLM's actions violate NEPA, the regulations and policies promulgated thereunder, and the APA;

B.     Vacate and set aside those portions of the RMPs that permit fossil fuel development;

C.     Enjoin BLM from approving the leasing or development of coal, oil or gas resources in the planning areas until BLM has demonstrated compliance with NEPA and the APA;

D.     Retain continuing jurisdiction of this matter until BLM fully remedies the violations of law complained of herein;

E.     Award Conservation Groups their attorneys' fees, costs, and other expenses as provided by applicable law; and

F.     Issue such relief as Conservation Groups subsequently request or that this Court may deem just, proper, and equitable.

Respectfully submitted this 27th day of August 2020.

/s/ Shiloh S. Hernandez
Shiloh S. Hernandez (MT Bar No. 9970)
Melissa Hornbein (MT Bar No. 9694)
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
Ph: (406) 204-4861
hornbein@westernlaw.org
hernandez@westernlaw.org

*Counsel for Western Organization of Resource Councils,
Montana Environmental Information Center,
Powder River Basin Resource Council, and
Northern Plains Resource Council*

19

Nathaniel Shoaff, *pro hac vice pending* (CA
Bar No. 256641)
Sierra Club
2101 Webster Street, Suite 1300 Oakland,
CA 94612
Ph: (415) 977-5610
nathaniel.shoaff@sierraclub.org

*Counsel for Sierra Club*