Travis Jordan, MT Bar No. 53199056
Assistant Attorney General
Elliott Adler, WY Bar No. 7-6434 (*Pro Hac Vice Pending*)
Assistant Attorney General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY 82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
travis.jordan@wyo.gov
elliott.adler@wyo.gov

*Counsel for Proposed Intervenor State of Wyoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES BUREAU OF LAND MANAGEMENT,<br><br>Defendant. | Case No. 4:20-cv-76-BMM-JTJ<br><br>**STATE OF WYOMING'S MEMORANDUM IN SUPPORT OF ITS UNOPPOSED MOTION TO INTERVENE** |

The State of Wyoming (Wyoming) submits this memorandum of law in support of its Motion to Intervene in the above-captioned matter.

## INTRODUCTION

Plaintiffs, Western Organization of Resource Councils and other groups (collectively, the Interest Groups), challenge a decision by the United States Bureau of Land Management (BLM) approving two resource management plan (RMP) amendments, including the RMP amendment for the Buffalo, Wyoming Field Office. (Doc. 1 at ¶¶2-3). At the direction of this Court,[1] the BLM prepared a supplemental environmental impact statement (SEIS) and approved an RMP amendment which includes updated coal screening analysis, consideration of downstream combustion impacts, and an alternative that reduces the amount of coal available for federal leasing. The Interest Groups now ask this Court to vacate portions of the November 2019 Buffalo RMP amendment and enjoin the BLM from leasing the mineral resources managed by the Buffalo RMP amendment. Wyoming seeks to intervene in this case in order to protect its interests in the Buffalo RMP amendment and to prevent further interruption of coal, oil, and gas leasing within a significant portion of the State. Because Wyoming meets the requirements for intervention under Federal Rule of Civil Procedure 24, Wyoming respectfully requests that this Court grant the motion to intervene.

---

[1] *See Western Organization of Resource Councils, et al.*, Case No. 16-CV-21-BMM (D. Mont.) (Doc. 109 & 124).

## BACKGROUND

The BLM is required by the Federal Land Policy and Management Act to prepare RMPs. (Record of Decision at 1-1).[2] The RMP amendment for the Buffalo Field Office manages approximately 800,000 acres of surface lands and 4.7 million acres of subsurface federal mineral estate in Campbell, Johnson, and Sheridan Counties in north-central, Wyoming. *Id.* at 1-1. The purpose of the RMP amendment is to guide the BLM's future management of public lands, including mineral development. In November 2019, the BLM issued a Record of Decision approving an RMP amendment which conserves resources and identifies areas acceptable for future mineral leasing. *Id.* The BLM accomplished this task with the assistance of numerous parties, including the State of Wyoming. *Id.* at 1-8. Although the Interest Groups want to end all mineral leasing on the federal lands managed by the RMP amendment, as BLM explains in the Record of Decision, such an alternative is inconsistent with federal law. *Id.* at 1-2.

## ARGUMENT

**I. The State of Wyoming is entitled to intervene as a matter of right.**

Federal Rule of Civil Procedure 24(a)(2) governs intervention as a matter of right. An applicant seeking to intervene as of right must show the following: (1) the

---

[2] BUREAU OF LAND MANAGEMENT, BUFFALO FIELD OFFICE, RECORD OF DECISION (Nov. 2019), https://eplanning.blm.gov/public_projects/lup/117345/20008991/250010558/BFO_ROD&RMPA.pdf

3

motion is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest. *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). In evaluating these factors, courts are required to take all well-pleaded, non-conclusory allegations in the motion to intervene as true absent "sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).

The United States Court of Appeals for the Ninth Circuit normally interprets Federal Rule of Civil Procedure 24(a)(2) "broadly in favor of proposed intervenors" because "'[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to courts.'" *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 397-98 (9th Cir. 2002)). This Court is guided by "practical and equitable" considerations. *United States v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1148 (9th Cir. 2010); *see also Berg*, 268 F.3d at 818 (construing "Rule 24(a) liberally in favor of potential intervenors").

Wyoming satisfies all four requirements for intervention as of right: (1) the State's motion is timely because the case is in its early stages and allowing Wyoming

4

to join the action will not cause prejudice or delay; (2) Wyoming has significant protectable interests in the preservation of the Buffalo, Wyoming RMP amendment; (3) disposition of this case in the Interest Groups' favor would impair Wyoming's interests; and (4) the Federal Defendants cannot adequately represent Wyoming's unique, sovereign interests.

