MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North
Suite 3200
Billings, MT 59101
Ph: (406) 247-4667
Fax: (406) 657-6058
mark.smith3@usdoj.gov

PAUL E. SALAMANCA
Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

ARWYN CARROLL (MA Bar 675926)
LUTHER L. HAJEK (CO Bar 44303)
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Ph: (202) 305-0465
Fax: (202) 305-0506
arwyn.carroll@usdoj.gov
luke.hajek@usdoj.gov

*Counsel for Federal Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | | |
|---|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:20-cv-00076-BMM-JTJ |
| v. | ) ) | **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO PARTIALLY DISMISS FOR IMPROPER VENUE OR, ALTERNATIVELY, TO SEVER CLAIMS AND TRANSFER VENUE** |
| U.S. BUREAU OF LAND MANAGEMENT, | ) ) ) ) | |
| Defendant, and | ) ) | |
| STATE OF WYOMING, | ) ) | |
| Intervenor Defendant. | ) ) | |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................ 1

BACKGROUND ............................................................................................ 2

    I.     Resource Management Plans ...................................................... 2

    II.    Prior Litigation ........................................................................ 3

    III.   2019 Buffalo and Miles City RMPAs ....................................... 5

    IV.   Plaintiffs' Complaint ................................................................ 7

DISCUSSION ............................................................................................... 8

    I.     Plaintiffs' Claims Challenging the 2019 Buffalo RMPA Should
         Be Dismissed for Improper Venue ........................................... 9

         A.    Venue Is Improper in Montana ................................... 10

         B.    The Court Should Not Exercise Pendent Venue ....................... 14

    II.    Plaintiffs' Claims Challenging the 2019 Buffalo RMPA Should
         Be Severed and Transferred to Wyoming ................................ 16

         A.    Principles of Fundamental Fairness Support Severance .......... 17

         B.    The Interest of Justice Supports Transfer ................................ 20

             1.    Plaintiffs' Choice of Forum Does Not Warrant
                 Deference ........................................................... 23

             2.    Localized Controversies Should Be Decided at
                 Home ................................................................. 25

CONCLUSION ............................................................................................. 27

# TABLE OF AUTHORITIES

## Cases

*Acevedo v. Allsup's Convenience Stores, Inc.*,
  600 F.3d 516 (5th Cir. 2010) ..................................................................17

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
  368 F.3d 1174 (9th Cir. 2004) ...............................................................14

*Anderson v. Thompson*,
  634 F. Supp. 1201 (D. Mont. 1986) ............................................... 21, 23

*BioDiversity Conservation All. v. U.S. Bureau of Land Mgmt.*,
  608 F.3d 709 (10th Cir. 2010) ................................................................24

*Bullock v. U.S. Bureau of Land Mgmt.*,
  No. 4:20-cv-62-BMM, 2020 WL 6204334 (D. Mont. Oct. 16, 2020) ...... 8, 15, 24

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
  928 F.2d 1509 (10th Cir. 1991) ...................................................... 17, 20

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000) ...............................................................17

*Ctr. for Biological Diversity & Pac. Env't v. Kempthorne*,
  No. C 07-0894 EDL, 2007 WL 2023515 (N.D. Cal. July 12, 2007) ..................22

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
  No. 08-cv-05646, 2009 WL 1025606 (N.D. Cal. Apr. 14, 2009) .......................13

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986) .................................................................21

*Earth Island Inst. v. Quinn*,
  56 F. Supp. 3d 1110 (N.D. Cal. 2014) ..................................................25

*Ferens v. John Deere Co.*,
  494 U.S. 516 (1990) ...............................................................................26

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) ...............................................................................21

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) .................................................................20

*King v. Russell*,
  963 F.2d 1301 (9th Cir. 1992) .............................................................................10

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ...............................................................................23

*Martensen v. Koch*,
  942 F. Supp. 2d 983 (N.D. Cal. 2013) ...................................................... 10, 14, 16

*Montana Wildlife Fed'n v. Zinke*,
  No. CV-18-69-GF-BMM, 2018 WL 5810502 (D. Mont. Nov. 6, 2018) .............12

*Murphy v. Schneider Nat'l, Inc.*,
  362 F.3d 1133 (9th Cir. 2004) .............................................................................10

*N. Cheyenne Tribe v. Norton*,
  503 F.3d 836 (9th Cir. 2007) ...............................................................................24

*Nat'l Ass'n of Home Builders v. EPA*,
  675 F. Supp. 2d 173 (D.D.C. 2009) .....................................................................11

*Nez Perce Tribe v. Nat'l Oceanic & Atmospheric Admin. Fisheries*,
  No. CV 04-60-RE, 2004 WL 1179333 (D. Or. May 27, 2004) ..........................22

*Oregon Nat. Desert Ass'n v. U.S. Bureau of Land Mgmt*,
  625 F.3d 1092 (9th Cir. 2010) .............................................................................18

*Pac. Car & Foundry Co. v. Pence*,
  403 F.2d 949 (9th Cir. 1968) ...............................................................................23

*Pac. Coast Fed. v. Gutierrez*,
  No. C-05-3232, 2006 WL 194507 (N.D. Cal. Jan. 24, 2006) .............................25

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981) ..................................................................................... 21, 22

*Reuben H. Donnelley Corp. v. FTC*,
  580 F.2d 264 (7th Cir. 1978) ...............................................................................12

*S. Utah Wilderness All. v. Lewis*,
  845 F. Supp. 2d 231 (D.D.C. 2012) .......................................................... 13, 21, 25

*S. Utah Wilderness All. v. Norton*,
  315 F. Supp. 2d 82 (D.D.C. 2004) .......................................................................25

*Stewart Organization, Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) ...............................................................................................20

