# EXHIBIT 2



U.S. DEPARTMENT OF THE INTERIOR
**BUREAU OF LAND MANAGEMENT**

Case 4:20-cv-00076-BMM    Document 19-2    Filed 11/23/20   Page 2 of 13

November 2019

# Buffalo Field Office

Record of Decision and Approved Resource Management Plan Amendment





Estimated agency total costs associated with developing and producing this EIS: $511,000

# TABLE OF CONTENTS

Part                                                                                              Page

**PART 1 – RECORD OF DECISION** ................................................................................................. 1-1
    1.1    Introduction .................................................................................................................. 1-1
        1.1.1    Overview ....................................................................................................... 1-1
        1.1.2    Description of the Planning Area ................................................................ 1-1
        1.1.3    The Decision ................................................................................................. 1-1
        1.1.4    Mitigation Measures .................................................................................... 1-2
        1.1.5    Plan Monitoring ............................................................................................ 1-2
    1.2    Alternatives .................................................................................................................. 1-2
        1.2.1    Alternatives Considered but Eliminated from Further Study .................. 1-2
        1.2.2    Alternatives Analyzed in Detail .................................................................. 1-5
    1.3    Public Involvement ..................................................................................................... 1-6
        1.3.1    Public Scoping .............................................................................................. 1-6
        1.3.2    Public Review of and Comment on the Draft RMP Amendment/
                    Supplemental EIS ........................................................................................ 1-6
        1.3.3    Governor's Consistency Review ................................................................ 1-6
        1.3.4    Protest Resolution ....................................................................................... 1-6
        1.3.5    Consultation and Coordination .................................................................. 1-7
    1.4    Availability and Approval of the Plan ........................................................................ 1-8

**PART 2 – APPROVED RESOURCE MANAGEMENT PLAN AMENDMENT** ......................................... 2-1

# TABLES

                                                                                                                                                                   Page

1-1    Tribes Contacted for Government-to-Government Consultation ........................................ 1-7
1-2    Cooperating Agency Participation ............................................................................................ 1-8
2-1    Coal Acceptability Results for RMP Amendment ................................................................... 2-1

# FIGURES

                                                                                                                                                                   Page

1-1    Decision Area ............................................................................................................................. 1-3
2-1    RMP Amendment ....................................................................................................................... 2-3

# APPENDICES

A    Coal Screening Process
B    Coal Reasonably Foreseeable Development Scenario

# Part 1 – Record of Decision

## 1.1 INTRODUCTION

### 1.1.1 Overview

This Buffalo Field Office Resource Management Plan (RMP) Amendment is in response to the federal district court's order in Western Organization of Resource Councils, et al. v. Bureau of Land Management, Civil Action No. CV 16-21-GF-BMM (D. Mont. 2017). The background and rationale for approving the attached RMP Amendment are described in this ROD. This RMP Amendment addresses BLM-administered coal leasing allocation, downstream analysis of coal, oil, and gas combustion, and justifies time horizon of the estimated global warming potential impacts for the Buffalo Field Office in order to satisfy the claims in the court order.

### 1.1.2 Description of the Planning Area

The Buffalo Field Office administers approximately 800,000 acres of surface lands and 4.7-million acres of subsurface federal mineral estate in Campbell, Johnson, and Sheridan Counties in north-central Wyoming. The decision area is BLM-administered federal coal in the Buffalo Field Office. This includes approximately 4.7 million acres of subsurface federal mineral coal estate for which the BLM has the authority to determine its availability. A map of the planning area and land ownership in the Buffalo Field Office is in **Figure 1-1**.

### 1.1.3 The Decision

The decision is hereby made to approve the attached RMP Amendment which makes 496,314 acres of federal coal acceptable for future leasing. The BLM has determined that this RMP Amendment is the most consistent with the purposes, policies, and programs associated with implementing its legal mandates. In addition, this RMP Amendment meets the Purpose and Need by:

- Considering an alternative that would reduce the amount of recoverable coal and considers climate change impacts in making a reasoned decision on the amount of recoverable coal made available.
- Supplements the analysis of the environmental consequences of downstream combustion emissions of coal, oil, and gas open to development.
- Justifies the time horizon of the estimated global warming potential impacts—for example, 20-year or 100-year—and acknowledge the evolving science in this area.

