MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North
Suite 3200
Billings, MT 59101
Ph: (406) 247-4667
Fax: (406) 657-6058
mark.smith3@usdoj.gov

PAUL E. SALAMANCA
Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

ARWYN CARROLL (MA Bar 675926)
LUTHER L. HAJEK (CO Bar 44303)
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Ph: (202) 305-0465
Fax: (202) 305-0506
arwyn.carroll@usdoj.gov
luke.hajek@usdoj.gov

*Counsel for Federal Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | | |
|---|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:20-cv-00076-BMM-JTJ |
| v. | ) ) | **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO PARTIALLY DISMISS FOR IMPROPER VENUE OR, ALTERNATIVELY, TO SEVER CLAIMS AND TRANSFER VENUE, AND TO STAY REMAINING CLAIMS** |
| U.S. BUREAU OF LAND MANAGEMENT, | ) ) ) | |
| Defendant, and | ) ) | |
| STATE OF WYOMING, | ) ) | |
| Intervenor Defendant. | ) ) | |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................2

    I.     Resource Management Plans .................................................2

    II.    Prior Litigation ......................................................................4

    III.   2019 Buffalo and Miles City RMPAs ...................................5

    IV.   Plaintiffs' Claims...................................................................8

DISCUSSION ......................................................................................................9

    I.     Plaintiffs' Claims Challenging the 2019 Buffalo RMPA Should Be Dismissed for Improper Venue.......................................10

        A.    Venue Is Improper in Montana ...............................11

        B.    The Court Should Not Exercise Pendent Venue.......................14

    II.    Plaintiffs' Claims Challenging the 2019 Buffalo RMPA Should Be Severed and Transferred to Wyoming...........................................16

        A.    Principles of Fundamental Fairness Support Severance...........17

        B.    The Interest of Justice Supports Transfer .................................20

            1.    Plaintiffs' Choice of Forum Does Not Warrant Deference .......................................................................22

            2.    Localized Controversies Should Be Decided at Home.............................................................................24

    III.   Plaintiffs' Claims Challenging the 2019 Miles City RMPA Should Be Stayed ....................................................................26

CONCLUSION ..................................................................................................28

# TABLE OF AUTHORITIES

## Cases

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
  368 F.3d 1174 (9th Cir. 2004) ...................................................................... 14, 15

*Anderson v. Thompson*,
  634 F. Supp. 1201 (D. Mont. 1986) ....................................................................22

*BioDiversity Conservation All. v. Bureau of Land Mgmt.*,
  608 F.3d 709 (10th Cir. 2010) ..............................................................................23

*Bullock v. Bureau of Land Mgmt.*,
  No. 4:20-cv-62-BMM, 2020 WL 6204334 (D. Mont. Oct. 16, 2020) . 2, 7, 18, 25, 27

*Chrysler Credit Corp. v. Country Chrysler, Inc.*,
  928 F.2d 1509 (10th Cir. 1991) ................................................................... 17, 20

*Coleman v. Quaker Oats Co.*,
  232 F.3d 1271 (9th Cir. 2000) ..............................................................................17

*Ctr. for Biological Diversity & Pac. Env't v. Kempthorne*,
  No. C 07-0894 EDL, 2007 WL 2023515 (N.D. Cal. July 12, 2007) ...................21

*Ctr. for Biological Diversity v. Bureau of Land Mgmt.*,
  No. 08-cv-05646, 2009 WL 1025606 (N.D. Cal. Apr. 14, 2009) ........................14

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007) ..............................................................................27

*Earth Island Inst. v. Quinn*,
  56 F. Supp. 3d 1110 (N.D. Cal. 2014) ..................................................................24

*Ferens v. John Deere Co.*,
  494 U.S. 516 (1990) ..............................................................................................25

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ................................................................................20

*King v. Russell*,
  963 F.2d 1301 (9th Cir. 1992) ..............................................................................11

*Landis v. N. American Co.*,
  299 U.S. 248 (1936) ..............................................................................................27

*Leyva v. Certified Grocers of California, Ltd.*,
   593 F.2d 857 (9th Cir. 1979) ................................................................27

*Lou v. Belzberg*,
   834 F.2d 730 (9th Cir. 1987) ................................................................22

*Martensen v. Koch*,
   942 F. Supp. 2d 983 (N.D. Cal. 2013).................................... 10, 14, 16

*Murphy v. Schneider Nat'l, Inc.*,
   362 F.3d 1133 (9th Cir. 2004) ..............................................................10

*N. Cheyenne Tribe v. Norton*,
   503 F.3d 836 (9th Cir. 2007) ................................................................23

*Nat'l Ass'n of Home Builders v. EPA*,
   675 F. Supp. 2d 173 (D.D.C. 2009) ......................................................11

*Nez Perce Tribe v. Nat'l Oceanic & Atmospheric Admin. Fisheries*,
   No. CV 04-60-RE, 2004 WL 1179333 (D. Or. May 27, 2004) ...........21

*Oregon Nat. Desert Ass'n v. Bureau of Land Mgmt*,
   625 F.3d 1092 (9th Cir. 2010)...............................................................17

*Pac. Car & Foundry Co. v. Pence*,
   403 F.2d 949 (9th Cir. 1968) ................................................................22

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981) ..............................................................................21

*Reuben H. Donnelley Corp. v. FTC*,
   580 F.2d 264 (7th Cir. 1978) ................................................................13

*S. Utah Wilderness All. v. Lewis* (*SUWA II*),
   845 F. Supp. 2d 231 (D.D.C. 2012) ........................................ 14, 21, 24

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) ................................................................................20

*W. Org. of Res. Councils v. Bureau of Land Mgmt.* (*WORC I*),
   No. CV 16-21-GF-BMM, 2017 WL 374705 (D. Mont. Jan. 25, 2017)4, 9, 10, 12,
   17, 21, 23, 26

