# EXHIBIT 5

U.S. DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

November 2019

# Miles City Field Office

**Record of Decision and Approved Resource Management Plan Amendment**





# United States Department of the Interior



BUREAU OF LAND MANAGEMENT
Montana/Dakotas State Office
5001 Southgate Drive
Billings, Montana 59101
http://www.blm.gov/montana-dakotas

November 2019

In Reply Refer To:
1610 (MT930)

Dear Reader:

I am pleased to announce that the Miles City Field Office (MCFO) Approved Resource Management Plan Amendment (RMP Amendment) is complete. It will provide guidance for the management of approximately 11.7 million acres of subsurface federal mineral coal estate within the MCFO.

The RMP Amendment is identical to Alternative B presented in the 2019 Final Supplemental Environmental Impact Statement (EIS) and Proposed RMP Amendment. The BLM has determined that the RMP Amendment is the most consistent with the purposes, policies, and programs associated with implementing its legal mandates.

The BLM received six protest letters during the 30-day protest period provided for the Proposed RMP Amendment/Final Supplemental EIS in accordance with 43 CFR 1610.5-2. The BLM Director addressed all protests and no changes to the Proposed RMP Amendment were necessary.

The Supplemental EIS supporting this planning process included the necessary National Environmental Policy Act (NEPA) analysis to modify the allocation of BLM administered coal in the MCFO and develop reclamation as a stipulated method of coal mining for all species listed under unsuitability criterion 15, Habitat for Species of High Interest to the State. The RMP Amendment does not modify other resource allocation management decisions in the MCFO 2015 RMP.

This Record of Decision (ROD) constitutes the final decision of the authorized officer for the allocation of BLM administered coal in the MCFO.

Copies of the BLM ROD and the Approved RMP Amendment are available on the MCFO Supplemental EIS/RMP Amendment ePlanning website at https://go.usa.gov/xmbE4 or can be obtained by requesting a copy in person, by telephone, or by writing to the following:

Miles City Field Office
111 Garryowen Road
Miles City, MT 59301
(406) 233-2800

The BLM is pleased to provide this copy of the ROD and Approved RMP Amendment for your reference.

We greatly appreciate all who contributed to the completion of this Approved RMP Amendment, including the United States Fish and Wildlife Service, United States Environmental Protection Agency, Office of Surface Mining Reclamation and Enforcement, Montana Department of Natural Resources and Conservation, McCone County, Sheridan County, Prairie County, and Rosebud County. We also appreciate the extensive public involvement during this time by groups, organizations, and individuals. Your interest is appreciated. I hope your involvement will continue as we move forward to implement and monitor the plan and manage the public lands in the MCFO.

Sincerely,

John Mehlhoff
State Director, Montana/Dakotas BLM

# TABLE OF CONTENTS

Part | Page

**PART 1 – RECORD OF DECISION ........ 1-1**

1.1 Introduction ........ 1-1
1.1.1 Overview ........ 1-1
1.1.2 Description of the Planning Area ........ 1-1
1.2 The Decision ........ 1-4
1.2.1 Mitigation Measures ........ 1-4
1.2.2 Plan Monitoring ........ 1-5
1.3 Alternatives ........ 1-5
1.3.1 Alternatives Considered and Dismissed ........ 1-5
1.3.2 Alternatives Analyzed in Detail ........ 1-6
1.4 Public Involvement ........ 1-7
1.4.1 Public Scoping ........ 1-7
1.4.2 Public Review of and Comment on the Draft SEIS/RMP Amendment ........ 1-8
1.4.3 Governor's Consistency Review ........ 1-8
1.4.4 Protest Resolution ........ 1-8
1.4.5 Consultation and Coordination ........ 1-8
1.5 Availability and Approval of the Plan ........ 1-9

**PART 2 – MILES CITY APPROVED RESOURCE MANAGEMENT PLAN AMENDMENT ........ 2-1**

## TABLE

Page

2-1 Coal Acceptability Results for RMP Amendment[1] ........ 2-2

## FIGURES

Page

1-1 Surface Administration ........ 1-2
1-2 BLM-administered Coal ........ 1-3
2-1 Areas Acceptable for Further Consideration for Leasing ........ 2-3
2-2 Impact Analysis Area ........ 2-4

