Shiloh S. Hernandez (MT Bar No. 9970)
Melissa Hornbein (MT Bar No. 9694)
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
Ph: (406) 204-4861
hornbein@westernlaw.org
hernandez@westernlaw.org

*Counsel for Plaintiffs*

Nathaniel Shoaff, *pro hac vice* (CA Bar No. 256641)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
Ph: (415) 977-5610
nathaniel.shoaff@sierraclub.org

*Counsel for Sierra Club*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS et al., | Case No. 4:20-cv-00076-BMM-JTJ |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS, SEVER AND TRANSFER, AND/OR STAY** |
| UNITED STATES BUREAU OF LAND MANAGEMENT, | |
| Defendant, | |
| and | |
| STATE OF WYOMING, | |

Intervenor-Defendant.

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................... iii

TABLE OF AUTHORITIES ................................................. v

ABBREVIATIONS AND SHORT FORMS ........................... ix

INTRODUCTION ............................................................ 1

BACKGROUND ............................................................. 2

I.  Federal fossil fuel management in the Powder River Basin
    harms Conservation Groups and the environment in Montana. ..... 2

II.  BLM's 2015 Buffalo and Miles City Resource Management
     Plans. ................................................................. 5

III.  Remand: BLM's 2020 Resource Management Plan
      Amendments. ........................................................ 7

LEGAL STANDARDS ..................................................... 9

ARGUMENT .................................................................. 11

I.  Venue is proper in Montana. ......................................... 11

    A.  Venue is proper in the district where Conservation
        Groups reside. .................................................... 11

    B.  Venue is proper in the district where harm from the
        challenged action is felt. ....................................... 14

II.  Given substantial interests in Montana and intertwined claims,
     severance and transfer are not warranted. ....................... 18

    A.  Severence is inappropriate because all claims arise from
        the same occurrence and share common questions of law
        and fact. ........................................................... 18

    B.  BLM has failed to make a compelling argument that
        Conservation Groups' chosen forum should be disturbed. ..... 21

III.    No stay is warranted because the facts on which BLM's
        argument rests have changed and a stay would harm
        Conservation Groups. ....................................................................... 25

CONCLUSION................................................................................................ 27

CERTIFICATE OF COMPLIANCE....................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*All. for the Wild Rockies v. Lyder*,
No. CV 09-73-M-DWM, 2009 WL 10677286 (D. Mont. Oct. 19,
2009) .......................................................................................................... 10, 22

*Animal Legal Def. Fund v. Dep't of Agric.*,
No. CV 12-4407-SC, 2013 WL 120185 (N.D. Cal. Jan. 8, 2013) ...................... 13

*Berger v. Bank of Colo.*,
No. CV 17-104-BLG-SPW-TJC, 2017 WL 5711409 (D. Mont.
Nov. 27, 2017) ........................................................................................... 11, 23

*Bullock v. BLM*,
No. 20-CV-62-BMM, 2020 WL 5746836 (D. Mont. Sept. 25, 2020).. 8, 9, 21, 26

*C2F, Inc. v. Bee Paper Co., Inc.*,
No. 8-CV-479-AC, 2008 WL 4791012 (D. Or. 2008) ...................................... 15

*California v. EPA*,
360 F. Supp. 3d 984 (N.D. Cal. 2018) .......................................................... 26, 27

*CBD v. Bureau of Reclamation*,
No. C08-1730RAJ, 2009 WL 10668581 (W.D. Wash. May 12,
2009) .............................................................................................................. 13

*CBD v. Pirzadeh*,
No. C09-1719-JCC, 2010 WL 11691840 (W.D. Wash. Apr. 28,
2010) .............................................................................................................. 13

*CBD v. Ross*,
419 F. Supp. 3d 16 (D.D.C. 2019) .................................................................. 27

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .......................................................................... 26

*Ctr. for Biological Diversity v. BLM*,
No. C 08-CV-5646, 2009 WL 1025606 (N.D. Cal. Apr. 14, 2009) .................. 13

*Earth Island v. Nash*,
   No. 19-CV-05792-RS, 2019 WL 11023709 (N.D. Cal. Oct. 7,
   2019) ......................................................................................... 13

*Envtl. Defense Fund, Inc. v. Corps of Engineers,*
   325 F.Supp. 728 (E.D.Ark.1971) ........................................... 13

*Gordon v. DTE Energy*,
   680 F. Supp. 2d 1282 (W.D. Wash. 2010) ............................. 15

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ........................................................ 25, 26

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) .............................................. 26

*Martensen v. Koch*,
   942 F. Supp. 3d 983 (N.D. Cal. 2013) ................................... 17

*MEIC v. Bernhardt*,
   CV-19-130-BLG-SPW-TJC, 2020 WL 4346604 (D. Mont. July 29,
   2020) .................................................................................. 16, 17

*Mont. Wildlife Fed'n v. Zinke*,
   CV 18-69-GF-BMM, 2018 WL 5810502 (D. Mont. Jan. 25, 2017) .......... passim

*Myers v. Bennett Law Offices*,
   238 F.3d 1068 (9th Cir. 2001) .............................................. 15

*NRDC v. TVA,*
   340 F.Supp. 400 (S.D.N.Y 1971) .................................... 13, 14

*S. Appalachian Biodiversity v. USFS*,
   162 F. Supp. 2d 1365 (N.D. Ga. 2001) ...................... 19, 20, 21

*S. Utah Wilderness All. v. Lewis*,
   845 F. Supp. 2d 231 (D.D.C. 2012) ............................... 14, 25

*Stafford v. Briggs*,
   444 U.S. 527 (1980) .............................................................. 10

*Underberg v. Emp'rs Mut. Casualty Co.*,
    CV-15-112-BLG-CSO, 2016 WL 1466506 (D. Mont. April 14,
    2016) ................................................................................................ 15, 16

*W. Organization of Res. Councils v. BLM* (*WORC I*),
    No. CV 16-21-GF-BMM, 2017 WL 374705 (D. Mont. Jan. 25,
    2017) ................................................................................................ passim

*W. Organization of Res. Councils v. BLM* (*WORC II*),
    No. CV 16-21-GF-BMM, 2018 WL 1475470 (D. Mont. Mar. 26,
    2018) ................................................................................................ 6, 7

