MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North
Suite 3200
Billings, MT 59101
Ph: (406) 247-4667
Fax: (406) 657-6058
mark.smith3@usdoj.gov

JEAN E. WILLIAMS
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

ARWYN CARROLL (MA Bar 675926)
LUTHER L. HAJEK (CO Bar 44303)
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Ph: (202) 305-0465
Fax: (202) 305-0506
arwyn.carroll@usdoj.gov
luke.hajek@usdoj.gov

*Counsel for Federal Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | | |
|---|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:20-cv-00076-BMM-JTJ |
| v. | ) ) | **DEFENDANT'S REPLY** |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| U.S. BUREAU OF LAND MANAGEMENT, | ) ) | **ITS MOTION TO PARTIALLY DISMISS FOR IMPROPER VENUE** |
| | ) ) | **OR, ALTERNATIVELY, TO** |
| Defendant, and | ) ) | **SEVER CLAIMS AND TRANSFER VENUE, AND TO STAY** |
| STATE OF WYOMING, | ) ) | **REMAINING CLAIMS** |
| Intervenor Defendant. | ) ) ) | |

There is no dispute that venue is proper in this District for Plaintiffs' claims challenging the 2019 Miles City Resource Management Plan Amendment (RMPA).  But Plaintiffs' claims challenging the 2019 Buffalo RMPA should be dismissed because Plaintiffs have not carried their burden of establishing venue for those claims.  Even if the Court finds venue proper in Montana, Plaintiffs' claims should be severed because they challenge separate agency actions, and the interest of justice warrants transferring their claims challenging the 2019 Buffalo RMPA to the District of Wyoming.

## I.   Venue is Improper in Montana for Plaintiffs' Wyoming-Based Claims

Plaintiffs contend that "venue in Montana is proper because Conservation Groups reside in Montana, harm from the Buffalo RMPA and SEIS is felt in Montana, and Conservation Groups' claims arise from prior decisions from this Court."  But none of these bases supports venue in Montana under 28 U.S.C. § 1391(e)(1) for Plaintiffs' claims challenging the 2019 Buffalo RMPA.  Plaintiffs do not invoke venue based on the defendants' residence.  *Id.* § 1391(e)(1)(A). Plaintiffs' harms-based analysis does not support venue under § 1391(e)(1)(B) for the type of claims Plaintiffs bring.  Plaintiffs' residence does not support venue under § 1391(e)(1)(C) where the action involves "real property," as this one does. Finally, this Court's prior decision concerning the 2015 Miles City and Buffalo RMPAs does serve as a basis for venue.

1

A.     Alleged Harms Do Not Establish Venue in Montana

Section 1391(e)(1)(B) permits venue in a district in which "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  Neither of these provisions supports venue in Montana for Plaintiffs' 2019 Buffalo RMPA claims.

The first provision of § 1391(e)(1)(B) does not support venue in Montana for these claims because, as Plaintiffs acknowledge, "a substantial part of the events or omissions giving rise to" Plaintiffs' claims challenging the 2019 Buffalo RMPA did not occur in Montana.  While Plaintiffs "may file a challenge where the federal agency's decision making activities took place," *W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt.* ("*WORC I*"), No. CV 16-21-GF-BMM, 2017 WL 374705, at *4 (D. Mont. Jan. 25, 2017), Plaintiffs concede that they do not ground venue "for their claims against the Buffalo RMPA and SEIS" in the "*decision-making* at the Miles City Field Office," Opposition, ECF No. 28 at 18.

Instead, Plaintiffs seek to establish venue for these claims under § 1391(e)(1)(B) through allegations that decisions made by the Buffalo Field Office will harm portions of the Powder River Basin in Montana.  Ignoring the specific language of that provision, Plaintiffs argue more generally that they may challenge an RMPA "in the district where the land *affected by* the decision is located."  *WORC I*, 2017 WL 374705, at *4 (emphasis added).  And land in

2

Montana is "affected by" the 2019 Buffalo RMPA, they argue, because of those alleged overflow harms.  But venue is improper on this basis for two reasons.

