# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS, et al., | 4:20-cv-76-BMM |
| Plaintiffs, | |
| vs. | ORDER |
| U.S. BUREAU OF LAND MANAGEMENT, | |
| Defendant, | |
| and | |
| STATE OF WYOMING, | |
| Intervenor Defendant. | |

## INTRODUCTION

The Western Organization of Resource Councils, Montana Environmental

Information Center, Powder River Basin Resource Council, Northern Plains

Resource Council, Center for Biological Diversity, Wildearth Guardians, and

Sierra Club ("Plaintiffs") bring this action against the U.S. Bureau of Land

Management ("BLM"). Plaintiffs allege that BLM improperly approved amended

Miles City and Buffalo resource management plans ("RMPs") in violation of the

National Environmental Policy Act ("NEPA"), the Federal Vacancies Reform Act ("FVRA"), the Administrative Procedure Act ("APA"), and the Appointments Clause of the U.S. Constitution. (Doc. 21).

BLM filed a motion to make a number of procedural arguments relating to Plaintiffs' claims. (Doc. 24). BLM first argues that the Court should dismiss claims regarding the Buffalo RMP for improper venue, or, in the alternative, should sever and transfer those claims to the federal district court in District of Wyoming. *Id.* BLM further argues that the Court should stay claims regarding the Miles City RMP. *Id.* The Court held a motion hearing on February 18, 2021. (Doc. 33).

## BACKGROUND

BLM manages the use and maintenance of 245 million acres of federal public lands (around 12 percent of the nation's landmass) and 700 million acres of subsurface acreage (around 30 percent of the nation's minerals). The Federal Land Management and Policy Act ("FLPMA") charges BLM with administering those lands and subsurface acres.

FLPMA requires that "the public lands be managed in a manner that will protect the quality of scientific, scenic, historical, ecological, environmental, air and atmospheric, water resource, and archeological values." 43 U.S.C. § 1701(a)(8). BLM accomplishes this directive by developing, maintaining, and revising RMPs for particular areas of public land. *Id.* § 1712(a)-(b); 43 C.F.R. §

2

1601.0–5(n). RMPs "guide and control future management actions." 43 C.F.R. § 1601.0–2. RMPs designate "[l]and areas for limited, restricted or exclusive use" and determine "[a]llowable resource uses (either singly or in combination) and related levels of production or use to be maintained." *Id.* § 1601.0-5(n)(1)–(2). RMP approval represents a major federal action that significantly affects the quality of the human environment. *Id.* § 1601.0-6. As a result, BLM must publish an Environmental Impact Statement ("EIS") as required under NEPA when it approves an RMP. *Id.*

BLM undertook a large multi-state land planning effort to protect the greater sage-grouse and its habitat in response to concerns that the U.S. Fish and Wildlife Service may need to list the sage-grouse as an endangered species under the Endangered Species Act. *See* Endangered and Threatened Wildlife and Plants; 12-Month Finding on a Petition To List Greater Sage-Grouse (Centrocercus urophasianus) as an Endangered or Threatened Species, 80 Fed. Reg. 59,858, 59,874 (Oct. 2, 2015). BLM revised or amended 98 land management plans ("2015 Plans") to adopt sage-grouse protections across the bird's range in ten Western states. *See id*.

Among those 2015 Plans, BLM published revisions that encompassed two adjacent BLM field offices in the Powder River Basin: The Miles City Field Office in Montana and the Buffalo Field Office in Wyoming. The Powder River Basin

represents an interconnected river landscape of grasslands and badlands. The Powder River Basin also yields approximately 40% of all coal extracted in the United States. The Miles City Field Office administers 2.75 million acres of surface lands and 11.9 million acres of subsurface mineral estate across 17 eastern Montana counties. (Doc. 25-5 at 6). The Buffalo Field Office administers about 800,000 acres of surface lands along with 4.7 million acres of subsurface mineral estate in north-central Wyoming. (Doc. 25-2 at 4).

