# EXHIBIT 1

**BUREAU OF LAND MANAGEMENT**

# Miles City Field Office

Record of Decision and Approved Resource Management Plan Amendment



BLM_MCFO_0046280




# United States Department of the Interior

BUREA U OF LAN D MA NAG EMENT
Montana/Dakotas State Office
5001 Southgate Drive
Billings, Montana 591 0 1
http://www.blm.gov/montana-dakotas

January 2021

In Reply Refer To:
1610 (MT930)

Dear Reader:

The Bureau of Land Management is am pleased to announce that the Miles City Field Office (MCFO) Approved Resource Management Plan Amendment (RMP Amendment) is complete. The RMP Amendment will provide guidance for the management of approximately 11.7 million acres of subsurface federal mineral coal estate within the MCFO.

The enclosed Record of Decision (ROD) for the RMP Amendment was prepared in accordance with the Federal Land Policy and Management Act of 1976, as amended, and the National Environmental Policy Act of 1969, as amended.  The RMP Amendment is identical to Alternative B presented in the 2019 Final Supplemental Environmental Impact Statement (EIS) and Proposed RMP Amendment and has been determined to be the most consistent with the purposes, policies, and programs associated with implementing its legal mandates. This Record of Decision (ROD) constitutes the final decision of the authorized officer for the allocation of BLM administered coal in the MCFO.

The Supplemental EIS supporting this planning process included the necessary National Environmental Policy Act (NEPA) analysis to modify the allocation of BLM administered coal in the MCFO and develop reclamation as a stipulated method of coal mining for all species listed under unsuitability criterion 15, Habitat for Species of High Interest to the State. The RMP Amendment does not modify other resource allocation management decisions in the MCFO 2015 RMP.

The RMP Amendment was subject to a 30-day protest period that ended on November 4, 2019. The BLM received six protest letters, for which the BLM reviewed all protest issues for the proposed planning decisions in accordance with 43 CFR 1610.5-2. The BLM's Acting Director for Resources and Planning concluded that the BLM Montana State Director followed the applicable laws, regulations, and policies, and considered all relevant resource information and public input. The Acting Director for Resources and Planning addressed the protests and issued a Protest Resolution Report to protesting parties and posted the Report on the BLM's website –no changes to the Proposed RMP Amendment were necessary.

BLM_MCFO_0046281

On September 25, 2020, the U.S. District Court for the District of Montana ruled that, among other things, BLM Deputy Director for Policy and Programs William Perry Pendley had unlawfully served as the BLM Director for the last 424 days and enjoined him from exercising the authority of the BLM Director. On October 16, 2020, the court set aside the Miles City Approved RMP Amendment on those grounds.  The Department strongly disagrees with the court's decision, and, as particularly relevant here, with the assertion that only the BLM Director may resolve protests on resource management plans. Moreover, as described above, Mr. Pendley did not actually resolve the protests for the Miles City RMP Amendment.  Nonetheless, the Department recognizes that the Court has set aside the Miles City RMP Amendment based on its conclusions to the contrary. Accordingly, following the Court's order, the Secretary and his staff completed an independent evaluation of a proposed Protest Resolution Report and Proposed Record of Decision.  Following that review, on December 28, 2020, the Secretary approved the Protest Resolution Report, issued the Protest Resolution Report to protesting parties and posted the Report on the BLM's website.

The 60-day Governor' s consistency review period for the Proposed RMP/Final EIS, which promotes consistency with State government plans or policies, concluded on December 4, 2019. The Governor did not exercise his option to submit a letter to the Montana State Director identifying concerns in response to the consistency review.

Copies of the BLM ROD and the Approved RMP Amendment are available on the MCFO Supplemental EIS/RMP Amendment ePlanning website at  https://go.usa.gov/xmbE4 or can be obtained by requesting a copy in person, by telephone, or by writing to the following:

> Miles City Field Office
> 111 Garryowen Road
> Miles City, MT 59301
> (406) 233-2800

The BLM is pleased to provide this copy of the ROD and Approved RMP Amendment for your reference.

# TABLE OF CONTENTS

Part                                                                                                  Page

**PART 1 – RECORD OF DECISION** ........................................................................................ 1-1
    1.1    Introduction ............................................................................................ 1-1
        1.1.1   Overview ................................................................................. 1-1
        1.1.2   Description of the Planning Area ............................................ 1-1
    1.2    The Decision .......................................................................................... 1-4
        1.2.1   Mitigation Measures ............................................................... 1-4
        1.2.2   Plan Monitoring .................................................................... 1-5
    1.3    Alternatives ............................................................................................ 1-5
        1.3.1   Alternatives Considered and Dismissed .................................. 1-5
        1.3.2   Alternatives Analyzed in Detail .............................................. 1-6
    1.4    Public Involvement ................................................................................. 1-7
        1.4.1   Public Scoping ........................................................................ 1-7
        1.4.2   Public Review of and Comment on the Draft SEIS/RMP Amendment ............ 1-8
        1.4.3   Governor's Consistency Review ............................................. 1-8
        1.4.4   Protest Resolution ................................................................. 1-8
        1.4.5   Consultation and Coordination ............................................. 1-9
    1.5    Availability and Approval of the Plan .................................................... 1-10

**PART 2 – MILES CITY APPROVED RESOURCE MANAGEMENT PLAN AMENDMENT** ...................... 2-1

# TABLE

                                                                 Page

2-1    Coal Acceptability Results for RMP Amendment[1] ............................................. 2-2

# FIGURES

                                                                   Page

1-1    Surface Administration ..................................................................................... 1-2
1-2    BLM-administered Coal ................................................................................... 1-3
2-1    Areas Acceptable for Further Consideration for Leasing .................................... 2-3
2-2    Impact Analysis Area ....................................................................................... 2-4

# APPENDICES

A      Coal Reasonably Foreseeable Development Scenario
B      Coal Screening Process

## ACRONYMS AND ABBREVIATIONS                                    Full Phrase

| | |
|---|---|
| BLM | United States Department of the Interior, Bureau of Land Management |
| CEQ | Council on Environmental Quality |
| CFR | Code of Federal Regulations |
| DOI | United States Department of the Interior |
| EIS | environmental impact statement |
| MCFO | Miles City Field Office |
| NEPA | National Environmental Quality Act |
| NOA | notice of availability |
| NOI | notice of intent |
| RFD | reasonably foreseeable development |
| RMP | resource management plan |
| RMPA | resource management plan amendment |
| ROD | record of decision |
| SEIS | supplemental environmental impact statement |
| SHPO | State Historic Preservation Office |
| US | United States |
| USFWS | United States Department of the Interior, Fish and Wildlife Service |

# Part 1 –
# Record of Decision

## 1.1   INTRODUCTION

### 1.1.1   Overview

The United States (US) Department of the Interior, Bureau of Land Management (BLM) uses resource management plans (RMPs) to guide management of the land it administers. This record of decision (ROD) approves the BLM's proposal to manage BLM-administered lands in the Miles City Field Office (MCFO) as presented in the attached approved Resource Management Plan Amendment. This RMP Amendment is the same as the Proposed Plan (Alternative B) in the Miles City Final Supplemental Environmental Impact Statement (SEIS)/Proposed RMP Amendment to the 2015 Miles City RMP. This RMP Amendment is in response to the federal district court's order in *Western Organization of Resource Councils, et al. v. Bureau of Land Management,* Civil Action No. CV 16-21-GF-BMM (D. Mont. 2017). The background and rationale for approving the decisions in the Proposed Plan are described in this ROD. Though the SEIS provided additional analyses for downstream emissions for fluid and solid minerals, and it justifies the time horizon of the estimated global warming potential impacts, the only decision being made for the RMP Amendment is regarding coal allocations (i.e., lands acceptable for further consideration for coal leasing).

### 1.1.2   Description of the Planning Area

The MCFO administers approximately 2.75 million acres of surface lands and 11.9 million acres of subsurface federal mineral estate in 17 eastern Montana counties. The decision area is the BLM-administered federal coal in the MCFO. This includes approximately 11.7 million acres of subsurface federal mineral coal estate for which the BLM has the authority to determine its availability (98 percent of federal mineral estate within the MCFO).

Maps of the decision area and land ownership in the MCFO are in **Figures 1-1** and **1-2**.



UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure 1-1**
**Surface Administration**

- Private or other
- BIA or Indian Reservation
- Bureau of Land Management
- US Forest Service
- US Fish and Wildlife Service
- Other Federal Lands
- State

1 inch = 39.3 miles

0 5 10 20 30 Miles



UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure 1-2**
**BLM-administered Coal**

Federal mineral coal estate

1 inch = 39.3 miles

0 5 10 20 30 Miles

## 1.2    THE DECISION

The decision is hereby made to approve the attached RMP Amendment. The Secretary has determined that the attached RMP Amendment (Alternative B for the Final Supplemental EIS/Proposed RMP Amendment) provides the best balance of resource conservation, while not foreclosing future opportunities for development.

