Travis Jordan, MT Bar No. 53199056
Senior Assistant Attorney General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY 82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
travis.jordan@wyo.gov

*Attorney for the State of Wyoming*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

WESTERN ORGANIZATION OF
RESOURCE COUNCILS, *et al*.,

      Plaintiffs,

      v.

UNITED STATES BUREAU OF
LAND MANAGEMENT,

      Defendant.

Case No. 4:20-cv-76-BMM-JTJ

**WYOMING'S REPLY TO
PLAINTIFFS' COMBINED REPLY
IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND
RESPONSE TO DEFENDANTS'
CROSS MOTIONS FOR
SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................... ii

GLOSSARY ............................................................................................... iv

INTRODUCTION ....................................................................................... 1

ARGUMENT .............................................................................................. 2

    I.     The Bureau's Range of Alternatives was Reasonable ........................ 2

          A.    The Groups' argument that the Bureau considered "identical" alternatives is unsupported by the law ................... 2

          B.    The Bureau permitted a reasoned choice of alternatives ........... 5

          C.    The Bureau properly eliminated the Groups' proposed alternatives ................................................................................ 9

    II.    The Bureau adequately explained that non-GHG emissions were beyond the scope of its review in the Buffalo RMPA ...................... 12

    III.   Remedy ............................................................................................. 15

CONCLUSION ......................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*California v. Block,*
690 F.2d 753 (9th Cir. 1982) ....................................................... 5, 6, 7

*Cent. Or. Landwatch v. Connaughton,*
696 F. App'x 816, (9th Cir. 2017) .......................................................4

*Cent. Sierra Envtl. Res. Ctr. v. U.S. Forest Serv.,*
916 F. Supp. 2d 1078 (E.D. Cal. 2013) ...............................................6

*Ctr. for Biological Diversity v. U.S. Dep't. of Interior,*
623 F.3d 633 (9th Cir. 2010) ...............................................................3

*Earth Island Inst. v. Carlton,*
626 F.3d 462 (9th Cir. 2010) ..............................................................13

*Earth Island Inst. v. Gibson,*
834 F. Supp. 2d 979 (E.D. Cal. 2011) ...............................................13

*Friends of Animals v. Sparks,*
200 F. Supp. 3d 1114 (D. Mont. 2016)...............................................13

*Friends of Capital Crescent Trail v. Fed. Transit Admin.,*
877 F.3d 1051 (D.D.C. 2017) .............................................................14

*Idaho Sporting Cong., Inc. v. Rittenhouse,*
305 F.3d 957 (9th Cir. 2002) ..............................................................13

*Ilio'ulaokalani Coal. v. Rumsfeld,*
464 F.3d 1083 (9th Cir. 2006) ............................................................11

*Indigenous Envtl. Network v. U.S. Dep't. of State,*
347 F. Supp. 3d 561 (D. Mont. 2018)...................................................6

*Island Range Chapter of the Mont. Wilderness Ass'n v. U.S. Forest Serv.,*
45 F. Supp. 2d 1006 (D. Mont. 1996)...................................................6

*Muckleshoot Indian Tribe v. U.S. Forest Serv.*,
  177 F.3d 800 (9th Cir. 1999) ............................................................4

*N. Alaska Envtl. Ctr. v. Kempthorne*,
  457 F.3d 969 (9th Cir. 2006) .........................................................10

*Native Ecosystems Council v. U.S. Forest Serv.*,
  428 F.3d 1233 (9th Cir. 2005) ................................................ 2, 4, 8

*New Mexico ex rel. Richardson v. BLM*,
  565 F.3d 683 (10th Cir. 2009) ........................................................9

*Price Rd. Neighborhood Ass'n, Inc. v. U.S. Dep't. of Transp.*,
  113 F.3d 1505 (9th Cir. 1997) ......................................................15

*W. Org. of Res. Councils v. BLM*,
  No. CV-16-21-GF-BMM, 2018 WL 1475470 (D. Mont. March 26, 2018) ...... 6

*Westlands Water Dist. v. U.S. Dep't of Interior*,
  376 F.3d 853 (9th Cir. 2004) ..........................................................6