### A. Wyoming's motion is timely.

Courts use three factors to assess the timeliness of a motion to intervene: (1) the stage of the proceeding when intervention is sought; (2) the prejudice to the parties if intervention is permitted; and (3) the reasons for and length of any delay. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). Of the three factors, prejudice is the most important for determining timeliness. *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).

In this action, Wyoming satisfies the three timeliness factors for intervention as of right. First, this case is in its earliest stages. The Federal Defendants have not yet filed a responsive pleading nor have they filed the administrative record on which this case will be decided, and this Court has not set a briefing schedule. Second, Wyoming's participation will not prejudice any of the other parties because Wyoming's participation will not delay resolution of the case. Finally, Wyoming did not unreasonably delay filing this motion. Wyoming became aware of the suit on

5

the day that it was filed and moved expeditiously to intervene. Accordingly, Wyoming's motion is timely.

### B. Wyoming has a significant protectable interest.

Wyoming has a "significant[ ] protectable interest relating to the property or transaction that is the subject of the action[.]" *Wilderness Soc'y*, 630 F.3d at 1177. "Rule 24(a)(2) does not require a specific legal or equitable interest[.]" *Id.* at 1179 (citing *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980)). Rather, the interest test is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Id.* (quotation omitted). "[A] prospective intervenor's asserted interest need not be protected by the statute under which the litigation is brought to qualify as 'significantly protectable' under Rule 24(a)(2)." *Id.* (citing *Sierra Club*, 995 F.2d at 1481, 1484). "[I]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (quotation omitted).

Furthermore, the U.S. Court of Appeals for the Ninth Circuit has consistently approved "intervention of right on the side of the federal defendant in cases asserting violations of environmental statutes[,]" when the proposed intervenor actively participated in the administrative process which led to the action being challenged. *Id.* at 1179–80 (citing *Sierra Club*, 995 F.2d at 1486; *Idaho Farm Bureau Fed'n v.*

6

*Babbitt*, 58 F.3d 1392, 1397-98 (9th Cir. 1995); and *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526-528 (9th Cir. 1983)). Such participation leaves "no serious dispute" that the proposed intervenor has a protectable interest supporting the right to intervene. *Id.* (quoting *Sagebrush Rebellion, Inc.*, 713 F.2d at 528).

Indeed, the interest of a proposed intervenor may be impaired simply because "a decision in the plaintiff's favor would return the issue to the administrative decision-making process." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010). And although proposed intervenors could vindicate their rights in that administrative decision-making process, "it is not enough to deny intervention under 24(a)(2) because applicants may vindicate their interests in some later, albeit more burdensome, litigation." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 910 (D.C. Cir. 1977). "[E]specially in administrative law cases, questions of 'convenience' are clearly relevant." *Id.*

Wyoming has multiple, legally-protectable interests at stake in this litigation including a substantial economic interest in the activities that take place on the lands managed by the Buffalo RMP amendment. Wyoming's economy relies on the revenues derived from federal mineral development. (SEIS at 3-27).[3] In addition to

---

[3] BUREAU OF LAND MANAGEMENT, BUFFALO FIELD OFFICE, FINAL SUPPLEMENTAL ENVIRONMENTAL IMPACT STATEMENT (OCT. 2019), https://eplanning.blm.gov/public_projects/lup/117345/20004911/250006559/BFO_RMP_Final_SEIS-Links_Repaired.pdf

7

the 49 percent of federal mineral receipts returned to Wyoming, coal mine operators are required to pay severance taxes to the State. *Id.* For example, "[i]n 2018, the extraction of federal coal in the [Buffalo Field Office] generated more than $200 million in state severance taxes." *Id.* In Wyoming, these severance taxes support contributions to the Permanent Wyoming Mineral Trust Fund and provide funding for environmental remediation of underground storage tanks, water development projects, local governments, highway funding, capital construction, education, and Wyoming's general fund. *Id.* Reducing mineral development on federal land, as the Interest Groups desire, would significantly affect Wyoming's economic output and the amount of revenue generated from such activities.