*Trout Unlimited v. Lohn*,
   No. 06-CV-904RSL, 2006 WL 2927737 (W.D. Wash. Oct. 10, 2006)..............25

*Trout Unlimited v. U.S. Dep't of Agric.*,
   944 F. Supp. 13 (D.D.C. 1996) ...........................................................................25

*W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.*,
   No. CV 16-21-GF-BMM, 2017 WL 374705 (D. Mont. Jan. 25, 2017)3, 8, 10, 11,
   17, 22, 23, 24, 27

*W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.*,
   No. CV 16-21-GF-BMM, 2018 WL 1475470 (D. Mont. Mar. 26, 2018) ............4

*W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.*,
   No. CV 16-21-GF-BMM, 2018 WL 9986684 (D Mont. Jul. 31, 2018) ...........4, 5

*W. Watersheds Project v. Pool*,
   942 F. Supp. 2d 93 (D.D.C. 2013) ............................................................. 22, 25

*W. Watersheds Project v. Salazar*,
   No. CIV 08-0516-E-BLW, 2009 WL 1299626 (D. Idaho May 7, 2009) ............13

*WildEarth Guardians v. Jewell*,
   No. 1:15–cv–2026–WJM, 2016 WL 8577508 (D. Colo. June 17, 2016) ............18

*WildEarth Guardians v. U.S. Fish & Wildlife Serv.*,
   No. 12-cv-3085-AP, 2013 WL 136204 (D. Colo. Jan. 9, 2013) ..........................25

**Statutes**

28 U.S.C. § 1391(b)(2)..................................................................................................13

28 U.S.C. § 1391(e) ......................................................................................................13

28 U.S.C. § 1391(e)(1)............................................................................................ 11, 14

28 U.S.C. § 1391(e)(1)(B) ................................................................................. 11, 12, 15

28 U.S.C. § 1404(a) ........................................................................................ 1, 9, 16, 20

28 U.S.C. § 1406...........................................................................................................9

28 U.S.C. § 1406(a) ........................................................................................... 1, 10, 16

42 U.S.C. § 4321 ...........................................................................................................1

43 U.S.C. § 1732(a) ......................................................................................................2

iv

**Rules**

Fed. R. App. P. 4(a)(1)(B) ........................................................................9

Fed. R. Civ. P. 12(b)(3)................................................. 1, 9, 10, 16

Fed. R. Civ. P. 21 ........................................................ 17, 20

**Regulations**

43 C.F.R. §  1601.0-2....................................................................2

43 C.F.R. §  1601.0-5(n)(2) ......................................................2

43 C.F.R. § 1601.0-6....................................................................2

# EXHIBIT INDEX

| | |
|---|---|
| Exhibit 1 | Rocky Mountain Region Greater Sage-Grouse Conservation Strategy ROD dated September 2015 |
| Exhibit 2 | Buffalo Field Office Record of Decision and Resource Management Plan Amendment dated November 22, 2019 |
| Exhibit 3 | Buffalo Field Office Supplemental Environmental Impact Statement |
| Exhibit 4 | Miles City Field Office Record of Decision and Resource Management Plan Amendment dated November 23, 2019 |
| Exhibit 5 | Miles City Field Office Supplemental Environmental Impact Statement |
| Exhibit 6 | Order in *Western Organization of Resource Councils v. Clark*, No. 1:03-cv-70-BLG-RWA, (D. Mont. Jan. 13, 2004). |

## INTRODUCTION

In 2018, this Court concluded that Resource Management Plans (RMP) and Environmental Impact Statements (EIS) prepared by the United States Bureau of Land Management's Field Offices in Miles City, Montana, and Buffalo, Wyoming, failed to satisfy certain requirements of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, and ordered BLM to consider certain alternatives to and impacts of development in the Powder River Basin.  BLM undertook those analyses and, in 2019, approved Resource Management Plan Amendments (RMPA) and Supplemental Environmental Impact Statements (SEIS) prepared by the Miles City and Buffalo Field Offices through two separate Records of Decision (ROD).

Several environmental groups now challenge both RMPAs, alleging that they fail to satisfy NEPA's requirements or the Court's orders.  While venue is proper in this District for Plaintiffs' claims challenging the Miles City RMPA, Plaintiffs have not carried their burden of demonstrating that venue is proper in Montana for challenges to the Buffalo Field Office's RMPA.  The latter claims should therefore be dismissed for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).  In the alternative, principles of fairness and the interest of justice warrant severing those claims and transferring them to the District of Wyoming pursuant to Rule 21 and 28 U.S.C. § 1404(a).

1

# BACKGROUND

## I.   <u>Resource Management Plans</u>

The Federal Land Policy and Management Act of 1976 instructs the Secretary of the United States Department of the Interior, through BLM, to "manage the public lands under principles of multiple use and sustained yield." 43 U.S.C. § 1732(a).  BLM does this, in part, through developing and maintaining RMPs, which "are designed to guide and control future management actions," and establish, among other things, "[l]and areas for limited, restricted or exclusive use" and "[a]llowable resource uses (either singly or in combination) and related levels of production or use to be maintained."  43 C.F.R. §§ 1601.0-2, -5(n)(2). "Approval of [an RMP] is considered a major Federal action significantly affecting the quality of the human environment," triggering an Environmental Impact Statement under NEPA.  43 C.F.R. § 1601.0-6.