In addressing these issues, the RMP Amendment complies with the court order in *Western Organization of Resource Councils, et al. v. BLM* (CV 16-21-GF-BMM).

The RMP Amendment allows for the conservation of resources while still providing for the expansion of existing mines and associated mining infrastructure, and provides an opportunity for future new uses of coal, such as carbon fiber development. The RMP Amendment ensures flexibility for mining in the most efficient manner such as providing options for locating infrastructure in a manner that promotes the sensible use of the resource.

This RMP Amendment was prepared in accordance with National Environmental Policy Act (NEPA) of 1969; the Council on Environmental Quality regulations implementing NEPA (40 Code of Federal Regulations [CFR] 1500–1508); Department of Interior regulations implementing NEPA (43 CFR 46); and the requirements of the BLM's NEPA Handbook, H-1790-1. Decisions identified in this RMP Amendment are final and become effective when this ROD is signed. This decision will amend the 2015 Buffalo Field Office Approved RMP and guide coal leasing allocation decisions for the mineral estate administered by the Buffalo Field Office.

### 1.1.4   Mitigation Measures

This RMP Amendment does not include any new mitigation measures beyond Appendix J of the 2015 Buffalo Field Office Approved RMP.

### 1.1.5   Plan Monitoring

The RMP Amendment does not include any new monitoring requirements beyond Appendix X of the 2015 Buffalo Field Office Approved RMP.

## 1.2   ALTERNATIVES

### 1.2.1   Alternatives Considered but Eliminated from Further Study

In addition to the alternatives considered in detailed analysis, two alternatives were considered but eliminated from further study.

*No Leasing Alternative*

During scoping, several commenters suggested analyzing a no leasing of future coal alternative. The BLM considered the suggestion of closing the decision area to any future leasing of federal coal resources, even in areas where there are no identified resource conflicts; however, the BLM did not bring it forward for further analysis.

According to the BLM Land Use Planning Handbook H-1601-1, Appendix C, the primary land use plan level decision to be made regarding coal is identifying areas that are acceptable for further consideration for coal leasing and those that are not. The process undertaken in order to make these land use plan allocations is directed by 43 CFR 1610.7-1. In order to make the land use plan-level allocations regarding coal, the BLM is required to go through the coal screening process outlined in 43 CFR 3420 et. seq., versus applying a blanket no leasing alternative. During this coal screening process, the BLM analyzed all relevant resources when considering what areas to make acceptable for further consideration for coal leasing.

Making the entire decision area unacceptable for further consideration for coal leasing would not meet the BLM's multiple use mandate under the Federal Land Policy and Management Act, the leasing requirements under the Mineral Leasing Act of 1920, as amended, and 43 CFR 3400.2. Coal development is an authorized use of public lands and meets the BLM's multiple use objectives.

*Reduced Emissions Alternative*

The BLM considered reducing air emissions, as a nexus for climate change, under the multiple-use coal screen. Previous coal development in the Buffalo Field Office and emission inventories for the 2015 Proposed Resource Management Plan/Final EIS complied with the State of Wyoming and National Ambient

**Figure 1-1**

**Decision Area**

**Surface Administration in the Alternative A CDPA**

| Campbell County | Acres |
|---|---|
| Bureau of Land Management (BLM) | 24,693 |
| Local Government | 5,366 |
| National Grasslands | 66,855 |
| Private | 658,497 |
| State | 50,181 |
| **Sheridan County** | **Acres** |
| Bureau of Land Management (BLM) | 3,953 |
| Department of Defense | 2,837 |
| Local Government | 745 |
| Private | 138,066 |
| State | 17,909 |

**Surface Administration in the Alternative B CDPA**

| Campbell County | Acres |
|---|---|
| Bureau of Land Management (BLM) | 4,963 |
| Local Government | 5,367 |
| National Grasslands | 51,712 |
| Private | 498,523 |
| State | 35,731 |

Source: BLM GIS 2019



Air Quality Standards. Past production and the 2015 Proposed RMP/Final EIS modeling were considerably higher than the 2018 production levels and the US Energy Information Administration forecast analyzed in the Final Supplemental EIS/RMP Amendment (see Section 3.5.1, Air Resources, including Greenhouse Gases and Climate Change).