*W. Org. of Res. Councils v. Bureau of Land Mgmt.*,
   No. CV 16-21-GF-BMM, 2018 WL 1475470 (D. Mont. Mar. 26, 2018) .............4

*W. Org. of Res. Councils v. Bureau of Land Mgmt.*,
    No. CV 16-21-GF-BMM, 2018 WL 9986684 (D. Mont. Jul. 31, 2018) ..............5

*W. Watersheds Project v. Pool*,
    942 F. Supp. 2d 93 (D.D.C. 2013) ............................................................... 21, 24

*W. Watersheds Project v. Salazar*,
    No. CIV 08-0516-E-BLW, 2009 WL 1299626 (D. Idaho May 7, 2009) ............14

*WildEarth Guardians v. Jewell*,
    No. 1:15-CV-2026-WJM, 2016 WL 8577508 (D. Colo. June 17, 2016) ............18

*WildEarth Guardians v. U.S. Fish & Wildlife Serv.*,
    No. 12-cv-3085-AP, 2013 WL 136204 (D. Colo. Jan. 9, 2013) .........................24

*Wildlife Fed'n v. Zinke*,
    No. CV-18-69-GF-BMM, 2018 WL 5810502 (D. Mont. Nov. 6, 2018).............13

**Statutes**

28 U.S.C. § 1391(b)(2)......................................................................................13

28 U.S.C. § 1391(e) .........................................................................................13

28 U.S.C. § 1391(e)(1)................................................................................ 11, 13

28 U.S.C. § 1391(e)(1)(B) ...............................................................................12

28 U.S.C. § 1404(a) .................................................................................. 2, 16, 20

28 U.S.C. § 1406 ....................................................................................... 9, 10

28 U.S.C. § 1406(a) .................................................................................. 2, 11, 16

42 U.S.C. § 4321 ..............................................................................................1

43 U.S.C. § 1732(a) ..........................................................................................2

5 U.S.C. §§ 3341 ..............................................................................................1

U.S. CONST. ART. II ..........................................................................................1

U.S.C. § 1391(e)(1)........................................................................................20

U.S.C. § 1404 ..................................................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(3).................................................................................. 2, 10

Fed. R. Civ. P. 21 ........................................................................................ 17, 20

iv

**Regulations**

43 C.F.R. § 1601.0-2....................................................................................................2

43 C.F.R. § 1601.0-6....................................................................................................2

# EXHIBIT INDEX

| | |
|---|---|
| Exhibit 1 | Rocky Mountain Region Greater Sage-Grouse Conservation Strategy ROD dated September 2015 |
| Exhibit 2 | Buffalo Field Office Record of Decision and Resource Management Plan Amendment dated November 22, 2019 |
| Exhibit 3 | Buffalo Field Office Supplemental Environmental Impact Statement |
| Exhibit 4 | Buffalo Field Office Protest Resolution Letters dated November 22, 2019 |
| Exhibit 5 | Miles City Field Office Record of Decision and Resource Management Plan Amendment dated November 23, 2019 |
| Exhibit 6 | Miles City Field Office Supplemental Environmental Impact Statement |
| Exhibit 7 | Miles City Field Office Protest Resolution Letters dated November 25, 2019 |
| Exhibit 8 | Order in *Western Organization of Resource Councils v. Clark*, No. 1:03-cv-70-BLG-RWA, (D. Mont. Jan. 13, 2004). |

# INTRODUCTION

In 2018, this Court concluded that Resource Management Plans (RMP) and Environmental Impact Statements (EIS) prepared by the United States Bureau of Land Management's (BLM) Field Offices in Miles City, Montana, and Buffalo, Wyoming, failed to satisfy certain requirements of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*, and ordered BLM to consider certain alternatives to and impacts of development in the Powder River Basin.  BLM undertook those analyses and, in 2019, approved Resource Management Plan Amendments (RMPA) and Supplemental Environmental Impact Statements (SEIS) prepared by the Miles City and Buffalo Field Offices through two separate Records of Decision (ROD).

Several environmental groups now challenge both RMPAs, alleging that the plans fail to satisfy NEPA's requirements or the Court's orders.  Having amended their complaint, Plaintiffs also now challenge both RMPAs under the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, and the Federal Vacancies Reform Act (FVRA), 5 U.S.C. §§ 3341 *et seq*.

While venue is proper in this District for Plaintiffs' claims challenging the 2019 Miles City RMPA, Plaintiffs have not carried their burden of demonstrating that venue is proper in Montana for claims challenging the 2019 Buffalo RMPA. The latter claims should therefore be dismissed for improper venue pursuant to

Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a).  In the

alternative, principles of fairness and the interest of justice warrant severing those

claims and transferring them to the District of Wyoming pursuant to Rule 21 and

28 U.S.C. § 1404(a).  And the case as to Plaintiffs' Miles City claims should be

stayed pending resolution of the appeal noticed in *Bullock v. United States Bureau

of Land Management*, No. 4:20-cv-62-BMM (D. Mont.), to serve judicial economy

and preserve the parties' resources.

## BACKGROUND

### I.    Resource Management Plans

The Federal Land Policy and Management Act of 1976 instructs the

Secretary of the United States Department of the Interior, through BLM, to

"manage the public lands under principles of multiple use and sustained yield."

43 U.S.C. § 1732(a).  BLM does this, in part, through developing and maintaining

RMPs, which "are designed to guide and control future management actions . . . ."

43 C.F.R. § 1601.0-2.  "Approval of [an RMP] is considered a major Federal

action significantly affecting the quality of the human environment," triggering an

Environmental Impact Statement under NEPA.  43 C.F.R. § 1601.0-6.