## APPENDICES

A Coal Reasonably Foreseeable Development Scenario
B Coal Screening Process

# Part 1 – Record of Decision

## 1.1 INTRODUCTION

### 1.1.1 Overview

The United States (US) Department of the Interior, Bureau of Land Management (BLM) uses resource management plans (RMPs) to guide management of the land it administers. This record of decision (ROD) approves the BLM's proposal to manage BLM-administered lands in the Miles City Field Office (MCFO) as presented in the attached approved Resource Management Plan Amendment. This RMP Amendment is the same as the Proposed Plan (Alternative B) in the Miles City Final Supplemental Environmental Impact Statement (SEIS)/Proposed RMP Amendment to the 2015 Miles City RMP. This RMP Amendment is in response to the federal district court's order in *Western Organization of Resource Councils, et al. v. Bureau of Land Management,* Civil Action No. CV 16-21-GF-BMM (D. Mont. 2017). The background and rationale for approving the decisions in the Proposed Plan are described in this ROD. Though the SEIS provided additional analyses for downstream emissions for fluid and solid minerals, and it justifies the time horizon of the estimated global warming potential impacts, the only decision being made for the RMP Amendment is regarding coal allocations (i.e., lands acceptable for further consideration for coal leasing).

### 1.1.2 Description of the Planning Area

The MCFO administers approximately 2.75 million acres of surface lands and 11.9 million acres of subsurface federal mineral estate in 17 eastern Montana counties. The decision area is the BLM-administered federal coal in the MCFO. This includes approximately 11.7 million acres of subsurface federal mineral coal estate for which the BLM has the authority to determine its availability (98 percent of federal mineral estate within the MCFO).

Maps of the decision area and land ownership in the MCFO are in **Figures 1-1** and **1-2**.

## 1.2 THE DECISION

The decision is hereby made to approve the attached RMP Amendment. The BLM has determined that the attached RMP Amendment (Alternative B for the Final Supplemental EIS/Proposed RMP Amendment) provides the best balance of resource conservation, while not foreclosing future opportunities for development.

Alternative C would identify fewer acres as acceptable for further consideration for coal leasing for the purposes of reducing greenhouse gas emissions that would result from additional transportation to deliver coal to the existing infrastructure; however, the analysis showed that, because the reasonably foreseeable development (RFD) scenario is not different between the alternatives, Alternative C does not provide any additional reduction in greenhouse gas emissions. The RMP Amendment provides the best balance of resource conservation, while not foreclosing future opportunities for development.

The BLM prepared the Miles City RMP Amendment in accordance with NEPA, the Council on Environmental Quality (CEQ) regulations implementing NEPA (40 Code of Federal Regulations [CFR] 1500–1508), the US Department of the Interior NEPA regulations (43 CFR 46), the requirements of the BLM's NEPA Handbook, H-1790-1 (BLM 2008),[1] and the BLM's Land Use Planning Handbook, H-1601-1.[2] Decisions identified in the approved RMP Amendment are final and become effective when this ROD is signed. The decisions included in this ROD and approved RMP Amendment amend the 2015 Miles City RMP. They change the allocation of lands acceptable and unacceptable for further consideration for coal leasing and guide coal management on public lands administered by the MCFO into the future.

### 1.2.1 Mitigation Measures

The approved RMP Amendment does not include any new mitigation measures. See the 2015 Miles City approved RMP, Appendix L, for a full list of mitigation measures for the MCFO. In addition, unsuitability criterion 15 contains a stipulation for surface mining. All of the species listed under criterion 15, Habitat for Species of High Interest to the State, have reclamation as a stipulated method of coal mining. This stipulation requires reclamation, using an approved seed mix that is appropriate to the soil types found in the disturbance area.

***Stipulation***

The holder shall seed all disturbed areas with the seed mix, as agreed on by the BLM, based on the soil types. There shall be no primary or secondary noxious weed seed in the seed mixture. Seed shall be tested for viability, in accordance with state laws and within 6 months before purchase. Commercial seed shall be either certified or registered seed. The seed mixture container shall be tagged in accordance with state laws and available for inspection by the BLM Authorized Officer.

[1] BLM (Bureau of Land Management). 2008. Handbook H-1790-1. BLM NEPA Handbook. Washington, DC. January 2008.
[2] BLM. 2005. Handbook H-1601-1. BLM Land Use Planning Handbook. Washington, DC. March 2005.

### 1.2.2 Plan Monitoring

The approved RMP Amendment does not include any new monitoring requirements. See the 2015 Miles City approved RMP, Appendix M, for a full list of monitoring requirements for the MCFO.