*W. Organization of Res. Councils v. BLM* (*WORC III*),
    No. CV 16-21-GF-BMM, 2018 WL 9986684 (D. Mont. July 31,
    2018) ................................................................................................ 7, 16

*W. Watersheds v. Salazar*,
    No. CIV 08-0516-E-BLW, 2009 WL 1299626 (D. Idaho May 7,
    2009) ................................................................................................ 13, 25

*W. Watersheds v. Schneider*,
    No. 1:16-CV-83-BLW, 2019 WL 4863483 (D. Idaho 2019) ...................... 13, 14

*W. Watersheds v. Zinke*,
    No. 1:18-CV-00187-REB, 2018 WL 4210774 (D. Idaho Sept. 4,
    2018) ................................................................................................ 13, 19, 24, 25

*Western Organization of Resource Councils v. Clark* (*Clark*),
    No. CV-03-70-BLG-RWA (D. Mont. Jan. 13, 2004) .................................. 20, 24

*WildEarth Guardians v. FWS*,
    No. 12-CV-3085-AP, 2013 WL 136204 (D. Colo. Jan. 9, 2013) ...................... 25

*WildEarth Guardians v. Jewell* (*Jewell*),
    No. 1:15-CV-2026-WJM, 2016 WL 8577508 (D. Colo. June 17,
    2016) ................................................................................................ 20

**Statutes**

28 U.S.C. § 1391 ................................................................................................ passim

28 U.S.C. § 1404 ................................................................................ 10, 21

28 U.S.C. § 1406 .................................................................................... 10

**Rules**

Fed. R. Civ. P. 12 .............................................................................. 10, 25

Fed. R. Civ. P. 18 .................................................................................... 19

Fed. R. Civ. P. 21 .............................................................................. 11, 18

**Other Authorities**

14D Charles Alan Wright & Arthur R. Miller, Federal Practice and
     Procedure § 3806 (4th ed. 2020 update) ............................................ 15

Schwarzer et al., Federal Civil Procedure Before Trial (2015) ............................ 15

## ABBREVIATIONS AND SHORT FORMS

APA          Administrative Procedure Act

BLM          Bureau of Land Management

EIS          Environmental Impact Statement

GHG          Greenhouse gas

MEIC         Montana Environmental Information Center

NEPA         National Environmental Policy Act

RMP          Resource Management Plan

RMPA         Resouce Management Plan Amendment

ROD          Record of Decision

SEIS         Supplemental Environmental Impact Statement

WORC         Western Organization of Resource Councils

**INTRODUCTION**

Defendant Bureau of Land Management (BLM) asks this Court to rule that Montana residents cannot bring suit in a Montana court over harm that is occurring in Montana. This Court has previously rejected BLM's counterintuitive argument, and BLM provides no reason to reverse that ruling. *W. Organization of Res. Councils v. BLM* (*WORC I*), No. CV 16-21-GF-BMM, 2017 WL 374705, at *10 (D. Mont. Jan. 25, 2017).

Venue is proper in Montana because all elements of the instant case are firmly rooted in this state. Montana is where three of seven plaintiff Conservation Groups reside, where five maintain offices, and where all have members. Montana is where significant impacts from BLM's fossil fuel management in the Powder River Basin, in Montana *and* Wyoming, are being felt. Montana is the location of the prior judicial decisions from which BLM's actions and Conservation Groups' claims arise. And resolution of those claims requires, as BLM acknowledges, a determination as to whether BLM's actions on remand "satisfied NEPA and the Court's previous orders." (Doc. 25 at 15.) BLM elides the relevant fact that "the Court" is in fact *this* Court. Thus, BLM's motion to dismiss should be denied.

Severance and transfer are also unwarranted. Conservation Groups are entitled to great deference in their choice of venue, and Montana has a strong local interest in avoiding significant harm to the state's communities and environment

1

from fossil fuel production in Wyoming. This Court is familiar with the issues involved in this case, which arise from its prior rulings. It is no less convenient for BLM to litigate this case in Montana than in Wyoming. Although BLM repeats that on remand the Resource Management Plan Amendments (RMPAs) were approved in separate records of decision (RODs), (Doc. 25 at 12, 16, 16, 17, 19, 22, 23, 24, 26), this incantation does not negate the risks of unnecessary multiplication of litigation, needless waste of judicial resources, and inconsistent decisions on identical legal issues, all of which factored prominently in this Court's prior venue determination in *WORC I*.

Lastly, a stay not is warranted because circumstances have changed and Conservation Groups will be harmed by a stay.

## BACKGROUND

### I.    Federal fossil fuel management in the Powder River Basin harms Conservation Groups and the environment in Montana.

Plaintiffs Western Organization of Resource Councils (WORC), Montana Environmental Information Center (MEIC), Powder River Basin Resource Council, Northern Plains Resource Council (Northern Plains), Center for Biological Diversity, WildEarth Guardians, and Sierra Club (collectively, "Conservation Groups") either reside in Montana, have strong connections to Montana, or both. (Doc. 21, ¶¶ 13, 15-23.) Conservation Groups and their members are harmed by BLM's management and development of fossil fuels in

2

the Powder River Basin, and specifically in the Buffalo and Miles City planning areas. (*Id.*)

BLM does not dispute that air and water pollution from strip-mining coal and fracking for oil and gas in the Buffalo planning area in Wyoming *does not remain* in Wyoming. The Powder River Basin is the source of approximately 40% of all coal production in the United States, the majority of which comes from the Wyoming portion of the basin, including a significant amount from the Buffalo planning area. (Doc. 21, ¶¶ 32, 49.) The region is also a source of significant oil and gas production. (*Id.*) Combustion of fossil fuels from the Buffalo planning area exacerbates the worsening impacts of climate change, including increased wildfires and reduced flows in Montana's rivers. (*Id.*, ¶ 34.) These impacts harm Montana residents' health and threaten the economic viability of farming and ranching in the state. (*Id.*) Excessive salinity in the Powder and Tongue Rivers from fossil fuel extraction in Wyoming threatens the livelihood of Montana farmers and ranchers who depend these rivers. (*Id.*, ¶ 32.) Both rivers are classified as "impaired" for agricultural use in Montana due to excessive salinity. (*Id.*) Crops suffer as salt concentrations from fossil fuel pollution increase in these rivers. (*See Id.*) Thus, Montana farmers and ranchers are harmed directly by salinity pollution from fossil fuel development, and further harmed indirectly from reduced summer flows in

these rivers due to climate change caused by combustion of fossil fuels, including the large amounts from the Buffalo planning area in Wyoming. (*Id.*, ¶¶ 31-32, 34.)