First, in cases under the Administrative Procedure Act (APA), courts focus on the location of the regulated land when determining whether venue is proper under the property provision § 1391(e)(1)(B).  This Court did so in *WORC I*, concluding that venue was proper in Montana because, among other reasons, the land regulated by the 2015 Miles City RMP was located in Montana—but only after concluding that Plaintiffs' claims challenging actions affecting both Montana and Wyoming were properly heard together.  2017 WL 374705, at *5.  As the Court acknowledged, "if [it] consider[ed] the claims as applying to the Miles City and Buffalo RMPs separately, venue for the Buffalo claims would not be proper" in Montana.  *Id.* at *5.  Here, the 2019 Buffalo RMPA, approved through a separate ROD, regulates land wholly located in Wyoming.  Thus, no "part of property that is the subject of" Plaintiffs' claims challenging that RMPA "is situated" in Montana.

Second, Plaintiffs cite several decisions for the proposition that venue under this provision is "proper where the *harms are felt*."  Opposition, ECF No. 28 at 15 (emphasis original).  But damage to the plaintiff was an element of the cause of action in those cases.  *E.g.*, *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) (analogizing to tort cases and finding venue proper for Federal

Credit Reporting Act claim where damage to plaintiff occurred); *Gordon v. DTE Energy*, 680 F. Supp. 2d 1282, 1287 (W.D. Wash. 2010) (same).  In such cases, "when a court considers whether a substantial part of the events giving rise to the claim occurred in the district, the locus of the injury is a relevant factor."  *C2F, Inc. v. Bee Paper Co.*, No. 08-CV-479-AC, 2008 WL 4791012, at *8 (D. Or. Oct. 28, 2008).  This was the case in *Underberg v. Employers Mutual Casualty Company*, where the Court found that damage to the plaintiff—a necessary element of "the tort of spoliation of evidence"—occurred in Montana, even though the car in question was crashed and disposed of in North Dakota.  No. CV-15-112-BLG-CSO, 2016 WL 1466506, at *6–7 (D. Mont. Apr. 14, 2016).

But it is not the case here.  Damage, whether to the Plaintiffs or the Powder River Basin, is not an element of the claims that Plaintiffs have asserted.  *E.g.*, *Northcoast Env't Ctr. v. Glickman*, 136 F.3d 660, 665 (9th Cir. 1998) ("Because NEPA is essentially a procedural statute, an agency's actions under NEPA are generally reviewed to determine if the agency observed the appropriate procedural requirements.").  Because the events giving rise to Plaintiffs' claims challenging the 2019 Buffalo RMPA—the decision-making process itself—occurred outside of Montana, and the property regulated by that decision is located outside of Montana, § 1391(e)(1)(B) does not support venue for those claims in Montana.

4

B.    Plaintiffs' Residence Does Not Establish Venue Because the Action
      Involves Real Property

Plaintiffs next argue that venue is proper in Montana for their 2019 Buffalo

RMPA claims because three of the Plaintiffs reside in Montana.  Opposition, ECF

No. 28 at 11.  Venue is proper in the district where "the plaintiff resides" but only

"if no real property is involved in the action."  28 U.S.C. § 1391(e)(1)(C).  But

because real property is involved in this action, Plaintiffs' residence does not

support venue in Montana for the 2019 Buffalo RMPA claims.

As an initial matter, Plaintiffs plead that "[v]enue is proper with respect to

claims related to BLM's Buffalo Field Office in Wyoming" only due to the

"inextricably intertwined" nature of the Powder River Basin.  First Amended

Complaint, ECF No. 21 ¶ 13.  That is, the Amended Complaint does not

specifically cite residency among the bases for venue for their *Wyoming-based*

claims, only more generally for their conflated claims.  *Id.*

Plaintiffs then cite a series of decisions for the proposition that "challenges

to federal agency decision-making under NEPA and other environmental laws do

not 'involve real property,' as contemplated by 28 U.S.C. § 1391(e)(1)(C)."

Opposition, ECF No 28 at 13 & n. 5.  But few of these cases concern direct

challenges to RMPs that specifically regulate federal land use, as was the case in

*Center for Biological Diversity v. U.S. Bureau of Land Mgmt.* ("*CBD*")*,* No. C 08-

05646, 2009 WL 1025606, at *3 (N.D. Cal. Apr. 14, 2009).