BLM approved both the Miles City RMP and the Buffalo RMP through a single record of decision ("ROD"). The two approved RMPs represented "full scale resource management plan revisions" and were "not limited to [greater sage-grouse] habitat management." (ROD at 15). A nearly identical set of plaintiffs as in this case challenged those two RMPs in 2016 for inadequate environmental analysis in this Court. BLM sought initially to dismiss or sever and transfer claims relating to the Buffalo RMP. *W. Organization of Res. Councils v. BLM* ("*WORC I*"), No. CV 16-21-GF-BMM, 2017 WL 374705, at *1 (D. Mont. Jan. 25, 2017). BLM made arguments nearly identical to those made in this case. *Id.* at *4.

This Court found that the District of Montana represented a proper venue for the plaintiffs' claims. *Id.* at *4–*5. This Court further refused to sever and transfer the Buffalo City RMP claims after weighing plaintiffs' choice of forum against the competing interest in having localized controversies decided at home. *Id.* at *7–

*10. The Court invalidated the Miles City and Buffalo RMPs based upon an inadequate environmental analysis for each RMP. *See W. Organization of Res. Councils v. BLM* ("*WORC II*"), No. CV 16-21-GF-BMM, 2018 WL 1475470, at *6 (D. Mont. Mar. 26, 2018), *appeal dismissed,* No. 18-35836, 2019 WL 141346 (9th Cir. Jan. 2, 2019). The Court later remanded the two RMPs to BLM to correct those deficiencies in conformity with this Court's previous order. *W. Organization of Res. Councils v. BLM* ("*WORC III*"), No. CV 16-21-GF-BMM, 2018 WL 9986684, at *2 (D. Mont. July 31, 2018).

BLM since has completed its reconsideration of those same RMPs. BLM published the Miles City Resource Management Plan Amendment ("RMPA") in November 2019. (Doc. 25-5). The Miles City RMPA encompasses 11.7 million acres of subsurface federal mineral coal estate. *See id.* at 3. BLM published the Buffalo RMPA in November 2019 as well. (Doc. 25-2). The Buffalo RMPA encompasses 4.7 million acres of subsurface federal mineral coal estate. *Id.* at 4. BLM approved the two RMPAs with two separate RODs. (Docs. 25-2, 25-5). BLM asserted that these new RMPAs comply with this Court's previous orders in *WORC II*. (Docs. 25-2 at 4, 25-5 at 6).

Plaintiffs allege in this case that BLM failed to comply with the Court's previous orders and with federal law. (Doc. 21). BLM filed a motion to make a series of procedural arguments relating to Plaintiffs' claims. (Doc. 24). BLM first

argues that the Court should dismiss claims regarding the Buffalo RMP because the District of Montana no longer represents a proper venue. (Doc. 25 at 10–16). BLM next argues, in the alternative, that the Court should sever and transfer the Buffalo RMP claims to the District of Wyoming. *Id.* at 16–33. Those two arguments mirror the arguments in *WORC I. See WORC I*, No. CV 16-21-GF-BMM, 2017 WL 374705, at *4–*6. BLM finally argues that the Court should stay claims regarding the Miles City RMP because this Court invalidated the Miles City RMP in an unrelated case. (Doc. 25 at 7 (citing *Bullock v. U.S. Bureau of Land Mgmt.*, No. 4:20-cv-62-BMM, 2020 WL 6204334, at *2, *4 (D. Mont. Oct. 16, 2020))).

## ANALYSIS

## I.   Motion to Partially Dismiss for Improper Venue

A defendant can move to dismiss a claim for improper venue. Fed. R. Civ. P. 12(b)(3). Venue is appropriate in a civil action where the defendant is a federal employee or officer in any of the following judicial districts: (1) a judicial district in which defendant resides; (2) a judicial district in which a substantial part of the events giving rise to the claim occurred; or (3) a judicial district in which the plaintiff resides, if the case involves no real property. 28 U.S.C. § 1391(e)(1). A district court must dismiss or transfer a case when it finds that a plaintiff has filed in an improper venue. *Id.* § 1406(a). The Court possesses discretion to select either

6

the dismissal or transfer remedy when appropriate. *Martensen v. Koch*, 942 F. Supp. 2d 983, 996 (N.D. Cal. 2013).