Alternative C would identify fewer acres as acceptable for further consideration for coal leasing for the purposes of reducing greenhouse gas emissions that would result from additional transportation to deliver coal to the existing infrastructure; however, the analysis showed that, because the reasonably foreseeable development (RFD) scenario is not different between the alternatives, Alternative C does not provide any additional reduction in greenhouse gas emissions. The RMP Amendment provides the best balance of resource conservation, while not foreclosing future opportunities for development.

The BLM prepared the Miles City RMP Amendment in accordance with NEPA, the Council on Environmental Quality (CEQ) regulations implementing NEPA (40 Code of Federal Regulations [CFR] 1500–1508), the US Department of the Interior NEPA regulations (43 CFR 46), the requirements of the BLM's NEPA Handbook, H-1790-1 (BLM 2008),[1] and the BLM's Land Use Planning Handbook, H-1601-1.[2] Decisions identified in the approved RMP Amendment are final and become effective when this ROD is signed. The decisions included in this ROD and approved RMP Amendment amend the 2015 Miles City RMP. They change the allocation of lands acceptable and unacceptable for further consideration for coal leasing and guide coal management on public lands administered by the MCFO into the future.

### 1.2.1    Mitigation Measures

The approved RMP Amendment does not include any new mitigation measures. See the 2015 Miles City approved RMP, Appendix L, for a full list of mitigation measures for the MCFO. In addition, unsuitability criterion 15 contains a stipulation for surface mining. All of the species listed under criterion 15, Habitat for Species of High Interest to the State, have reclamation as a stipulated method of coal mining. This stipulation requires reclamation, using an approved seed mix that is appropriate to the soil types found in the disturbance area.

*Stipulation*

The holder shall seed all disturbed areas with the seed mix, as agreed on by the BLM, based on the soil types. There shall be no primary or secondary noxious weed seed in the seed mixture. Seed shall be tested for viability, in accordance with state laws and within 6 months before purchase. Commercial seed shall be either certified or registered seed. The seed mixture container shall be tagged in accordance with state laws and available for inspection by the BLM Authorized Officer.

---

[1] BLM (Bureau of Land Management). 2008. Handbook H-1790-1. BLM NEPA Handbook. Washington, DC. January 2008.
[2] BLM. 2005. Handbook H-1601-1. BLM Land Use Planning Handbook. Washington, DC. March 2005.

### 1.2.2    Plan Monitoring

The approved RMP Amendment does not include any new monitoring requirements. See the 2015 Miles City approved RMP, Appendix M, for a full list of monitoring requirements for the MCFO.

## 1.3    ALTERNATIVES

### 1.3.1    Alternatives Considered and Dismissed

During scoping and comments on the Draft SEIS/ RMP Amendment, several commenters suggested analyzing an alternative for no future leasing of coal. Closing the decision area to any future leasing of federal coal, even in lands where there are no identified resource conflicts, was considered but not brought forward for further analysis. The primary land use plan-level decision to be made regarding coal is identifying lands that are acceptable for further consideration for coal leasing and those that are unacceptable (BLM Land Use Planning Handbook H-1601-1, Appendix C).

Although a land use planning-level decision can be made that precludes coal development throughout the planning area, it does so by making lands unacceptable for further consideration of leasing; the process undertaken to arrive at this land use plan allocation must be consistent with the federal regulations. Namely, the BLM is required to go through the coal screening process outlined in 43 CFR 3420 et. seq. to arrive at its decision on coal allocations. As part of this process, the multiple-use screen is the screen used to remove lands that would conflict with resources of high value to the public from further consideration for coal leasing.

Alternatives B and C show a reduction in lands acceptable for further consideration of leasing; Alternative C makes unacceptable nearly 5 times more acres compared with Alternative A and 3 times more acres compared with Alternative B, for the specific purpose of addressing greenhouse gas emissions through the coal screening process. Once the land use plan-level decision has identified lands acceptable or unacceptable for further consideration of leasing, the decision whether to lease parcels is made at the application level; this is a discretionary action and the no-leasing/no-action alternative would be considered at this stage in the NEPA process. The policy detailed in 43 CFR 3420.1–4e explains the selectivity of resources that should drive such determinations of unacceptability. This is consistent with BLM Handbook 3420, which directs the BLM to prioritize energy development to support competitive energy markets and national energy objectives. The BLM's authorities are clear in their direction that coal unacceptability for leasing is based on protecting specific, high-value resources and does not consider unspecific resource concerns.

The forecasted production in the RFD scenario is derived from contract and future estimates provided by the operators and existing lease applications. Based on this information, the BLM determined that there would be no additional leasing during the life of the plan; therefore, the RFD scenario is limited to the approved leases and existing lease applications beyond the already approved leases and existing lease applications (see **Appendix A**). Any future leasing beyond the current leases and existing lease applications considered in this RFD scenario would exceed the scope of impacts analyzed in this RMP amendment; this would require additional NEPA analysis.

### 1.3.2   Alternatives Analyzed in Detail

The BLM performed coal screens 1–4 in order to formulate the action alternatives (see Appendix A of the Final SEIS/Proposed RMP Amendment). In addition, the BLM reviewed the Minerals Appendix of the 2015 Proposed RMP/Final EIS, decisions made in the 2015 RMP/Record of Decision (which precluded coal development; BLM 2015),[3] new data, and new GIS data.

All alternatives use the same reasonably foreseeable development scenario (see **Appendix A**) and the same surface disturbance estimates; however, under Alternative C, there may be slightly fewer impacts on certain resources. This would be the case where lands are unacceptable for further leasing consideration because Alternative C applies an additional multiple-use criterion for greenhouse gas emissions. The potential impact would depend on the location of leasing and development and the current data at the time of lease application.

Acreage of surface disturbance would be the same under all alternatives, so no single alternative is the environmentally preferable alternative. More lands would be unacceptable for further consideration for leasing under Alternative C; however, because the RFD scenario forecasts the same level of development under all alternatives, impacts would be the same. Alternatives B and C would include a stipulation for criterion 15 of the unsuitability criteria related to reclamation standards and required seed mixes.

### *Alternative A*

Alternative A, the No Action Alternative, brings forward current management decisions for coal leasing availability under the 2015 RMP/ROD. Under Alternative A, the BLM brought forward management decisions from the coal screens performed for the Powder River and Big Dry RMPs into the 2015 Proposed RMP/Final EIS. The coal screens from the Powder River and Big Dry RMPs are included in the Minerals Appendix to the 2015 Proposed RMP/Final EIS. Under Alternative A, 1,581,238 acres would be acceptable for further consideration for coal leasing and 325,430 acres would be unacceptable for further consideration for coal leasing.

### *Alternative B*

Alternative B updates management decisions for coal leasing availability under the 2015 RMP/ROD, based on new coal screens using current data. Under Alternative B, 1,214,380 acres would be acceptable for further consideration for coal leasing and 530,420 acres would be unacceptable for further consideration for coal leasing.

For Alternative B, new coal screens were applied to determine lands acceptable for further consideration for coal leasing.

An air quality criterion was considered as a multiple-use coal screen under this alternative. Alternative B considered a criterion for maintaining air quality standards as part of the multiple-use screen; however, existing data and modeling done for the 2015 Proposed RMP/Final EIS showed no air quality standards were exceeded, based on the national ambient air quality standards under the Clean Air Act; therefore, no resulting geographic area of land was unsuitable for further consideration for coal leasing, based on air resources.

---

[3] BLM. 2015. Miles City Field Office Resource Management Plan. Miles City, Montana.

In addition to the unsuitability screen, this alternative removes lands from further consideration for leasing under the multiple-use screen that considers conflicts with the following:

- Active oil and gas wells

- Oil and gas units

- Perennial, riparian, and wetland resources

- Conservation easements

- Recreation areas

- Sport fishing reservoirs

- Areas of critical environmental concern

- Cultural viewsheds

For unsuitability criterion 15, Habitat for Species of High Interest to the State, the BLM would apply a stipulation to coal development, as detailed in Appendix A of the Final SEIS/Proposed RMP Amendment.

### *Alternative C*
Alternative C uses the coal screens described under Alternative B and also applies an air resource criterion based on greenhouse gas emissions that would result from additional transportation to deliver coal to the existing infrastructure. Under Alternative C, 158,400 acres would be acceptable for further consideration for coal leasing and 1,586,400 acres would be unacceptable for further consideration for coal leasing.

Alternative C uses the same coal screen applications as Alternative B for screen 1 (coal potential), 2 (unsuitability), and 4 (landowner consultation) (Appendix A of the Final SEIS/Proposed RMP Amendment). For Screen 3 (multiple-use), Alternative C applies an air resources multiple-use criterion, based on additional greenhouse gas emissions that would result from additional transportation to deliver coal to the existing infrastructure. The additional air resource criterion limits coal development to an 8-mile infrastructure area around the four existing mines in the decision area. The 8-mile area encompasses existing transportation infrastructure associated with load-out facilities at the existing mines, such as haul roads, conveyor belts, and railroad loops.

For unsuitability criterion 15, Habitat for Species of High Interest to the State, the BLM would apply the same stipulation to coal development as described for Alternative B.