**Statutes**

42 U.S.C. § 4332 .................................................................................3

**Regulations**

40 C.F.R. § 1502.10 (2019) .................................................................3

40 C.F.R. § 1502.14 (2019) .................................................................3

40 C.F.R. § 1502.16 (2019) ..............................................................3, 4

40 C.F.R. § 1503.4 (2019) .................................................................12

43 C.F.R. § 3420.1-1 ...........................................................................7

# GLOSSARY

Bureau of Land Management……………………………………………….Bureau

Environmental Impact Statement……………………………………………….EIS

Federal Land Policy and Management Act………………………………FLPMA

Greenhouse Gas………………………………………………………….…GHG

National Ambient Air Quality Standards………………………………...NAAQS

National Environmental Policy Act………………………………………..NEPA

Resource Management Plan…………………………………………………...RMP

Resource Management Plan Amendment………………………………...RMPA

Supplemental Environmental Impact Statement……………………………SEIS

**INTRODUCTION**

At the direction of this Court, the Bureau prepared a range of alternatives in the Buffalo RMPA that reduced the number of acres available for potential coal leasing. The Groups insist that the Bureau's alternatives were unreasonable because they resulted in similar environmental outcomes. But the Groups' argument misapplies NEPA. Different courses of action can occasionally have similar consequences and NEPA does not prohibit the consideration of different alternatives that share identical environmental impacts.

The Groups also contend the Bureau did not explain its rationale for eliminating certain alternatives from further consideration. But the administrative record proves different. The Bureau explained that it eliminated a 'no leasing' alternative and other alternatives based on its obligations and infeasibility.

Finally, the Groups argue the Bureau ignored comments asking it to conduct another review of the non-GHG impacts associated with the Buffalo RMPA. But this Court did not require the Bureau to start from scratch when it remanded the Bureau's original environmental impact statement. Instead, this Court upheld the Bureau's previous air quality analysis and the Bureau properly explained that the Groups' concerns about non-GHG emissions were beyond the scope of the Buffalo RMPA.

1

# ARGUMENT

## I.    The Bureau's Range of Alternatives was Reasonable

### A.    The Groups' argument that the Bureau considered "identical" alternatives is unsupported by the law.

The Groups argue that the Bureau's range of alternatives in the Buffalo RMPA was unreasonable because the alternatives resulted in "identical" consequences. (ECF No. 59 at 3). The Groups, however, do not cite a single legal authority that allows this Court to set aside an agency's range of alternatives because the environmental impact was purportedly "identical." (*See* ECF No. 59 at 3-7). In other words, the Groups' argument is meritless.

This Court, the Federal Defendants, and Wyoming have cited the relevant legal authorities for reviewing the reasonableness of an agency's range of alternatives. (*See* BFO-ARMPA-002515, ECF No. 57 at 10-11, ECF No. 54 at 17-21). For example, when Courts evaluate the reasonableness of alternatives considered by an agency, they focus on "**the substance of the alternatives**." *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1246 (9th Cir. 2005) (emphasis added). The Groups do not dispute these authorities in their reply brief.

Wyoming argued that the Groups inappropriately used information from the environmental consequences section of the SEIS to suggest the alternatives considered by the Bureau were "identical." (*See* ECF No. 54 at 12-14). The Groups dismiss Wyoming's argument as "factually and legally irrelevant." (ECF No. 59 at

2

6). In fact, the distinction under NEPA is relevant because courts do not consider the environmental impacts when reviewing an agency's alternatives.

Under NEPA, an agency's obligation to consider alternatives in an EIS is distinct from its obligation to evaluate the environmental consequences of those alternatives. *Compare* 42 U.S.C. §§ 4332(2)(C)(iii), 4332(2)(E) *with* 42 U.S.C. § 4332(2)(C)(i), (ii), (iv), (v). This distinction is one reason why the EIS is separated into separate chapters. *See* 40 C.F.R. § 1502.10 (2019) (recommended EIS format). The alternatives chapter in an EIS presents the agency's proposal and its alternatives. *See* 40 C.F.R. § 1502.14 (2019). The environmental consequences chapter, on the other hand, serves to compare the environmental impacts of the alternatives and proposed action. *See* 40 C.F.R. § 1502.16 (2019); *Ctr. for Biological Diversity v. U.S. Dep't. of Interior*, 623 F.3d 633, 645 (9th Cir. 2010) ("It is black letter law that NEPA requires a comparative analysis of the environmental consequences of the alternatives before the agency.").