Local communities within the Buffalo RMP amendment area also benefit directly from federal mineral leasing. Coal that is extracted from federally leased lands is subject to local ad valorem taxes which is a property tax assessed at 100 percent of the market value of the mine's gross production. (SEIS at 3-27). Campbell County, Wyoming alone is owed $146 million in ad valorem taxes from production of federal coal which is used to fund schools, roads, hospitals, and provide essential public services. *Id.* at 3-28. Wyoming has a significant interest in ensuring that its communities continue to receive these revenues to support local services.

Federal mineral leasing also indirectly impacts local communities within the Buffalo RMP amendment area. In many of the rural communities where mineral

extraction occurs, employment opportunities are limited. (SEIS at 3-29). However, non-management wages in the coal industry are often higher than those in other local industries. *Id.* The loss of coal mining jobs, associated with decreased mining activity, can create a ripple effect within the community as the industries that supply goods and services to the coal industry also suffer. *Id.* Mining unemployment in rural communities can harm the well-being of residents and may increase demand for public services including drug and alcohol treatment, public assistance programs, and law enforcement. *Id.* at 3-30. In addition to securing sources of revenue for state and local governments, Wyoming has a substantial interest in protecting the physical health of its communities.

This action also threatens to impair Wyoming's interest by once again remanding the Buffalo RMP back to the respective administrative agencies. The Court granted Wyoming's motion to intervene in the Interest Group's prior action challenging the Buffalo RMP.[4] This is in part, because Wyoming and its local communities have actively participated in the Buffalo RMP amendment process as cooperating agencies. (Record of Decision at 1-8). If the Interest Group's challenge is successful, Wyoming (including its cooperating state agencies and local governments) will be required to re-engage the federal agencies in the federal land

---

[4] *See Western Organization of Resource Councils, et al.*, Case No. 16-CV-21-BMM (D. Mont.) (Doc. 45).

9

use planning process which is both time-consuming and expensive, and it is therefore in Wyoming's interest to avoid them.

There is "no serious dispute" that Wyoming has a direct, substantial and legally protectable interest in the outcome of this litigation. Consequently, Wyoming should be allowed to once again intervene as a matter of right.

### C. The Interest Groups' challenge threatens to impair Wyoming's interest.

"[A] prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). To satisfy the "practical impairment" requirement, the applicant need only show that the disposition of the action may impair its protectable interest. *City of Los Angeles*, 288 F.3d at 401. "[T]he interest of a prospective defendant-intervenor may be impaired where a decision in the plaintiff's favor would return the issue to the administrative decision-making process, notwithstanding the prospective intervenor's ability to participate in formulating any revised rule or plan." *WildEarth Guardians*, 604 F.3d at 1199.

If this Court grants the Interest Groups the relief they seek, federal mineral leasing in north-central Wyoming will grind to a halt. The unleased, recoverable mineral resources will not be available for leasing and mining. As a result, Wyoming will be deprived of the anticipated revenues on which its programs rely until the

federal government completes the lengthy NEPA process the Interest Groups desire. As a result, Wyoming programs dependent on mineral leasing revenues will suffer from the loss of funds. The loss of those governmental revenues "constitutes a concrete and imminent injury" that would be "fairly traceable" to the success of Interest Groups in this litigation. *Fund for Animals v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003). In sum, Wyoming satisfies the practical impairment requirement in order to intervene in this matter.

### D. The Federal Defendants cannot adequately represent Wyoming's interests.

When examining the final criterion for intervention as of right, adequacy of representation, a court considers the following: (1) whether a present party will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the intervenor would offer any necessary elements to the proceedings that other parties would neglect. *City of Los Angeles*, 288 F. 3d at 398 (citation omitted). "However, the burden of showing inadequacy is 'minimal,' and the applicant need only show that representation of its interests by existing parties 'may be' inadequate." *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822-23 (citations omitted). Wyoming meets this minimal burden.

The federal defendants cannot adequately represent Wyoming's sovereign interests. While the Federal Defendants have a duty to represent the interests of the

general public across the United States, states have a variety of differing interests. The federal government has no duty to represent the personal or economic interests of a single group or state. *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (finding that the federal government is "required to represent a broader view than the more narrow, parochial interests" of a proposed state or county intervenor), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1173, 1177-78, 1180. Accordingly, the Federal Defendants cannot adequately represent Wyoming's interests.