On September 21, 2015, the Secretary of the Interior and the Director of BLM signed a ROD approving land use plans for the Rocky Mountain Region Greater Sage Grouse Conservation Strategy.  Exhibit 1, Rocky Mountain Region ROD ("2015 ROD") at 9-1.[1]  This ROD approved, among other things, RMP

---

[1] The exhibits attached to this memorandum include only the cover page, table of contents, and specific pages or sections referenced from the voluminous documents from which they are excerpted.  All of the materials relied on are available electronically via the included hyperlinks.  The 2015 ROD is the document titled

revisions for two field offices in the Powder River Basin: the Miles City sub-region in Montana and the Buffalo sub-region in Wyoming. *Id.* at 1-1, 1-2. These RMPs carried forward lands identified in previous planning processes as acceptable for further consideration for coal leasing and identified lands open to oil and gas leasing.

Though the 2015 RMP revisions were approved through a single ROD, "[e]ach sub-region prepared its own separate EIS and conducted its own planning, with input from local cooperators, stakeholders, and members of the public." *Id.* at 1-2. That is, although "the BLM used a landscape-scale approach to achieve a common set of management objectives across the range of [Greater Sage Grouse]," the 2015 RMP revisions and "their associated EISs were developed through separate planning efforts across the Rocky Mountain Region." *Id.* at 1-30–1-32.

## II.    **Prior Litigation**

Several of the Plaintiffs challenged the 2015 ROD's approval of the Miles City and Buffalo RMP revisions under NEPA and the APA, alleging that BLM failed to consider certain alternatives, mitigation measures, and impacts of development under the plans. *See W. Org. of Res. Councils v. U.S. Bureau of Land*

---

"Record of Decision for the Rocky Mountain Region" available at https://eplanning.blm.gov/eplanning-ui/project/36877/570.

*Mgmt.*, No. CV 16-21-GF-BMM, 2017 WL 374705, at *3 (D. Mont. Jan. 25, 2017)

(Morris, J.) (*WORC I*).  In that case, Federal Defendants moved to dismiss

Plaintiffs' claims challenging the 2015 Buffalo RMP for improper venue or,

alternatively, to sever and transfer those claims to the District of Wyoming.  *See id.*

at *4.  This Court denied that motion.  Though acknowledging that if it

"consider[ed] the claims as applying to the Miles City and Buffalo RMPs

separately, venue for the Buffalo claims would not be proper" in Montana, it

declined to sever the Buffalo-related claims, concluding that relevant factors

"tilt[ed] *slightly* in favor of keeping the claims together as pleaded in this Court."

*Id.* at *5, *10 (emphasis added).

The Court subsequently granted Plaintiffs' motion for summary judgment on

three of their six claims, *W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.*,

No. CV 16-21-GF-BMM, 2018 WL 1475470, at *9–18 (D. Mont. Mar. 26, 2018)

(Morris, J.) (*WORC II*), *appeal dismissed,* No. 18-35836, 2019 WL 141346

(9th Cir. Jan. 2, 2019), and ordered BLM to complete "new coal screening and

remedial NEPA analyses in compliance with" that order, *W. Org. of Res. Councils*

*v. U.S. Bureau of Land Mgmt.*, No. CV 16-21-GF-BMM, 2018 WL 9986684, at *2

(D Mont. Jul. 31, 2018) (Morris, J.) (*WORC III*).

4

III.   **2019 Buffalo and Miles City RMPAs**

Complying with the Court's order, BLM then conducted new coal-screening analyses and prepared SEISs and RMPAs for both the Miles City and Buffalo sub-regions.  These new analyses were performed separately by each field office and approved through separate RODs.

The Buffalo Field Office "administers approximately 800,000 acres of surface lands and 4.7-million acres of subsurface federal mineral estate in Campbell, Johnson, and Sheridan Counties in north-central Wyoming."  Exhibit 2, 2019 Buffalo ROD at 1-1.[2]  In preparing its 2019 RMPA, the Buffalo Field Office addressed the three areas directed by the Court's order.  *See WORC III*, 2018 WL 9986684, at *2.  It considered two different alternatives that would render different amounts of acreage available for coal leasing, and ultimately adopted an alternative that rendered less acreage available.  Exhibit 2 at 1-5–1-6.  In doing so, it removed the acceptable coal-leasing lands from Sheridan County, rendering the nearest acceptable coal-leasing lands more than 30 miles south of the Montana border.  *Id.* at 1-3, 1-5–1-6.  In its SEIS, it also "analyze[d] the environmental consequences of downstream fossil fuel combustion, including global warming potential over 20-

---

[2] The 2019 Buffalo ROD and its approved RMPA are contained in the document entitled "ROD & RMPA" available at https://eplanning.blm.gov/eplanning-ui/project/117345/570.

year and 100-year time horizons." Exhibit 3, 2019 Buffalo SEIS at ES-1.[3]  And

consistent with the approach described *supra*, it engaged with the public, state and

local stakeholders, and Native American tribes through this process.  *Id.* at ES-2;

Exhibit 2 at 1-6–1-8.  BLM's Acting Wyoming State Director signed the ROD

approving the Buffalo Field Office RMPA on November 22, 2019.  Exhibit 2 at 1-

9.

 The Miles City Field Office "administers approximately 2.75 million acres

of surface lands and 11.9 million acres of subsurface federal mineral estate in 17

eastern Montana counties."  Exhibit 4, 2019 Miles City ROD at 1-1.[4]  It, likewise,

complied with the Court's order in preparing its 2019 RMPA.  In doing so, it

considered three different options that render different amounts of acreage

available for coal leasing, including one that would "make[ ] unacceptable nearly 5

times more acres compared with" the "No Action Alternative."  *Id.* at 1-5–1-7.  Its

SEIS addressed the environmental consequences of downstream fossil fuel

combustion and the plan's global warming potential under 20- and 100-year time

---

[3] The 2019 Buffalo SEIS is the document entitled "BFO RMP Final Coal SEIS & RMPA" available at https://eplanning.blm.gov/eplanning-ui/project/117345/570.