Since the 2015 Proposed RMP/Final EIS emissions met the State and Federal air quality standards, and the reasonably foreseeable development scenario for this Final Supplemental EIS/RMP Amendment was lower than the 2015 data, the BLM considered an alternative that would reduce air emissions by limiting leasing to only areas immediately adjacent to the existing coal mines. This was done to consider the consolidation of the infrastructure used in the mining and transportation of the coal.  However, the Buffalo Field Office determined that the supporting infrastructure is already consolidated and highly interconnected in the eastern half of Campbell County. In addition, it is highly unlikely, in eastern Campbell County, that a new coal mine would start and new infrastructure would be constructed within the next 20 years.

Because of these factors, this alternative was dismissed. The mines and the associated infrastructure in the Buffalo Field Office are highly consolidated, well developed, and interconnected so that some areas not immediately adjacent to, but between the mines, might be needed for future leasing. This was also not considered a feasible alternative because it could not be implemented without disrupting existing mining operations.

### 1.2.2   Alternatives Analyzed in Detail

The Final Supplemental EIS/Proposed RMP Amendment alternatives focused solely on the allocation of lands open to coal leasing in response to the federal district court's order in *Western Organization of Resource Councils v. Bureau of Land Management, Civil Action No. 4:2016cv00021* (D. Mont. 2017). The range of alternatives meets the purpose and need for the Final Supplemental EIS/RMP Amendment and responds to issues raised during scoping. In addition, the BLM refined alternatives by updating the coal screening (**Appendix A**) and revising the reasonably foreseeable development scenario (**Appendix B**).

*Alternative A*

For Alternative A, the BLM brought forward all management decisions that prevented coal development in the 2015 Approved RMP/Final EIS. In addition, the BLM used information from the 2001 coal screening process (2001 RMP Update, Appendix D; BLM 2001) and updated resource data where applicable, and determined a baseline for coal acceptability for further consideration for leasing.  Under Alternative A, 686,896 acres would be acceptable for coal leasing.

*Alternative B*

Starting with the Alternative A Coal Development Potential Area (CDPA), the BLM updated the CDPA by applying lower strip ratios and retaining higher quality coal (see **Appendix A**).  The biggest change from the Alternative A CDPA is the exclusion of Sheridan County, based on changes in economic forecast since 2001.  Using updated data, the BLM also evaluated lands for the unsuitability criteria, the multiple land use decisions, and consultation with qualified surface owner screens (See **Appendix A**). Under Alternative B, 455,467 acres would be acceptable for coal leasing.

*Approved Plan Amendment*

The BLM Field Manager recommended a modified Alternative B as the Approved Plan Amendment for allocating BLM administered coal within the Buffalo Field Office. The Approved Plan Amendment

addresses the planning issues, within the parameters of the planning criteria. It also achieves the purpose and need for amending the 2015 RMP, complies with the court order ruling, and the acreage addition to Alterative B best represents what was supported by the Wyoming Governor's Office and Campbell County.

The Approved Plan Amendment allows for the conservation of resources while still providing for the expansion of existing mines and associated infrastructure and provides an opportunity for future new uses of coal, such as carbon fiber development. BLM added 39,784 acres to Alternative B to ensure flexibility for mining in the most efficient manner such as providing options for locating infrastructure in a manner that promotes the sensible use of the resource (see **Figure 2-1**). The additional acreage was analyzed within the Alternative A CDPA. While geologic conditions indicate that this area is unlikely to be mined using current technology, the Governor's Office requested that this area be included for the reasons previously described.

## 1.3 PUBLIC INVOLVEMENT

### 1.3.1 Public Scoping

The formal public scoping process for the Buffalo Field Office Supplemental EIS/ Proposed RMP Amendment began with the publication of the Notice of Intent (NOI) in the *Federal Register* on November 28, 2018 (FR Doc. 2018–25847); the BLM also posted the NOI on the ePlanning website. Additional information on public scoping can be found in the Buffalo Field Office Supplemental EIS/RMP Amendment Report, posted on the Buffalo Field Office Supplemental EIS/RMP Amendment ePlanning website https://go.usa.gov/xP6S3.