On September 21, 2015, the Secretary of the Interior and the Director of

BLM signed a ROD approving land use plans for the Rocky Mountain Region

Greater Sage Grouse Conservation Strategy.  Exhibit 1, Rocky Mountain Region

ROD ("2015 ROD") at 9-1.[1]  This ROD approved, among other things, RMP revisions for two field offices in the Powder River Basin: the Miles City sub-region in Montana and the Buffalo sub-region in Wyoming.  *Id.* at 1-1, 1-2.  These RMPs carried forward lands identified in previous planning processes as acceptable for further consideration for coal leasing and identified lands open to oil and gas leasing.

Though the 2015 RMP revisions were approved through a single ROD, "[e]ach sub-region prepared its own separate EIS and conducted its own planning, with input from local cooperators, stakeholders, and members of the public."  *Id.* at 1-2.  That is, although "the BLM used a landscape-scale approach to achieve a common set of management objectives across the range of [Greater Sage Grouse]," the 2015 RMP revisions and "their associated EISs were developed through separate planning efforts across the Rocky Mountain Region."  *Id.* at 1-30–1-32.

---

[1] The exhibits attached to this memorandum include only the cover page, table of contents, and specific pages or sections referenced from the voluminous documents from which they are excerpted.  All of the materials relied on are available electronically via the included hyperlinks.  The 2015 ROD is the document titled "Record of Decision for the Rocky Mountain Region" available at https://eplanning.blm.gov/eplanning-ui/project/36877/570.

II.   **Prior Litigation**

Several of the Plaintiffs challenged the 2015 ROD's approval of the Miles City and Buffalo RMP revisions under NEPA and the APA, alleging that BLM failed to consider certain alternatives, mitigation measures, and impacts of development under the plans.  *See W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.* (*WORC I*), No. CV 16-21-GF-BMM, 2017 WL 374705, at *3 (D. Mont. Jan. 25, 2017) (Morris, J.).  Federal Defendants moved to dismiss those Plaintiffs' claims challenging the 2015 Buffalo RMP for improper venue or, alternatively, to sever and transfer those claims to the District of Wyoming.  *See id.* at *4.  This Court denied that motion.  Though acknowledging that if it "consider[ed] the claims as applying to the Miles City and Buffalo RMPs separately, venue for the Buffalo claims would not be proper" in Montana, it declined to sever the Buffalo-related claims, concluding that relevant factors, including the fact that both RMPs were approved under a single ROD, "tilt[ed] *slightly* in favor of keeping the claims together as pleaded in this Court."  *Id.* at *5, *10 (emphasis added).

The Court subsequently granted Plaintiffs' motion for summary judgment on three of their six claims, *W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.*, No. CV 16-21-GF-BMM, 2018 WL 1475470, at *9–18 (D. Mont. Mar. 26, 2018) (Morris, J.) (*WORC II*), *appeal dismissed,* No. 18-35836, 2019 WL 141346 (9th Cir. Jan. 2, 2019), and ordered BLM to complete "new coal screening and

remedial NEPA analyses in compliance with" that order, *W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.*, No. CV 16-21-GF-BMM, 2018 WL 9986684, at \*2 (D. Mont. Jul. 31, 2018) (Morris, J.) (*WORC III*).

### III.   2019 Buffalo and Miles City RMPAs

The Buffalo Field Office "administers approximately 800,000 acres of surface lands and 4.7-million acres of subsurface federal mineral estate in Campbell, Johnson, and Sheridan Counties in north-central Wyoming."  Exhibit 2, 2019 Buffalo ROD at 1-1.[2]  In preparing its 2019 RMPA, the Buffalo Field Office addressed the three areas directed by the Court's order.  *See WORC III*, 2018 WL 9986684, at \*2.  It considered two different alternatives that would render different amounts of acreage available for coal leasing, and ultimately adopted an alternative that rendered less acreage available.  Exhibit 2 at 1-5–1-6.  In doing so, it removed the acceptable coal-leasing lands from Sheridan County, rendering the nearest acceptable coal-leasing lands more than 30 miles south of the Montana border.  *Id.* at 1-3, 1-5–1-6.  In its SEIS, it also "analyze[d] the environmental consequences of downstream fossil fuel combustion, including global warming potential over 20-

---

[2] The 2019 Buffalo ROD and its approved RMPA are contained in the document entitled "ROD & RMPA" available at https://eplanning.blm.gov/eplanning-ui/project/117345/570.

year and 100-year time horizons."  Exhibit 3, 2019 Buffalo SEIS at ES-1.[3]  And

consistent with the approach described *supra*, it engaged with the public, state and

local stakeholders, and Native American tribes through this process.  *Id.* at ES-2;

Exhibit 2 at 1-6–1-8.  June Shoemaker, then BLM's Acting Assistant Director for

Resources and Planning, resolved protests for the Buffalo Field Office RMPA.

Exhibit 4, Buffalo Field Office Protest Resolution Letters.  On November 22,

2019, BLM's Acting Wyoming State Director signed the ROD approving it,

Exhibit 2 at 1-9.

The Miles City Field Office "administers approximately 2.75 million acres

of surface lands and 11.9 million acres of subsurface federal mineral estate in 17

eastern Montana counties."  Exhibit 5, 2019 Miles City ROD at 1-1.[4]  It, likewise,

complied with the Court's order in preparing its 2019 RMPA.  It considered three

different options that render different amounts of acreage available for coal

leasing, including one that would "make[ ] unacceptable nearly 5 times more acres

compared with" the "No Action Alternative."  *Id.* at 1-5–1-7.  Its SEIS addressed

---

[3] The 2019 Buffalo SEIS is the document entitled "BFO RMP Final Coal SEIS & RMPA" available at https://eplanning.blm.gov/eplanning-ui/project/117345/570.