## 1.3 ALTERNATIVES

### 1.3.1 Alternatives Considered and Dismissed

During scoping and comments on the Draft SEIS/ RMP Amendment, several commenters suggested analyzing an alternative for no future leasing of coal. Closing the decision area to any future leasing of federal coal, even in lands where there are no identified resource conflicts, was considered but not brought forward for further analysis. The primary land use plan-level decision to be made regarding coal is identifying lands that are acceptable for further consideration for coal leasing and those that are unacceptable (BLM Land Use Planning Handbook H-1601-1, Appendix C).

Although a land use planning-level decision can be made that precludes coal development throughout the planning area, it does so by making lands unacceptable for further consideration of leasing; the process undertaken to arrive at this land use plan allocation must be consistent with the federal regulations. Namely, the BLM is required to go through the coal screening process outlined in 43 CFR 3420 et. seq. to arrive at its decision on coal allocations. As part of this process, the multiple-use screen is the screen used to remove lands that would conflict with resources of high value to the public from further consideration for coal leasing.

Alternatives B and C show a reduction in lands acceptable for further consideration of leasing; Alternative C makes unacceptable nearly 5 times more acres compared with Alternative A and 3 times more acres compared with Alternative B, for the specific purpose of addressing greenhouse gas emissions through the coal screening process. Once the land use plan-level decision has identified lands acceptable or unacceptable for further consideration of leasing, the decision whether to lease parcels is made at the application level; this is a discretionary action and the no-leasing/no-action alternative would be considered at this stage in the NEPA process. The policy detailed in 43 CFR 3420.1–4e explains the selectivity of resources that should drive such determinations of unacceptability. This is consistent with BLM Handbook 3420, which directs the BLM to prioritize energy development to support competitive energy markets and national energy objectives. The BLM's authorities are clear in their direction that coal unacceptability for leasing is based on protecting specific, high-value resources and does not consider unspecific resource concerns.

The forecasted production in the RFD scenario is derived from contract and future estimates provided by the operators and existing lease applications. Based on this information, the BLM determined that there would be no additional leasing during the life of the plan; therefore, the RFD scenario is limited to the approved leases and existing lease applications beyond the already approved leases and existing lease applications (see **Appendix A**). Any future leasing beyond the current leases and existing lease applications considered in this RFD scenario would exceed the scope of impacts analyzed in this RMP amendment; this would require additional NEPA analysis.

### 1.3.2 Alternatives Analyzed in Detail

The BLM performed coal screens 1–4 in order to formulate the action alternatives (see Appendix A of the Final SEIS/Proposed RMP Amendment). In addition, the BLM reviewed the Minerals Appendix of the 2015 Proposed RMP/Final EIS, decisions made in the 2015 RMP/Record of Decision (which precluded coal development; BLM 2015),[3] new data, and new GIS data.

All alternatives use the same reasonably foreseeable development scenario (see **Appendix A**) and the same surface disturbance estimates; however, under Alternative C, there may be slightly fewer impacts on certain resources. This would be the case where lands are unacceptable for further leasing consideration because Alternative C applies an additional multiple-use criterion for greenhouse gas emissions. The potential impact would depend on the location of leasing and development and the current data at the time of lease application.

Acreage of surface disturbance would be the same under all alternatives, so no single alternative is the environmentally preferable alternative. More lands would be unacceptable for further consideration for leasing under Alternative C; however, because the RFD scenario forecasts the same level of development under all alternatives, impacts would be the same. Alternatives B and C would include a stipulation for criterion 15 of the unsuitability criteria related to reclamation standards and required seed mixes.

***Alternative A***

Alternative A, the No Action Alternative, brings forward current management decisions for coal leasing availability under the 2015 RMP/ROD. Under Alternative A, the BLM brought forward management decisions from the coal screens performed for the Powder River and Big Dry RMPs into the 2015 Proposed RMP/Final EIS. The coal screens from the Powder River and Big Dry RMPs are included in the Minerals Appendix to the 2015 Proposed RMP/Final EIS. Under Alternative A, 1,581,238 acres would be acceptable for further consideration for coal leasing and 325,430 acres would be unacceptable for further consideration for coal leasing.

***Alternative B***

Alternative B updates management decisions for coal leasing availability under the 2015 RMP/ROD, based on new coal screens using current data. Under Alternative B, 1,214,380 acres would be acceptable for further consideration for coal leasing and 530,420 acres would be unacceptable for further consideration for coal leasing.

For Alternative B, new coal screens were applied to determine lands acceptable for further consideration for coal leasing.