In addition to greenhouse gas (GHG) pollution, combustion of fossil fuels from the Powder River Basin, including the billions of tons of coal from the Buffalo planning area, emits mercury, lead, and other toxic pollutants. (*Id.*, ¶ 51.) This dangerous air pollution, enabled by BLM's RMPAs, is causing and, if unabated, will continue to contribute to severe health impacts, including tens of thousands of premature deaths, cases of respiratory and cardiac illness, and significant harm to the cognitive development of children throughout the nation. (*Id.*)

These toxic pollutants, along with pollution released directly from fossil fuel development in  the Buffalo planning area, also impact Montana's rivers. (*Id.*, ¶ 33.) The two principal rivers in the Powder River Basin, the Powder River and the Tongue River, flow north from the Buffalo planning area in Wyoming into the contiguous Miles City planning area in Montana. (*Id.*, ¶ 33.) Both rivers have elevated levels of heavy metals, including cadmium, chromium, copper, lead, mercury, selenium, and zinc. (*Id.*) The U.S. Fish and Wildlife Service recently identified coal and oil and gas development in the Wyoming portion of the Powder River basin as the likely source of this pollution, which threatens the health and continued existence of a tiny but unique population of endangered pallid sturgeon

(*Scaphirhynchus albus*) that resides in the Yellowstone River in Montana and the Montana portion of the Powder River. (*Id.*)

Because the ecology of the Powder River Basin, including the contiguous Buffalo and Miles City planning areas, is interconnected, harm from energy development in Wyoming threatens the health and viability of other species in Montana as well. (*Id.*, ¶¶ 28-30.) For example, sage grouse populations in the Montana and Wyoming portions of the Powder River Basin are genetically connected and interdependent. (*Id.*, 29.) Thus, energy development that threatens sage grouse populations in Wyoming also threatens the health and viability of sage grouse in Montana. (*Id.*, ¶ 30.)

The *cumulative* impacts of fossil fuel development in both the Buffalo and Miles City planning areas worsen all of these impacts in Montana. (*Id.*, ¶¶ 29-35.) All of these impacts harm Conservation Groups and their members in Montana. (*Id.*, ¶¶ 13-23.)

## II.   BLM's 2015 Buffalo and Miles City Resource Management Plans.

BLM issued revised resource management plans (RMPs) for the Buffalo and Miles City Field Offices in 2015, without placing any meaningful limitations on fossil fuel development. (*Id.*, ¶ 36.) Because the continued fossil fuel development permitted by the RMPs harmed their members (as well as their communities and the environment), several Conservation Groups challenged the approval of both

plans pursuant to the National Environmental Policy Act (NEPA). *See W. Organization of Res. Councils v. BLM* (*WORC II*), No. CV 16-21-GF-BMM, 2018 WL 1475470, at *6 (D. Mont. Mar. 26, 2018). The plaintiffs raised identical claims based on identical errors in the environmental impact statements (EISs) for both RMPs. *Id.* at *1.

This Court rejected BLM's motion to dismiss or sever and transfer claims related to the Buffalo RMP, explaining:

> (1) the RMPs are adjacent areas encompassing two halves of the resource-rich and ecologically important Powder River Basin; (2) the Miles City and Buffalo RMP are connected by the BLM's decision to approve them in a single ROD [record of decision]; (3) hearing arguments that apply to both RMPs in one court serves judicial economy; and (4) keeping the claims together before one court will prevent the risk of inconsistent judgments.

*WORC I*, 2017 WL 374705, at *10.

In March 2018, this Court granted summary judgment to the plaintiffs on three of their six claims. *WORC II*, 2018 WL 1475470, at *19. BLM violated NEPA by failing to (1) consider alternatives that would reduce the amount of coal available for development; (2) analyze the "environmental consequences of downstream combustion of coal, oil, and gas open to development under each RMP"; and (3) analyze both the short- and long-term climate impacts of methane emissions. *Id.* at *18.

6

The Court subsequently remanded the matter and ordered BLM to correct these deficiencies. *W. Organization of Res. Councils v. BLM* (*WORC III*), No. CV 16-21-GF-BMM, 2018 WL 9986684, at *2 (D. Mont. July 31, 2018).

## III.  Remand: BLM's 2020 Resource Management Plan Amendments.

On remand, pursuant to *WORC III*, BLM issued supplemental environmental impact statements (SEIS) and RMPAs for the Buffalo and Miles City Field Offices in 2019, this time through separate RODs. (Doc. 21, ¶ 38.)

As in the prior litigation, Conservation Groups here allege that the Buffalo and Miles City SEISs suffered *identical* NEPA errors. (Doc. 21, ¶ 38.) First, despite this Court's directive to consider coal alternatives that would reduce climate impacts, *WORC II*, 2018 WL 1475470, at *18, on remand, both of BLM's SEISs only considered alternatives that would result in *identical* amounts of coal development and, consequently, *identical climate impacts* from coal production across alternatives. (Doc. 21, ¶¶ 49, 56.)

Moreover, despite this Court's plain directive that BLM analyze "the environmental consequences of downstream combustion of coal, oil, and gas open to development under each RMP," *WORC II*, 2018 WL 1475470, at *18, on remand, both SEISs considered only *one impact* of downstream coal combustion— GHG emissions. (Doc. 21, ¶ 63.) While GHGs are a key impact, coal combustion

also results in foreseeable emissions of mercury, lead, and other toxic and harmful pollutants that must be analyzed and disclosed.