5

For example, *Montana Wildlife Federation v. Zinke* concerned a facial challenge to a national policy, not specific decisions regulating the land in question under that policy.  No. CV-18-69-GF-BMM, 2018 WL 5810502, at *3–4 (D. Mont. Nov. 6, 2018).  Even further afield are cases challenging timber-related projects, *e.g.*, *Earth Island Inst. v. Nash*, No. 19-CV-05792-RS, 2019 WL 11023709, at *1–2 (N.D. Cal. Oct. 7, 2019); registration of pesticides, *Ctr. for Biological Diversity v. Pirzadeh*, No. C09-1719-JCC, 2010 WL 11691840, at *1 (W.D. Wash. Apr. 28, 2010); and requirements for orca-exhibition licenses, *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, No. CV 12-4407-SC, 2013 WL 120185, at *1 (N.D. Cal. Jan. 8, 2013).  Real property may only have been "peripherally involved" in those challenges, but here Plaintiffs' challenges "directly concern[ ] . . . the Bureau of Land Management's adoption of a land use plan for a large area of property" and its management of public lands.  *CBD,* 2009 WL 1025606, at *3 (citing *Ferguson v. Lieurance*, 565 F. Supp. 1013, 1015 (D. Nev. 1983)).

Only a pair of cases from the District of Idaho directly address land-use RMPs.  *See W. Watersheds Project v. Schneider*, No. 1:16-CV-83-BLW, 2019 WL 4863483, *1–2 (D. Idaho Oct. 2, 2019); *W. Watersheds Project v. Salazar*, No. CIV 08-0516-E-BLW, 2009 WL 1299626, at *1 (D. Idaho May 7, 2009).  And the court in those cases based its construction of § 1391(e)(1)(C) on a decision,

reversed on other grounds, in which the court summarily concluded that actions involving real property must necessarily concern "the right, title or interest in real property," and that plaintiffs' challenges to agency decisions concerning purchase or use of strip-mined coal did not. *Nat. Res. Def. Council, Inc. v. Tennessee Val. Auth.*, 340 F. Supp. 400, 406 (S.D.N.Y. 1971), rev'd, 459 F.2d 255 (2d Cir. 1972).

But the statute's history and the broader statutory scheme support the conclusion that "real property" in this context includes regulation of public lands. Specifically, a letter from Deputy Attorney General Byron White at the time of enactment of the statute raised the concern that the venue for such claims not be divorced from the locality where such claims arise:

> The principal demand for this proposed legislation comes from those who wish to seek review of decisions relating to public lands, such as the awarding of oil and gas leases, consideration of land patent applications and the granting of grazing rights or other interests in the public domain. The applicants may reside in any State, or several States of the Union, and it would be unwise to have the Secretary sued in Maine with respect to an oil and gas lease in Wyoming.

S. Rep. No. 87-1992, at 6 (1962), *reprinted in* 1962 U.S.C.C.A.N. 2784, 2789 (Aug. 31, 1962). The Senate Committee reviewing the bill agreed that the changes to the venue statute would apply specifically to management decisions on federal lands:

> Frequently, these proceedings involve problems which are recurrent but peculiar to certain areas, such as water rights, grazing land permits, and mineral rights. These are problems with which judges in

those areas are familiar and which they can handle expeditiously and intelligently.

*Id.* at 3, 1962 U.S.C.C.A.N. at 2786. And nothing in the legislative history suggests, to the contrary, any intent to limit "real property" to actions concerning right, title, or interest in land.

In fact, a separate provision establishes proper venue for suits under the Quiet Title Act, which is the only way to file suit against the United States to resolve a title dispute. *See* 28 U.S.C. § 1402(d). This further supports a reading of "real property" in the general venue statute that incorporates more than merely rights and title disputes—and includes regulation of federal lands.

Accordingly, because Plaintiffs' claims "involve real property," the residence of three Plaintiffs in Montana does not establish venue for Plaintiffs' 2019 Buffalo RMPA claims. But even if it did, as explained below, principles of fairness and the interest of justice support severance and transfer of those claims to Wyoming.