The plaintiff bears the burden to demonstrate proper venue. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). The plaintiff must establish venue as to each claim. *Martensen*, 942 F. Supp. 2d at 996. A court affords substantial deference to a plaintiff's choice of forum so long as the forum represents a proper venue. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Anderson v. Thompson*, 634 F. Supp. 1201, 1204 (D. Mont. 1986). Such deference diminishes, however, if "the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or subject matter." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

Multiple proper venues may exist for a claim. *WORC I*, No. CV 16-21-GF-BMM, 2017 WL 374705, at *4 (citing *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)). No requirement exists that the chosen venue represents the best choice. *See id.* (citing *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). Venue merely must be proper in the relevant federal district to survive a motion to dismiss.

BLM concedes that Plaintiffs selected a proper venue in the District of Montana for claims against the Miles City RMPA. (Doc. 25 at 10). BLM argues, however, that venue proves improper for the Buffalo RMPA. *See id.* at 10–16.

7

Plaintiffs claim venue based on two theories: where a substantial part of the events giving rise to the claim occurred, and where the plaintiff resides if the case involves no real property. (Doc. 28 at 11–18). The Court addresses each in turn.

### a. Where Plaintiff Resides if the Case Involves No Real Property

BLM argues that the District of Montana no longer represents a proper venue to consider claims against the Buffalo RMPA because the case involves real property located in Wyoming. (Doc. 25 at 14). BLM raises a somewhat novel argument that claims regarding public land management necessarily involve real property. (Doc. 25 at 14). BLM cites only one outlier case to support the proposition that the "adoption of a land use plan for a large area of property" necessarily "involves real property." *Ctr. for Biological Diversity v. Bureau of Land Mgmt.* ("*CBD*"), No. 08-cv-05646, 2009 WL 1025606, at *3 (N.D. Cal. Apr. 14, 2009).

*CBD* appears to be an outlier decision and its reasoning proves limited. The Northern District of California relied on reasoning from a separate case that involved a plaintiff who sought to challenge a decision to deny its application to acquire a property interest in public land in the form of oil and gas leases. *See id.* at *2 (citing *Ferguson v. Lieurance*, 565 F.Supp. 1013, 1015 (D. Nev. 1983)). The plaintiff in *Ferguson* sought to contest a right in real property—namely, leasehold interests in oil and gas. *See Ferguson*, 565 F.Supp. at 1015. The Northern District

8

of California mistakenly applied the narrow reasoning in *Ferguson* to a blanket challenge to a land use plan that involved no lease or any other such property interest. *See CBD*, No. 08-cv-05646, 2009 WL 1025606, at *3. The Northern District of California provided a tremendously narrow justification for its application of a limited holding regarding an actual property interest to a broad challenge to a land management plan. The court noted only that it found "the reasoning of *Ferguson* persuasive" and that any other outcome would constitute "legal sophistry." *Id.*

The Court finds far more instructive the reasoning of the District of Nevada in *Ferguson*, as well as more recent decisions from the District of Idaho and the Northern District of California. *See, e.g.*, *W. Watersheds v. Schneider*, No. 1:16-CV-83-BLW, 2019 WL 4863483, *3 (D. Idaho 2019); *Earth Island v. Quinn*, 56 F.Supp. 3d 1110, 1115–16 (N.D. Cal. 2014). The District of Nevada in *Ferguson* urged that the touchstone of the venue provision "cannot sensibly be whether real property is marginally affected by the case at issue. Rather, the action must center directly on the real property, as with actions concerning the right, title or interest in real property." *Ferguson*, 565 F.Supp. at 1015. A challenge centered on the environmental impact of a broad land management plan would not qualify as involving real property under the reasoning of *Ferguson*.