## 1.4   PUBLIC INVOLVEMENT

### 1.4.1   Public Scoping
The formal public scoping process for the Miles City SEIS/ RMP Amendment began with the publication of the Notice of Intent (NOI) in the *Federal Register* on November 28, 2018 (FR Doc. 2018-25847); the BLM also posted the NOI on the ePlanning website. A public scoping meeting was held on December 13, 2018. Additional information on public scoping can be found in the Miles City Field Office SEIS/ RMP Amendment Scoping Report, posted on the Miles City SEIS/ RMP Amendment ePlanning website, https://go.usa.gov/xmbE4.

### 1.4.2   Public Review of and Comment on the Draft SEIS/RMP Amendment

On May 17, 2019, the Environmental Protection Agency published a notice of availability (NOA) in the *Federal Register* for the Miles City Draft SEIS/RMP Amendment. This initiated the 90-day public comment period on the Draft SEIS/RMP Amendment. A public comment meeting was held on June 17, 2019. The BLM's responses to the substantive comments are part of the public response report of the Final SEIS/Proposed RMP Amendment (Appendix E of the Final SEIS/Proposed RMP Amendment).

### 1.4.3   Governor's Consistency Review

The BLM initiated a Governor's consistency review prior to publication of the Final SEIS/Proposed RMP Amendment in accordance with 43 CFR 1610.3-2(e). The consistency review period concluded on December 4, 2019.  The BLM did not receive a consistency response letter from the Governor's office.

### 1.4.4   Protest Resolution

Pursuant to the BLM's planning regulations (43 CFR 1610.5-2), the Proposed RMP/Final EIS was subject to a 30-day protest period that ended on November 4, 2019.  Any person who participated in the MCFO RMP Amendment planning process and had an interest that may be adversely affected by the BLM's planning decisions was allowed to protest proposed planning decisions within 30 days of when the NOA of the Final SEIS/Proposed RMP Amendment was published in the *Federal Register*. Note that the Final SEIS/Proposed RMP Amendment did not contain any implementation decisions that were subject to the appeal process by procedures set out by other BLM regulations.

The BLM received six protest letters during the 30-day protest period provided for the Final SEIS/Proposed RMP Amendment. In accordance with 43 CFR 1610.5-2, one of these letters was dismissed because the commenter did not have standing and because the letter did not contain valid protests. The remaining five protest letters were valid and contained protest issues that required a response from the BLM.  Consistent with the delegation of authority provided by BLM manual section 1203, the BLM's Acting Assistant Director for Resources and Planning worked with BLM Headquarters staff to resolve the valid protests. Specifically, the Acting Assistant Director concluded that the BLM Montana State Director followed the applicable laws, regulations, and policies, and considered all relevant resource information and public input. The Acting Assistant Director resolved the protests without making any changes to the Proposed RMP Amendment.

On November 25, 2019, the BLM issued a protest resolution report and each protesting party was notified in writing of the BLM's findings and the disposition of their protests. The protest response report was made available on the BLM website.

On September 25, 2020, the U.S. District Court for the District of Montana ruled that the BLM Deputy Director for Policy and Programs William Perry Pendley has unlawfully served as the Acting BLM Director for the last 424 days and enjoined him from exercising the authority of the BLM Director.  Bullock v. Bureau of Land Management et al., 4:20-cv-00062, (D. Mont. September 25, 2020). On October 16, 2020, after further briefing by the parties, the Court set aside the

Missoula and Lewistown RMP Revisions – as well as the Miles City RMP Amendment – on the grounds that Mr. Pendley "exercised the Director's exclusive authority to resolve protests" on all three plan decisions.  Further, the Court determined that "[o]nly the Secretary of the Interior can perform functions or duties of the BLM Director."  Bullock v. Bureau of Land Management et al., 4:20-cv-00062, *4 (D. Mont. October 16, 2020).

Following issuance of the October 16, 2020 Order, the Secretary independently reviewed the protests and a proposed Protest Resolution Report prepared by the BLM.  Following that review, on December 28, 2020, the Secretary independently approved a Protest Resolution Report and issued a protest resolution response to protesting parties. The Protest Resolution Report was also made available on the BLM's website  https://go.usa.gov/xmbE4.

### 1.4.5   Consultation and Coordination

*Consultation*
The BLM initiated government-to-government consultation with 15 Native American tribes who claim cultural affiliation to, or traditional use of, the Miles City Field Office planning area. Consultation continued throughout the SEIS/RMP Amendment process to ensure that tribal input and concerns were considered in plan development and will continue in any subsequent project-level implementation. No issues were identified by the consulted tribes.

The BLM coordinated and consulted with Montana's State Historic Preservation Office (SHPO) throughout the SEIS/RMP Amendment process. This will continue with subsequent project-level implementation, where applicable. On June 7, 2019, the SHPO responded, concurring that the action alternatives have the probability of direct and indirect effects on cultural resources and that some effects have the potential to be unmitigable.

Section 7 of the Endangered Species Act of 1973 requires the BLM to consult with the US Fish and Wildlife Service (USFWS). On April 11, 2019, the BLM MCFO sent a letter to the USFWS, inquiring whether it was necessary for consultation that occurred for the 2015 RMP/EIS to restart for this SEIS/RMP Amendment.

The biological assessment for the 2015 RMP/EIS had determinations of "may affect, not likely to adversely affect," for all ESA listed species; the USFWS concurred with these determinations on July 10, 2015. The USFWS also concurred with the BLM that restarting consultation is not required for this SEIS/RMP Amendment. Its rationale was that all action alternatives and associated impacts under consideration in this SEIS/RMP Amendment are equal in scope to, or are lesser in scope than, actions and impacts previously analyzed for threatened and endangered species and critical habitat in 2015.

*Cooperating Agencies*
Coordination between the cooperating agencies was integral in the development of this SEIS/RMP Amendment. Cooperating agencies are the USFWS, US Environmental Protection Agency, Office of Surface Mining Reclamation and Enforcement, Montana Department of Natural Resources and Conservation, and McCone, Sheridan, Prairie, and Rosebud Counties. In addition, there were other informal meetings, telephone conversations, and visits with agency representatives. No issues were identified by the cooperators.

## 1.5 AVAILABILITY AND APPROVAL OF THE PLAN

Copies of the ROD and the Miles City RMP Amendment may be obtained from the BLM website at https://go.usa.gov/xmbE4 or by obtaining a copy at the following locations:

BLM Bureau of Land Management
Montana State Office
5001 Southgate Drive
Billings, MT 59101

Bureau of Land Management
Miles City Field Office
111 Garryowen Road
Miles City, MT 59301

## APPROVAL

I hereby approve the land use plan decisions. My approval of the land use plan decisions is based on an independent review of the Protest Resolution Report, ROD, Proposed RMPA/Final Environmental Impact Statement, and other documents made available to me directly or indirectly. My decision constitutes the final decision of the Department of the Interior in accordance with the land use planning regulations at 43 CFR 1610.

Approved:

_____          _____
David L. Bernhardt                                          Date

BLM_MCFO_0046295

This page intentionally left blank.

# Part 2 –
# Miles City Approved Resource Management Plan Amendment

The MCFO RMP Amendment to the 2015 Miles City RMP is included below. The purpose and need for the RMP Amendment is to provide additional analysis for land use planning, specifically for analyzing coal, oil, and gas in the MCFO and to determine the lands acceptable for further consideration for coal leasing.in response to the federal district court's order in Western Organization of Resource Councils v. Bureau of Land Management, Civil Action No. 4:2016cv00021 (D. Mont. 2017). The decision area is BLM-administered federal coal in the MCFO. This includes approximately 11.7 million acres of subsurface federal mineral coal estate for which the BLM has the authority to determine its availability (**Figure 1-1**). To determine areas acceptable for further consideration for coal leasing in the RMP Amendment, the BLM updated the coal screening (Appendix A of the Final SEIS/Proposed RMP Amendment), updated the reasonably foreseeable development scenario (**Appendix A**), and developed a stipulation for coal development for unsuitability criterion 15, Habitat for Species of High Interest to the State (Appendix A of the Final SEIS/Proposed RMP Amendment). **Figure 2-1** shows the coal acceptability geospatial results of the four-step coal screening process for the RMP Amendment. **Figure 2-2** shows the impact analysis area where surface disturbance is anticipated during the RMP Amendment based on the updated RFD scenario. **Table 2-1** depicts the overall coal acceptability allocation decisions for the RMP Amendment. **Appendix B** provides the detailed acreages and figures depicting each of the coal screening criterion for the RMP Amendment.

The RMP Amendment does not modify other resource allocation management decisions in the MCFO 2015 RMP; it only modifies the decisions for allocation of BLM administered coal in the MCFO. Goals, objectives, and management actions from the 2015 RMP for resources not related to the allocation of BLM-administered coal remain valid and applicable to future management decisions.

MCFO developed reclamation as a stipulated method of coal mining for all species listed under criterion 15, Habitat for Species of High Interest to the State. This stipulation requires reclamation using an approved seed mix that is appropriate to the soil type(s) found within the disturbance area.