The Groups' use of the Bureau's analytical assumptions in the environmental consequences chapter of the Buffalo RMPA to suggest the Bureau's alternatives are "identical" turns NEPA on its head. The environmental consequences chapter "forms the scientific and analytic basis for the comparisons under [the alternatives chapter]." 40 C.F.R. § 1502.16 (2019). Here, the Bureau correctly explained that it made several analytical assumptions in the environmental consequences chapter to

3

"evaluate[] the impacts of implementing the proposed alternatives." (BFO-ARMPA-009539). The NEPA implementing regulations reinforce the distinction between the two chapters by stating that "[the environmental consequences section] should not duplicate discussions in [the alternatives section]." 40 C.F.R. § 1502.16 (2019). The Groups' use of the Bureau's analysis in the environmental consequences chapter to challenge the Bureau's alternatives works directly against NEPA and its implementing regulations.

Moreover, the Groups' argument that seemingly identical environmental impacts are a basis to challenge the Bureau's alternatives is inconsistent with Ninth Circuit case law. An EIS may violate NEPA when the only action alternatives considered in-detail are identical. *See, e.g., Muckleshoot Indian Tribe v. U.S. Forest Serv.*, 177 F.3d 800, 813 (9th Cir. 1999) (per curiam). In *Muckleshoot*, the court focused on the **substance of the alternatives** not the environmental impact of the alternatives. *Id*. at 813 (analyzing the alternatives section of the EIS). For example, the court found that two alternatives, one labeled a land exchange and the other labeled a donation, were "virtually identical." *Id.* Other courts have similarly focused on the substance of the alternatives when applying the ruling from *Muckleshoot. See, e.g., Native Ecosystems*, 428 F.3d 1233 at 1246; *and Cent. Or. Landwatch v. Connaughton*, 696 F. App'x 816, 818-819 (9th Cir. 2017).

4

The Groups do not argue that the range of alternatives in the Buffalo RMPA were identical in the vein of the Ninth Circuit's ruling in *Muckleshoot*. However, even if the Groups applied the correct standard from *Muckleshoot*, there are meaningful differences in the Bureau's alternatives in the Buffalo RMPA. (*See* ECF No. 54 at 15). Following its revised coal screen, the Bureau considered alternatives with varying acres of acceptable land for coal leasing and ultimately adopted a proposed action which reduced the number acres available for coal leasing. (*See* BFO-ARMPA-009513). This Court should reject the Groups' argument that the Bureau's alternatives were identical, and therefore, unreasonable.

B.    **The Bureau permitted a reasoned choice of alternatives.**

Despite the Bureau's new range of alternatives in the Buffalo RMPA, the Groups also argue that the Bureau precluded a "reasoned choice" in decisionmaking because the alternatives resulted in identical climate impacts. (*See* ECF No. 59 at 4-7). But the law does not support the Groups' argument.

Courts do not consider potential environmental impacts when reviewing the reasonableness of an agency's choice of alternatives under NEPA. "Judicial review of the range of alternatives considered by an agency is governed by a 'rule of reason' that requires an agency to set forth only those alternatives necessary to permit a 'reasoned choice.'" *California v. Block*, 690 F.2d 753, 767 (9th Cir. 1982) (citation omitted). "[T]he touchstone for [the court's] inquiry is whether an EIS's selection

5

and discussion of alternatives fosters informed decision-making and informed participation." *Id.* at 767.

The Groups rely on *Block* to suggest this Court should expand its review of the alternatives to include potential environmental outcomes. (ECF No. 59 at 4-5) (citing *Block*, 690 F.2d at 767). But when district courts apply *Block*, they consistently focus on the **substance of the alternatives** not environmental impacts. *See, e.g.*, *Island Range Chapter of the Mont. Wilderness Ass'n v. U.S. Forest Serv.*, 45 F. Supp. 2d 1006, 1011 (D. Mont. 1996); *Indigenous Envtl. Network v. U.S. Dep't. of State*, 347 F. Supp. 3d 561, 574 (D. Mont. 2018); *Cent. Sierra Envtl. Res. Ctr. v. U.S. Forest Serv.*, 916 F. Supp. 2d 1078, 1090 (E.D. Cal. 2013).

The Groups provide no other legal authority to support their argument that this Court should deviate from the Ninth Circuit's standard for reviewing whether an agency's alternatives permit a "reasoned choice." (*See* ECF No. 59 at 4-7). Therefore, this Court should focus on the selection and discussion of the alternatives in the Buffalo RMPA. *See Westlands Water Dist. v. U.S. Dep't of Interior*, 376 F.3d 853, 868 (9th Cir. 2004).