Courts have found that federal agencies cannot adequately represent other interests in lawsuits challenging federal decision-making. *See e.g., Nat'l Farm Lines v. ICC*, 564 F.2d 381, 384 (10th Cir. 1977) (noting that it is impossible for the government to adequately protect both the public interest and the private interests of the petitioners in intervention); *Sierra Club v. Espy*, 18 F.3d 1202, 1207-08 (5th Cir. 1994) (finding that the government did not adequately represent the interests of timber purchasers). Similarly, the federal government cannot adequately represent the narrower interests of non-federal governmental entities in environmental litigation challenging federal action. *See e.g., Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1256 (11th Cir. 2002) (holding that federal defendant did not adequately represent state's interest in interstate waters because federal agency had no independent stake in how much water reached state seeking intervention).

Moreover, "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." 3B Moore's Federal Practice, ¶24.07[4] at 24-78 (2d ed. 1995).

Wyoming and the federal government have a basic common interest in seeing that the Buffalo RMP amendments remain in place. From this common ground, however, differences emerge. In attempting to protect its interests, the BLM will defend the Buffalo RMP amendment, but in many respects, the agency can go no further. By contrast, Wyoming is uniquely capable of explaining to the Court how any potential ruling will affect its economy, which is heavily dependent on coal, oil, and gas development. Wyoming's sovereign and economic interests are narrower and more specific than the interests of the federal government. Moreover, the federal government does not share Wyoming's economic and sovereign interests which are impacted by the Buffalo RMP amendment, including Wyoming's interest in securing state and local revenues from mineral extraction activities. (SEIS at 3-27). Wyoming, unlike the BLM, has a strong interest in ensuring consistent management across all surface and mineral ownerships within the borders of the State. These disparate interests ensure that Wyoming cannot be adequately represented by the Federal Defendants. Accordingly, this Court should permit Wyoming to intervene as a right in this matter.

## II. In the alternative, the Court should grant Wyoming permission to intervene.

In the event this Court does not grant intervention as a matter of right, the Court should permit Wyoming to intervene in this matter pursuant to Federal Rule of Civil Procedure 24(b)(l)(B), which provides: "On timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact." If the applicant satisfies this requirement, "it is then discretionary with the court whether to allow intervention." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1173, 1177-78, 1180.

As explained above, Wyoming's motion is timely and will not delay these proceedings. Under the second factor, an applicant for permissive intervention satisfies the "common question" requirement where it will assert defenses that squarely respond to the claims asserted by the Interest Groups in their complaint. *Kootenai Tribe of Idaho*, 313 F.3d at 1111. Here, Wyoming contests the Interest Groups' claims that the BLM failed to adequately comply with NEPA. This direct response to the Interest Groups' claims satisfies the "common question" requirement for permissive intervention. *Kootenai Tribe of Idaho*, 313 F.3d at 1110 (finding intervenor defendants alleged common questions of law and fact by raising defenses "directly responsive" to plaintiff's claims). Because Wyoming's timely participation will address the issues of law and fact in this case, it meets the criteria for permissive

14

intervention. Wyoming requests permission to intervene in order to represent its important and unique interests in this action.

## CONCLUSION

The Interest Groups ask this Court to vacate portions of the Buffalo RMP amendment that authorize mineral development on federal land in Wyoming and enjoin BLM from approving the leasing or development of coal, oil, and gas resources in the planning areas until the BLM demonstrated compliance with the alleged inadequacies under NEPA. Wyoming has a significant interest in preventing such an injunction, and the State would be grievously harmed if the Interest Groups prevail. For the foregoing reasons, Wyoming requests that this Court grant Wyoming's motion to intervene.

Dated this 30th day of September, 2020.

FOR PROPOSED DEFENDANT-INTERVENOR STATE OF WYOMING

_____
Travis Jordan, MT Bar No. 53199056
Assistant Attorney General
Elliott Adler, WY Bar No. 7-6434
(*Pro Hac Vice Pending*)
Assistant Attorney General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY 82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
travis.jordan@wyo.gov
elliott.adler@wyo.gov

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of September, 2020, a true copy of the foregoing was served by United States mail, first class, postage prepaid, to the following:

Melissa Anne Hornbein
Shiloh Silvan Hernandez
Western Environmental Law Center
103 Reeder's Alley
Helena, MT 59601

Nathaniel Shoaff
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612

*Attorneys for Plaintiffs*

Luther Hajek
United States Department of Justice
Environmental and Natural Resources Division
999 18th St., South Terrace, Suite 370
Denver, CO 80202

*Attorney for Federal Defendants*

_____
Travis Jordan
Assistant Attorney General