[4] The 2019 Miles City ROD and its approved RMPA are contained in the document entitled "MCFO ROD and Approved RMP Amendment" available at https://eplanning.blm.gov/eplanning-ui/project/116998/570.

horizons.  Exhibit 5, 2019 Miles City SEIS at ES-1–ES-2, 3-1–3-2.[5]  The Miles City Field Office also engaged with the public as well as state and local shareholders and Native American tribes.  *Id.* at ES-2, ES-4; Exhibit 4 at 1-8–1-9. BLM's State Director for Montana and the Dakotas signed a separate ROD approving the Miles City RMPA on November 25, 2019.  Exhibit 4 at 1-10.

## IV.   **Plaintiffs' Complaint**

Plaintiffs now challenge these RODs for approving RMPAs and SEISs that allegedly fail to comply with NEPA and the Court's orders in the previous action. They assert only two claims:  that "the supplemental EISs for the Miles City and Buffalo RMPs violated NEPA" first by allegedly "failing to consider a reasonable range of coal alternatives" and second, by allegedly failing to "analyze or disclose" the "impacts to the public from non-greenhouse gas emissions from" combustion of fossil fuels developed pursuant to the Miles City and Buffalo RMPs.  Compl. (doc. no. 1) ¶¶ 40, 47.  In doing so, Plaintiffs again conflate their claims challenging the separate Miles City and Buffalo SEISs and RMPAs.

But each of these RMPAs was prepared in a separate jurisdiction using a somewhat different approach and approved through a separate ROD.  And each

---

[5] The 2019 Miles City SEIS is the document entitled "MCFO_FEIS_RMPA_Oct2019" available at https://eplanning.blm.gov/eplanning-ui/project/116998/570.

RMPA reaches this Court on a different posture.  Plaintiffs' claims challenging the 2019 Buffalo RMPA should therefore be dismissed or, in the alternative, severed and transferred to the United States District Court for the District of Wyoming.

## DISCUSSION

Plaintiffs' claims challenging the 2019 Miles City RMPA are properly before this Court.  As the Court has previously concluded, however, if it "considers the claims as applying to the Miles City and Buffalo [RMPAs] separately, venue for the Buffalo claims would not be proper" in Montana.  *WORC I*, 2017 WL 374705, at *5.  It should do so here in light of greater differences between the 2019 RMPAs than the Court recognized between the 2015 RMPs.

The 2019 Miles City and Buffalo RMPAs were approved through separate RODs signed by separate BLM officials in separate jurisdictions.  They have also received separate treatment after approval.  In a case brought by a different set of plaintiffs, this Court set aside the 2019 Miles City RMPA as unlawful.  *Bullock v. U.S. Bureau of Land Mgmt.*, No. 4:20-cv-62-BMM, 2020 WL 6204334, at *2 (D. Mont. Oct. 16, 2020) (Morris, J.).  But, limiting its remedies to those sought by the plaintiff in that case, the Court invalidated only those RMPs that "have had a significant effect on the state of Montana," *id.* at *3 (quotation omitted), and was neither asked nor would have had any basis to address the 2019 Buffalo RMPA.  This decision may warrant staying Plaintiffs' claims as to the 2019 Miles City

RMPA in this case, at least until the Acting Solicitor General decides whether to authorize an appeal in *Bullock*, leading to consideration of these separate challenges on separate schedules.[6]  And venue would clearly be improper in this Court for Plaintiffs' claims as to the 2019 Buffalo RMPA standing alone.

Plaintiffs' claims challenging the 2019 Buffalo RMPA should therefore be dismissed under Rule 12(b)(3) and 28 U.S.C. § 1406 for improper venue.  In the alternative, if the Court finds venue proper, the interests of justice in this case warrant severing those claims under Rule 21 and transferring them to the United States District Court for the District of Wyoming under 28 U.S.C. § 1404.

## I.   Plaintiffs' Claims Challenging the 2019 Buffalo RMPA Should Be Dismissed for Improper Venue

Though venue is proper in this District for Plaintiffs' claims challenging the 2019 Miles City RMPA, it is improper for Plaintiffs' claims challenging the 2019 Buffalo RMPA.  Those claims should be dismissed under 28 U.S.C. § 1406, which requires that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.*  Plaintiffs cannot carry their burden of demonstrating proper venue for the

---

[6] The deadline for a notice of appeal from the final judgment in *Bullock* is December 28, 2020.  *See* Fed. R. App. P. 4(a)(1)(B).

Buffalo RMPA claims, which they must establish "as to each claim." *WORC I*, 2017 WL 374705, at *4 (citing *Martensen v. Koch*, 942 F. Supp. 2d 983, 996 (N.D. Cal. 2013), *on reconsideration in part,* No. C-12-05257, 2013 WL 4734000 (N.D. Cal. Sept. 3, 2013)).

In a motion "made pursuant to Fed. R. Civ. P. 12(b)(3)" for dismissal for improper venue, "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (internal citations omitted). If genuine contested factual issues are presented, the court draws all reasonable inferences in favor of the non-moving party. *Murphy*, 362 F.3d at 1138–40. Where venue is improper, the Court has the discretion to dismiss the case under Rule 12(b)(3) and 28 U.S.C. § 1406(a) or to transfer the case in the interests of justice to an appropriate jurisdiction under § 1406(a). *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992) (per curiam).

A.   Venue Is Improper in Montana

Plaintiffs' venue allegations do not support the exercise of venue in Montana over the 2019 Buffalo RMPA claims. In actions against federal agencies or officials, venue is proper

> in any judicial district in which (A) a defendant in the action resides,
> (B) a substantial part of the events or omissions giving rise to the
> claim occurred, or a substantial part of property that is the subject of

the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).  Plaintiffs ground venue here in the second of these bases.