### 1.3.2 Public Review of and Comment on the Draft RMP Amendment/Supplemental EIS

On May 17, 2019, the Environmental Protection Agency published a notice of availability (NOA) in the *Federal Register* for the Buffalo Field Office Draft Supplemental EIS/Proposed RMP Amendment. This initiated the 90-day public comment period on the Draft Supplemental EIS/ Proposed RMP Amendment.

The BLM's responses to the summarized substantive comments are in Appendix I of the Proposed RMP Amendment/Final Supplemental EIS. In addition to the substantive comments that the BLM responded to in Appendix I, BLM posted all comment letters on the Buffalo Field Office Supplemental EIS/RMP Amendment ePlanning website: https://go.usa.gov/xP6S3.

### 1.3.3 Governor's Consistency Review

The Governor was afforded a 60-day consistency review period in accordance with 43 CFR 1610.3-2(e) that began on September 3, 2019. No inconsistencies were identified by the Governor.

### 1.3.4 Protest Resolution

The NOA for the Final Supplemental EIS/Proposed RMP Amendment initiated the 30-day protest period. The protest period ended on November 4, 2019.

Pursuant to the BLM's planning regulations at 43 CFR 1610.5-2, any person who participated in the BFO RMP Amendment planning process and had an interest that may be adversely affected by the BLM's planning decisions was allowed to protest proposed planning decisions within 30 days of when the NOA of the Final Supplemental EIS/Proposed RMP Amendment was published in the *Federal Register*. Note that

the BFO Proposed RMP Amendment did not contain any implementation decisions that were subject to the appeal process by procedures set out by other BLM regulations.

The BLM received four protest letters during the 30-day protest period provided for the BFO Final Supplemental EIS/Proposed RMPA. In accordance with 43 CFR 1610.5-2, Two of these letters were dismissed because the letter did not contain valid protests. The remaining two protest letters were valid and contained protest issues that required a response from the BLM.

The BLM Director's decisions on the protests are summarized in the *Director's Summary Protest Resolution Report, Buffalo Field Office Final Supplemental EIS and RMPA*, which is available on the BLM website: https://www.blm.gov/programs/planning-and-nepa/public-participation/protest-resolution-reports. The Director concluded that the BLM Wyoming State Director followed the applicable laws, regulations, and policies and considered all relevant resource information and public input in developing the Proposed Plan. Each protesting party was notified in writing of the Director's findings and the disposition of their protests.

The BLM Director resolved the protests without making changes to the Proposed RMP Amendment.

### 1.3.5   Consultation and Coordination

*Consultation*

This RMP Amendment and ROD are within the scope of the analysis and consultations supporting the 2015 Buffalo Field Office Approved RMP for the Endangered Species Act and the National Historic Preservation Act.

The BLM initiated government-to-government consultation with 15 Native American tribes claiming cultural affiliation to, or traditional use of, the Buffalo Field Office planning area (**Table 1-1**). The BLM also invited the tribes to participate in the Supplemental EIS process as cooperating agencies. The Northern Cheyenne and Rosebud Sioux tribes participated in the June 12, 2019 cooperating agency meeting. During the public comment period on the Draft Supplemental EIS/RMP Amendment, the Yankton Sioux Tribe provided feedback related to consultation and noted that they were opposed to any coal extraction. The Northern Cheyenne tribe protested the RMP Amendment with a letter submitted during the protest period as described in **Section 1.3.4**.

Table 1-1
Tribes Contacted for Government-to-Government Consultation

| Tribal Government |
| --- |
| Cheyenne River Sioux |
| Crow |
| Crow Creek Sioux |
| Eastern Shoshone |
| Ft. Peck/Assiniboine/Sioux |
| Lower Brule Sioux |
| Northern Arapahoe |
| Northern Cheyenne |
| Oglala Sioux |
| Rosebud Sioux |
| Santee Sioux |
| Sisseton-Wahpeton Oyate |

| Tribal Government |
|---|
| Spirit Lake Tribe |
| Standing Rock Sioux |
| Yankton Sioux |

*Cooperating Agencies*

The BLM is the lead agency for the Supplemental EIS/RMP Amendment. The BLM contacted 12 local, state, and federal agencies, inviting them to participate as cooperating agencies for the Supplemental EIS/RMP Amendment. As stated above, the BLM also invited the tribes to participate in the Supplemental EIS process as cooperating agencies. Ten representatives agreed to participate as designated cooperating agencies (**Table 1-2**). In addition, there were other informal meetings, telephone conversations, and visits with agency representatives.