[4] The 2019 Miles City ROD and its approved RMPA are contained in the document entitled "MCFO ROD and Approved RMP Amendment" available at https://eplanning.blm.gov/eplanning-ui/project/116998/570.

the environmental consequences of downstream fossil fuel combustion and the plan's global warming potential under 20- and 100-year time horizons.  Exhibit 6, 2019 Miles City SEIS at ES-1–ES-2, 3-1–3-2.[5]  The Miles City Field Office also engaged with the public as well as state and local shareholders and Native American tribes.  *Id.* at ES-2, ES-4; Exhibit 5 at 1-8–1-9.  Acting Assistant Director Shoemaker also resolved protests for the Miles City Field Office RMPA.  Exhibit 7, Miles City Field Office Protest Resolution Letters.  On November 25, 2019, BLM's State Director for Montana and the Dakotas signed a separate ROD approving it, Exhibit 5 at 1-10.

In a case brought by a different set of plaintiffs, this Court concluded that "[William Perry] Pendley . . . exercised the Director's exclusive authority to resolve protests to the Miles City RMP amendment" in violation of the FVRA and on that basis set aside the 2019 Miles City RMPA.  *Bullock v. U.S. Bureau of Land Mgmt.*, No. 4:20-cv-62-BMM, 2020 WL 6204334, at *2, *4 (D. Mont. Oct. 16, 2020) (Morris, J.).  While the Court set aside those RMPs that "have had a significant effect on the state of Montana," *id.* at *3 (quotation omitted), it was neither asked nor would have had any basis to address the 2019 Buffalo RMPA.

---

[5] The 2019 Miles City SEIS is the document entitled "MCFO_FEIS_RMPA_Oct2019" available at https://eplanning.blm.gov/eplanning-ui/project/116998/570.

On December 28, 2020, the defendants noticed their appeal of that decision. Defendants' Notice of Appeal, No. 4:20-cv-62 (ECF No. 38).

## IV.   **Plaintiffs' Claims**

Plaintiffs now challenge the 2019 RMPAs, asserting violations of NEPA, the APA, the FVRA, and the Appointments Clause.  Through their first two counts, Plaintiffs claim that "the supplemental EISs for the Miles City and Buffalo RMPs violated NEPA" first by allegedly "failing to consider a reasonable range of coal alternatives" and second, by allegedly failing to "analyze or disclose" the "impacts to the public from non-greenhouse gas emissions from" combustion of fossil fuels developed pursuant to the Miles City and Buffalo RMPs.  Am. Compl. (ECF No. 21) ¶¶ 56–57, 63–64.  Plaintiffs' third count alleges that, at the time the RMPAs issued, William Perry Pendley served "as acting director to the BLM while his nomination for position of Director was pending in violation of the FVRA" and "without Senate confirmation in violation of" the Appointments Clause.  *Id.* ¶¶ 70–72.  Plaintiffs acknowledge that this Court "previously determined that the Miles City RMP is unlawful and must be set aside" under the FVRA and APA in *Bullock*, but seek "a reaffirmation of that determination in the instant litigation."  *Id.* ¶ 74.

## DISCUSSION

Plaintiffs conflate their claims challenging the separate Miles City and Buffalo SEISs and RMPAs.  But while Plaintiffs' 2019 Miles City RMPA claims are properly before this Court, their 2019 Buffalo RMPA claims are not.  As the Court has previously acknowledged, if it "considers the claims as applying to the Miles City and Buffalo [RMPAs] separately, venue for the Buffalo claims would not be proper" in Montana.  *WORC I*, 2017 WL 374705, at *5.  It should consider the claims challenging each RMPA separately here in light of greater differences between the 2019 RMPAs than the Court recognized between the 2015 RMPs.

Plaintiffs' 2019 Buffalo RMPA claims should  therefore be dismissed under Rule 12(b)(3) and 28 U.S.C. § 1406 for improper venue because none of the events giving rise to those claims occurred in Montana and all of the property subject to that action is located in Wyoming.  In the alternative, if the Court finds venue proper, the interests of justice in this case are best served by severing those claims under Rule 21 and transferring them to the District of Wyoming under 28 U.S.C. § 1404 because plaintiffs' choice of forum does not warrant deference here, where the RMPAs were approved through separate RODs, and this localized controversy should be decided at home.

Finally, judicial economy and conservation of the parties' resources would best be served by staying this case as to Plaintiffs' 2019 Miles City RMPA claims

9

pending outcome of the appeal in *Bullock* because that independent action may resolve or render those claims moot.

## I.   Plaintiffs' Claims Challenging the 2019 Buffalo RMPA Should Be Dismissed for Improper Venue

Though venue is proper in this District for Plaintiffs' 2019 Miles City RMPA claims, it is improper for Plaintiffs' 2019 Buffalo RMPA claims.  Those claims should be dismissed under 28 U.S.C. § 1406, which requires that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  *Id.*  Plaintiffs cannot carry their burden of demonstrating proper venue for the Buffalo RMPA claims, which they must establish "as to each claim."  *WORC I*, 2017 WL 374705, at *4 (citing *Martensen v. Koch*, 942 F. Supp. 2d 983, 996 (N.D. Cal. 2013), *on reconsideration in part,* No. C-12-05257, 2013 WL 4734000 (N.D. Cal. Sept. 3, 2013)).

In a motion "made pursuant to Fed. R. Civ. P. 12(b)(3)" for dismissal for improper venue, "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings."  *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (internal citations omitted).  If genuinely contested factual issues are presented, the court draws all reasonable inferences in favor of the non-moving party.  *Id.* at 1138–40.  Where venue is improper, the Court has the

10

discretion to dismiss the case under Rule 12(b)(3) and 28 U.S.C. § 1406(a) or to

transfer the case in the interests of justice to an appropriate jurisdiction under

§ 1406(a).  *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992) (per curiam).

A.     Venue Is Improper in Montana

Plaintiffs' venue allegations do not support the exercise of venue in Montana

over the 2019 Buffalo RMPA claims.  In actions against federal agencies or

officials, venue is proper

> in any judicial district in which (A) a defendant in the action resides,
> (B) a substantial part of the events or omissions giving rise to the
> claim occurred, or a substantial part of property that is the subject of
> the action is situated, or (C) the plaintiff resides if no real property is
> involved in the action.