An air quality criterion was considered as a multiple-use coal screen under this alternative. Alternative B considered a criterion for maintaining air quality standards as part of the multiple-use screen; however, existing data and modeling done for the 2015 Proposed RMP/Final EIS showed no air quality standards were exceeded, based on the national ambient air quality standards under the Clean Air Act; therefore, no resulting geographic area of land was unsuitable for further consideration for coal leasing, based on air resources.

[3] BLM. 2015. Miles City Field Office Resource Management Plan. Miles City, Montana.

In addition to the unsuitability screen, this alternative removes lands from further consideration for leasing under the multiple-use screen that considers conflicts with the following:

- Active oil and gas wells
- Oil and gas units
- Perennial, riparian, and wetland resources
- Conservation easements
- Recreation areas
- Sport fishing reservoirs
- Areas of critical environmental concern
- Cultural viewsheds

For unsuitability criterion 15, Habitat for Species of High Interest to the State, the BLM would apply a stipulation to coal development, as detailed in Appendix A of the Final SEIS/Proposed RMP Amendment.

***Alternative C***

Alternative C uses the coal screens described under Alternative B and also applies an air resource criterion based on greenhouse gas emissions that would result from additional transportation to deliver coal to the existing infrastructure. Under Alternative C, 158,400 acres would be acceptable for further consideration for coal leasing and 1,586,400 acres would be unacceptable for further consideration for coal leasing.

Alternative C uses the same coal screen applications as Alternative B for screen 1 (coal potential), 2 (unsuitability), and 4 (landowner consultation) (Appendix A of the Final SEIS/Proposed RMP Amendment). For Screen 3 (multiple-use), Alternative C applies an air resources multiple-use criterion, based on additional greenhouse gas emissions that would result from additional transportation to deliver coal to the existing infrastructure. The additional air resource criterion limits coal development to an 8-mile infrastructure area around the four existing mines in the decision area. The 8-mile area encompasses existing transportation infrastructure associated with load-out facilities at the existing mines, such as haul roads, conveyor belts, and railroad loops.

For unsuitability criterion 15, Habitat for Species of High Interest to the State, the BLM would apply the same stipulation to coal development as described for Alternative B.

## 1.4 PUBLIC INVOLVEMENT

### 1.4.1 Public Scoping

The formal public scoping process for the Miles City SEIS/ RMP Amendment began with the publication of the Notice of Intent (NOI) in the *Federal Register* on November 28, 2018 (FR Doc. 2018-25847); the BLM also posted the NOI on the ePlanning website. A public scoping meeting was held on December 13, 2018. Additional information on public scoping can be found in the Miles City Field Office SEIS/ RMP Amendment Scoping Report, posted on the Miles City SEIS/ RMP Amendment ePlanning website, https://go.usa.gov/xmbE4.

### 1.4.2   Public Review of and Comment on the Draft SEIS/RMP Amendment

On May 17, 2019, the Environmental Protection Agency published a notice of availability (NOA) in the *Federal Register* for the Miles City Draft SEIS/RMP Amendment. This initiated the 90-day public comment period on the Draft SEIS/RMP Amendment. A public comment meeting was held on June 17, 2019. The BLM's responses to the substantive comments are part of the public response report of the Final SEIS/Proposed RMP Amendment (Appendix E of the Final SEIS/Proposed RMP Amendment).

### 1.4.3   Governor's Consistency Review

The BLM initiated a Governor's consistency review prior to publication of the Final SEIS/Proposed RMP Amendment in accordance with 43 CFR 1610.3-2(e). The BLM did not receive a response from the Governor's office.

### 1.4.4   Protest Resolution

The NOA for the Final SEIS/Proposed RMP Amendment initiated the 30-day protest period. The protest period ended on November 4, 2019.

Pursuant to the BLM's planning regulations at 43 CFR 1610.5-2, any person who participated in the MCFO RMP Amendment planning process and had an interest that may be adversely affected by the BLM's planning decisions was allowed to protest proposed planning decisions within 30 days of when the NOA of the Final SEIS/Proposed RMP Amendment was published in the *Federal Register*. Note that the Final SEIS/Proposed RMP Amendment did not contain any implementation decisions that were subject to the appeal process by procedures set out by other BLM regulations.

The BLM received six protest letters during the 30-day protest period provided for the Final SEIS/Proposed RMP Amendment. In accordance with 43 CFR 1610.5-2, one of these letters was dismissed because the commenter did not have standing and because the letter did not contain valid protests. The remaining five protest letters were valid and contained protest issues that required a response from the BLM.