Because BLM failed to conduct the analysis that NEPA and this Court's decision required, Conservation Groups brought the instant suit. (Docs. 1, 21.) Conservation Groups again filed in Montana pursuant to 28 U.S.C. § 1391(b)(2), (e)(1), because three of groups (WORC, MEIC, and Northern Plains) reside in Montana and because a substantial portion of the impacts and property giving rise to the case occur or are located in Montana. (Doc. 21, ¶ 13.)

In December 2020, Conservation Groups amended their complaint, including additional factual allegations regarding environmental harms and adding claims that BLM's approval of the RMPAs violated the Appointments Clause of the U.S. Constitution and the Federal Vacancies Reform Act (FVRA) following this Court's decision in *Bullock v. BLM*, No. 20-CV-62-BMM, 2020 WL 5746836 (D. Mont. Sept. 25, 2020). (Doc. 21, ¶¶ 65-75.)

BLM appealed this Court's ruling in *Bullock* in December (Doc. 25 at 27), and appears to have subsequently attempted to paper over the deficiency identified in that case. On December 28, 2020, a new Land Use Planning Protest Resolution Report was issued for the Miles City Field Office RMPA.[1] On January 5, 2021,

---

[1] Land Use Planning Protest Resolution Report (December 28, 2020), *available at* https://www.blm.gov/programs/planning-and-nepa/public-participation/protest-resolution-reports (select "Montana-Dakotas," then follow "Miles City Field Office

BLM reissued the RMPA for the Miles City Field Office with the signature of then-Secretary of Interior, David Bernhardt.[2] Three days later, BLM issued an "errata sheet" for the Buffalo Field Office, asserting that protests of the Buffalo RMPA and SEIS had been resolved, not by erstwhile Acting-Director William Perry Pendley, but by BLM's "Acting Assistant Director for Resources and Planning."[3]

After Conservation Groups amended their complaint, BLM renewed its motion to dismiss or, alternatively, to sever and transfer. (Doc. 24.) BLM further requested a stay pending its appeal filed in *Bullock*.

## LEGAL STANDARDS

In a suit against a federal agency, venue is proper in any district where:

> (A) a defendant … resides, (B) a substantial part of the events or omission giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

---

Final Supplemental EIS and Proposed RMP Amendment (December 28, 2020)" hyperlink).

[2] BLM, Miles City Field Office, ROD and Approved RMPA, at 1-11 (Jan. 5, 2021), *available at* https://eplanning.blm.gov/eplanning-ui/project/116998/570 (follow "MCFO_ROD_ARMP (2021-01-04) FINAL" hyperlink).

[3] BLM, Errata Sheet (Jan. 8, 2021), *available at* https://eplanning.blm.gov/eplanning-ui/project/117345/570 (follow "ROD_Errata-BFO_ARMPA" hyperlink).

28 U.S.C. § 1391(e)(1). The purpose of this provision is to "provide nationwide venue for the convenience of individual plaintiffs in actions … against the Government." *Stafford v. Briggs*, 444 U.S. 527, 542 (1980). "Typically a court affords great deference to a plaintiff's choice of forum as long as the forum represents a proper choice." *WORC I*, 2017 WL 374705, at *4.

A party may move to dismiss or, alternatively, to transfer a case "laying venue in the wrong … district." 28 U.S.C. § 1406(a). A party, as Wyoming did here, may also waive any venue challenge by failing to "interpose timely and sufficient objection." *Id.* § 1406(b); Fed. R. Civ. P. 12(h)(1).

Even if venue is proper in a given district, upon consideration of "the convenience of parties and witnesses" and the "interests of justice," a court may, in its discretion, transfer the action to another proper federal district court. 28 U.S.C. § 1404(a). In considering whether to transfer, a plaintiff's chosen forum "is presumed to be the most convenient place for them to litigate" and "is to be honored" "[a]bsent some compelling argument." *All. for the Wild Rockies v. Lyder*, No. CV 09-73-M-DWM, 2009 WL 10677286, at *1 (D. Mont. Oct. 19, 2009); *WORC I*, 2017 WL 374705, at *4. A party's interest in moving litigation to a given forum is entitled to significantly less consideration if the party is "not a resident or citizen of the forum state." *Berger v. Bank of Colo.*, No. CV 17-104-BLG-SPW-TJC, 2017 WL 5711409, at *3 (D. Mont. Nov. 27, 2017).

.

Courts have broad discretion over severance of claims, which is guided by consideration of various factors. Fed. R. Civ. P. 21; *Mont. Wildlife Fed'n v. Zinke*, CV 18-69-GF-BMM, 2018 WL 5810502, at *2 (D. Mont. Jan. 25, 2017). Given that severance results in inefficiency and multiplication of litigation, courts are often reluctant to sever and transfer claims, as this Court has noted. *Mont. Wildlife*, 2018 WL 5810502, at *6-7.

## ARGUMENT

## I.   Venue is proper in Montana.

Venue is proper in Montana for the claims against the Buffalo RMPA (and the Miles City RMPA) because three of seven Conservation Groups reside in Montana, the federal fossil fuel development enabled by the Buffalo RMP harms Conservation Groups and their members in Montana, and the claims against the Buffalo RMPA arise from this Court's prior ruling in *WORC II*.

### A.   Venue is proper in the district where Conservation Groups reside.

Venue is proper in Montana, first, because WORC, MEIC, and Northern Plains (Doc. 21, ¶ 13) "reside[]" in Montana and "no real property is involved in the action." 28 U.S.C. § 1391(e)(1). In *Montana Wildlife Federation*, 2018 WL 5810502 at *2, conservation organizations challenged a national BLM policy directive that weakened sage grouse protections and eight oil and gas lease sales

11

across three states that implemented the policy, arguing that the policy and leasing

decisions violated NEPA and other federal laws. One of the lease sales involved

federal land in Montana, but the others were from Wyoming and Nevada. *Id.* *1.

Two of the five organizations were residents of Montana. *Id.* at *5. BLM moved to

sever and transfer the claims involving the Wyoming and Nevada leases. *Id.* at *2.