## II. Plaintiffs' Claims Challenging the 2019 Buffalo RMPA Should Be Severed

Plaintiffs argue that common questions of law and fact, as well as a related history, preclude severance of their claims challenging the Miles City and Buffalo RMPAs. Opposition, ECF No. 28 at 18–21. While both 2019 RMPAs issued in response to this Court's prior rulings, each RMPA required separate field offices to

8

conduct separate analyses concerning distinct geographical areas, which they did through engagement with local authorities and interests.  Thus, though Plaintiffs' challenges may invoke similar analyses, the Court will be required to make separate findings with respect to each RMPA based on a separate administrative record.  And because the RMPAs issued through separate RODs, Plaintiffs challenge two separate agency actions—itself a basis for severing the claims.  *See Western Organization of Resource Councils v. Clark*, No. 1:03-cv-70-BLG-RWA (D. Mont. Jan. 13, 2004), attached to Defendant's Motion as Exhibit 8, ECF No. 25-8 at 5–6.

That the RMPAs issued under separate RODs distinguishes this action from *WORC I* and renders *WildEarth Guardians v. Jewell*, No. 1:15-CV-2026-WJM, 2016 WL 8577508 (D. Colo. June 17, 2016), and *Clark*, ECF No. 25-8, more apposite.  As in *WildEarth Guardians*, Plaintiffs here claim that each RMPA violates NEPA "in the same or similar ways, not that *all* of the approvals together violated the law."  2016 WL 8577508, at *5.  Similarly, the Court in *Clark* severed claims challenging "separate environmental analyses for Montana and Wyoming" where "BLM approved a separate ROD for the two separate states," and transferred the Wyoming-based claims to Wyoming.  *WORC I*, 2017 WL 374705, at *7 (citing *Clark*, slip op. at 3).  This Court distinguished these cases in *WORC I* on the grounds that the Federal Defendants "elected to conduct a region-wide

9

review of sage grouse habitat management on BLM lands" and "opted to approve the eight RMP revisions and four RMP amendments in a single ROD signed in Washington, D.C." 2017 WL 374705, at *7. But that is not the case here, where each RMPA was approved through a separate ROD, removing that consideration.

That Plaintiffs challenge distinct agency actions for their individual compliance with NEPA, rather than under a larger national policy, likewise distinguishes this case from *Montana Wildlife Federation*, 2018 WL 5810502. There, this Court declined to sever plaintiffs' claims challenging lease sales as violating the Federal Land Policy and Management Act "because they follow[ed] the Zinke Memo and the 2018 [Instruction Memorandum]." *Id.* at *3. That is not a consideration here with respect to Plaintiffs' NEPA claims. And to the extent it may be so with respect to Plaintiffs' challenges to the 2019 RMPAs under the Federal Vacancies Reform Act and Appointments Clause, the future of those claims is unclear in light of new actions taken with respect to protest resolution and issuance of the RMPAs, discussed *infra* Part IV.

### III.   Plaintiffs' Claims Challenging the 2019 Buffalo RMPA Should Be Transferred to Wyoming

Because Plaintiffs "do not dispute" that their claims challenging the 2019 Buffalo RMPA "could have been brought in Wyoming," Opposition, ECF No. 28 at 21–22, the first consideration in a transfer analysis—whether the action could have been brought in the proposed transferee district—is satisfied, *see* 28

10

U.S.C. § 1404(a).  Plaintiffs also appear to agree that most of the factors generally

considered in the transfer analysis do not apply to this action.  *See* Opposition,

ECF No. 28 at 22–25.  Plaintiffs argue that the interest of justice warrants retaining

the Wyoming-based claims in Montana "because of (1) the integrated ecology and

economy of the Powder River Basin and cross-border impacts; (2) judicial

economy; and (3) interest in avoiding inconsistent judgments," as well as the

residence of some Plaintiffs.  Opposition, ECF No. 28, at 22–23.  But here, those

considerations do not outweigh the competing interests of justice promoted by

localized controversies being decided at home.

　　　　First, none of these considerations require deference to Plaintiffs' choice of

forum.  Though generally afforded, that deference is diminished where "the

operative facts have not occurred within the forum of original selection and that

forum has no particular interest in the parties or the subject matter."  *Pac. Car &

Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).  That calculation is not

altered by the residency of three Plaintiffs in Montana or by the alleged

connections between the 2019 Buffalo RMPA and the Powder River Basin in

Montana because here, as discussed *supra*, the operative facts with respect to

Plaintiffs' NEPA claims concern the decision-making process—which occurred

outside of Montana.