9

The District of Idaho similarly noted that "almost any dispute over public or private decisions will in some way 'involve real property,' taken literally." *W. Watersheds*, No. 1:16-CV-83-BLW, 2019 WL 4863483, *3 (citing *Ferguson*, 565 F.Supp. at 1015). "Congress seems to have indicated that it intended mainly to cover disputes over legal interests in real property. Most authority appears to have followed that logic, generally finding that actions 'involve real property' when they involve disputes over real property interests." *Id.* (internal ellipse omitted) (quoting *Earth Island*, 56 F.Supp. 3d at 1115–16); *see also* Wright, Miller & Cooper, 14D Fed. Prac. & Proc. Juris. § 3815, n. 33 (4th ed.). The District of Idaho determined that a NEPA challenge against land use plans centered on "an agency's compliance with statutory mandates" and did not involve real property. *W. Watersheds*, No. 1:16-CV-83-BLW, 2019 WL 4863483, *3.

The legislative history of the venue statute confirms a reading that general land management plans do not involve real property for venue purposes. A letter from, then Deputy Attorney General Byron White, at the time of enactment of the statute raised the concern that the venue for claims "relating to public lands, such as the awarding of oil and gas leases, consideration of land patent applications and the granting of grazing rights or other interests" not be divorced from the locality where such claims arise. S. Rep. No. 87-1992, at 6 (1962), *reprinted in* 1962 U.S.C.C.A.N. 2784, 2789 (Aug. 31, 1962). Each of these concerns relate to an

10

*actual property interest*. The Senate Committee reviewing the bill agreed that "water rights, grazing land permits, and mineral rights" are among the kind of property interests covered by the bill. *Id*. at 3, 1962 U.S.C.C.A.N. at 2786. Crucially, the Senate Committee did *not* indicate that real property would be implicated in more general land management planning activities, such as with the RMPs or NEPA analysis at issue here.

Courts repeatedly have endorsed the understanding that general environmental challenges, including actions relating to public land management, do not involve real property. *See, e.g.*, *Montana Wildlife Fed'n*, No. CV-18-69-GF-BMM, 2018 WL 5810502, at *2 (D. Mont. Nov. 6, 2018) (finding proper venue on a challenge to land management practices because they did not involve real property and the plaintiff environmental organizations were from Montana); *W. Watersheds Project v. Salazar*, No. CIV 08-0516-E-BLW, 2009 WL 1299626, at *2 (D. Idaho May 7, 2009) ("[E]nvironmental actions . . . are not actions in which 'real property is involved.'" (citation omitted)); *NRDC v. TVA¸*340 F.Supp. 400, 406 (S.D.N.Y. 1971) ("Gravity being what it is, the vast bulk of human activities take place on the face of the earth. Consequently, almost any dispute over public or private decisions will in some way "involve real property," taken literally. The touchstone for [venue] . . . must center directly on the real property, as with actions concerning the right, title or interest in real property."). The District of Montana

11

represents a proper venue for Plaintiffs' claims because the action does not

"involve no real property" and plaintiffs Western Organization of Resource

Councils, Montana Environmental Information Center, and Northern Plains

Resource Council each reside in Montana. *See* 28 U.S.C. § 1391(e)(1); (Doc. 21 at

5).

### b.  Where a Substantial Part of the Events Giving Rise to the Claim

BLM further argues that a substantial part of the events giving rise to the

claim occurred outside Montana. (Doc. 25 at 11). Plaintiffs argue that that the land

use decisions in the Buffalo RMPA, such as fossil fuel extraction, would cause

severe and widespread harm to the environment in Montana. (Doc. 28 at 16).

Plaintiffs specifically point to increased salinity in the Powder and Tongue Rivers

flowing from Wyoming into Montana, the flow of air and water pollutants from

Wyoming into Montana, and the interconnected ecology of the Powder River

Basin including the endangered pallid sturgeon and the sage grouse who fail to

abide by state lines. *See id.* at 3–4. Plaintiffs further argue that the SEIS and RMP

amendment process at issue in this case substantially arose from this Court's prior

ruling in *WORC II* and *WORC III*. *See id.* at 16–17.