**Table 2-1**
**Coal Acceptability Results for RMP Amendment[1]**

| Coal Screen[1] | Total (acres)[2] |
|---|---|
| Coal potential (Screen 1) | 1,744,800 |
| Unsuitable for all methods of coal mining without exception (Screen 2) | 190,590 |
| Unsuitable for all or certain stipulated methods of coal mining with exception/stipulation (Screen 2) | 1,259,270 |
| Unacceptable for further consideration for leasing (Screen 3) | 193,010 |
| Unacceptable for further consideration for leasing (Screen 4) | 236,630 |
| *Total Acceptable* | *1,214,380* |
| *Total Unacceptable* | *530,420* |

[1] See **Appendix B** for full coal screening results.
[2] There is overlap between the coal screens; acres are not additive.

Only land use plan-level decisions related to the allocation of BLM administered coal are made in this RMP Amendment; no implementation actions are included. Such actions will require further NEPA compliance and must demonstrate conformance with the RMP and this RMP Amendment.

***Stipulation for Criterion 15***
"The holder shall seed all disturbed areas with the seed mix, as agreed upon by the BLM based on the soil type(s). There shall be no primary or secondary noxious weed seed in the seed mixture. Seed shall be tested, and the viability testing of seed shall be done in accordance with state law(s) and within 6 months prior to purchase. Commercial seed shall be either certified or registered seed. The seed mixture container shall be tagged in accordance with state law(s) and available for inspection by the BLM Authorized Officer."

BLM_MCFO_0046298

Part 2 – Approved Resource Management Plan Amendment



UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure 2-1**
**Areas Acceptable for Further**
**Consideration for Leasing**

Unacceptable

Acceptable

1 inch = 39.3 miles

0  5  10    20      30 Miles

Part 2 – Approved Resource Management Plan Amendment



UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure 2-2**
**Impact Analysis Area**

■ Unacceptable

■ Acceptable

⬠ Impact analysis area

1 inch = 39.3 miles

0  5  10   20      30 Miles

BLM_MCFO_0046300

# Appendix A
## Coal Reasonably Foreseeable Development Scenario

BLM_MCFO_0046301

This page intentionally left blank.

# TABLE OF CONTENTS

Chapter                                                                                                                Page

**APPENDIX A. COAL REASONABLY FORESEEABLE DEVELOPMENT SCENARIO**.........................**A-1**

A.1    Introduction .................................................................................................. A-1
A.2    Existing Coal Mining Activity......................................................................... A-1
A.3    Forecast of Existing Mining Activities ........................................................... A-2
A.4    Coal Production............................................................................................. A-2
       A.4.1   Data Availability on Coal Production............................................ A-2
       A.4.2   Market Trends in Coal Production ............................................. A-3
       A.4.3   Coal Production ......................................................................... A-3
A.5    Forecasted Coal Production by Year, Ownership, and Lease Availability.................... A-3
A.6    References..................................................................................................... A-4

# TABLES

Page

A-1    Forecasted Coal Production in the MCFO SEIS/RMPA Decision Area 2019–2038.................. A-3
A-2    Disposition of Coal in the MCFO SEIS/RMPA Decision Area 2019–2038.................................. A-4

This page intentionally left blank.

# Appendix A.
# Coal Reasonably Foreseeable Development Scenario

## A.1   INTRODUCTION

This reasonably foreseeable development (RFD) scenario describes anticipated coal development in the Miles City Field Office (MCFO) over the next 20 years, based on development trends and expected changes to those development trends. The RFD scenario for this effort has been updated from the RFD scenario used for the 2015 Proposed RMP/Final EIS because market conditions have changed; therefore, the BLM has updated the RFD scenario accordingly. The geographic scope of this RFD scenario is limited to coal within the decision area in the SEIS/RMPA.

Estimating the level of future coal development in the decision area has a high amount of uncertainty, because coal development depends on the continued operation of power plants, global coal markets, the ability to bring coal to market, and mining technologies. Energy policies can also shape demand by influencing the incentive and disincentives for coal development, and are often less foreseeable than the above-listed factors. Nevertheless, reasonable estimations of baseline future conditions can be forecasted based on existing mine operations, expected changes in power plant operations, and coal mines actively under planning. The RFD scenario does not account for scenarios based on uncertain or speculative assumptions.

The SEIS/RMPA decision area encompasses approximately 11.7 acres of federal mineral coal in the Power River and Williston Basins, overlapping 12 counties in eastern Montana. The decision area is 98 percent of the 11.9 million acres of subsurface minerals that the BLM administers across 17 counties in eastern Montana.

The information included in this appendix was obtained from mine operators in the MCFO and BLM records.

## A.2   EXISTING COAL MINING ACTIVITY

Federal coal is leased for four surface coal mines (Decker, Spring Creek Mine Complex, Savage, and Rosebud), covering approximately 34,700 acres in the decision area. There are no underground coal mining operations use federal coal in the decision area. Approved federal

leases for these mining activities are active until mined out. The majority of active federal leases are held within logical mining units. This allows up to 40 years to complete production within the unit, which includes state, federal, and private coal.

In addition to the coal mines with federal leases, there is one coal mine with no federal leases, the Absaloka Mine, and one forecasted coal mine with no federal leases, Big Metal (discussed below).

## A.3   FORECAST OF EXISTING MINING ACTIVITIES

An existing domestic coal license is expected to be renewed during the life of the plan; however, annual production from the license is small relative to existing coal operations in the decision area (less than 20 tons per year). The license is not included in this RFD scenario because its order of magnitude is below the other four mines, and it would not meaningfully contribute to the analysis.

Cloud Peak Energy, owner of the Spring Creek Mine Complex (Spring Creek, Youngs Creek, and Big Metal), has indicated plans to develop coal on Crow Reservation lands. This coal development project—Big Metal—could initiate production sometime during the life of the plan. Coal production resulting from this operation was included in this RFD scenario. This operation, however, would be a part of the Spring Creek Mine Complex. It would use the same outloading facilities and deliver to the same customers; therefore, it would not represent an increase in production from what is expected for the Spring Creek Mine Complex.

Existing lease applications are not forecasted to increase production from existing mines. Production is expected to continue under the scope of existing mine plans.

The BLM considered information collected from operators and did not consider future leasing in the decision area; therefore, this RFD scenario is limited to the approved leases and existing lease applications. As a result, this RFD does not require energy modeling projections. Forecasted production is derived from contract and future estimates provided by the operators and internal BLM data. As a result, energy market modelling projections were not necessary to estimate forecasted production. Any future leasing beyond the approved leases and existing lease applications considered in this RFD scenario would exceed the scope of impacts analyzed in this SEIS/RMPA; this would require additional NEPA analysis.

## A.4   COAL PRODUCTION

### A.4.1   Data Availability on Coal Production

There are four active mines with federal and nonfederal coal in the Miles City SEIS/RMPA decision area and one mine with nonfederal coal outside the decision area, but within the Miles City planning area. Three of these mines have provided the BLM with data on production. Two mines have not. The BLM used internal data to generate production forecasts into the future for the two mines that did not provide data, taking into consideration power station retirements. These forecasts predict that mines in the decision area would face difficulty securing the replacement of domestic supply coal contracts due to domestic energy production shifting toward natural gas and renewable energy sources.

The information disclosed in **Table A-1** and **Table A-2** reflects coal development totals, aggregating information from the BLM and commercial data.

### A.4.2   Market Trends in Coal Production

Over the life of the SEIS/RMPA (20 years), the BLM expects coal production in domestic markets to decrease because of planned power station retirements. Among power plants utilizing coal within the decision area, units 1 and 2 at Colstrip (Rosebud Mine), and the Lewis and Clark (Savage Mine) power plants have indicated that they will close in the next 3 years. Additional closures are likely to occur outside the planning area due to the change in market conditions; however, mines within the planning area are not the sole provider for these latter plants.

It should be noted that a significant percentage of coal is not combusted in the planning area and is shipped to foreign markets; this trend is anticipated to persist or increase throughout the duration of the plan. Global market demand and the associated demand on the export of coal are expected to increase over this time horizon, following existing trends and with no foreseeable countervailing influence (EIA 2019, IEA 2019). The net outcome of this on coal in the decision area is uncertain.

Two of the five existing mines in the planning area export coal to global markets. The three existing mines that do not export coal do not meet coal quality requirements for export coal supply contracts; therefore, global market demand would not influence them in the same way.

### A.4.3   Coal Production

About 38.7 million tons of coal will be mined from the decision area each year, totaling 775 million tons of coal over the life of the SEIS/RMPA and affecting approximately 9,730 acres (based on current lease applications). Of the total forecasted production (approximately 775 million tons), it is anticipated that approximately 58 percent (450 million tons) would be federal coal, based on production between 2016 and 2018. The forecasted disturbance of land attributed to the mining of federal coal would be proportional (5,640 acres).