Similarly, this Court's previous order concluded that it "limits its review of the sufficiency of alternatives considered to whether the agency considered alternatives 'necessary to permit a reasoned choice.'" *W. Org. of Res. Councils v. BLM*, No. CV-16-21-GF-BMM, 2018 WL 1475470, at *7 (D. Mont. March 26,

6

2018) (citing *Block,* 690 F.2d at 767). This approach follows *Block* by focusing on the substance of the alternatives. For example, each alternative in the previous Buffalo RMP identified the same potential coal leasing acreage. (BFO-ARMPA-002517-18). There, the Bureau had carried forward data from an outdated coal screen to identify the area available for potential coal leasing. (*See id.*). This Court found that climate change concerns presented a reasonable basis for the Bureau to conduct a new coal screen and consider an alternative that foreclosed coal extraction in additional areas. (BFO-ARMPA-002522). Accordingly, the Court held that the Bureau violated NEPA "when it failed to consider options that modified or foreclosed the amount of acreage for coal development." (BFO-ARMPA-002522-23).

The Bureau heeded this Court's order and prepared a range of alternatives in the Buffalo RMPA which reduced the amount of recoverable coal available for future leasing. (*See* BFO-ARMPA-004646). But the Groups argue that none of the Bureau's alternatives in the Buffalo RMPA address climate change "because they all result in *identical* climate impacts." (ECF No. 59 at 5). Again, this argument is irrelevant because it focuses on the environmental consequences.

The Bureau did, however, consider climate change in preparing its range of alternatives. (*See* BFO-ARMPA-004636). The Bureau is required to perform a coal screen when it identifies land for potential coal leasing. *See* 43 C.F.R. § 3420.1-1;

(*see also* BFO-ARMPA-009588). In response to this Court's order, the Bureau performed a revised coal screen that considered climate change as a multiple use factor. (See BFO-ARMPA-009536). The revised coal screen then informed the Bureau's alternatives. (BFO-ARMPA-009530; BFO-ARMPA-009594). As a result, the Bureau considered an alternative which reduced coal availability by thirty-four percent or, in other words, a reduction of over 200,000 acres of land available for potential leasing. (*See* BFO-ARMPA-009530).

The range of alternatives in the Buffalo RMPA complied with this Court's previous order because it provided a reasoned choice "as to whether foreclosing development on additional acreage would serve its multiple-use mandate" and addressed concerns such as climate change. (BFO-ARMPA-002522). Alternative A considered the choice of moving forward under previous management decisions. (BFO-ARMPA-004640). For Alternative B, the Bureau relied on a new coal screen that considered climate change and reduced the number of acres available for leasing. (*Id*). In the end, the Bureau adopted a modified version of Alternative B. (*Id.*).

As it did when it reviewed the Buffalo RMP, this Court should again focus on the substance of the Bureau's alternatives in its review of the Buffalo RMPA. *See Native Ecosystems Council,* 428 F.3d at 1246. Here, the Bureau offered a reasoned choice in the Buffalo RMPA between continuing under current practices and

8

reducing the acres available for leasing in light of the concerns raised by the Groups and this Court.

### C. The Bureau properly eliminated the Groups' proposed alternatives.

The Groups argue that the Bureau improperly eliminated the Groups' proposed alternatives from further consideration. (ECF No. 59 at 9). The Bureau eliminated the Groups' no leasing alternative because it conflicted with the Bureau's statutory and regulatory obligations. (*See* ECF No. 54 at 17-18) (citing BFO-ARMPA-009536). The Bureau also eliminated the Groups' reduced emissions alternative because it was not feasible. (ECF No 54 at 21) (citing BFO-ARMPA-004640). As Wyoming also explained, the Bureau's Alternative B was, in fact, a reduced leasing alternative. (ECF No. 54 at 23-24).

In response to the Federal Defendants' arguments, the Groups contend that the Tenth Circuit's ruling in *Richardson* supports full consideration of a no coal leasing alternative in the Buffalo RMPA. (*See* ECF No. 59 at 9-10) (citing *New Mexico ex rel. Richardson v. BLM*, 565 F.3d 683 (10th Cir. 2009)). The Groups fail to mention that the area of disputed land in *Richardson*, the Otero Mesa, was a 427,275 acre section of **undisturbed** land within a 1.8 million acre planning area. *Richardson*, 565 F.3d at 688-69. In *Richardson*, a no leasing alternative was "suitable" because the status quo was no development. *See id.* at 711.