Compl. ¶ 13.  Under that provision, venue is proper in Montana for Plaintiffs'

claims challenging the 2019 Miles City RMPA because "a substantial part of the

events . . . giving rise to the claim occurred" and "a substantial part of property that

is the subject of the action is situated" in Montana.  § 1391(e)(1)(B).

But neither holds true with respect to the 2019 Buffalo RMPA.  Plaintiffs

cannot argue that "a substantial part of the events giving rise to" their claims

challenging it occurred in Montana.  "In cases brought under the APA, courts

generally focus on where the decisionmaking process occurred to determine where

the claims arose."  *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 179

(D.D.C. 2009).  Here, the decisions underlying the Buffalo RMPA and SEIS were

made in Wyoming and Washington D.C., not in Montana.  As this Court has

previously concluded, "if the Court considers the claims as applying to the Miles

City and Buffalo RMPs separately," as it should here, "venue for the Buffalo

claims would not be proper" in Montana because "a substantial part of the events

giving rise to the claim" would not have occurred there.  *WORC I*, 2017 WL

374705, at *5.

Appearing to acknowledge this, Plaintiffs' sole allegation supporting venue

over "claims related to BLM's Buffalo Field Office in Wyoming" is that "the

11

Montana and Wyoming portions of the Powder River Basin are inextricably intertwined . . . ."  Compl. ¶ 13.  While true that both RMPAs concern management of land in the Powder River Basin, none of the land governed by the 2019 Buffalo RMPA is located in Montana.  Nor is the land deemed acceptable for coal leasing by the Buffalo Field Office through the 2019 Buffalo RMPA contiguous with that deemed acceptable by the Miles City Field Office, or with Montana itself.  *See* Exhibit 2 at 1-2–1-3, 2-1, 2-3; Exhibit 4 at 1-4, 2-1–2-4.  Plaintiffs thus have not established that any "part of [the] property that is the subject" of their claims challenging the 2019 Buffalo RMPA is situated in Montana, let alone a "substantial" part.  28 U.S.C. § 1391(e)(1)(B).

Plaintiffs do not invoke the other subsections of § 1391(e)(1), and rightly so: neither supports venue in Montana for claims related to the 2019 Buffalo RMPA.  Plaintiffs do not allege that BLM or the officials who prepared the 2019 Buffalo RMPA or approved the 2019 Buffalo ROD reside in Montana for purposes of § 1391(e)(1)(A).  *See*, *e.g.*, *Reuben H. Donnelley Corp. v. FTC*, 580 F.2d 264, 266 n.3 (7th Cir. 1978) (a federal official's residence for venue purposes is the location where he or she performs official duties); *Montana Wildlife Fed'n v. Zinke*, No. CV-18-69-GF-BMM, 2018 WL 5810502, at *5 (D. Mont. Nov. 6, 2018) (Morris, J.) ("[F]or purposes of § 1391(e) . . . federal agency defendants reside in the District of Columbia where agency headquarters are located and where they

12

make agency decisions.").  And § 1391(e)(1)(C) supports venue only where "the plaintiff resides if no real property is involved in the action."  But courts routinely consider actions challenging BLM's "adoption of a land use plan for a large area of property" to "involve[ ] real property."  *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, No. 08-cv-05646, 2009 WL 1025606, at *3 (N.D. Cal. Apr. 14, 2009) (action that "directly concerns the management of lands" and BLM's "adoption of a land use plan for a large area of property . . . involves real property").  *See also S. Utah Wilderness All. v. Lewis*, 845 F. Supp. 2d 231, 232–34 (D.D.C. 2012) (*SUWA II*) (finding venue proper in Utah for action challenging BLM RMPs governing management of "several million acres of public lands located in Utah" because such an action "concerns real property situated in Utah.").  *But see W. Watersheds Project v. Salazar*, No. CIV 08-0516-E-BLW, 2009 WL 1299626, at *2 (D. Idaho May 7, 2009) ("[E]nvironmental actions . . . are not actions in which 'real property is involved.'" (citation omitted)).

Plaintiffs also allege, but cannot establish, proper venue under 28 U.S.C. § 1391(b)(2).  *See* Compl. ¶ 13.  Under that section, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).  It inapposite here, because the more specific provisions of 28 U.S.C. § 1391(e) govern any "civil action in which a defendant is

. . . an agency of the United States," such as BLM.  *Id.* § 1391(e)(1).  Even if it applied, it would not support venue in Montana for the claims challenging the 2019 Buffalo RMPA because, as discussed above, no part of the events giving rise to those claims occurred in Montana and the property subject to those claims is situated in Wyoming.

B.    The Court Should Not Exercise Pendent Venue

Nor should the Court retain Plaintiffs' claims challenging the 2019 Buffalo RMPA under the doctrine of pendent venue.  That doctrine "holds that if venue is proper on one claim, the court may find pendent venue for claims that are closely related."  *Martensen*, 942 F. Supp. 2d at 998.  Though the Ninth Circuit Court of Appeals has not addressed it directly, courts in this Circuit invoke "the same factors the Ninth Circuit has directed courts to consider when evaluating whether to apply the doctrine of pendent personal jurisdiction."  *Id.* (citing *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004)). These include whether the claims "arise[ ] out of a common nucleus of operative facts" as well as considerations of "judicial economy, avoidance of piecemeal litigation, . . . overall convenience of the parties" and fairness to litigants.  *Action Embroidery*, 368 F.3d at 1181.