**Table 1-2
Cooperating Agency Participation**

| |
|---|
| Campbell County Commission |
| Johnson County Commission |
| Sheridan County Commission |
| Campbell County Conservation District |
| Office of the Governor, Wyoming |
| Wyoming Department of Environmental Quality |
| Wyoming Department of Game and Fish |
| United States Environmental Protection Agency, Region 8 |
| United States Department of the Interior, Office of Surface Mining and Reclamation |
| United States Department of the Interior, Fish and Wildlife Service |

## 1.4   AVAILABILITY AND APPROVAL OF THE PLAN

Copies of the ROD and the Buffalo RMP Amendment may be obtained by viewing or downloading the document from the BLM website at https://go.usa.gov/xP6S3 or by obtaining an electronic file at the following locations:

Bureau of Land Management
Wyoming State Office
5353 Yellowstone Road
Cheyenne, WY 82009-4178

Bureau of Land Management
Buffalo Field Office
1425 Fort Street
Buffalo, WY 82834-2436

**Field Manager Recommendation**

Having considered a full range of alternatives, associated effects, and public input, I recommend adoption and implementation of the BLM decisions in the attached Buffalo Field Office RMP Amendment.

_____        Nov. 22, 2019
Todd D. Yeager, Buffalo Office Field Manager         Date

**District Manager Concurrence**

I concur with the adoption and implementation of the BLM decisions in the attached Buffalo RMP Amendment.

_____        November 22, 2019
Kevin J. Christensen, High Plains District Manager         Date

**State Director Approval**

I concur with the adoption and implementation of the BLM decisions in the attached Buffalo RMP Amendment.

_____        November 22, 2019
Duane W. Spencer, Acting Wyoming State Director         Date

# Part 2 – Approved Resource Management Plan Amendment

The BFO RMP Amendment is included below and is adapted from the Proposed Plan in the Final Supplemental EIS, as described in the ROD. A component of the purpose and need for the RMP Amendment was to provide additional analysis for land use planning, specifically for screening and analyzing coal in the BFO to determine lands acceptable for further consideration for coal leasing, in response to the federal district court's order in Western Organization of Resource Councils v. Bureau of Land Management, Civil Action No. 4:2016cv00021 (D. Mont. 2017). This includes approximately 4.7 million acres of subsurface federal mineral coal estate for which the BLM has the authority to determine its availability (**Figure 1-1**). To determine areas acceptable for further consideration for coal leasing in the RMP Amendment, the BLM updated the coal screening (**Appendix A**) and updated the reasonably foreseeable development scenario (**Appendix B**). **Figure 2-1** shows the coal acceptability geospatial results of the four-step coal screening process for the RMP Amendment and the reasonably foreseeable development scenario area where surface disturbance is anticipated over the life of the RMP Amendment (20 years). **Table 2-1** depicts the overall coal acceptability allocation decisions for the RMP Amendment.

Table 2-1
Coal Acceptability Results for RMP Amendment[1]

| Location[2] | Acceptable (Acres) | Unacceptable (Acres) |
|---|---|---|
| Campbell County | 495,251 | 26,735 |
| Sheridan County | 0 | 0 |
| **Total** | **495,251** | **26,735** |

Source: BLM GIS 2019
[1] Total volume: 52.2 tons
[2] Inside the CDPA

The RMP Amendment does not modify other resource allocation management decisions in the BFO 2015 RMP; it only modifies the decisions for allocation of BLM administered coal in the BFO. Goals, objectives, and management actions from the 2015 RMP for resources not related to the allocation of BLM administered coal remain valid and applicable to future management decisions.

Only land use plan-level decisions related to the allocation of BLM administered coal are made in this RMP Amendment; no implementation actions are included. Such actions will require further NEPA compliance and must demonstrate conformance with the RMP and this RMP Amendment.



**Figure 2-1**
**Approved Plan**

**Proposed Plan: Area Acceptable for Coal Leasing**

| Campbell County | Acres |
|---|---|
| Acceptable | 495,251 |
| Unacceptable | 26,735 |