28 U.S.C. § 1391(e)(1).  Plaintiffs ground venue here in the second of these bases.

Am. Compl. ¶ 13.  Under that provision, venue is proper in Montana for Plaintiffs'

2019 Miles City RMPA claims because "a substantial part of the events . . . giving

rise to the claim occurred" and "a substantial part of property that is the subject of

the action is situated" in Montana.  § 1391(e)(1)(B).

But neither holds true with respect to the 2019 Buffalo RMPA.  Plaintiffs

cannot argue that "a substantial part of the events giving rise to" their claims

challenging it occurred in Montana.  "In cases brought under the APA, courts

generally focus on where the decisionmaking process occurred to determine where

the claims arose." *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 179

(D.D.C. 2009).  Here, the decisions underlying the Buffalo RMPA and SEIS were made in Wyoming and Washington D.C., not in Montana.  As this Court has previously concluded, "if the Court considers the claims as applying to the Miles City and Buffalo RMPs separately," as it should here, "venue for the Buffalo claims would not be proper" in Montana because "a substantial part of the events giving rise to the claim" would not have occurred there.  *WORC I*, 2017 WL 374705, at *5.

Appearing to acknowledge this, Plaintiffs support venue in this District over "claims related to BLM's Buffalo Field Office in Wyoming" by alleging that "the Montana and Wyoming portions of the Powder River Basin are inextricably intertwined" and that "energy development in the Powder River Basin in the Buffalo Field Office" causes "significant" and "cumulative" impacts in Montana. Am. Compl. ¶ 13.  While both RMPAs concern management of land in the Powder River Basin, none of the land governed by the 2019 Buffalo RMPA is located in Montana.  Nor is the land deemed acceptable for coal leasing by the Buffalo Field Office through the 2019 Buffalo RMPA contiguous with that deemed acceptable by the Miles City Field Office, or with Montana itself.  *See* Exhibit 2 at 1-2–1-3, 2-1, 2-3; Exhibit 5 at 1-4, 2-1–2-4.  The question here is not whether impacts from regulation by the Buffalo Field Office may be felt in Montana, but rather where "a substantial part of property that is the subject of the action is situated."  28 U.S.C.

§ 1391(e)(1)(B).  Plaintiffs have not established that *any* "part of [the] property that is the subject" of the 2019 Buffalo RMPA "is situated" in Montana, let alone a "substantial" part.  *Id.*

Plaintiffs also allege, but cannot establish, proper venue under 28 U.S.C. § 1391(b)(2) for the same reasons.  *See* Am. Compl. ¶ 13.  Section § 1391(b)(2) sets the same standard as § 1391(e)(1)(B), but is inapposite here because the more specific provisions of 28 U.S.C. § 1391(e) govern any "civil action in which a defendant is . . . an agency of the United States," such as BLM.  *Id.* § 1391(e)(1). Even if it applied, it would not support venue in Montana for the 2019 Buffalo RMPA claims for the reasons discussed above.

Plaintiffs do not invoke the other subsections of § 1391(e)(1), and rightly so: neither supports venue in Montana for claims related to the 2019 Buffalo RMPA. Plaintiffs do not allege that BLM or the officials who prepared the 2019 Buffalo RMPA or approved the 2019 Buffalo ROD reside in Montana for purposes of § 1391(e)(1)(A).  *See*, *e.g.*, *Reuben H. Donnelley Corp. v. FTC*, 580 F.2d 264, 266 n.3 (7th Cir. 1978) (federal official's residence for venue purposes is the location where he or she performs official duties); *Mont. Wildlife Fed'n v. Zinke*, No. CV-18-69-GF-BMM, 2018 WL 5810502, at *5 (D. Mont. Nov. 6, 2018) ("[F]ederal agency defendants reside in the District of Columbia where agency headquarters are located and where they make agency decisions.").  And § 1391(e)(1)(C)

13

supports venue only where "the plaintiff resides if no real property is involved in the action." But courts routinely consider actions challenging BLM's "adoption of a land use plan for a large area of property" to "involve[ ] real property." *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, No. 08-cv-05646, 2009 WL 1025606, at *3 (N.D. Cal. Apr. 14, 2009). *See also S. Utah Wilderness All. v. Lewis* (*SUWA II*), 845 F. Supp. 2d 231, 232–34 (D.D.C. 2012) (venue proper in Utah for action challenging RMPs governing management of "several million acres of public lands located in Utah" because such an action "concerns real property situated in Utah."). *But see W. Watersheds Project v. Salazar*, No. CIV 08-0516-E-BLW, 2009 WL 1299626, at *2 (D. Idaho May 7, 2009) ("[E]nvironmental actions . . . are not actions in which 'real property is involved.'" (citation omitted)). So Plaintiffs could not ground venue in the other provisions of § 1391(e) here.

      B.    <u>The Court Should Not Exercise Pendent Venue</u>

     Nor should the Court retain Plaintiffs' 2019 Buffalo RMPA claims through the doctrine of pendent venue, under which a court may find venue proper for claims closely related to a claim for which venue is proper. *Martensen*, 942 F. Supp. 2d at 998. In conducting this analysis, courts in this Circuit invoke "the same factors the Ninth Circuit has directed courts to consider when evaluating whether to apply the doctrine of pendent personal jurisdiction," *id.* (citing *Action*

*Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004)),

including whether the claims "arise[ ] out of a common nucleus of operative facts"

and considerations of "judicial economy, avoidance of piecemeal litigation, . . .

overall convenience of the parties," and fairness to litigants. *Action Embroidery*,

368 F.3d at 1181.

Plaintiffs' 2019 Miles City RMPA claims do not share a common nucleus of

operative fact with those challenging the 2019 Buffalo RMPAs.  As explained

*supra*, the RMPAs govern management of different land in separate states.  They

were prepared through different processes by separate field offices, after

consultation with different governments, stakeholders, and members of the public.