The BLM Director's decisions on the protests are summarized in the Director's Summary Protest Resolution Report, Miles City Final Supplemental Environmental Impact Statement and Proposed Resource Management Plan Amendment, which is available on the BLM website: https://www.blm.gov/programs/planning-and-nepa/public-participation/protest-resolution-reports. The Director concluded that the BLM Montana State Director followed the applicable laws, regulations, and policies and considered all relevant resource information and public input in developing the Proposed Plan Amendment. Each protesting party was notified in writing of the Director's findings and the disposition of their protests.

The BLM Director resolved the protests without making changes to the Proposed Plan.

### 1.4.5   Consultation and Coordination

***Consultation***

The BLM initiated government-to-government consultation with 15 Native American tribes who claim cultural affiliation to, or traditional use of, the Miles City Field Office planning area. Consultation continued throughout the SEIS/RMP Amendment process to ensure that tribal input

and concerns were considered in plan development and will continue in any subsequent project-level implementation. No issues were identified by the consulted tribes.

The BLM coordinated and consulted with Montana's State Historic Preservation Office (SHPO) throughout the SEIS/RMP Amendment process. This will continue with subsequent project-level implementation, where applicable. On June 7, 2019, the SHPO responded, concurring that the action alternatives have the probability of direct and indirect effects on cultural resources and that some effects have the potential to be unmitigable.

Section 7 of the Endangered Species Act of 1973 requires the BLM to consult with the US Fish and Wildlife Service (USFWS). On April 11, 2019, the BLM MCFO sent a letter to the USFWS, inquiring whether it was necessary for consultation that occurred for the 2015 RMP/EIS to restart for this SEIS/RMP Amendment.

The biological assessment for the 2015 RMP/EIS had determinations of "may affect, not likely to adversely affect," for all ESA listed species; the USFWS concurred with these determinations on July 10, 2015. The USFWS also concurred with the BLM that restarting consultation is not required for this SEIS/RMP Amendment. Its rationale was that all action alternatives and associated impacts under consideration in this SEIS/RMP Amendment are equal in scope to, or are lesser in scope than, actions and impacts previously analyzed for threatened and endangered species and critical habitat in 2015.

***Cooperating Agencies***

Coordination between the cooperating agencies was integral in the development of this SEIS/RMP Amendment. Cooperating agencies are the USFWS, US Environmental Protection Agency, Office of Surface Mining Reclamation and Enforcement, Montana Department of Natural Resources and Conservation, and McCone, Sheridan, Prairie, and Rosebud Counties. In addition, there were other informal meetings, telephone conversations, and visits with agency representatives. No issues were identified by the cooperators.

## 1.5 AVAILABILITY AND APPROVAL OF THE PLAN

Copies of the ROD and the Miles City RMP Amendment may be obtained from the BLM website at https://go.usa.gov/xmbE4 or by obtaining a copy at the following locations:

BLM Bureau of Land Management
Montana State Office
5001 Southgate Drive
Billings, MT 59101

Bureau of Land Management
Miles City Field Office
111 Garryowen Road
Miles City, MT 59301

## Field Manager Recommendation

Having considered a full range of alternatives, associated effects, and public input, I recommend adoption of the BLM decisions in the attached Miles City RMP Amendment.

Eric D. Lepisto
Acting Field Manager
Miles City Field Office

11-25-2019
Date

## District Manager Concurrence

I concur with the adoption of the BLM decisions in the attached Miles City RMP Amendment.

Kimberly O. Prill
Acting District Manager
Eastern Montana/Dakotas District

11/25/2019
Date

## State Director Approval

I approve the adoption of the BLM decisions in the attached Miles City RMP Amendment.