This Court held that severing the claims was not warranted because the

organizations properly joined the claims against BLM and because the alleged

flaws in the leases all related to the same national policy directive. *Id.* at *3. The

Court then explained that "the District of Montana represents a proper venue

because two of the five Plaintiffs … are based in the District of Montana." *Id.* at

*5. So too here. Because three of the seven Conservation Organizations reside in

Montana, venue is proper in the District of Montana. 28 U.S.C. § 1391(e)(1)(C);

(Doc. 21, ¶ 13).[4]

BLM contends that residence-based venue under 28 U.S.C. § 1391(e)(1)(C)

is not applicable because "courts routinely consider actions challenging BLM's

adoption of a land use plan for a large area of property" to "involve real property."

(Doc. 25 at 14 (quoting *Ctr. for Biological Diversity v. BLM*, No. C 08-CV-5646,

---

[4] BLM mistakenly asserts that Conservation Groups have not invoked venue based
on their residence under 28 U.S.C. § 1391(e)(1)(C). (*See* Doc. 25 at 13.) In fact,
Conservation Groups cited their residence in Montana as one basis for venue in
Montana. (Doc. 21, ¶ 13.)

2009 WL 1025606, at *3 (N.D. Cal. Apr. 14, 2009).) In fact, *Center for Biological Diversity*, the principal case on which BLM relies, is an outlier that has no controlling weight here and has not been followed by other federal courts. In addition to this Court's ruling in *Montana Wildlife Federation*, all other courts to consider the question over the past fifty years have concluded that challenges to federal agency decision-making under NEPA and other environmental laws do not "involve real property," as contemplated by 28 U.S.C. § 1391(e)(1)(C).[5] In rejecting the analysis from *Center for Biological Diversity*, the District of Idaho recently explained:

> [A]lmost any dispute over public or private decisions will in some way "involve real property," taken literally. The touchstone for applying § 1391(e)(4) [now 28 U.S.C. § 1391(e)(1)(C)] cannot sensibly be whether real property is marginally affected by the case at issue. Rather, the action must center directly on the real property, as with actions concerning the right, title or interest in real property.

---

[5] *W. Watersheds v. Schneider*, No. 1:16-CV-83-BLW, 2019 WL 4863483, *3 (D. Idaho 2019); *W. Watersheds v. Zinke*, No. 1:18-CV-00187-REB, 2018 WL 4210774, at *5 & n.7 (D. Idaho Sept. 4, 2018); *Earth Island v. Nash*, No. 19-CV-05792-RS, 2019 WL 11023709, at *4 (N.D. Cal. Oct. 7, 2019); *Earth Island v. Quinn*, 56 F. Supp. 3d 1110, 1115-17 (N.D. Cal. 2014); *Animal Legal Def. Fund v. Dep't of Agric.*, No. CV 12-4407-SC, 2013 WL 120185, at *2 (N.D. Cal. Jan. 8, 2013); *CBD v. Pirzadeh*, No. C09-1719-JCC, 2010 WL 11691840, at *3 & n.2 (W.D. Wash. Apr. 28, 2010); *CBD v. Bureau of Reclamation*, No. C08-1730RAJ, 2009 WL 10668581, at *3-4 (W.D. Wash. May 12, 2009); *W. Watersheds v. Salazar*, No. CIV 08-0516-E-BLW, 2009 WL 1299626, at *2 (D. Idaho May 7, 2009); *NRDC v. TVA,* 340 F.Supp. 400, 406 (S.D.N.Y 1971), *reversed on other grounds,* 459 F.2d 255 (2nd Cir.1972); *Envtl. Defense Fund, Inc. v. Corps of Engineers,* 325 F.Supp. 728, 732 (E.D.Ark.1971).

13

*W. Watersheds*, 2019 WL 4863483, *3 (quoting *NRDC,* 340 F.Supp. at 406). Thus, "Congress seems to have indicated that it intended mainly to cover disputes over legal interests in real property. Most authority appears to have followed that logic, generally finding that actions 'involve real property' when they involve disputes over real property interests." *Id.* (internal ellipse omitted) (quoting *Earth Island*, 56 F. Supp. 3d at 1115-16).[6]

As in *Montana Wildlife Federation*, because three of seven Conservation Groups are residents of Montana, venue in this action challenging BLM's compliance with NEPA, the U.S. Constitution, and the FVRA is proper in Montana.

**B.    Venue is proper in the district where harm from the challenged action is felt.**

Venue is also proper in Montana because "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" in Montana. 28 U.S.C. § 1391(e)(1)(B). This

---

[6] BLM also cites *Southern Utah Wilderness Alliance v. Lewis*, 845 F. Supp. 2d 231, 232-34 (D.D.C. 2012). (Doc. 25 at 14.) There, however, the court merely made the unremarkable and undisputed observation that under 28 U.S.C. § 1391(e)(1)(B), environmental litigation regarding a resource management plan is proper in the district where the land involved is located. *S. Utah Wilderness All.*, 845 F. Supp. 2d at 234 ("Because this action concerns real property situated in Utah, all parties conclude that this suit could have been brought in the District of Utah."). The court did not address, discuss, or apply 28 U.S.C. § 1391(e)(1)(C).

provision repeats the general "transactional venue" standard from 28 U.S.C.

§ 1391(b)(2). *See* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice

and Procedure § 3806 (4th ed. 2020 update). "The 'substantiality' requirement is

'intended to preserve the element of fairness so that a defendant is not hauled into a

remote district having no real relationship to the dispute.'" *Underberg v. Emp'rs*

*Mut. Casualty Co.*, CV-15-112-BLG-CSO, 2016 WL 1466506, at *4 (D. Mont.

April 14, 2016) (quoting Schwarzer et al., Federal Civil Procedure Before Trial,

¶ 4:325 (2015)). Here, as in *WORC I*, venue is proper in Montana because "land

*affected* by the decision is located" here. *WORC I*, 2017 WL 374705 at *4

(emphasis added).

Under this standard, and contrary to the assertion of BLM (Doc. 25 at 12),

venue is proper where the *harms are felt*. *E.g.*, *Gordon v. DTE Energy*, 680 F.

Supp. 2d 1282, 1287 (W.D. Wash. 2010) (venue for Fair Credit Reporting Act

proper in Washington because plaintiff suffered harm to credit in Washington

where plaintiff resided, though allegedly delinquent bills were issued in Michigan);

*C2F, Inc. v. Bee Paper Co., Inc.*, No. 8-CV-479-AC, 2008 WL 4791012, *8 (D.