Nor has BLM conceded Plaintiffs' allegations to that effect, as Plaintiffs suggest.  Opposition, ECF No. 28 at 22.  *See also id.* at 23 (characterizing Plaintiffs' allegations as "undisputed").  Rather, BLM has argued—and maintains—that *even if* the Court were to credit those allegations, transfer is still warranted because Plaintiffs' NEPA claims turn on whether BLM has satisfied NEPA's procedural requirements, not the specific harms or damages alleged by Plaintiffs.  *See* Defendants' Mem., ECF No. 25, at 22.  Nor does Plaintiffs' continued assertion of them change that the operative facts with respect to the 2019 Buffalo RMPA claims derive from the decision-making process and the analysis performed by the Buffalo Field Office concerning management of land located in Wyoming.  And those facts will be drawn from an administrative record separate and distinct from that underlying the 2019 Miles City RMPA.

The same considerations minimize the risk of inconsistent judgments.  Though, as discussed *supra*, Plaintiffs' claims challenging each RMPA may raise similar issues, those RMPAs are each the result of a separate agency action, approved through separate RODs, and Plaintiffs' claims will be resolved based on the facts developed in separate administrative records.  So even if the Plaintiffs' claims result in different outcomes, those outcomes would derive from a separate set of facts and—unlike in *WORC I*—will not impact a common ROD.  Thus, "[a]though the Montana and Wyoming courts may reach different conclusions,

12

such decisions will not necessarily be inconsistent as they will apply only to adequacy of the administrative record before each court." *Clark*, ECF No. 25-8 at 6. Accordingly, and as set out in Defendant's opening memorandum, because the principle that localized controversies should be decided at home outweighs these concerns, Plaintiffs' 2019 Buffalo RMPA claims should be transferred to Wyoming.

## IV. A Stay Is No Longer Warranted

As Plaintiffs observe, BLM has issued new actions with respect to the 2019 Miles City and Buffalo RMPAs. Specifically, the Miles City Field Office issued a new ROD on January 4, 2021, signed by Secretary of the Interior David Bernhardt, and indicating a new and independent protest review conducted by the Secretary and his staff. It likewise issued a new Land Use Planning Protest Resolution Report for Miles City, dated December 28, 2020. Finally, the Buffalo Field Office issued an errata sheet on January 8, 2021, correcting the 2019 Buffalo ROD to clarify that BLM's Acting Assistant Director for Resources and Planning resolved protests against the Buffalo RMPA.

Plaintiffs' claims, as currently pleaded, do not address these actions. But in light of these actions, BLM agrees that a stay pending the appeal of the Court's decision in *Bullock v. U.S. Bureau of Land Mgmt.*, No. 4:20-cv-62-BMM, 2020

13

WL 6204334, at *2, *4 (D. Mont. Oct. 16, 2020), is no longer likely to conserve

the parties' and judicial resources and, accordingly, withdraws that request.

Respectfully submitted this 12th day of February, 2021.

JEAN E. WILLIAMS,
Acting Assistant Attorney General
Environment & Natural Resources Division

*/s/ Arwyn Carroll*
ARWYN CARROLL (MA Bar 675926)
Trial Attorney, Natural Resources Section
United States Department of Justice
Environment and Natural Resources Div.
P.O. Box 7611
Washington, D.C. 20044-7611
Phone:  (202) 305-0465
Fax:  (202) 305-0506
arwyn.carroll@usdoj.gov

LUTHER L. HAJEK (CO Bar 44303)
Trial Attorney, Natural Resources Section
United States Department of Justice
Environment and Natural Resources Div.
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Phone: (303) 844-1376
Fax: (303) 844-1350
luke.hajek@usdoj.gov

MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North, Suite 3200
Billings, MT 59101
Phone: (406) 247-4667
Fax: (406) 657-6058
mark.smith3@usdoj.gov

*Counsel for Federal Defendant*

14

## CERTIFICATE OF SERVICE

I certify that on February 12, 2021 a copy of the foregoing was served on all

counsel of record via the Court's CM/ECF system.

/s/ *Arwyn Carroll*
ARWYN CARROLL
U.S. Department of Justice


## CERTIFICATE OF WORD COUNT

I certify that this brief complies with LR 7.1(d).  It contains 3,123 words, as

counted using the word count feature of Microsoft Word, excluding the caption,

certificate of service, and certificate of word count.

/s/ *Arwyn Carroll*
ARWYN CARROLL
U.S. Department of Justice