This Court previously opined that "whether venue is proper in this case

depends on whether the Court considers the claims together as pleaded. If so,

venue would be proper. . . . [I]f the Court considers the claims as applying to the

Miles City and Buffalo RMPs separately, venue for the Buffalo claims would not be proper." *WORC I*, No. CV 16-21-GF-BMM, 2017 WL 374705, at *5. The same logic again applies—venue remains proper because of the unique qualities that force the Court to consider claims against the Miles City and Buffalo RMPAs together as pleaded.

Most importantly, the claims arise directly from the Court's previous decisions in *WORC II* and *WORC III*. The Miles City and Buffalo RMPs suffered from the same NEPA deficiencies. BLM would not have released the Miles City and Buffalo RMPAs but for the Court's decision. (Docs. 25-2 at 4, 25-5 at 6). Plaintiffs allege that the two RMPAs again suffer from identical NEPA deficiencies—a set of deficiencies that specifically contradict this Court's previous ruling. (Doc. 21 at 21–24). The Court's decisions in *WORC II* and *WORC III* gave rise to the claim.

The Court further must analyze these claims in the context that the Miles City and Buffalo RMPAs relate to a contiguous river basin, an interconnected ecology, and a set of alleged environmental harms to that ecology that would flow from Wyoming into Montana. Harm represents an essential element of any legal claim. *See, e.g.*, *C2F, Inc. v. Bee Paper Co.*, No. 08-CV-479-AC, 2008 WL 4791012, at *8 (D. Or. Oct. 28, 2008) ("[W]hen a court considers whether a substantial part of the events giving rise to the claim occurred in the district, the

locus of the injury is a relevant factor."). BLM incorrectly argues that harm is not a component of an APA case. (Doc. 32 at 4–5). BLM ignores the clear text of the APA that provides a cause of action for a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. A plaintiff still must prove they have suffered some form of harm or adverse effect in an APA case. Land management decisions within the Powder River Basin will flow from Wyoming into Montana with wind and water. Venue remains proper "in the district where the land affected by the decision is located." *WORC I*, No. CV 16-21-GF-BMM, 2017 WL 374705, at *4.

The unique procedural history of this case before the Court and the harms in Montana each constitute a substantial part of the events that gave rise to the claims in this case. The District of Montana further represents a proper venue for Plaintiffs' claims because a substantial part of the events giving rise to the claim occurred in Montana. *See* 28 U.S.C. § 1391(e)(1)(B). Venue proves proper in this district for two reasons: the case does not involve real property and Plaintiffs reside in this district, and a substantial part of the events that gave rise to the claim occurred in this district. The Court still may consider, however, a motion to sever and transfer claims relating to the Buffalo RMPA within its discretion. The Court will analyze this component of BLM's motion next.

14

## II.    Motion to Sever and Transfer

BLM further argues in its motion that the Court should sever and transfer the claims regarding the Buffalo RMPA to the District of Wyoming. (Doc. 24). BLM argues that even if the Court finds venue proper in Montana, Plaintiffs' claims should be severed because they challenge separate agency actions, and the interest of justice warrants transferring the Buffalo RMPA claims to the District of Wyoming. (Doc. 25 at 16). Plaintiffs argue that severance proves inappropriate because the claims arise from connected transactions and occurrences raising "common questions of law and fact." *Montana Wildlife Fed'n*, No. CV-18-69-GF-BMM, 2018 WL 5810502, at *2. Plaintiffs further argue that severance would result in delay, inconvenience, and added expense. *See id.* at *6; *W. Watersheds v. Zinke*, No. 1:18-CV-00187-REB, 2018 WL 4210774, at *2 (D. Idaho Sept. 4, 2018).

A Court may "sever any claim against a party." Fed. R. Civ. P. Rule 21. Courts retain broad discretion in the decision to sever and transfer a claim. *WORC I*, No. CV 16-21-GF-BMM, 2017 WL 374705, at *5. A district court's broad discretion to transfer a case from one forum to another should be exercised "according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks and citation omitted). BLM, as the moving party, bears the burden

of showing transfer would be appropriate. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000).