### A.5   FORECASTED COAL PRODUCTION BY YEAR, OWNERSHIP, AND LEASE AVAILABILITY

**Table A-1**
**Forecasted Coal Production in the MCFO SEIS/RMPA Decision Area 2019–2038**

| Year | Total Production (million tons) | Federal Production (million tons) | Nonfederal Production (million tons) |
|---|---|---|---|
| 2019 | 31.86 | 18.5 | 13.4 |
| 2020 | 43.86 | 25.4 | 18.4 |
| 2021 | 43.56 | 25.3 | 18.3 |
| 2022 | 42.41 | 24.6 | 17.8 |
| 2023 | 41.26 | 23.9 | 17.3 |
| 2024 | 41.26 | 23.9 | 17.3 |
| 2025 | 41.26 | 23.9 | 17.3 |

| Year | Total Production (million tons) | Federal Production (million tons) | Nonfederal Production (million tons) |
|---|---|---|---|
| 2026 | 41.26 | 23.9 | 17.3 |
| 2027 | 37.26 | 21.6 | 15.6 |
| 2028 | 37.26 | 21.6 | 15.6 |
| 2029 | 37.26 | 21.6 | 15.6 |
| 2030 | 37.26 | 21.6 | 15.6 |
| 2031 | 37.26 | 21.6 | 15.6 |
| 2032 | 37.26 | 21.6 | 15.6 |
| 2033 | 37.26 | 21.6 | 15.6 |
| 2034 | 37.26 | 21.6 | 15.6 |
| 2035 | 37.26 | 21.6 | 15.6 |
| 2036 | 37.26 | 21.6 | 15.6 |
| 2037 | 37.26 | 21.6 | 15.6 |
| 2038 | 37.26 | 21.6 | 15.6 |
| Total[1] | 775 | 450 | 325 |

[1] Rounded for clarity (unrounded values: 773.8, 448.8, 325.0)

**Table A-2**
**Disposition of Coal in the MCFO SEIS/RMPA Decision Area 2019–2038**

| Leasing Disposition / Status | | Coal (million short tons) |
|---|---|---|
| Existing Leases (valid existing rights) | Federal Leased | 377 |
| | Nonfederal Leased[1] | 198 |
| | Nonfederal Leased (not permitted)[1, 2] | 152 |
| | **TOTAL** | **727** |
| Lease Applications being Pursued | Existing Lease Applications | 405 |
| | Nonfederal Unleased[3] | 1,800 |
| | **TOTAL** | **2,205** |

[1] American Indian coal is classified under nonfederal coal.
[2] Lands are leased for coal mining, but necessary permits for operations have not been obtained.
[3] This represents coal that the mining companies have expressed interest in mining on nonfederal land during the life of the plan.

## A.6   REFERENCES

EIA (Energy Information Administration). 2019. Annual Energy Outlook (AEO) 2019. Washington, DC.

Haacke, J. E., D. C. Scott, L. M. Osmonson, J. A. Luppens, P. E. Pierce, and J. A. Gunderson. 2012. Assessment of Coal Geology, Resources, and Reserves in the Montana Powder River Basin. Publications of the US Geological Survey. 119. Internet website: http://digitalcommons.unl.edu/usgspubs/119.

IEA (International Energy Agency). 2019. Coal: Coal Demand in Select Countries/Regions in 2000, 2017, and 2023. Internet website: https://www.iea.org/topics/coal/.

BLM_MCFO_0046308

# Appendix B
## Coal Screening Process

BLM_MCFO_0046309

This page intentionally left blank.

# TABLE OF CONTENTS

Chapter                                                                                           Page

**APPENDIX B. COAL SCREENING PROCESS** ..................................................................... **B-1**
    B.1     Introduction ........................................................................................................... B-1
    B.2     Regulatory Overview .......................................................................................... B-1
    B.3     Coal Screening Results ....................................................................................... B-2
          B.3.1   Screen 1—Coal Development Potential ......................................... B-2
          B.3.2   Screen 2—Unsuitability ...................................................................... B-3
          B.3.3   Screen 3—Multiple Use ..................................................................... B-5
          B.3.4   Screen 4—Consultation with Qualified Surface Owners ................... B-7
    B.4     Reference.............................................................................................................. B-8

# TABLES

                                                                                                  Page

B-1    Screen 2 Results.................................................................................................... B-3
B-2    Screen 3 Results.................................................................................................... B-5

# FIGURES

B-1     Screen 1 Coal Development Potential
B-2     Screen 2 Criterion 1 (Without Exception)—Federal Land System
B-3     Screen 2 Criterion 2 (With Exception)—Federal Lands within Rights-of-Ways
B-4     Screen 2 Criterion 3 (With Exception)—Buffer Zones along Public Roads, Schools, and Parks
B-5     Screen 2 Criterion 4 (Without Exception)—Wilderness Study Area
B-6     Screen 2 Criterion 5 (Without Exception)—Scenic Areas
B-7     Screen 2 Criterion 7 (With Exception)—Historic Lands and Sites
B-8     Screen 2 Criterion 9 (With Exception)—Federally Designated Critical Habitat for Threatened and Endangered Species
B-9     Screen 2 Criterion 13 (With Exception)—Falcon Nesting Sites
B-10    Screen 2 Criterion 14 (With Exception)—Migratory Birds of High Federal Interest
B-11    Screen 2 Criterion 15 (With Exception)—Habitat for Species of High Interest to the State
B-12    Screen 2 Criterion 16 (Without Exception)—100-Year Floodplain
B-13    Screen 2 Criterion 17 (With Exception)—Municipal Watersheds
B-14    Screen 2 Criterion 19 (Without Exception)—Alluvial Valley Floors
B-15    Screen 2 (Unsuitable for All or Certain Stipulated Methods of Coal Mining)
B-16    Screen 3 Multiple-Use Decisions—Cultural Viewshed, Recreation Area, and ACECs
B-17    Screen 3 Multiple-Use Decisions—Oil and Gas
B-18    Screen 3 Multiple-Use Decisions—Biological Resources
B-19    Screen 3 (Multiple-Use) Approved RMP Amendment
B-20    Screen 4 Consultation with Qualified Surface Owners

# ATTACHMENTS

1       Figures
2       Sample Private Landowner Letter

# Appendix B.
# Coal Screening Process

## B.1 INTRODUCTION

As part of the land use planning process (regulated under 43 CFR 1600), surface management agencies are charged with filtering lands overlaying federally administered coal through four screens. These screens ultimately result in the allocation of lands as acceptable for further consideration for leasing and development, giving consideration to resource conflicts with coal development (43 CFR 3420.1–4(d)).

This appendix describes the coal screening process undertaken by the US Department of the Interior, Bureau of Land Management (BLM) for the Miles City Field Office (MCFO), complying with 43 CFR 3420.1-4(e). The screening process informs potential land use decisions regarding coal leasing availability under the alternatives analyzed in the MCFO Supplemental Environmental Impact Statement (SEIS) and Resource Management Plan Amendment (RMPA).

The BLM prepared resource management plans and supporting coal screens for the 1996 Big Dry RMP and 1985 Powder River RMP, which allocate federal coal in the planning area. The 2015 Proposed RMP/Final EIS carried forward these coal screening results. In other words, Alternative A represents the coal screen results from the Big Dry and Powder River RMPs. To date, 34,700 acres of BLM-administered federal coal have been leased under these plans in the MCFO.

The total acres acceptable for further consideration for leasing and development based on this coal screening process are in **Part 2** of the Record of Decision and Approved Resource Management Plan Amendment.

## B.2 REGULATORY OVERVIEW

Federal coal is governed by Section 522(b) of the Surface Mining Control and Reclamation Act and by the Federal Land Management Policy Act and its implementing regulations at 43 CFR 3400 and 43 CFR 1600. One aspect of coal leasing governed under these regulations is land use planning (43 CFR 3420.1–4(d); 43 CFR 1610.7-1) and the review of federal lands for suitability for coal leasing (43 CFR 3461). These regulations identify certain lands as unsuitable for surface mining or surface mining operations because they contain significant values that conflict with

coal development. These include components of the National Wildlife Refuge System, the National System of Trails, and incorporated cities, towns, and villages, among other entities. Other unsuitability criteria include critical habitat for threatened and endangered species and cultural resources listed on the National Register of Historic Places.

The regulations at 43 CFR 3420 govern the land use planning process as it pertains to coal, including the four coal screens for identifying areas acceptable for further consideration for leasing and unsuitable for surface mining or surface mining operations (43 CFR 3420.1–4). Under this process, the BLM must complete the following:

1.  Identification of coal with development potential—Lands determined to have development potential are considered acceptable for further consideration for leasing, and are applied to the remaining coal screens. Lands determined to not have development potential are eliminated from further consideration for leasing.

2.  Application of unsuitability criteria—Lands with coal potential are assessed with procedures outlined in 43 CFR 3461. Lands with coal potential may be eliminated from further consideration for leasing if determined unsuitable without exception pursuant to Section 522(b) of the Surface Mining Control and Reclamation Act. In accordance with 43 CFR 3461.2-1, the BLM could, based on additional site-specific surveys or changes in resource conditions, change the unsuitability determination of a given tract at the activity planning stage.

3.  Multiple-use conflict analysis—43 CFR 3420.1-4e(3) states that "multiple land use decisions shall be made which may eliminate additional coal deposits from further consideration for leasing, to protect resource values of a locally important or unique nature not included in the unsuitability criteria." Multiple-use values may include possible oil and gas development and soil, forest, wildlife, recreation, agriculture, air, and watershed resources. Lands with coal potential may be eliminated from further consideration for leasing where multiple uses conflict.