In this case, highly consolidated mining already exists in the eastern portion of the Buffalo RMPA planning area. (BFO-ARMPA-004640). The Bureau explained that the Groups' proposed alternative was not feasible "because it could not be implemented without disrupting existing mining operations." (*Id.*). In preparing its alternatives, the Bureau focused its analysis on identifying potential coal leasing around existing mining operations because projections did not support new mines elsewhere in the Buffalo RMPA planning area. (*See* BFO-ARMPA-009621; *see also* BFO-ARMPA-009533). Thus, *Richardson* is distinguishable because existing conditions in the Buffalo RMPA planning area make a no leasing alternative infeasible. (*See* BFO-ARMPA-009536); *see also N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 978 (9th Cir. 2006) (An agency need not discuss alternatives which are "infeasible").

This Court relied on *Richardson* to find that the Bureau violated NEPA when it failed to consider any alternative that would decrease the amount of coal available for potential leasing in the Buffalo RMP. (BFO-ARMPA-02522-23). The Bureau responded with an alternative in the Buffalo RMPA with substantially fewer acres available for potential federal coal leasing. (BFO-ARMPA-009530). Similarly, the Bureau's revised range of alternatives in the Buffalo RMPA considered an option that foreclosed coal development in certain areas of the planning area. (*Id.*) (excluding Sheridan County from potential coal development in Alternative B); (*see*

*also* BFO-ARMPA-02522-23) (citing *'Ilio'ulaokalani Coal. v. Rumsfeld*, 464 F.3d 1083, 1102 (9th Cir. 2006)).

The Groups then argue that the Bureau's explanation for eliminating a no leasing alternative based on the coal screening process was arbitrary and capricious. (*See* ECF No. 59 at 14). As an initial matter, the Groups did not challenge the adequacy of the Bureau's revised coal screening process in the Buffalo RMPA in their second amended complaint and this Court should reject the new claim for relief. (*See* ECF No. 37).

Additionally, the Groups did not respond to Wyoming's arguments that the Bureau relied on both the coal screening process and its statutory obligations to eliminate the no leasing alternative from further consideration. (*Compare* ECF No. 54 at 19-20 *with* ECF No. 59 at 11-15). As Wyoming pointed out in its brief, the Bureau explained that it is "required to go through the coal screening process outlined in 43 CFR 3420 et [sic] seq." as opposed to applying a blanket no leasing alternative. (*See* ECF No. 54 at 19) (citing BFO-ARMPA-009536).

The Groups also argue that the Bureau waived "any argument" that the no leasing alternative was inconsistent with the Bureau's statutory authority. (ECF No. 59 at 11). But Wyoming addressed the Bureau's elimination of a no leasing alternative based on FLPMA. (S*ee* ECF No. 54 at 20). The Bureau explained in the SEIS that "[m]aking the entire decision area unacceptable for further consideration

11

for coal leasing would not meet the [Bureau's] multiple use mandate under FLPMA." (BFO-ARMPA-009536). Instead of responding to Wyoming's arguments, the Groups attempt to extract concessions and claim the Bureau waived its arguments. But the administrative record proves different. Here, the Bureau addressed why applicable law and regulations precluded further consideration of a no leasing alternative in the Buffalo RMPA. (*Id.;* BFO-ARMPA-004637).

This Court should deny the Groups' motion for summary judgment because the Bureau explained that it eliminated the Groups' proposed alternatives from further analysis because the proposals were not consistent with the Bureau's statutory obligations and were not feasible.

## II.    The Bureau adequately explained that non-GHG emissions were beyond the scope of its review in the Buffalo RMPA.

The Groups argue that the Bureau's explanation in the Buffalo RMPA that non-GHG impacts were beyond the scope of this Court's previous order was arbitrary. (ECF No. 59 at 18). Specifically, the Groups contend that the Bureau "ignored" information regarding non-GHG public health impacts from fossil fuel combustion. (ECF No. 59 at 23).