Plaintiffs' claims challenging the 2019 Miles City RMPA do not share a common nucleus of operative fact with those challenging the 2019 Buffalo

14

RMPAs.  As explained *supra*, the RMPAs govern management of different pieces of land in separate states.  They were prepared through different processes by separate field offices, after consultation with different governments, stakeholders, and members of the public.  The administrative records for both RMP revisions are distinct and will be compiled separately by personnel from the Miles City and Buffalo offices, respectively.  Resolution of Plaintiffs' claims will require a separate review and analysis of those records to determine whether the different SEISs supporting each RMPA satisfied NEPA and the Court's previous orders. And unlike the 2015 RMP revisions, each RMPA was approved through a separate ROD—that is, a separate agency action.

The remaining considerations also weigh against exercising pendent venue. This Court has set aside the 2019 Miles City RMPA in a separate case, *see Bullock*, 2020 WL 6204334, at *2, calling into question whether Plaintiffs' claims against the Miles City RMPA remain viable and a proper hook for pendent venue over the Buffalo RMPA claims, *see* 28 U.S.C. § 1391(e)(1)(B).  And if Plaintiffs' claims challenging the Miles City RMPA do proceed, they may do so on a different posture and, in the event of an appeal in *Bullock*, potentially a different timeframe than Plaintiffs' challenges to the 2019 Buffalo RMPA.  At that point, neither judicial economy nor convenience is served by exercising pendent venue over the latter claims.  Separate litigation in Wyoming would be just as convenient.

15

BLM therefore requests that the Court dismiss the claims involving the Buffalo RMPA for improper venue pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a).  Of course, if "the court finds venue is improper, it has discretion to dismiss or to transfer venue to a proper court."  *Martensen*, 942 F. Supp. 2d at 996. So, in the alternative, BLM requests that those claims be severed and transferred to the United States District Court for the District of Wyoming, largely for the reasons discussed below.  *See* 28 U.S.C. § 1406(a) (permitting transfer in the "interest of justice").

## II.  **Plaintiffs' Claims Challenging the 2019 Buffalo RMPA Should Be Severed and Transferred to Wyoming**

Even if the Court determines that venue for the claims challenging the Buffalo RMPA is proper in Montana, it should sever and transfer those claims to the District of Wyoming pursuant to Rule 21 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404(a).  Principles of fundamental fairness support severing the claims because they concern different agency actions approving different RMPAs prepared by different field offices that undertook different analyses concerning land in different states.  And the interests of justice support transfer because the principle that localized controversies should be decided at home outweighs any deference owed the Plaintiffs' choice of forum in light of the separate approving RODs.

16

A.    <u>Principles of Fundamental Fairness Support Severance</u>

"When transferring a portion of a pending action to another jurisdiction, district courts first must sever the action under Rule 21," *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991), which provides that a court may "sever any claim against a party," Fed. R. Civ. P. 21.  Severance is proper where joinder of the claims does not "comport with the principles of fundamental fairness or would result in prejudice to either side."  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (internal quotation marks and citation omitted) (addressing Rule 20); *see also Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010) (per curiam) ("courts have looked to Rule 20 for guidance" on severance under Rule 21).  "Courts possess broad discretion in this decision."  *WORC I*, 2017 WL 374705, at *5 (citing Rule 21).

Though pleaded without differentiation, Plaintiffs' claims are not, as they will likely argue, inextricably bound together.  As explained above, though both RMPAs impact the Powder River Basin, each RMPA governs a separate geographic area.  Each was developed through a separate process undertaken by a separate Field Office.  In preparing the RMPAs and underlying SEISs, each Field Office engaged with state, local, and public interests in its respective area.  And, importantly, each RMPA was approved through a separate ROD, such that

17

Plaintiffs' challenges to each RMPA constitutes a challenge to a separate agency action. *See Oregon Nat. Desert Ass'n v. Bureau of Land Mgmt*, 625 F.3d 1092, 1118 (9th Cir. 2010) ("Once an EIS's analysis has been solidified in a ROD, an agency has taken final agency action, reviewable under § 706(2)(A)."). And, as discussed *supra*, this Court's order setting aside the 2019 Miles City RMPA places Plaintiffs' claims as to each RMPA in a separate procedural posture.

This renders Plaintiffs' claims in this action analogous to those severed by other courts. In *WildEarth Guardians v. Jewell*, for example, the plaintiff challenged the Secretary of the Interior's approval of four mining plans in Colorado, New Mexico, and Wyoming under NEPA. It drafted its complaint to "present six claims, each pled as applicable to all four mines, rather than more candidly presenting twenty-four separate claims . . . ." No. 1:15-CV-2026-WJM, 2016 WL 8577508, at *5 (D. Colo. June 17, 2016) (internal citation omitted). Citing differences in the mines' size, geography, and production of coal; the separate NEPA review processes underlying the approvals; and the differing litigation history among the four mines, the court concluded that the plaintiff's claims did not arise from the "'same transaction' or present a 'common question of law or fact'" and severed the claims. *Id.* at *5–6. Here, the NEPA review processes underlying the RMPAs were likewise different; they were approved through separate agency actions; and the RMPAs have already been subject to

18

separate litigation placing Plaintiffs' claims concerning the 2019 Miles City RMPA in a different posture.

Similarly, in an unpublished decision, the court in *Western Organization of Resource Councils v. Clark*, No. 1:03-CV-70-BLG-RWA (D. Mont. Jan. 13, 2004),[7] severed and transferred claims to Wyoming under circumstances nearly identical to the present case. As here, Plaintiffs challenged two separate EISs relating to land in the Powder River Basin—one addressing land in Montana and another, separate EIS addressing land in Wyoming. Exhibit 6, Order at 2. As here, those EISs were adopted through two separate RODs. *Id.* Without addressing the propriety of venue, the court severed the claims, holding "that the interest of justice dictates that those portions of the complaint directly challenging the adequacy and sufficiency of the Wyoming environmental studies and ROD should be heard in Wyoming." *Id.* at 3. As explained next, those same interests warrant transfer as well as severance here.