The administrative records for both RMPAs are distinct and will be compiled

separately by personnel from the Miles City and Buffalo offices, respectively.

Resolution of Plaintiffs' claims will require separate review and analysis of those

records to determine whether the different SEIS supporting each RMPA satisfied

NEPA and the Court's previous orders.  And unlike the 2015 RMP revisions, each

RMPA was approved through a separate ROD—that is, a separate agency action.

The remaining considerations also weigh against exercising pendent venue.

As explained below, judicial economy and conservation of the parties' resources

would best be served by staying Plaintiffs' 2019 Miles City RMPA claims until

resolution of the appeal in *Bullock*.  Plaintiffs' 2019 Buffalo RMPA claims, on the other hand, are ripe for resolution based on an entirely separate factual record.

BLM therefore requests that the Court dismiss those claims for improper venue pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a).  Of course, if "the court finds venue is improper, it has discretion to dismiss or to transfer venue to a proper court."  *Martensen*, 942 F. Supp. 2d at 996.  So, in the alternative, BLM requests that those claims be severed and transferred to the District of Wyoming, for the reasons discussed below.  *See* 28 U.S.C. § 1406(a) (permitting transfer in the "interest of justice").

## II.   <u>Plaintiffs' Claims Challenging the 2019 Buffalo RMPA Should Be Severed and Transferred to Wyoming</u>

Even if the Court determines that venue for the 2019 Buffalo RMPA claims is proper in Montana, it should sever and transfer those claims to the District of Wyoming pursuant to Rule 21 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404(a).  Principles of fundamental fairness support severing the claims because they concern different agency actions approving different RMPAs prepared by different field offices that undertook different analyses concerning land in different states.  And the interests of justice support transfer because the principle that localized controversies should be decided at home outweighs any deference owed the Plaintiffs' choice of forum in light of the separate approving RODs.

16

A.    <u>Principles of Fundamental Fairness Support Severance</u>

"When transferring a portion of a pending action to another jurisdiction, district courts first must sever the action under Rule 21," *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991), which provides that a court may "sever any claim against a party," Fed. R. Civ. P. 21.  Severance is proper where joinder of the claims does not "comport with the principles of fundamental fairness or would result in prejudice to either side."  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (internal quotation marks and citation omitted) (addressing Rule 20).  "Courts possess broad discretion in this decision."  *WORC I*, 2017 WL 374705, at *5 (citing Rule 21).

Though pleaded without differentiation, Plaintiffs' claims are not, as they will likely argue, inextricably bound together.  As explained above, though both RMPAs impact the Powder River Basin, each RMPA governs a separate geographic area.  Each was developed through a separate process undertaken by a separate Field Office.  In preparing the RMPAs and underlying SEISs, each Field Office engaged with state, local, and public interests in its respective area.  Importantly, each RMPA was approved through a separate ROD, such that Plaintiffs' challenge to each RMPA is a challenge to a separate, final agency action.  *See Oregon Nat. Desert Ass'n v. Bureau of Land Mgmt*, 625 F.3d 1092, 1118 (9th Cir. 2010).

17

Further, Plaintiffs' claims as to each RMPA stand in procedurally separate postures. This Court has set aside the 2019 Miles City RMPA on this basis. *Bullock*, 2020 WL 6204334, at *4. Plaintiffs merely seek a "reaffirmation of that determination." Am. Compl. ¶ 74. By contrast, the Court did not and had no cause to address the 2019 Buffalo RMPA on this basis. This separate posture supports severing the 2019 Buffalo RMPA claim because only those claims remain should the Court's decision stand and, as explained below, they are most appropriately resolved in Wyoming.

Further, Plaintiffs' NEPA-related claims in this action are analogous to those severed by other courts. In *WildEarth Guardians v. Jewell*, for example, the plaintiff challenged the Secretary of the Interior's approval of four mining plans in Colorado, New Mexico, and Wyoming under NEPA. Its complaint "present[ed] six claims, each pled as applicable to all four mines, rather than more candidly presenting twenty-four separate claims . . . ." No. 1:15-CV-2026-WJM, 2016 WL 8577508, at *5 (D. Colo. June 17, 2016) (internal citation omitted). Citing differences in the mines' size, geography, and production of coal; the separate NEPA review processes underlying the approvals; and the differing litigation history among the four mines, the court concluded that the plaintiff's claims did not arise from the "'same transaction' or present a 'common question of law or fact'" and severed the claims. *Id.* at *5–6. Here, the NEPA review processes

18

underlying the RMPAs were likewise different; they were approved through separate agency actions; and the RMPAs have already been subject to separate litigation placing Plaintiffs' claims concerning the 2019 Miles City RMPA in a different procedural posture.

Similarly, in an unpublished decision, the court in *Western Organization of Resource Councils v. Clark*, No. 1:03-CV-70-BLG-RWA (D. Mont. Jan. 13, 2004),[6] severed and transferred claims to Wyoming under circumstances nearly identical to the present case. As here, Plaintiffs challenged two separate EISs relating to land in the Powder River Basin—one addressing land in Montana and another, separate EIS addressing land in Wyoming. Exhibit 8, Order at 2. As here, those EISs were adopted through two separate RODs. *Id.* Without addressing the propriety of venue, the court severed the claims, holding "that the interest of justice dictates that those portions of the complaint directly challenging the adequacy and sufficiency of the Wyoming environmental studies and ROD should be heard in Wyoming." *Id.* at 3. As explained next, those same interests warrant transfer as well as severance here.

---

[6] This order, unavailable on Westlaw or LexisNexis, is attached hereto as Exhibit 8.

19

B.    <u>The Interest of Justice Supports Transfer</u>

Having severed Plaintiffs' claims challenging each RMPA, the Court should transfer the 2019 Buffalo RMPA claims to Wyoming.  "[W]here certain claims in an action are properly severed under Fed. R. Civ. P. 21, two separate actions result; a district court may transfer one action while retaining jurisdiction over the other." *Chrysler Credit*, 928 F.2d at 1519 (citations omitted).  The Court may do so here under 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  *Id.*  A district court's broad discretion to transfer a case from one forum to another should be exercised "according to an individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks and citation omitted).  BLM, as the moving party, bears the burden of showing transfer is appropriate.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).