John Mehlhoff
State Director
Montana/Dakotas BLM

11-25-19
Date

# Part 2 – Miles City Approved Resource Management Plan Amendment

The MCFO RMP Amendment to the 2015 Miles City RMP is included below. The purpose and need for the RMP Amendment is to provide additional analysis for land use planning, specifically for analyzing coal, oil, and gas in the MCFO and to determine the lands acceptable for further consideration for coal leasing.in response to the federal district court's order in Western Organization of Resource Councils v. Bureau of Land Management, Civil Action No. 4:2016cv00021 (D. Mont. 2017). The decision area is BLM-administered federal coal in the MCFO. This includes approximately 11.7 million acres of subsurface federal mineral coal estate for which the BLM has the authority to determine its availability (**Figure 1-1**). To determine areas acceptable for further consideration for coal leasing in the RMP Amendment, the BLM updated the coal screening (Appendix A of the Final SEIS/Proposed RMP Amendment), updated the reasonably foreseeable development scenario (**Appendix A**), and developed a stipulation for coal development for unsuitability criterion 15, Habitat for Species of High Interest to the State (Appendix A of the Final SEIS/Proposed RMP Amendment). **Figure 2-1** shows the coal acceptability geospatial results of the four-step coal screening process for the RMP Amendment. **Figure 2-2** shows the impact analysis area where surface disturbance is anticipated during the RMP Amendment based on the updated RFD scenario. **Table 2-1** depicts the overall coal acceptability allocation decisions for the RMP Amendment. **Appendix B** provides the detailed acreages and figures depicting each of the coal screening criterion for the RMP Amendment.

The RMP Amendment does not modify other resource allocation management decisions in the MCFO 2015 RMP; it only modifies the decisions for allocation of BLM administered coal in the MCFO. Goals, objectives, and management actions from the 2015 RMP for resources not related to the allocation of BLM-administered coal remain valid and applicable to future management decisions.

MCFO developed reclamation as a stipulated method of coal mining for all species listed under criterion 15, Habitat for Species of High Interest to the State. This stipulation requires reclamation using an approved seed mix that is appropriate to the soil type(s) found within the disturbance area.

**Table 2-1**
**Coal Acceptability Results for RMP Amendment[1]**

| Coal Screen[1] | Total (acres)[2] |
|---|---|
| Coal potential (Screen 1) | 1,744,800 |
| Unsuitable for all methods of coal mining without exception (Screen 2) | 190,590 |
| Unsuitable for all or certain stipulated methods of coal mining with exception/stipulation (Screen 2) | 1,259,270 |
| Unacceptable for further consideration for leasing (Screen 3) | 193,010 |
| Unacceptable for further consideration for leasing (Screen 4) | 236,630 |
| ***Total Acceptable*** | ***1,214,380*** |
| ***Total Unacceptable*** | ***530,420*** |

[1] See **Appendix B** for full coal screening results.
[2] There is overlap between the coal screens; acres are not additive.

Only land use plan-level decisions related to the allocation of BLM administered coal are made in this RMP Amendment; no implementation actions are included. Such actions will require further NEPA compliance and must demonstrate conformance with the RMP and this RMP Amendment.

***Stipulation for Criterion 15***

"The holder shall seed all disturbed areas with the seed mix, as agreed upon by the BLM based on the soil type(s). There shall be no primary or secondary noxious weed seed in the seed mixture. Seed shall be tested, and the viability testing of seed shall be done in accordance with state law(s) and within 6 months prior to purchase. Commercial seed shall be either certified or registered seed. The seed mixture container shall be tagged in accordance with state law(s) and available for inspection by the BLM Authorized Officer."



Part 2 – Approved Resource Management Plan Amendment

CANADA
MONTANA
Miles City RMPA/SEIS planning area
ID
WY
DANIELS
SHERIDAN
VALLEY
ROOSEVELT
RICHLAND
MCCONE
GARFIELD
MONTANA
DAWSON
NORTH DAKOTA
PRAIRIE
WIBAUX
ROSEBUD
TREASURE
CUSTER
FALLON
BIG HORN
POWDER RIVER
CARTER
SOUTH DAKOTA
This map is intended for display purposes. No warranty is made by the BLM for the use of this data in purpose not intended by the BLM. BLM has jurisdiction only on BLM-administered lands or subsurface estate.
Projected Coordinate System: NAD 1983 Albers; Geographic Coordinate System: GCS North American 1983; Datum: North American 1983; MCFOcoalSEIS_ROD_alts_B.pdf; November 18, 2019.
UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE
U.S. DEPARTMENT OF THE INTERIOR
MARCH 3, 1849
1 inch = 39.3 miles
0 5 10 20 30 Miles
Unacceptable
Acceptable

**Figure 2-1**
**Areas Acceptable for Further Consideration for Leasing**

November 2019 *Miles City Field Office Record of Decision and Approved Resource Management Plan Amendment* 2-3



UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure 2-2**
**Impact Analysis Area**

Unacceptable
Acceptable
Impact analysis area

1 inch = 39.3 miles

0 5 10 20 30 Miles