Or. 2008) (noting that in assessing transactional venue Ninth Circuit has

recognized the "locus of the injury" to be a relevant factor); *Myers v. Bennett Law*

*Offices*, 238 F.3d 1068, 1075-76 (9th Cir. 2001) (venue proper in district where

harm felt); *see MEIC v. Bernhardt*, CV-19-130-BLG-SPW-TJC, 2020 WL

15

4346604, at *5 (D. Mont. July 29, 2020) (denying motion to transfer venue in NEPA suit in part because "environmental impacts will be felt in Montana").

In *Underberg*, 2016 WL 1466506, at *5-6, the plaintiff raised a claim of spoliation over a defendant's failure to preserve evidence from an automobile accident. The court explained that while a "substantial part" of the events at issue—including both the accident and spoliation—occurred in North Dakota, the harm to the plaintiff was felt in Montana. *Id.* at *6. Noting the Ninth Circuit's decisions laying transactional venue in the district where harm is felt, the court held that a "substantial part of the events or omission giving rise to the claim occurred" in Montana, making venue proper in this district. *Id.* at *6-7. The court further noted that the plaintiff was a Montana resident and that the underlying insurance policy was issued to a Montana entity. *Id.* at *6.

So too here. Conservation Groups' allege that fossil fuel development in Wyoming is causing severe and widespread harm to the environment, communities, and Conservation Groups in Montana. (Doc. 21, ¶¶ 13-25, 28-35, 49.) These already significant harms will be aggravated further by the massive fossil fuel development allowed under BLM's RMPAs. (*Id.*, ¶¶ 49-52, 56, 63.) Moreover, like *Underberg*, here the nexus to Montana is not limited to the harm felt in the state. The entire SEIS and RMP amendment processes at issue arose out of this Court's prior ruling in *WORC II* and its order in *WORC III*, and BLM's

16

failure to comply with this Court's direction in those decisions.[7] Further, as in *Underberg*, 2016 WL 1466506, at *6, all Conservation Groups have strong connections to Montana, and three of seven are residents. (Doc. 21, ¶ 13.) As such, transactional venue firmly roots Conservation Groups' claims against the Buffalo RMPA and SEIS in Montana. 28 U.S.C. § 1391(e)(1)(B); *Underberg*, 2016 WL 1466506, at *7; *MEIC*, 2020 WL 4346604, at *5.

BLM incorrectly asserts that in Administrative Procedure Act cases the transactional venue provision of 28 U.S.C. § 1391(e)(1)(B) is limited to the district where agency decision-making occurs. (Doc. 25 at 11-12.) But this Court explained in *WORC I*, that in such cases, venue may be proper *either* "where the federal agency's decision-making activities took place" *or*, as here, "in the district where the land *affected* by the decision is located." 2017 WL 374705, at *4 (emphasis added). In this case, land in Montana is significantly affected by the upstream fossil-fuel development in the Buffalo planning area that the Buffalo RMPA permits. (Doc. 21, ¶¶ ¶¶ 13-25, 28-35, 49-52, 56, 63.)

BLM repeatedly cites this Court's statement from *WORC I*, 2017 WL 374705, at *5, that "if the Court considers the claims as applying to the Miles City

---

[7] While it is not necessary for the Court to address the issue, this also demonstrates that both RMPAs and SEISs arose from the same nucleus of fact, making the Buffalo RMPA and SEIS the proper subject of pendent venue in Montana. *E.g.*, *Martensen v. Koch*, 942 F. Supp. 3d 983, 998 (N.D. Cal. 2013).

and Buffalo RMPs separately, venue for the Buffalo claims would not be proper."
(Doc. 25 at 4, 9, 12.) But that statement is inapposite here. There, BLM had
prepared a single ROD, "represent[ing] a final agency action." *WORC I*, 2017 WL
374705, at *8. In *WORC I*, the decision-making at BLM's Miles City Field Office
*alone* was sufficient to show that a substantial part of the ROD (which embraced
the Buffalo RMP in Wyoming) "occurred in Montana," making Montana an
appropriate venue. *Id.* at *7. Here, however, since BLM issued two separate RODs
on remand, Conservation Groups have not argued that *decision-making* at the
Miles City Field Office establishes venue for their claims against the Buffalo
RMPA and SEIS. Rather, venue in Montana is proper because Conservation
Groups reside in Montana, harm from the Buffalo RMPA and SEIS is felt in
Montana, and Conservation Groups' claims arise from prior decisions from this
Court. *See supra* Argument Part I.A-B. Thus, BLM's motion to dismiss should be
denied.

## II.    Given substantial interests in Montana and intertwined claims, severance and transfer are not warranted.

### A.    Severence is inappropriate because all claims arise from the same occurrence and share common questions of law and fact.

Federal Rule of Civil Procedure 21 grants a district court broad discretion to
"sever any claim against a party" in the interests of justice. Fed. R. Civ. P. 21;
*Mont. Wildlife*, 2018 WL 5810502, at *2. Severance should be denied where

claims arise from connected transactions and occurrences raising "common questions of law and fact." *Id.* Severance should also be denied where it will result in delay, inconvenience, and added expense. *Id.* at *6; *W. Watersheds*, 2018 WL 4210774, at *2; *S. Appalachian Biodiversity v. USFS*, 162 F. Supp. 2d 1365, 1367 (N.D. Ga. 2001). A request for severance, moreover, must be weighed against a plaintiff's right to join "as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a); *Mont. Wildlife*, 2018 WL 5810502 at *4.

Here, contrary to BLM's arguments (Doc. 25 at 17), severance is unwarranted because Conservation Groups' claims arose from closely connected transactions; namely BLM's RMPAs and SEISs for the Buffalo and Miles City Field Offices issued contemporaneously in response to this Court's rulings in *WORC II* and *WORC III*. (Doc. 21, ¶ 38.) The claims against both sets of RMPAs and SEISs involve common questions of law because each SEIS suffers identical flaws and will be measured against the same NEPA obligations and this Court's prior orders. (Doc. 21, ¶ 38.) They also share common questions of fact, because each claim involves analysis of the extensive and severe harm to public health and the environment from air pollution other than GHGs that results from fossil fuel combustion. (Doc. 21, ¶ 51-52, 63.)