This Court previously employed a balancing test to decide whether to keep together as pleaded the claims against the original Miles City RMP and Buffalo RMP, or to separate them by location. *See id.* at *7. Under that test, a court should weigh "a plaintiff's choice of forum against the competing interest in 'having localized controversies decided at home.'" *Ctr. for Biological Diversity & Pac. Env't v. Kempthorne*, No. C–07–0894, 2007 WL 2023515, at *5 (N.D. Cal. July 12, 2007) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The Court again finds this balancing test helpful to determine whether to sever and transfer the Buffalo RMPA claims.

### a. Plaintiff's Choice of Forum

A court typically affords great deference to a plaintiff's choice of forum. *See, e.g.*, *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Anderson v. Thompson*, 634 F. Supp. 1201, 1204 (D. Mont. 1986). This Court determined in *WORC I* that the plaintiffs' forum choice deserved deference because BLM had approved the Miles City and Buffalo RMPs through a single ROD, the Court maintained an interest in judicial economy to rule on identical claims relying on a similar record, and plaintiffs' held an interest in preventing the risk of inconsistent judgments. *WORC I*, No. CV 16-21-GF-BMM, 2017 WL 374705, at *9.

16

BLM argues that Plaintiffs' forum choice in this case differs from *WORC I* in a crucial way: the agency approved two separate RODs. (Doc. 25 at 22–24). BLM goes on to elaborate that Plaintiffs no longer face a risk of inconsistent judgments because the claims arise from two separate RODs. *Id.* at 23. BLM's argument focuses on formalistic administrative distinctions, but fails to address the broader context in which the claims arose.

BLM approved the Miles City RMPA and Buffalo RMPA through separate RODs. Plaintiffs' claims directly relate, however, to this Court's decisions in *WORC II* and *WORC III.* Plaintiffs allege identical NEPA flaws regarding the two RMPAs and their respective "mirror" SEISs. (Doc. 21 at 17). The claims involve common questions of law because each SEIS allegedly suffers from identical flaws rooted in the same NEPA obligations and this Court's previous orders. *See id.* In fact, the background of this case strengthens the other two factors this Court considered in *WORC I*: the risk of inconsistent judgments and judicial economy.

Plaintiffs face a heightened risk of inconsistent judgment in this case if the Court were to transfer the Buffalo RMPA claims. The risk of inconsistent judgment arises from potentially conflicting interpretations of BLM's compliance with this Court's judgment in *WORC II* and *WORC III* and corresponding demands under NEPA. Those inconsistent judgments could create disparate outcomes on either side of the state border in an ecologically and geographically contiguous

17

region. The litigation history and geography in this case distinguishes it from other cases where courts severed and transferred geographically distinct claims. *See WildEarth Guardians v. Jewell*, No. 1:15-CV-2026-WJM, 2016 WL 8577508 (D. Colo. June 17, 2016); *Western Organization of Resource Councils v. Clark*, No. CV-03-70-BLG-RWA (D. Mont. Jan. 13, 2004). This Court also distinguished those cases in its previous rulings. *WORC I*, No. CV 16-21-GF-BMM, 2017 WL 374705, at *6–*7.

Plaintiffs' choice of forum further implicates an interest in judicial economy. This Court capably can assess the federal law claims that apply to the Buffalo RMPA. *See id.* at *9. Should the Court retain the Buffalo RMPA claims, it would "relieve the judicial system of multiple cases involving the same questions of law and fact." *Montana Wildlife Fed'n*, No. CV-18-69-GF-BMM, 2018 WL 5810502, at *4. The Court remains familiar with the complexities of this case and the underlying administrative record. The unique history of this case further strengthens the arguments for judicial economy.