4.  Surface owner consultation—This screen requires the BLM to consult with qualified surface owners whose land overlies federal coal with development potential. The BLM asks the qualified surface owners for their preference for or against offering the coal deposits under their land for lease. Lands with coal potential may be eliminated from further consideration for leasing based on qualified surface owner preference.

## B.3   COAL SCREENING RESULTS

### B.3.1   Screen 1—Coal Development Potential

To evaluate coal potential in the decision area, the BLM consulted with the Montana Bureau of Mines and Geology and the United States Geological Survey (USGS). The BLM and USGS reviewed available data from the USGS, which included data from the Montana Bureau of Mines and Geology; developed criteria for evaluating coal potential; and compared new models developed by the USGS with the USGS Powder River Basin Report from 2015. Drill hole locations from the USGS were reviewed initially for completeness and representativeness to determine what data gaps merited infilling with BLM data. The USGS's dataset was adequate for the coal model, because it covered much of the same geographic area as the BLM's drill hole

data and had similar informational value. The USGS drill hole data were correlated with coal beds, and a predictive model for coal potential was created.

The USGS recommended a set of criteria to define areas with coal potential and areas without coal potential based on coal content and coal accessibility. BLM geologists concurred with these thresholds. This methodology is materially the same as that used for the 2015 report. The BLM used this classification and methodology (which can be reviewed at the BLM Miles City Field Office) to identify the locations with coal potential under this screen.

There are approximately 1,749,140 acres of BLM-administered federal coal in the planning area. **Figure B-1** displays the results of Screen 1.

### B.3.2   Screen 2—Unsuitability

The BLM interdisciplinary team of resource specialists reviewed available data and solicited expertise and data from state and federal agencies (the Montana Fish, Wildlife and Parks; Montana Department of Environmental Quality; US Fish and Wildlife Service; and USGS) to assess the applicability of each of the 20 unsuitability criteria to the decision area.

The acres designated unsuitable under each unsuitability criterion are tabulated under **Table B-1**. Areas identified as unsuitable under each unsuitability criterion are mapped in **Figures B-2** through **B-15**, **Attachment 1**. For each criterion, resources that trigger unsuitability are identified. Please note that the resources identified are not exhaustive of that type of resource in the decision area; they are only those resources that overlie areas with coal potential identified under Screen 1 (**Figure B-1**), which result in areas being identified as unsuitable for screen 2. Acreages are not additive across the table because of overlapping resources (for example, wilderness study areas that drive unsuitability are also managed as visual resource management Class I and, therefore, subject to both criteria 5 and 6). **Figure B-15** shows the aggregate result of Screen 2.

### Table B-1
### Screen 2 Results

| Criterion Number | Criterion Name / Applicable Resources[1] | Acres Unsuitable |
|---|---|---|
| Criterion 1<br>Figure B-2 | *Federal Land System*<br>• Lewis and Clark National Historic Trail System | 14,940 |
| Criterion 2<br>Figure B-3 | *Federal Lands within Rights-of-Ways*<br>• Rights-of-way | 38,610 |
| Criterion 3<br>Figure B-4 | *Buffer Zones along Public Roads, Schools, and Parks*<br>• Parks<br>• Cemeteries<br>• Schools<br>• Public roadways<br>• Dwellings | 41,740 |
| Criterion 4<br>Figure B-5 | *Wilderness Study Areas (WSAs)*<br>• Terry Badlands WSA | 15,600 |
| Criterion 5<br>Figure B-6 | *Scenic Areas*<br>• Terry Badlands WSA | 14,970 |

| Criterion Number | Criterion Name / Applicable Resources[1] | Acres Unsuitable |
|---|---|---|
| Criterion 6 | Scientific Study | 0 |
| Criterion 7 Figure B-7 | Historic Lands and Sites <br> • Battlegrounds <br> • Listed Sites | 8,640 |
| Criterion 8 | Natural Areas | 0 |
| Criterion 9 Figure B-8 | Federally Designated, Proposed, or Essential Critical Habitat for Threatened and Endangered Species <br> • Least tern <br> • Whooping crane <br> • Pallid sturgeon | 124,480 |
| Criterion 10 | State-listed Threatened and Endangered Species | 0 |
| Criterion 11 | Bald and Golden Eagle Nest Sites | 0 |
| Criterion 12 | Bald and Golden Eagle Roost and Concentration Areas | 0 |
| Criterion 13 Figure B-9 | Falcon Cliff Nesting Sites <br> • Prairie falcon and/or merlin | 13,290 |
| Criterion 14 Figure B-10 | Migratory Birds of High Federal Interest | 118,500 |
| Criterion 15 Figure B-11 | Habitat for Species of High Interest to the State <br> • Big game crucial winter range (mule deer, white-tailed deer, and antelope) <br> • Shortnose gar, blue sucker, sicklefin chub, sturgeon chub, and paddlefish <br> • Greater sage-grouse leks and habitat management areas (for example, priority habitat management areas) <br> • Sharp-tailed grouse leks and buffer zones | 1,165,850 |
| Criterion 16 Figure B-12 | 100-Year Floodplain | 4,710 |
| Criterion 17 Figure B-13 | Municipal Watersheds | 9,760 |
| Criterion 18 | National Resource Waters | 0 |
| Criterion 19 Figure B-14 | Alluvial Valley Floors | 174,310 |
| Criterion 20 | Tribal and State Proposed Criteria | 0 |

[1]This screen was only applied to lands within the coal development potential area.

### Stipulation for Criterion 15

All of the species listed under criterion 15, Habitat for Species of High Interest to the State, have reclamation as a stipulated method of coal mining. This stipulation requires reclamation using an approved seed mix that is appropriate to the soil type(s) found within the disturbance area.

*Stipulation*

The holder shall seed all disturbed areas with the seed mix, as agreed upon by the BLM based on the soil type(s). There shall be no primary or secondary noxious weed seed in the seed mixture. Seed shall be tested, and the viability testing of seed shall be done in accordance with state law(s) and within 6 months prior to purchase. Commercial seed shall be either certified or

registered seed. The seed mixture container shall be tagged in accordance with state law(s) and available for inspection by the BLM Authorized Officer.

### B.3.3   Screen 3—Multiple Use

In addition to the areas unsuitable under Screen 2, land use decisions to protect resources of high value to the public may eliminate additional coal deposits from further consideration. The BLM reviewed other resource values and land uses not addressed under the 20 unsuitability criteria; additional lands were determined unacceptable for further consideration for leasing.

After close review of resources in the decision area, and in consultation with state and federal agencies, the BLM identified a number of resources that are eliminated from further consideration for coal leasing under Screen 3 in this SEIS/RMPA. Approximately 95,100 acres were determined unacceptable for further consideration for leasing in the 1985 Powder River RMP based on concerns for wildlife, soils, forest, recreation, agricultural, and watershed characteristics.

Under Alternative B (the Approved RMP Amendment), the BLM considered an air resource criterion, but did not remove any areas as unacceptable for further consideration for leasing (see **Chapter 2**).

**Table B-2**
**Screen 3 Results**

| Multiple-Use Screen | Acres Unacceptable for Further Consideration for Leasing |
|---|---|
| *Cultural Viewsheds (Figure B-16)* | 99,050 |
| *Recreation Areas (Figure B-16)*<br>• Special recreation management areas (SRMAs)/Extensive recreation management areas (ERMAs)<br>• Travel management areas (TMAs) | 8,770 |
| *Areas of Critical Environmental Concern (ACECs) (Figure B-16)* | 1,410 |
| *Active Oil and Gas Wells (Figure B-17)*<br>• 0.5-mile buffer on active gas wells | 55,500 |
| *Active Oil and Gas Units (Figure B-17)*<br>• All lands within an active oil and gas unit agreement (excluding coalbed natural gas units) | 22,110 |
| *Perennial, Riparian, and Wetland Resources (Figure B-18)*<br>• 300-foot buffer on all perennial streams<br>• 10-foot buffer on all riparian and wetland aquatic habitat | 10,690 |
| *Fishing Reservoirs (Figure B-18)*<br>• 0.25-mile buffer on all sport fish reservoirs located on BLM-administered lands | 830 |
| *Conservation Easements (Figure B-18)* | 1,840 |

### *Cultural Resources*

The landscapes of two National Register of Historic Places-listed properties (Rosebud Battlefield and Battle Butte) and two BLM-administered ACECs (Powder River ACEC and Reynold's Battlefield ACEC) would be adversely affected by coal leasing and potential development activity

on visual settings integral to those resources and their value to the public. The BLM developed viewshed analyses from these sites to identify potential conflicts.

### Recreation Areas

Recreational opportunities are available to the public on all BLM-administered lands with legal access. These lands can be designated as either an SMRA or an ERMA. There are also TMAs that require special management by the BLM. Potential conflicts between development of coal mineral resources and SRMAs, ERMAs, the Hay Draw TMA, and the Knowlton TMA warrant their designation as unsuitable.