The Bureau did not ignore the Groups' comment. Rather, the Bureau explained why the comment did not warrant further agency response. *See* 40 C.F.R. § 1503.4(1)(5) (2019). The Bureau explained that it carried forward its air quality analysis from the 2015 Buffalo EIS which "[was] upheld and [was] not the subject

of the court's order." (BFO-ARMPA-009544-45). The Bureau then concluded that the non-GHG testimony submitted by the Groups was "out of the scope because it does not meet the purpose and need of the SEIS/RMPA." (BFO-ARMPA-009520). The Bureau's explanation was not arbitrary and capricious because it does not need to address, in-detail, comments about issues outside the scope of its analysis. *See Friends of Animals v. Sparks*, 200 F. Supp. 3d 1114, 1128 (D. Mont. 2016) (noting that the Bureau adequately explained that it did not address comments that were "outside the scope of the analysis"). It was also reasonable for the Bureau to determine that competing expert testimony was beyond the scope of its analysis in the Buffalo RMPA. *See Earth Island Inst. v. Gibson*, 834 F. Supp. 2d 979, 989 (E.D. Cal. 2011); *Earth Island Inst. v. Carlton*, 626 F.3d 462, 472 (9th Cir. 2010) ("[A]gencies have broad discretion in choosing how to respond to opposing scientific evidence.").

Additionally, the Bureau's decision to limit its analysis to the deficiencies identified by this Court was not arbitrary. An agency has the discretion to determine the physical scope used for measuring environmental impacts. *Idaho Sporting Cong., Inc. v. Rittenhouse*, 305 F.3d 957, 973 (9th Cir. 2002) (citation omitted). "The choice of analysis scale must represent a reasoned decision and cannot be arbitrary." *Id.* (citation omitted). This Court previously concluded that the Bureau's reliance on state and federal NAAQS standards in evaluating air quality impacts was not

arbitrary. (BFO-ARMPA-002541-42) ("[The Bureau's] decision to rely on the NAAQS likewise does not qualify as arbitrary and capricious.").

In the context of this Court's previous ruling, it was reasonable for the Bureau to limit its scope in the Buffalo RMPA because the Bureau already evaluated the impact of fossil fuel development on public health and this court upheld it. (*See* BFO-ARMPA-002540-42); *see also Friends of Capital Crescent Trail v. Fed. Transit Admin.*, 877 F.3d 1051, 1060 (D.D.C. 2017) ("NEPA does not require agencies to needlessly repeat their environmental impact analyses every time such information comes to light. Rather, a SEIS must be prepared on where new information 'provides a *seriously* different picture of the environmental landscape.'").

This Court's previous order did not require the Bureau to start from scratch when preparing the new Buffalo RMPA. (*See, e.g.*, BFO-ARMPA-002549). This Court upheld various portions of the Bureau's previous analysis, including the Bureau's air quality analysis in the Buffalo RMP. (BFO-ARMPA-002542). But the Groups now argue that even if this Court's previous ruling limited the Bureau's scope on remand, the Bureau reopened the administrative record allowing the Groups to relitigate the Bureau's previous air quality analysis. (ECF No. 59 at 22-23). This Court should reject the Groups' argument because it tasks the Bureau "with a Sisyphean feat of forever starting over in their environmental evaluations,

14

regardless of the usefulness of such efforts." *Price Rd. Neighborhood Ass'n, Inc. v. U.S. Dep't. of Transp.*, 113 F.3d 1505, 1510 (9th Cir. 1997).

Accordingly, this Court should find that the Bureau adequately explained that non-GHG impacts were beyond the scope of the Buffalo RMPA.

## III. Remedy

To the extent that this Court finds that the Groups are entitled to any remedy, Wyoming respectfully requests the opportunity to provide additional briefing consistent with this Court's practice in the prior case. (*See* BFO-ARMPA-002548).

## CONCLUSION

For the foregoing reasons, this Court should deny the Group's motion for summary judgment and uphold the Buffalo RMPA.

Dated this 25th day of February, 2022.

/s/ Travis Jordan
Travis Jordan, MT Bar No. 53199056
Senior Assistant Attorney General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY 82002
(307) 777-7895 (phone)
(307) 777-3542 (fax)
travis.jordan@wyo.gov

*Attorney for Intervenor-Defendant*
*State of Wyoming*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that Wyoming's Memorandum in Support of its Cross Motion for Summary Judgment complies with the requirements of Rule 7.1(d)(2). The lines in this document are double spaced, except for footnotes and quoted and indented material, and the document is proportionately spaced with Times New Roman Font typeface consisting of fourteen characters per inch. The total word count is 3,245, excluding caption, certificate of compliance, table of contents and authorities, and certificate of service. The undersigned relies on the  word count of the word processing system used to prepare this document.

*/s/ Travis Jordan*
Travis Jordan
Senior Assistant Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of February, 2022, a true copy of the

foregoing was served on all counsel via the Court's CM/ECF system.

*/s/ Travis Jordan*
Travis Jordan
Senior Assistant Attorney General