─────────────────────

[7] This order, unavailable on Westlaw or LexisNexis, is attached hereto as Exhibit 6.

B.     The Interest of Justice Supports Transfer

Having severed Plaintiffs' claims challenging each RMPA, the Court should transfer those challenging the 2019 Buffalo RMPA to Wyoming.  "[W]here certain claims in an action are properly severed under Fed. R. Civ. P. 21, two separate actions result; a district court may transfer one action while retaining jurisdiction over the other."  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991) (citations omitted).  The Court may do so here under 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  *Id.*  A district court's broad discretion in determining whether to transfer a case from one forum to another should be exercised "according to an individualized, case-by-case consideration of convenience and fairness."  *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks and citation omitted).  BLM, as the moving party, bears the burden of showing transfer is appropriate.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).

There is no dispute that venue for the 2019 Buffalo RMPA claims is proper in Wyoming.  So transfer turns on whether the convenience of the parties and witnesses and the interest of justice weigh in favor of transfer.  *See* 28 U.S.C.

20

§ 1404(a).  In gauging those interests, courts typically consider a variety of private and public interest factors depending on the circumstances of a particular case.  *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Private factors include access to sources of proof, ability to compel witness attendance, cost of attendance by witnesses, and "all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  Public factors include docket congestion, "the local interest in having localized controversies decided at home," familiarity with governing law, and the burden of jury duty for citizens in an unrelated forum.  *Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  The factors related to the interest of justice generally predominate over the convenience of the parties.  *Anderson v. Thompson*, 634 F. Supp. 1201, 1204 (D. Mont. 1986).

The claims in this case will likely be decided on the administrative record through cross-motions for summary judgment with no need for witness testimony.  *See, e.g.*, *SUWA II*, 845 F. Supp. 2d at 236–37 (APA challenges to RMPs decided on administrative record).  Plaintiffs' claims are based on federal law and Plaintiffs have alleged contacts with both Wyoming and Montana.  *See* Compl. ¶¶ 15–23.  Most of the private and public interest factors courts typically consider, including

the convenience of the parties and of witnesses, are therefore irrelevant.[8]  *See Nez Perce Tribe v. Nat'l Oceanic & Atmospheric Admin. Fisheries*, No. CV 04-60-RE, 2004 WL 1179333, at \*2 (D. Or. May 27, 2004).

In such cases, motions to transfer are "determined by weighing a plaintiff's choice of forum against the competing interest in 'having localized controversies decided at home.'"  *Ctr. for Biological Diversity & Pac. Env't v. Kempthorne*, No. C 07-0894 EDL, 2007 WL 2023515, at \*5 (N.D. Cal. July 12, 2007) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)); *see also Nez Perce*, 2004 WL 1179333, at \*2.  This Court has found this "balancing test" also "helpful for the question of whether to keep plaintiff's claims together as pleaded or to separate them by location for determining venue."  *WORC I*, 2017 WL 374705, at \*7.  In that case, the Court found that "balancing of the factors tilt[ed] slightly in favor of keeping the claims together as pleaded."  *Id.* at \*10.  Here, they tilt toward severance and transfer.

---

[8] To the extent the Court considers the convenience of witnesses, however, this factor weighs in favor of transfer because those involved in the decision-making process for the Buffalo RMPA reside outside of Montana.  *See, e.g.*, *Western Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 100–01 (D.D.C. 2013).

1.   Plaintiffs' Choice of Forum Does Not Warrant Deference

Courts typically defer to a plaintiff's choice of forum. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Anderson*, 634 F. Supp. at 1204–05. But that deference is diminished where, as here, "the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). In this case, the operative facts concerning the 2019 Buffalo RMPA have no connection to Montana. The Amendment was largely developed by officials in Wyoming, with input from state agencies, local governments and the public in Wyoming, and concerns land and resources located entirely in Wyoming.

In the prior action, the Court acknowledged that approval of both RMPs through a single ROD presented potential plaintiffs "with concerns regarding more than a single RMP revision or amendment" with a "quandary," such that they "would be limited to a single action filed in the District of Columbia—the place where the BLM issued the ROD—or multiple actions filed in multiple venues where each of the challenged RMPs" approved by the same ROD "might be located." *WORC I*, 2017 WL 374705, at *8. Plaintiffs were not presented with that quandary here because the 2019 Buffalo RMPA was approved through a ROD signed by federal officials in Wyoming entirely separate from the ROD, signed by

23

officials in Montana, approving the 2019 Miles City RMPA.  This presented

Plaintiffs with a clear path to challenge the Wyoming-related claims in Wyoming

and the Montana-related claims in Montana.

Nor does a risk of inconsistent judgments warrant deference to the Plaintiffs'

choice here.  In deferring to Plaintiffs' choice of forum in the action challenging

the 2015 RMPs, the Court acknowledged that "severing the case would risk

dueling, inconsistent opinions in two separate Circuits" concerning the same ROD.

*WORC I*, 2017 WL 374705, at *9 (internal quotation marks and citation omitted)

(addressing disparate outcomes in *Northern Cheyenne Tribe v. Norton*, 503 F.3d

836 (9th Cir. 2007) and *BioDiversity Conservation Alliance v. Bureau of Land

Management*, 608 F.3d 709 (10th Cir. 2010)).  While the possibility exists here that

Federal courts in Montana and Wyoming may draw different conclusion about

separate RMPAs approved through separate RODs, there is no possibility—as in

the prior action—of inconsistent conclusions about the same ROD.  This Court has

already issued one decision setting aside the Miles City RMPA, which affected

land in Montana, but has no basis to do so with respect to an RMPA impacting

land in Wyoming.  *Bullock*, 2020 WL 6204334, at *2.  That the RMPAs, approved

through separate RODs, govern different pieces of land in different states further

lessens the potential impact of any inconsistency going forward and diminishes the

deference due to Plaintiffs' choice of forum.