There can be no dispute that venue for the 2019 Buffalo RMPA claims is proper in Wyoming under 28 U.S.C. § 1391(e)(1).  So transfer turns on whether the convenience of the parties and witnesses and the interest of justice weigh in favor of transfer.  *See* 28 U.S.C. § 1404(a).  In cases such as this, where plaintiffs'

20

claims arise under federal law and will largely be decided on the administrative record, *see SUWA II*, 845 F. Supp. 2d at 236–37, and Plaintiffs have alleged contacts with both Wyoming and Montana, *see* Am. Compl. ¶¶ 15–23, motions to transfer are "determined by weighing a plaintiff's choice of forum against the competing interest in 'having localized controversies decided at home.'"[7] *Ctr. for Biological Diversity & Pac. Env't v. Kempthorne*, No. C 07-0894 EDL, 2007 WL 2023515, at *5 (N.D. Cal. July 12, 2007) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)); *see also  Nez Perce Tribe v. Nat'l Oceanic & Atmospheric Admin. Fisheries*, No. CV 04-60-RE, 2004 WL 1179333, at *2 (D. Or. May 27, 2004).  This Court has found this "balancing test" also "helpful for the question of whether to keep plaintiff's claims together as pleaded or to separate them by location for determining venue."  *WORC I*, 2017 WL 374705, at *7.  In that case, the Court found that "balancing of the factors tilt[ed] slightly in favor of keeping the claims together as pleaded."  *Id.* at *10.  Here, they tilt toward severance and transfer.

---

[7] To the extent the Court considers the convenience of witnesses, however, this factor weighs in favor of transfer because those involved in the decision-making process for the Buffalo RMPA reside outside of Montana.  *See, e.g.*, *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 100–01 (D.D.C. 2013).

1.   Plaintiffs' Choice of Forum Does Not Warrant Deference

Courts typically defer to a plaintiff's choice of forum.  *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Anderson v. Thompson*, 634 F. Supp. 1201, 1204–05 (D. Mont. 1986).  But that deference is diminished where, as here, "the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter."  *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).  In this case, the operative facts concerning the 2019 Buffalo RMPA have no connection to Montana.  The Amendment was developed by officials outside of Montana, with input from state agencies, local governments and the public in Wyoming, and concerns land and resources located entirely in Wyoming.  Even were the Court to credit Plaintiffs' allegations that energy development in Wyoming impacts the Powder River Basin in Montana, *see* Am. Compl. ¶¶ 29–35, their 2019 Buffalo RMPA claims under NEPA turn on whether BLM satisfied that statute's requirements in preparing and issuing that amendment—actions that, themselves, have no connection in Montana. Plaintiffs' claim challenging the 2019 Buffalo RMPA under the Appointments Clause and FVRA likewise has no Montana connection.

In the prior action, the Court acknowledged that approval of both RMPs through a single ROD presented potential plaintiffs "with concerns regarding more than a single RMP revision or amendment" with a "quandary," such that they

22

"would be limited to a single action filed in the District of Columbia—the place where the BLM issued the ROD—or multiple actions filed in multiple venues where each of the challenged RMPs" approved by the same ROD "might be located." *WORC I*, 2017 WL 374705, at *8. Plaintiffs were not presented with that quandary here because the 2019 Buffalo RMPA was approved through a ROD signed by federal officials in Wyoming entirely separate from the ROD, signed by officials in Montana, approving the 2019 Miles City RMPA. This presented Plaintiffs with a clear path to challenge the Wyoming-related claims in Wyoming and the Montana-related claims in Montana.

Nor does a risk of inconsistent judgments warrant deference to the Plaintiffs' choice here. In deferring to Plaintiffs' choice of forum in the action challenging the 2015 RMPs, the Court acknowledged that "severing the case would risk dueling, inconsistent opinions in two separate Circuits" concerning the same ROD. *WORC I*, 2017 WL 374705, at *9 (internal quotation marks and citation omitted) (observing disparate outcomes in *Northern Cheyenne Tribe v. Norton*, 503 F.3d 836 (9th Cir. 2007) and *BioDiversity Conservation Alliance v. Bureau of Land Management*, 608 F.3d 709 (10th Cir. 2010)). While it is possible that Federal courts in Montana and Wyoming may draw different conclusions about separate RMPAs approved through separate RODs, there is no possibility here—as there was in the prior action—of inconsistent conclusions about the same ROD. That

23

the RMPAs, approved through separate RODs, govern different land in different states lessens the potential impact of any inconsistency going forward and diminishes the deference due to Plaintiffs' choice of forum.

### 2.    Localized Controversies Should Be Decided at Home

Even were any deference to Plaintiffs' choice of forum warranted, it would be outweighed, as courts have routinely held, by the competing "interests of justice [that] are promoted when a localized controversy is resolved in the region it impacts."  *Pool*, 942 F. Supp. 2d at 102; *see also Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1119–20 (N.D. Cal. 2014) (collecting cases).  This remains true even where, as Plaintiffs have alleged, a regulation "may have spill-over effects" into other states.  *WildEarth Guardians v. U.S. Fish & Wildlife Serv.,* No. 12-cv-3085-AP, 2013 WL 136204, at *3 (D. Colo. Jan. 9, 2013).