Thus, as in *Montana Wildlife Federation*, 2018 WL 5810502 at *4, Conservation Groups had the right to join these claims against BLM in one action.

Doing so "will relieve the judicial system of multiple cases involving the same

questions of law and fact." *Id.* BLM's effort to break this case in two, on the other

hand, would cause an unnecessary waste of resources of the parties and the courts.

*Id.* at *6; *S. Appalachian Biodiversity*, 162 F. Supp. 2d at 1367 ("Efficiency alone

suggests that this issue should be resolved by one court as opposed to two, and the

plaintiff should not be forced to unnecessarily litigate this case in two different

courts.").

BLM's citations to *WildEarth Guardians v. Jewell* (*Jewell*), No. 1:15-CV-

2026-WJM, 2016 WL 8577508 (D. Colo. June 17, 2016), and *Western*

*Organization of Resource Councils v. Clark* (*Clark*), No. CV-03-70-BLG-RWA

(D. Mont. Jan. 13, 2004), are unavailing. This Court distinguished both cases in

*WORC I*, 2017 WL 374705, at *6-7, and there is no reason to change that analysis

here. In *Jewell* the District of Colorado determined that claims brought against four

distinct coal mines should be severed, noting that the mines were geographically

remote, were subject to distinct NEPA processes, and had distinct prior litigation

histories. *Id.* at *5-6. The opposite situation exists here, where the Buffalo and

Miles City planning areas are geographically contiguous with cross-boundary

impacts; the NEPA review processes originated from the same decisions (*WORC II*

and *WORC III*), followed the same timeline and contain the same faults; and the

challenged actions have the same litigation history. (Doc. 21, ¶¶ 31-35, 37-39, 49-

52, 56, 63.) *Clark* is inapposite for the same reason. Here, unlike *Clark*, the challenged RMPAs and SEISs both arose from the same occurrence—the first iteration of this litigation and this Court's rulings in *WORC II* and *WORC III*. It would be a significant waste of the parties' and the Court's resources to fracture this litigation into distinct cases. *Mont. Wildlife*, 2018 WL 5810502, at *6; *S. Appalachian Biodiversity*, 162 F. Supp. 2d at 1367.

Finally, BLM asserts that severance is warranted because this Court set aside the Miles City RMPA in *Bullock* for violating the Appointments Clause and the FVRA. (Doc. 25 at 18.) This argument misses the mark because, in an apparent attempt to rectify the problem in *Bullock*, BLM reissued the ROD and Protest Resolution for the Miles City RMPA and issued an "errata sheet" for the Buffalo RMPA. *See supra* Background Part III. Accordingly, resolution of Conservation Groups' claims under the Appointments Clause and the FVRA will turn on the adequacy of these subsequent actions.

> **B.    BLM has failed to make a compelling argument that Conservation Groups' chosen forum should be disturbed.**

In assessing whether to transfer a case under 28 U.S.C. § 1404(a), a court considers first whether the action could have been brought in the proposed transferee district. *Mont. Wildlife*, 2018 WL 5810502, at *4. Conservation Groups do not dispute that their claims against the Buffalo RMPA and SEIS could have

21

been brought in Wyoming. The second step is "an individualized, case-specific, analysis of convenience and fairness to the parties and witnesses, and an assessment of the interests of justice." *Id.* The burden is on the party seeking transfer to demonstrate that the transferee district is more appropriate. *Id.* In this assessment, the court considers multiple factors, including:

> (1) the convenience of the parties and witnesses; (2) familiarity of each forum with the applicable law; (3) the plaintiffs' choice of forum; (4) contacts of the different parties with the forum; (5) local interest in the controversy; (6) the ease of access to sources of proof and evidence; and (7) relative congestion in each forum.

*Id.* A defendant must make a "compelling" showing to disturb a plaintiffs' chosen forum. *Id.* at *5; *All. for the Wild Rockies*, 2009 WL 10677286, at *1.

As noted, this Court held in *WORC I* that BLM had not carried its burden to transfer the case because of (1) the integrated ecology and economy of the Powder River Basin and cross-border impacts; (2) judicial economy; and (3) interest in avoiding inconsistent judgments. 2017 WL 374705, at *8-9. The latter two points were "compelling." *Id.* at *9. These same interests control here. Indeed, new federal research demonstrates that the cross-border impacts in Montana from energy development in the Buffalo planning area are severe, threating the survival of endangered and at risk species and harming Montana agriculture. (Doc. 21, ¶¶ 28-35.) The Buffalo RMPA will allow this harmful activity to continue for two decades. (*Id.*, ¶ 49.) BLM does not dispute this. (Doc. 25 at 22.)

In addition to these compelling interests, Montana is the resident forum of three of seven Conservation Groups (Doc. 21, ¶ 13.), a circumstance that is entitled to "great deference." *WORC I*, 2017 WL 374705, at *4. By contrast, BLM's desired transferee district, Wyoming, is not its resident forum, *Mont. Wildlife*, 2018 WL 5810502, at *5, and is therefore is entitled to significantly less consideration (BLM's interest in Wyoming is no different than its interest in Montana), *see Berger*, 2017 WL 5711409, at *3 (party's forum preference entitled to less deference if the party is not a resident of that forum). Accordingly, as in *WORC I*, severance and transfer are unwarranted.

BLM raises three arguments for transfer, but they lack merit. First, BLM asserts that Conservation Groups' choice of forum is not entitled to deference because "the operative facts concerning the 2019 Buffalo RMPA have no connection to Montana." (Doc. 25 at 22.) This argument fails because Conservation Groups' undisputed pleadings show that Montana's communities and environment are severely harmed by upstream fossil fuel development in Wyoming and the Buffalo planning area, and the Buffalo RMPA will allow this deleterious development to persist for decades. (Doc. 21, ¶¶ 28-35, 49.)