### b. Interest in Having Localized Controversies Decided at Home

The interest in having localized controversies decided at home remains unchanged from the analysis in *WORC I*. The Buffalo Field Office developed the Buffalo RMPA based on Wyoming lands and resources. BLM's Acting Wyoming State Director signed the ROD to approve the RMPA. Local citizens and local

cooperating agencies provided input for the Buffalo RMPA. Courts long have recognized a "local interest in having localized controversies decided at home." *Decker Coal Co. v. Commonweath Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Earth Island Inst. v. Quinn*, 56 F. Supp. 3d 1110, 1119–20 (N.D. Cal. 2014) (collecting cases).

### c. Balancing Deference to Plaintiffs' Choice of Forum with Local Interest

A court typically affords great deference to a plaintiff's choice of forum. *See, e.g.*, *Lou*, 834 F.2d at 739; *Anderson*, 634 F. Supp. at 1204. But those interests may be outweighed by the interest in having localized controversies decided at home. The Court sees great benefit in local controversies being decided in the communities that experience those controversies. This factor may be dispositive in many scenarios.

In *WORC I*, this Court determined that the single ROD at issue, judicial economy, and the plaintiffs' interest in consistent judgments tilted "slightly in favor of keeping the claims together." *WORC I*, No. CV 16-21-GF-BMM, 2017 WL 374705, at *10. The same proves true in this case. Plaintiffs' elevated interest in prevention of inconsistent judgments and judicial economy rooted in the unique background of this case outweigh the interest in having localized controversies decided at home. The Court will exercise its broad discretion to deny the motion to sever and transfer claims relating to the Buffalo RMPA.

19

### III.     Motion to Stay Remaining Claims

BLM finally sought to stay claims regarding the Miles City RMPA. (Doc. 24 at 1). BLM noted that this Court already set aside the Miles City RMPA in another case, and that BLM has appealed that decision. (Doc. 25 at 26–27 (citing *Bullock*, No. 4:20-cv-62-BMM, 2020 WL 6204334, at *4)). BLM urged that the appeal may resolve claims regarding the Miles City RMPA. (Doc. 25 at 27). Plaintiffs argued that a stay would be inappropriate. (Doc. 28 at 25–27). BLM since has changed its position, arguing now that a stay no longer would be warranted. (Doc. 32 at 13). BLM and Plaintiffs together noted at the motion hearing that BLM issued new RODs concerning the Miles City and Buffalo RMPAs on January 4, 2021, and on January 8, 2021, respectively. (Doc. 33). Those new RODs allegedly cured any legal infirmity that would be resolved in the *Bullock* appeal. *Id.* Plaintiffs acknowledged that they may need to amend their amended complaint to encompass these new RODs. *Id.*

A court retains broad discretion to grant a stay derived from its "inherent power to control its docket and promote efficient use of judicial resources." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) (citing *Landis v. N. American Co.*, 299 U.S. 248, 254–55 (1936)). To that end, the Court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending

20

resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). The proponent of a stay bears the burden of establishing its need. *Landis*, 299 U.S. at 255. BLM failed to show any such need. The Court will deny a stay of claims regarding the Miles City RMPA.

## IV.    Other Pending Motions

Several other pending motions remain. BLM filed a previous motion to dismiss or sever and transfer. (Doc. 18). That motion referred to the initial complaint. The complaint has since been amended. (Doc. 21). The Court will deny the previous motion to dismiss or sever and transfer as moot. The State of Wyoming intervened in this case. (Doc. 9). Wyoming filed two joinder motions to express support for BLM's two motions to dismiss or sever and transfer. (Docs. 20 & 26). The Court having resolved the motion to dismiss or sever and transfer likewise will deny those motions.

## ORDER

Accordingly, **IT IS ORDERED** that:

- BLM's Motion to Dismiss, or, in the alternative, to Sever and Transfer, and to Stay (Doc. 24) is **DENIED** in full;

- BLM's Motion to Dismiss, or, in the alternative, to Sever and Transfer (Doc. 18) is **DENIED** as moot; and

- Wyoming's Motions for Joinder in BLM's Motions (Docs. 20 & 26)

  are **DENIED**.

  Dated the 24th day of February, 2021.


<br>

_____
Brian Morris, Chief District Judge
United States District Court