### ACECs

ACECs are unique to the BLM and can only be designated on BLM-administered surfaces. These areas require special management to protect and prevent irreparable damage to important historic, cultural, or scenic values, fish and wildlife resources, or other natural systems or processes, or to protect life and safety from natural hazards (43 CFR Part 1610). An ACEC may emphasize one or more unique resources. Potential conflicts between development of coal mineral resources and two ACECs (Powder River and Reynold's Battlefield) warrant their designation as unsuitable.

### Fluid Minerals

Coal development activities can compromise oil and gas well integrity and oil and gas infrastructure around active wells where the two overlap. Oil and gas development and current oil and gas agreements merit buffers on coal leasing availability to prevent such conflicts. The delineated areas, below, reflect the smallest area reliably needed to protect equipment, flow lines, and well integrity, based on an assumption that 1.0 square mile was the minimum amount of land needed to develop a coal mine. Coalbed natural gas units were excluded from the multiple-use screen due to the short project durations and the ability for coalbed natural gas and coal development to coexist. The delineated areas apply to all active wells and units, regardless of ownership.

- 0.5-mile buffer from all active oil and gas wells
- Existing oil and gas unit agreements (excluding coalbed natural gas units)

### Wildlife

Potential conflicts between development of coal mineral resources and riparian areas, perennial streams, and sport fish reservoirs warrant their designation as unsuitable. These areas include:

- 300-foot buffer on all perennial waterways
- 10-foot buffer on all riparian and wetland aquatic habitat
- 0.25-mile buffer on all sport fish reservoirs located on BLM-administered lands

### Conservation Easements

A conservation easement is a tool used between a volunteering landowner and a government agency to permanently limit uses of the land in order to protect its conservation values. The MCFO identified Montana Fish, Wildlife and Parks conservation easements within the planning

area that protect natural resource values in the areas. Potential conflicts between development of coal mineral resources and conservation easements warrant their designation as unsuitable.

### Air Resources

Alternative B (the Approved RMP Amendment) considered a criterion for maintaining air quality standards as part of the multiple-use screen; however, existing data and modeling done for the 2015 Proposed RMP/Final EIS showed no air quality standards were exceeded based on the national ambient air quality standards under the Clean Air Act. Therefore, no resulting geographic area of land was designated not suitable for further leasing of coal.

### B.3.4   Screen 4—Consultation with Qualified Surface Owners

The BLM sent letters to all identifiable surface owners with lands overlying BLM-administered federal coal in areas where the USGS was evaluating the coal potential. These letters requested that the surface owners confirm they are qualified to express their preference on mining federal coal (see 43 CFR 3400.0-5(gg)(1) and (2)). The BLM also asked that the surface owners respond with their preference for or against mining by other than underground methods (i.e., surface mining) on the BLM-administered federal coal beneath their land. A sample of the letters sent to private surface owners can be found in **Attachment 2**.

In order to be a qualified surface owner in accordance with the regulations at 43 CFR 3400.0-5, the individual(s) must:

1. Hold legal or equitable title to the surface of split estate lands

2. Have their principal place of residence on the land; personally conduct farming or ranching operations upon a farm or ranch unit to be affected by surface mining operations; or receive directly a significant portion of their income, if any, from such farming and ranching operations

3. Have met the first two conditions for a period of at least 3 years, except for persons who gave written consent less than 3 years after they met the requirements. In computing the 3-year period, the BLM Authorized Officer shall include periods during which title was owned by a relative of such person by blood or marriage if, during such periods, the relative would have met the requirements of this section

On January 28, 2019, the BLM mailed 6,552 letters to landowners where the USGS was evaluating the coal potential. The BLM requested a response by March 4, 2019. Responses received by March 4, 2019, were included in Screen 4 of the Draft SEIS/RMPA. The BLM considered responses received from March 5 through August 15, 2019, during development of the Final SEIS/Proposed RMPA. In the letter, the BLM requested verification of landowner qualifications and an opinion on leasing federal coal beneath their surface (in favor, against, and undecided); the BLM also inquired if they have previously provided consent for surface mining. The BLM included an addressed, postage-paid envelope to encourage response. Of the 6,552 letters mailed, the BLM MCFO received 2,722 responses between January 28 and August 15, 2019. Of those responses, there were 778 qualified landowners within the coal development potential area (Screen 1).

The BLM identified lands as unavailable for further consideration for coal leasing under this screen only where a qualified landowner clearly stated that they were not in favor of leasing. All other lands were identified as available for further consideration for coal leasing under this screen. As a result of the landowner responses, the BLM MCFO removed 236,630 acres from consideration for coal leasing (**Figure B-20**). Landowner response letters are included in the project record.

At the time of coal leasing, the current landowner will need to provide written consent to mine, whether they have expressed an opinion in favor of or against leasing in this process (30 United States Code 1304).

## B.4  REFERENCE

BLM GIS. 2019. GIS data on file with the BLM's eGIS server, used for calculations or figures related to the coal development strategy. BLM, Miles City Field Office, Montana.

BLM_MCFO_0046320

# Attachment 1
## Figures

BLM_MCFO_0046321

This page intentionally left blank.

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure B-1**
**Screen 1**
**Coal Development Potential**

Coal development potential

Subsurface federal mineral coal estate

1 inch = 39.3 miles

0 5 10 20 30 Miles

B. Coal Screening Process



UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure B-2**
**Screen 2 Criterion 1 (Without Exception)—**
**Federal Land System**

Incorporated area
US Fish and Wildlife Service
US Forest Service

1 inch = 39.3 miles

0   5  10   20   30 Miles

B. Coal Screening Process



**Figure B-3**

**Screen 2 Criterion 2 (With Exception)— Federal Lands within Rights-of-Ways**

■ Rights-of-way

1 inch = 39.3 miles

0  5  10   20    30 Miles

*Miles City Field Office Record of Decision and
Approved Resource Management Plan Amendment*



B. Coal Screening Process

Figure B-4

**Screen 2 Criterion 3 (With Exception)—**
**Buffer Zones along Public Roads,**
**Schools, and Parks**

State park    Primary road
Interstate    Public road
Major highway    Agency road

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

1 inch = 39.3 miles

0  5  10    20    30 Miles

This map is intended for display purposes. No warranty is made by the BLM for the use of this data in purpose not intended by the BLM. BLM has jurisdiction only on BLM-administered lands or subsurface estate.

Projected Coordinate System: NAD 1983 Albers; Geographic Coordinate System: GCS North American 1983; Datum: North American 1983; MCFOcoalSEIS_CoalApp_Crit3.pdf; November 18, 2019.

B. Coal Screening Process



UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure B-5**
**Screen 2 Criterion 4**
**(Without Exception)—**
**Wilderness Study Area**

Terry Badlands Wilderness Study Area

1 inch = 39.3 miles

0  5  10   20      30 Miles

B. Coal Screening Process



**Figure B-6**

**Screen 2 Criterion 5 (Without Exception)—Scenic Areas**

Terry Badlands Wilderness Study Area

1 inch = 39.3 miles

0  5  10    20      30 Miles

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

This map is intended for display purposes. No warranty is made by the BLM for the use of this data in purpose not intended by the BLM. BLM has jurisdiction only on BLM-administered lands or subsurface estate.

Projected Coordinate System: NAD 1983 Albers; Geographic Coordinate System: GCS North American 1983; Datum: North American 1983; MCFOcoalSEIS_CoalApp_Crit5.pdf; November 19, 2019.

B. Coal Screening Process



UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure B-7**

**Screen 2 Criterion 7
(With Exception)—
Historic Lands and Sites**

■ Historic lands and sites

1 inch = 39.3 miles

0  5  10    20      30 Miles



B. Coal Screening Process

Figure B-8

**Screen 2 Criterion 9 (With Exception)— Federally Designated Critical Habitat for Threatened and Endangered Species**

Least tern      Pallid sturgeon

Whooping crane

1 inch = 39.3 miles

0  5  10    20    30 Miles

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

This map is intended for display purposes. No warranty is made by the BLM for the use of this data in purpose not intended by the BLM. BLM has jurisdiction only on BLM-administered lands or subsurface estate.

Projected Coordinate System: NAD 1983 Albers; Geographic Coordinate System: GCS North American 1983; Datum: North American 1983; MCFOcoalSEIS_CoalApp_Crit9.pdf; November 18, 2019.

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure B-9**
**Screen 2 Criterion 13**
**(With Exception)—Falcon Nesting Sites**

Prairie falcon and merlin nesting site

1 inch = 39.3 miles

0 5 10 20 30 Miles



B. Coal Screening Process

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure B-10**
**Screen 2 Criterion 14**
**(With Exception)—**
**Migratory Birds of**
**High Federal Interest**

1 inch = 39.3 miles

Habitat for migratory birds of
high federal interest

0  5  10    20    30 Miles

This map is intended for display
purposes. No warranty is made by the
BLM for the use of this data in purpose
not intended by the BLM. BLM has
jurisdiction only on BLM-administered
lands or subsurface estate.

Projected Coordinate System: NAD
1983 Albers; Geographic Coordinate
System: GCS North American 1983;
Datum: North American 1983;
MCFOcoalSEIS_CoalApp_Crit14.pdf;
November 18, 2019.