24

### 2.   Localized Controversies Should Be Decided at Home

Even were any deference to Plaintiffs' choice of forum warranted, it would

be outweighed, as courts have routinely held, by the competing "interests of justice

[that] are promoted when a localized controversy is resolved in the region it

impacts." *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 102 (D.D.C. 2013);

*see also Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1119–20 (N.D. Cal.

2014) (collecting cases); *WildEarth Guardians v. U.S. Fish & Wildlife Serv.,* No.

12-cv-3085-AP, 2013 WL 136204, at *2–3 (D. Colo. Jan. 9, 2013); *SUWA II*, 845

F. Supp. 2d at 234–35, 237–38; *Pac. Coast Fed. v. Gutierrez*, No. C-05-3232, 2006

WL 194507, at *3 (N.D. Cal. Jan. 24, 2006); *Trout Unlimited v. Lohn*, No. 06-CV-

904RSL, 2006 WL 2927737, at *3 (W.D. Wash. Oct. 10, 2006); *S. Utah*

*Wilderness All. v. Norton* (*SUWA I*), 315 F. Supp. 2d 82, 88 (D.D.C. 2004); *Trout*

*Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 19 (D.D.C. 1996), *transferred,*

320 F. Supp. 2d 1090 (D. Colo. 2004).

For example, in *SUWA II*, a group of environmental organizations sued in

the District of Columbia challenging three RMPs covering millions of acres of

federally managed lands in Utah that were created and developed by BLM

personnel in Utah with limited oversight by agency management in Washington,

D.C.  845 F. Supp. 2d at 232–33.  Finding any involvement by agency personnel in

D.C. insubstantial, the Court transferred the case to Utah largely because the

"controversy will affect the use of discrete parcels of land" located in Utah.  *Id.* at

234–35, 237–38.  Here, the Buffalo Field Office developed the 2019 Buffalo

RMPA, which was approved by a ROD signed by BLM's Acting Wyoming State

Director, and which affects land exclusively located in Wyoming.  Unlike in

*SUWA II*, and weighing even more strongly in favor of transfer, no BLM official

located in Montana was involved in developing and approving the Buffalo RMP

revision.

Similarly, the court in *Clark* relied heavily "on the proposition that localized

controversies should be decided at home."  Exhibit 6 at 4 (citing *Ferens v. John

Deere Co.*, 494 U.S. 516, 530 (1990)).  As it observed, "Wyoming's interest in the

development of [coalbed methane] in Wyoming greatly outweighs plaintiffs' desire

to keep this entire case in Montana, especially where, as here, the substantial part

of the decision-making underlying the Wyoming ROD occurred in either

Wyoming or Washington, D.C., not in Montana . . . ."  *Id.*  The same holds true

here, where "the substantial part of the decision-making underlying" the 2019

Buffalo RMPA largely occurred in Wyoming, after consultation with state and

local interests in Wyoming, and it was approved in Wyoming.  Montana has no

such interest.  And Wyoming's interest should unquestionably tip the scale if the

Court's decision setting aside the 2019 Miles City RMPA were to remain in place

and leave only claims challenging the 2019 Buffalo RMPA at issue.

26

As this Court has acknowledged, there is "great benefit in local controversies being decided at home, and this factor might be dispositive in many scenarios." *WORC I*, 2017 WL 374705 at *10.  This is such a scenario, especially where other factors that led the Court to consider Plaintiffs' claims challenging the 2015 RMPs together bear much less weight as they do here.

## CONCLUSION

For the above stated reasons, the United States respectfully requests that Plaintiffs' claims challenging the 2019 Buffalo RMPA be dismissed for lack of venue or, alternatively, severed and transferred to the United States District Court for the District of Wyoming.

Respectfully submitted this 23rd day of November, 2020.

> MARK STEGER SMITH
> Assistant U.S. Attorney
> U.S. Attorney's Office
> 2601 Second Avenue North, Suite 3200
> Billings, MT 59101
> Phone: (406) 247-4667
> Fax: (406) 657-6058
> mark.smith3@usdoj.gov
>
> PAUL E. SALAMANCA,
> Deputy Assistant Attorney General
> Environment & Natural Resources Division
>
> */s/ Arwyn Carroll*
> ARWYN CARROLL (MA Bar 675926)
> Trial Attorney, Natural Resources Section
> United States Department of Justice
> Environment and Natural Resources Div.

27

P.O. Box 7611
Washington, D.C. 20044-7611
Phone:  202-305-0465
Fax:  202-305-0506
arwyn.carroll@usdoj.gov

LUTHER L. HAJEK (CO Bar 44303)
Trial Attorney, Natural Resources Section
United States Department of Justice
Environment and Natural Resources Div.
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Phone: (303) 844-1376
Fax: (303) 844-1350
luke.hajek@usdoj.gov

*Counsel for Federal Defendant*

28

## **CERTIFICATE OF SERVICE**

I certify that on November 23, 2020, a copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

/s/ *Arwyn Carroll*
ARWYN CARROLL
U.S. Department of Justice

## CERTIFICATE OF WORD COUNT

I certify that this brief complies with LR 7.1(d).  It contains 6,164 words, as counted using the word count feature of Microsoft Word, excluding the caption, table of contents, table of authorities, exhibit index, certificate of service, and certificate of word count.

/s/ *Arwyn Carroll*
ARWYN CARROLL
U.S. Department of Justice