For example, in *SUWA II*, a group of environmental organizations sued in the District of Columbia challenging three RMPs covering millions of acres of federally managed lands in Utah that were created and developed by BLM personnel in Utah with limited oversight by agency management in Washington, D.C.  845 F. Supp. 2d at 232–33.  Finding any involvement by agency personnel in D.C. insubstantial, the Court transferred the case to Utah largely because the "controversy will affect the use of discrete parcels of land" located in Utah.  *Id.* at 234–35, 237–38.  Here, the Buffalo Field Office developed the 2019 Buffalo

RMPA, which was approved by a ROD signed by BLM's Acting Wyoming State Director, and which affects land exclusively located in Wyoming.  Unlike in *SUWA II*, and weighing even more strongly in favor of transfer, no BLM official located in Montana was involved in developing and approving the Buffalo RMP revision.

Similarly, the court in *Clark* relied heavily "on the proposition that localized controversies should be decided at home."  Exhibit 8, Order at 4 (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990)).  As it observed, "Wyoming's interest in the development of [coalbed methane] in Wyoming greatly outweighs plaintiffs' desire to keep this entire case in Montana, especially where, as here, the substantial part of the decision-making underlying the Wyoming ROD occurred in either Wyoming or Washington, D.C., not in Montana . . . ."  *Id.*  The same holds true here, where "the substantial part of the decision-making underlying" the 2019 Buffalo RMPA—indeed, all of it—occurred outside of Montana.

Plaintiffs' FVRA and Appointments Clause claims do not alter this analysis. This Court has already addressed the Miles City RMPA, which affected land in Montana, but had no basis to and did not to address challenges to land-management decisions affecting other states.  *Bullock*, 2020 WL 6204334, at *2–3. In doing so, it noted that such challenges should be brought "in the appropriate

federal district court. . . ."  *Id.* at *4.  Here, the appropriate court to address the 2019 Buffalo RMPA is the District of Wyoming.

As this Court has acknowledged, there is "great benefit in local controversies being decided at home, and this factor might be dispositive in many scenarios."  *WORC I*, 2017 WL 374705 at *10.  This is such a scenario because the factors that led the Court to consider Plaintiffs' claims challenging the 2015 RMPs together in *WORC I* bear much less weight here and Plaintiffs' claim challenging the 2019 Buffalo RMPA on FVRA grounds belongs "in the appropriate federal district court" in Wyoming.

In sum, because of these differences, principles of fundamental fairness in this case support severing the claims challenging separate agency actions approving RMPAs prepared by separate field offices concerning land in different states.  They should then be transferred to Wyoming because the principle that localized controversies should be decided at home outweighs any deference owed the Plaintiffs' choice of forum in this case in light of the separate approving RODs and different procedural postures.

## III.   Plaintiffs' Claims Challenging the 2019 Miles City RMPA Should Be Stayed

Finally, the case as to Plaintiffs' 2019 Miles City RMPA claims should be stayed pending the outcome of the appeal noticed in *Bullock*.  The Court's broad discretion to grant a stay derives from its "inherent power to control its docket and

26

promote efficient use of judicial resources." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citing *Landis v. N. American Co.*, 299 U.S. 248, 254–55 (1936)).  To that end, the Court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  A stay here would promote such efficiency.

Resolution of the appeal in *Bullock* will bear directly upon Plaintiffs' claims in this case.  Plaintiffs now claim that both the 2019 Miles City and Buffalo RMPAs issued in violation of the FVRA and the Appointments Clause.  This Court set aside the 2019 Miles City RMPA for that reason in *Bullock*, 2020 WL 6204334, at *4.  BLM noticed its intent to appeal the final judgment issued in that case on December 28. 2020.  *See* Defendants' Notice of Appeal, No. 4:20-cv-62 (ECF No. 38).  Whatever the outcome of that appeal, it will resolve Plaintiffs' claim challenging the 2019 Miles City RMPA under the FVRA and Appointments Clause in this case.  And if the plaintiffs in that case prevail on appeal, Plaintiffs' NEPA-related 2019 Miles City RMPA claims would be moot.  Judicial economy and preservation of the parties' resources would therefore be best served by staying this case as to those claims pending resolution of the appeal in *Bullock*.

27

## CONCLUSION

The United States respectfully requests that Plaintiffs' claims challenging the 2019 Buffalo RMPA be dismissed for lack of venue or, alternatively, severed and transferred to the United States District Court for the District of Wyoming.  It further requests that the case be stayed as to Plaintiffs' claims challenging the Miles City RMPA pending resolution of the noticed appeal of this Court's decision in *Bullock*.

Respectfully submitted this 11th day of January, 2021.

> PAUL E. SALAMANCA,
> Deputy Assistant Attorney General
> Environment & Natural Resources Division
>
> */s/  Arwyn Carroll*
> ARWYN CARROLL (MA Bar 675926)
> Trial Attorney, Natural Resources Section
> United States Department of Justice
> Environment and Natural Resources Div.
> P.O. Box 7611
> Washington, D.C. 20044-7611
> Phone:  202-305-0465
> Fax:  202-305-0506
> arwyn.carroll@usdoj.gov
>
> LUTHER L. HAJEK (CO Bar 44303)
> Trial Attorney, Natural Resources Section
> United States Department of Justice
> Environment and Natural Resources Div.
> 999 18th St., South Terrace, Suite 370
> Denver, CO 80202
> Phone: (303) 844-1376
> Fax: (303) 844-1350
> luke.hajek@usdoj.gov

28

MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North, Suite 3200
Billings, MT 59101
Phone: (406) 247-4667
Fax: (406) 657-6058
mark.smith3@usdoj.gov

*Counsel for Federal Defendant*

**CERTIFICATE OF SERVICE**

I certify that on January 11, 2021, a copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.

/s/ *Arwyn Carroll*
ARWYN CARROLL
U.S. Department of Justice

**CERTIFICATE OF WORD COUNT**

I certify that this brief complies with LR 7.1(d).  It contains 6,475 words, as counted using the word count feature of Microsoft Word, excluding the caption, table of contents, table of authorities, exhibit index, certificate of service, and certificate of word count.

/s/ *Arwyn Carroll*
ARWYN CARROLL
U.S. Department of Justice