BLM similarly misses the mark regarding inconsistent judgments. (Doc. 25 at 23.) Here, because BLM's RMPAs and SEISs from Buffalo and Miles City suffered identical flaws (Doc. 21, ¶¶, 38, 49, 56), litigating these same issues in

two courts risks inconsistent rulings. The fact that the RMPAs and SEISs were not approved in a single ROD does not diminish this risk. *WORC I* explained that inconsistent rulings can occur in cases involving separate RODs, citing *Clark*, which involved separate RODs, but nevertheless resulted in inconsistent rulings from the Ninth and Tenth Circuits. 2017 WL 374705, at *9; *see Mont. Wildlife*, 2018 WL 5810502, at *6 (noting risk of inconsistent rulings). Further, while BLM asserts that its separate approvals of the RMPAs permits parallel litigation in two districts (Doc. 25 at 23), the agency fails to explain why such cumbersome and duplicative litigation would be appropriate, especially given that there is no asserted gain of convenience for BLM. *Cf. WORC I*, WL 374705, at *9 (noting compelling interest in judicial economy); *accord Mont. Wildlife*, 2018 WL 5810502, at *6; *W. Watersheds*, 2018 WL 4210774, at *7.

BLM's only affirmative argument for transfer—that "localized controversies should be decided at home" (Doc. 24 at 9, 25)—is inapplicable to the instant case, where BLM's actions in the Buffalo planning area are causing severe cross-border impacts in Montana. In *Montana Wildlife Federation*, 2018 WL 5810502, at *5-6, this Court noted that because the impacts of the challenged actions occurred "beyond the borders" of individual districts, the "parochial" interest of any one district was entitled to "less weight." *Id.* (quoting *W. Watersheds*, 2009 WL

1299626, at *6). The Court also noted that the District of Idaho had reached the same conclusion twice previously. *W. Watersheds*, 2018 WL 4210774, at *6.[8]

Here, the cumulative effects of federal energy development in the Powder River Basin extend well beyond the basin, and energy development in the Buffalo planning area has substantial impacts on communities and the environment in Montana. (Doc. 21, ¶¶ 28-35, 49.) As such, any purely local interest in Wyoming is entitled to less weight and is further diminished by the fact that BLM has no particular interest in Wyoming. Moreover, the State of Wyoming did not dispute that venue is proper in Montana. (Doc. 10 at 3, ¶ 2); Fed. R. Civ. P. 12(b)(3), (h)(1).

## III.   No stay is warranted because the facts on which BLM's argument rests have changed and a stay would harm Conservation Groups.

The proponent of a stay bears the burden of establishing its need. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). To determine if a stay is warranted, the court considers:

> (1) the possible damage which may result from the granting of a stay,
> (2) the hardship or inequity which a party may suffer in being required

---

[8] BLM's citations to *WildEarth Guardians v. FWS*, No. 12-CV-3085-AP, 2013 WL 136204 (D. Colo. Jan. 9, 2013), and *Southern Utah Wilderness Alliance v. Lewis*, 845 F. Supp. 2d 231 (D.D.C. 2012), are inapposite. There, unlike here, none of the impacts alleged were felt in the districts where plaintiffs filed. *WildEarth Guardians*, 2013 WL 136204 at *3 (no "spill-over effects" alleged in Colorado, where plaintiffs set venue); *S. Utah Wilderness All.*, 845 F. Supp. 2d at 237-38 (no impacts alleged in District of Columbia, where plaintiffs filed).

> to go forward, and (3) the orderly course of justice measured in terms
> of the simplifying or complicating of issues, proof, and questions of law
> which could be expected to result from a stay.

*California v. EPA*, 360 F. Supp. 3d 984, 993 (N.D. Cal. 2018) (internal quotations

omitted) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). "[I]f

there is even a fair possibility that the stay for which the requesting party prays will

work damage to someone else, then the party seeking a stay must make out a clear

case of hardship or inequity in being required to go forward." *California*, 360 F.

Supp. 3d at 993 (quoting *Landis*, 299 U.S. at 255). "[B]eing required to defend a

suit, without more, does not constitute a 'clear case of hardship or inequity'...."

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

Here, no stay is warranted. BLM premises its stay request on its appeal of

this Court's ruling in *Bullock*. (Doc. 25 at 27.) However, after appealing that

ruling, BLM reissued its Miles City RMPA, and purported to amend the Buffalo

RMPA.[9] As such, resolution of Conservation Groups' claims under the

Appointments Clause and the FVRA will turn on the adequacy of those subsequent

actions, which are not the subject of the *Bullock* appeal.

Further, with the change of federal and state administrations, it is far from

clear either party will continue to pursue the current appeal in *Bullock*. BLM's

---

[9] *See supra* Background Part III and notes 1-3.

speculation about potential future mootness of Conservation Groups' NEPA claims

against the Miles City RMPA and SEIS (premised, as it is, on BLM's appeal being

unsuccessful (Doc. 25 at 27)) does not warrant staying the live controversy in this

case. *CBD v. Ross*, 419 F. Supp. 3d 16, 22-23 (D.D.C. 2019) (possibility of future

mootness did not justify stay).

Finally, given the ongoing harm from fossil fuel development in the Powder

River Basin, staying this case will cause hardship to Conservation Groups. (Doc.

21, ¶¶ 13-35.) By contrast, BLM has articulated no harm it would suffer from

litigating the instant action. *California*, 360 F. Supp. 3d at 993.

## CONCLUSION

For the foregoing reasons, BLM's motions should be denied.

Respectfully submitted this 1st day of February 2021.

/s/ Shiloh S. Hernandez
Shiloh S. Hernandez (MT Bar No. 9970)
Melissa Hornbein (MT Bar No. 9694)
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
Ph: (406) 204-4861
hornbein@westernlaw.org
hernandez@westernlaw.org

*Counsel for Plaintiffs*

Nathaniel Shoaff, *pro hac vice pending* (CA
Bar No. 256641)
Sierra Club
2101 Webster Street, Suite 1300  Oakland,

CA 94612
Ph: (415) 977-5610
nathaniel.shoaff@sierraclub.org

*Counsel for Sierra Club*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(d)(2)(A), I hereby certify that the foregoing brief is double-spaced, has a typeface of 14 points or more, and contains 6,451 words exclusive of the caption, table of contents, table of authorities, certificate of compliance, and signature.

/s/ Shiloh Hernandez
Shiloh S. Hernandez