B. Coal Screening Process



UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure B-11**
**Screen 2 Criterion 15 (With Exception)—**
**Habitat for Species of High Interest to the State**

Sharp-tailed grouse leks

Greater sage-grouse leks

Greater sage-grouse priority
habitat management area

High priority fish species habitat

Big game crucial winter range

1 inch = 39.3 miles

0  5  10    20    30 Miles

B. Coal Screening Process



**Figure B-12
Screen 2 Criterion 16
(Without Exception)—
100-Year Floodplain**

Floodplain

1 inch = 39.3 miles

0  5  10    20    30 Miles

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

This map is intended for display purposes. No warranty is made by the BLM for the use of this data in purpose not intended by the BLM. BLM has jurisdiction only on BLM-administered lands or subsurface estate.

Projected Coordinate System: NAD 1983 Albers; Geographic Coordinate System: GCS North American 1983; Datum: North American 1983; MCFOcoalSEIS_CoalApp_Crit16.pdf; November 18, 2019.

B. Coal Screening Process



UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure B-13**

**Screen 2 Criterion 17**
**(With Exception)—**
**Municipal Watersheds**

Municipal watershed

1 inch = 39.3 miles

0  5  10    20    30 Miles

BLM_MCFO_0046335

B. Coal Screening Process



UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure B-14**

**Screen 2 Criterion 19
(Without Exception)—
Alluvial Valley Floors**

Alluvial valley floor

1 inch = 39.3 miles

0  5  10    20    30 Miles

Miles City Field Office Record of Decision and
Approved Resource Management Plan Amendment

B. Coal Screening Process



UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure B-15**

**Screen 2 (Unsuitable for all or Certain Stipulated Methods of Coal Mining)**

■ Unsuitable without exception

■ Unsuitable with exception

1 inch = 39.3 miles

0  5  10    20      30 Miles

B. Coal Screening Process



**Figure B-16**

**Screen 3 Multiple-Use Decision—Cultural Viewshed, Recreation Areas, and ACECs**

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

- Area of critical environmental concern
- Cultural viewshed
- Recreation area

1 inch = 39.3 miles

0  5  10    20     30 Miles



B. Coal Screening Process

Figure B-17
Screen 3 Multiple-Use Decision—
Oil and Gas

Active oil and gas well
Active oil and gas unit

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

1 inch = 39.3 miles

0  5  10    20      30 Miles

This map is intended for display purposes. No warranty is made by the BLM for the use of this data in purpose not intended by the BLM. BLM has jurisdiction only on BLM-administered lands or subsurface estate.

Projected Coordinate System: NAD 1983 Albers; Geographic Coordinate System: GCS North American 1983; Datum: North American 1983;



B. Coal Screening Process

**Figure B-18**
**Screen 3 Multiple-Use Decision—**
**Biological Resources**

■ Conservation easement
● Fishing reservoirs
✦ Perennial, riparian, and wetland areas

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

1 inch = 39.3 miles

0  5  10    20    30 Miles

B. Coal Screening Process



UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

**Figure B-19**
**Screen 3 (Multiple-Use)**
**Approved RMP Amendment**

Unavailable for leasing

1 inch = 39.3 miles

0  5  10    20      30 Miles

BLM_MCFO_0046341

B. Coal Screening Process



**Figure B-20**

**Screen 4 Consultation with Qualified Surface Owners**

In favor (acceptable for further consideration for coal leasing)

Not in favor (unacceptable for further consideration for coal leasing)

UNITED STATES DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT
MILES CITY FIELD OFFICE

1 inch = 39.3 miles

0  5  10    20       30 Miles

This map is intended for display purposes. No warranty is made by the BLM for the use of this data in purpose not intended by the BLM. BLM has jurisdiction only on BLM-administered lands or subsurface estate.

Projected Coordinate System: NAD 1983 Albers; Geographic Coordinate System: GCS North American 1983; Datum: North American 1983;

BLM_MCFO_0046342

This page intentionally left blank.

BLM_MCFO_0046343

# Attachment 2
## Sample Private Landowner Letter

BLM_MCFO_0046344



# United States Department of the Interior

BUREAU OF LAND MANAGEMENT
Eastern Montana-Dakotas District Office
111 Garryowen Road
Miles City, Montana 59301-7000
www.blm.gov/montana-dakotas

In Reply Refer To:
3420 (MTC0200)

January 30, 2019



FREE COPY

RE:    Surface Owner Consultation Coal Screen – Amendment to the Approved Resource
Management Plan for the Miles City Field Office, Montana, and Supplemental
Environmental Impact Statement

Dear Surface Owner:

On November 28, 2018, the Bureau of Land Management (BLM) published a Notice of Intent (NOI)
for a potential amendment to the Approved Resource Management Plan (RMP) for the Miles City
Field Office and to prepare an associated Supplemental Environmental Impact Statement (SEIS).
This potential amendment and associated SEIS is in response to a United States Montana District
Court opinion and order (Western Organization of Resource Councils, et al vs BLM; CV 16-21-GF-
BMM; 3/23/2018 and 7/31/2018).

In response to the order, the BLM is re-evaluating the four coal screens in accordance with 43 CFR
3420.1-4(e). The coal screens include: identification of coal development potential, 20 unsuitability
criteria, multiple use conflicts, and surface owner consultation. The BLM has identified your private
lands, which overlie federal coal deposits, as lands determined to have potential for coal
development. The BLM has identified the legal land descriptions of these lands on Enclosure 1 for
your review.

In accordance with 43 CFR 3420.1-4(e)(4)(i), BLM requests you notify the Miles City Field Office
in writing by **March 4, 2019** on the following information:
  1. If you are a qualified surface owner in accordance with 43 CFR 3400.0-5(gg) for the lands
     identified on Enclosure 1.
  2. Your preference for or against mining by other than underground mining techniques on the
     lands identified on Enclosure 1.
  3. Any additional information on the lands identified on Enclosure 1.

To facilitate this request, the BLM has enclosed a template document, Enclosure 1, with the
appropriate information being requested. Feel free to use Enclosure 1 to notify the Miles City Field
Office on the points listed above, and return it by using the enclosed envelope by **March 4, 2019**.

Any views provided through this request may be used in the completion of the SEIS and may be
available for public review. Before including your address, phone number, e-mail address, or other
personal identifying information in your comment, be advised that your entire comment – including
your personal identifying information – may be made publicly available at any time. While you can
ask us in your comment to withhold, from public view, your personal identifying information, we

BLM_MCPO_0046345
2

cannot guarantee that we will be able to do so. All submissions from organizations, from businesses, and from individuals identifying themselves as representatives of organizations or businesses, will be available for public review.

Because this is a planning document, lands considered under this SEIS would be analyzed to determine if they are acceptable for further considerations for coal leasing or unacceptable for further considerations for coal leasing. Leasing decisions would be considered under separate NEPA reviews when an application for leasing is submitted to the BLM. Therefore, the BLM would not be making leasing decisions at this time.

After review of the surface owner consultation responses, the SEIS will be prepared. BLM plans to have the SEIS available for public comment in spring 2019. The SEIS will be posted on the BLM e-Planning website, https:eplanning.blm.gov; where the project webpage can be found by conducting a land use plan text search for project DOI-BLM-MT-C020-2019-0004-RMP-EIS. Updated information, and associated documents, are also posted on the e-Planning project website.

We look forward to hearing from you on this project. If you have any questions, please contact Irma Nansel, Planning and Environmental Coordinator, at (406) 233-3653.

Sincerely,

Diane M. Friez
District Manager

Enclosure 1 - Template Document for Surface Owner Consultation

MTC0200:INansel:Hudson:1/30/19:Inansel_SurfaceOwnerConsultation_SEIS_Ltr_FY19

BLM_MCFO_0046346

Enclosure 1.

Please returned to the Miles City Field Office by March 4, 2019.

**Please Check One:**

____ I am authorized to express my views as a qualified surface owner in accordance with 43 CFR 3400.0-5(gg), having met the following requirements for at least the past three years (or less if I have given written consent); I hold legal or equitable title of this land surface.  I have my principal residence on this land, or I personally farm or ranch on this land, or I receive a significant portion of my income from farm or ranch operations on this land.  I have met the requirements since _____.

____ I do not meet the requirements for a qualified surface owner in accordance with 43 CFR 3400.0-5(gg).  Please explain below.

*Before including your address, phone number, e-mail address, or other personal identifying information in your comment, be advised that your entire comment – including your personal identifying information – may be made publicly available at any time.  While you can ask us in your comment to withhold, from public view, your personal identifying information, we cannot guarantee that we will be able to do so. All submissions from organizations, from businesses, and from individuals identifying themselves as representatives of organizations or businesses, will be available for public review.*

Please identify your view(s) on leasing as listed below by aliquot or group of land description also listed below.  Multiple views can be identified by aliquot or group land description(s).  Provide additional information on the reserve side.

1. I am in favor of leasing of federal coal on these lands.
2. I am against leasing of federal coal on these lands.
3. I am undecided whether I favor or oppose federal coal leasing on these lands.
4. I have already given written consent for surface mining of federal coal on these lands.