MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North
Suite 3200
Billings, MT 59101
Ph: (406) 247-4667
Fax: (406) 657-6058
mark.smith3@usdoj.gov

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

ARWYN CARROLL (MA Bar 675926)
LUTHER L. HAJEK (CO Bar 44303)
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Ph: (202) 305-0465
Fax: (202) 305-0506
arwyn.carroll@usdoj.gov
luke.hajek@usdoj.gov

*Counsel for Federal Defendant*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS, *et al.*, | |
| Plaintiffs, | Case No. 4:20-cv-00076-BMM-JTJ |
| v. | **FEDERAL DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR REMAND WITHOUT VACATUR** |
| U.S. BUREAU OF LAND MANAGEMENT, | |
| Defendant, and | |
| STATE OF WYOMING, | |
| Intervenor Defendant. | |

Federal Defendant the United States Bureau of Land Management (BLM) respectfully requests that the Court remand, without vacatur, BLM's decisions approving the 2019 Approved Resource Management Plan Amendments (ARMPA) and Supplemental Environmental Impact Statements (SEIS) prepared by the Miles City Field Office (MCFO) and Buffalo Field Office (BFO). BLM submits this motion in lieu of filing a reply in support of its cross-motion for summary judgment, ECF No. 56. Remand is appropriate here because BLM has determined, in light of comments received on the coal-leasing program, that remand of these decisions is appropriate to allow the information from the leasing program review to better inform the allocation decisions for future leasing under these plans.

## BACKGROUND

Plaintiffs challenge the decisions to approve the 2019 ARMPAs for the Miles City and Buffalo Field Offices, which were prepared following this Court's remand of BLM's 2015 RMP revisions. Prior to approving the ARMPAs, each Field Office completed new coal-screening analyses, and prepared an Environmental Impact Statement. BLM then issued a decision approving the Buffalo ARMPA, BFO-ARMPA-004644, and the Secretary of the Interior ultimately approved the Miles City ARMPA, BLM-MCFO-0046205.

Plaintiffs filed their original complaint on August 27, 2020. ECF No. 1. Plaintiffs allege that BLM did not consider adequate alternatives for future coal

leasing or adequately evaluate the air-pollution impacts of downstream coal combustion. On December 14, 2020, Plaintiffs amended their complaint to include claims—not briefed on summary judgment—alleging a violation of the Federal Vacancies Reform Act and the Appointments Clause of the U.S. Constitution. ECF No. 21. Plaintiffs filed their motion for summary judgment and opening merits brief on October 29, 2021. ECF No. 48. Intervenor-Defendant the State of Wyoming filed its motion for summary judgment and response to Plaintiffs' motion on December 23, 2021. ECF No. 53. And on January 7, 2022, Federal Defendants moved for summary judgment and responded to Plaintiffs' Motion. ECF No. 56.

As explained below and in the attached Declarations of Theresa M. Hanley, Acting State Director of BLM's Montana State Office (Exhibit 1), and Andrew Archuleta, State Director of BLM's Wyoming State Office (Exhibit 2), BLM has determined that remand is appropriate in light of information received through other administrative processes. Specifically, in late 2021, BLM initiated a review of the federal coal leasing program and through public scoping received 77,000 comments on the leasing program. BLM summarized these comments and is considering them in the evaluation of the current coal leasing program. Hanley Decl. ¶ 5; Archuleta Decl. ¶ 5. As briefing proceeded in this case, BLM determined that, in light of the comments received on the coal leasing program, a remand of the decisions in the Buffalo and Miles City ARMPAs would be appropriate to allow the information

from the leasing program review to better inform the allocation decisions for future leasing under these plans. Hanley Decl. ¶ 6; Archuleta Decl. ¶ 6. Specifically, BLM has determined that it would be appropriate to consider review of an expanded range of alternatives to inform future allocation decisions for the plans. Hanley Decl. ¶¶ 6–7; Archuleta Decl. ¶¶ 6–7. BLM is also considering how the coal screening criteria of 43 C.F.R. § 3420.1-4 could be adjusted through future rulemaking or guidance to take into account climate change issues more explicitly as a multiple use factor. Hanley Decl. ¶ 7; Archuleta Decl. ¶ 7. A revised coal screening process could then be considered and inform future allocation decisions for these two plans. Hanley Decl. ¶ 7; Archuleta Decl. ¶ 7. A NEPA analysis would be prepared, including an opportunity for public comment, before any future allocation decisions could be approved. Hanley Decl. ¶¶ 8–9; Archuleta Decl. ¶¶ 8–9.

## LEGAL STANDARD

"A federal agency may request remand in order to reconsider its initial action." *Cal. Cmtys. Against Toxics v. U.S. Env't Prot. Agency*, 688 F.3d 989, 992 (9th Cir. 2012) (citing *SKF USA Inc. v. United States,* 254 F.3d 1022, 1029 (Fed. Cir. 2001)). "Voluntary remand is consistent with the principle that '[a]dministrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider.'" *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1141 (C.D.

Cal. 2002) (quoting *Trujillo v. Gen. Elec. Co.,* 621 F.2d 1084, 1086 (10th Cir. 1980)); *see also Lute v. Singer Co.,* 678 F.2d 844, 846 (9th Cir. 1982).

"Courts in this Circuit generally look to the Federal Circuit's decision in *SKF USA* for guidance when reviewing requests for voluntary remand." *N. Coast Rivers All. v. U. S. Dep't of the Interior*, No. 1:16-cv-00307-LJO-MJS, 2016 WL 8673038, at *3 (E.D. Cal. Dec. 16, 2016). In *SKF USA*, the court indicated that, in response to a challenge to agency action, "the agency may request a remand, without confessing error, to reconsider its previous position" or "the agency may request a remand because it believes that its original decision was incorrect on the merits and it wishes to change the result." *N. Coast Rivers All.*, 2016 WL 8673038, at *3 (quoting *SKF USA*, 254 F.3d at 1027–28). Courts in the Ninth Circuit "only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (citing *SKF USA*, 254 F.3d at 1029); *see also Neighbors Against Bison Slaughter v. Nat'l Park Serv.*, No. CV 19-128-BLG-SPW, 2021 WL 717094, at *2 (D. Mont. Feb. 5, 2021), *appeal docketed*, No. 21-35144 (9th Cir. Feb. 23, 2021) (citing *Cal. Cmtys. Against Toxics*, 688 F.3d at 992 ) (same).

If a court grants a voluntary remand, it should then decide whether the agency's action should be vacated during the remand. "Whether agency action should be vacated depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" *Cal. Cmtys. Against*

4

*Toxics*, 688 F.3d at 992 (quoting *Allied–Signal, Inc. v. U.S. Nuclear Regulatory Comm'n,* 988 F.2d 146, 150-51 (D.C. Cir. 1993) (internal quotation marks omitted)).

## ARGUMENT

Because BLM has indicated an intention to revisit the challenged decisions in light of comments received on the coal leasing program in a manner that may address Plaintiffs' concerns about coal-leasing alternatives, the Court should remand the decisions to the agency to allow BLM to reconsider them via the administrative process. The Court should not vacate the ARMPAs in the interim period because vacatur requires a decision on the merits, whereas this motion seeks remand in lieu of a merits decision to allow the agency to address its concerns in the first instance. Remand without vacatur would not lead to environmental harm.

I.  **The Court should remand the challenge ARMPA decisions to the Agency**

Remand is appropriate here because BLM has committed to reconsidering the decisions through its own administrative process. A remand is "generally required" if "intervening events outside of the agency's control" "affect the validity of the agency action." *SKF USA* , 254 F.3d at 1028. But "even if there are no intervening events, the agency may request a remand (without confessing error) in order to reconsider its previous position." *Id*. at 1029. Courts "generally grant an agency's motion to remand so long as 'the agency intends to take further action with respect to the original agency decision on review.'" *Util. Solid Waste Activities Grp. v. Env't*

5

*Prot. Agency*, 901 F.3d 414, 436 (D.C. Cir. 2018) (citation omitted); *see also Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993). An agency need not confess error to seek and receive a voluntary remand. *See, e.g., SKF USA*, 254 F.3d at 1029; *Ethyl Corp.*, 989 F.2d at 524; *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 417 (6th Cir. 2004). Rather, remand is appropriate if an agency has identified "a substantial and legitimate" concern regarding the challenged decision. *See SKF USA*, 254 F.3d at 1029; *Cal. Cmtys. Against Toxics*, 688 F.3d at 992. Remanding where an agency has identified such a concern allows agencies "to cure their own mistakes" consistent with their inherent authority to reconsider, and conserves judicial resources. *Ethyl Corp.*, 989 F.2d at 524. BLM satisfies these requirements here.

  First. BLM has identified "substantial and legitimate concerns" with its decision approving the 2019 ARMPAs. As explained in the attached declarations, BLM has determined that, in light of the comments received on the coal leasing program, a remand of the decisions in the Buffalo and Miles City ARMPAs would be appropriate to allow the information from the leasing program review to better inform the allocation decisions for future leasing under these plans, including consideration of different alternative allocations and potential revision of the coal-screening criteria to account for climate change more explicitly. Hanley Decl. ¶ 7; Archuleta Decl. ¶ 7. These concerns overlap with issues raised by Plaintiffs in their

claims challenging the ARMPAs. *See* First Am. Compl. for Declaratory & Injunctive Relief ¶¶ 53–57, ECF No. 21 (First Am. Compl.); Pls.' Br. in Supp. of Motion for Summ. J. 13–24, ECF No. 49 (Pls.' Summ. J. Mem.). And Plaintiffs would have an opportunity to participate and raise their remaining concerns, *see* First Am. Compl. ¶¶ 58–64; Pls.' Summary Judgment Mem. 24–31, in any subsequent NEPA analysis. Hanley Decl. ¶ 8; Archuleta Decl. ¶ 8.

Second, BLM has committed to reconsidering the decisions challenged in this case. *See Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017) (An agency does not need to "confess error or impropriety in order to obtain a voluntary remand" so long as it has "profess[ed] [an] intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge."). BLM has determined that different alternative allocations would be appropriate to consider, and is considering how the coal screening criteria of 43 C.F.R. § 3420.1-4 could be adjusted through future rulemaking or guidance to take into account climate change issues more explicitly as a multiple use factor. Hanley Decl. ¶ 7; Archuleta Decl. ¶ 7. A revised coal screening process could then be applied to future allocation decisions for these two plans. Hanley Decl. ¶ 7; Archuleta Decl. ¶ 7.

Third, remand here is in the interest of judicial economy and consistent with allowing an agency to reconsider its own decision in the first instance. Allowing

BLM to review its decisions and address its serious concerns with the lease sales through the administrative process will preserve this Court's and the parties' resources. *See Util. Solid Waste*, 901 F.3d at 436; *see also B.J. Alan Co. v. Interstate Com. Comm'n*, 897 F.2d 561, 562–63 n.1 (D.C. Cir. 1990) ("Administrative reconsideration is a more expeditious and efficient means of achieving adjustment of agency policy than is resort to the federal courts." (quoting *Pennsylvania v. Interstate Com. Comm'n*, 590 F.2d 1187, 1194 (D.C. Cir. 1978))). In contrast, continuing to litigate the very same issues that BLM is currently reconsidering would be inefficient and a waste of limited judicial resources. *See TransWest Express LLC v. Vilsack*, No. 19-cv-3603-WJM-STV, 2021 WL 1056513, at *5 (D. Colo. Mar. 19, 2021).

In addition, continuing to litigate this case would also interfere with BLM's ongoing reconsideration process by forcing the agency to structure its administrative process around pending litigation, rather than the agency's priorities and expertise. *See Am Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 43 (D.D.C. 2013), *aff'd*, 601 F. App'x 1 (D.C. Cir. 2015) (noting forcing the agency "to litigate the merits would needlessly waste not only the agency's resources but also time that could instead be spent correcting the [action's] deficiencies"); *TransWest Express*, 2021 WL 1056513, at *3 (noting courts should generally grant a voluntary remand lest "judicial review is turned into a game in which an agency is 'punished' for

procedural omissions by being forced to defend them well after the agency has decided to reconsider" (quoting *Citizens Against Pellissippi Parkway*, 375 F.3d at 416)).

Finally, voluntary remand would serve the public interest because an agency's "reconsideration of the potential environmental impacts of a project furthers the purpose of NEPA." *Citizens for Pellissippi Parkway*, 375 F.3d at 418. Here, additional analysis and public input would advance the "twin aims" of NEPA, that is, facilitating informed agency decisionmaking and promoting public involvement. *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 703 (10th Cir. 2009) (quoting *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council*, 462 U.S. 87, 97 (1983)).

For all of these reasons, the Court should remand the challenged decisions to BLM for reconsideration through the administrative process.

## II. The Court should remand the ARMPA decisions without vacatur

The underlying decisions need not be vacated while the agencies determine how to proceed on remand. "Whether agency action should be vacated depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'" *Cal. Cmtys. Against Toxics*, 688 F.3d at 992 (citation omitted). The Court has broad discretion in fashioning a remedy, and "when equity demands, [agency action] can be left in place while the agency follows the

9

necessary procedures" to revise its action. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) (citation omitted); *see also* 5 U.S.C. § 702 (nothing in the Administrative Procedure Act affects "the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground"). Here, remanding without vacatur is appropriate for three reasons.

First, BLM seeks remand in lieu of a decision on the merits, and the Court lacks authority to "order vacatur . . . without an independent determination that [the challenged leasing decisions were] not in accordance with the law." *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135 (D.D.C. 2010); *see also WildEarth Guardians v. Bernhardt*, No. 20-56 (RC), 2020 WL 6255291, at *1 (D.D.C. Oct. 23, 2020) ("The Court remands the decisions without vacatur because it has not reviewed the EAs, FONSIs, and DNAs underlying the leasing decisions – therefore, it has no basis to vacate the agency action."). Even if the Court could reach the merits and consider the alleged deficiencies of the decisions as a matter of law for purposes of determining whether to vacate, doing so would undermine a principal rationale for remand: "preserv[ing] scarce judicial resources by allowing agencies 'to cure their own mistakes.'" *Carpenters Indus.*, 734 F. Supp. 2d at 132 (quoting *Ethyl Corp.*, 989 F.2d at 524). It makes little sense for the Court to undertake an evaluation on the merits of decisions that the agency is currently revisiting.

Second, Plaintiffs would not be prejudiced by a remand without vacatur. Critically, Plaintiffs' own proposed remedy did not contemplate vacatur, *see* Pls.' Summ. J. Mem. 31–32 (remedy), and for good reason: Vacatur of the 2019 decisions would cause BLM's management plans to revert to the 2015 plans, *see Organized Village of Kake v. U.S. Dept. of Agric.*, 795 F.3d 956, 970 (9th Cir. 2015) (en banc), which authorized more acreage for consideration for future coal leasing and which this Court previously declined to vacate. *W. Org. of Res. Councils v. U.S. Bureau of Land Mgmt. (WORC III)*, No. CV 16-21-GF-BMM, 2018 WL 9986684, at *2 (D Mont. Jul. 31, 2018) (Morris, J.).

Even if Plaintiffs could theoretically claim some prejudice, however, it would be limited because BLM has committed to reconsidering the ARMPA decisions precisely to evaluate different alternative allocations, as Plaintiffs themselves seek in their Complaint. *See id.*; First Am. Compl. ¶¶ 53–57. Any such revised evaluations would also require additional NEPA analysis, which would include an opportunity for public comment.

In any event, the ARMPAs do not themselves authorize the leasing or extraction of any coal. In fact, no new coal leasing has occurred in the planning areas since before the ARMPAs issued and no applications for coal leases have been received by either Field Office since the plans were approved. ECF No. 60-1 ¶ 6; ECF No. 60-2 ¶ 6. But even were it contemplated, further NEPA analysis must be

11

conducted both at the leasing stage and when mining plans of operations are approved. *See* Fed. Def.'s Br. in Supp. of its Cross-Mot. for Summ. J. 5–6, ECF No. 57 (Def.'s Summ. J. Mem.) (describing subsequent stages of administrative action); ECF No. 60-1 ¶ 6; ECF No. 60-2 ¶ 6. Because BLM must engage in additional NEPA analysis before any additional coal leasing or development can occur, and because Plaintiffs retain the ability to challenge any other final BLM decisions, including decisions approving lease sales and mine plans, and any new decision(s) on the leases issued as part of BLM's reconsideration process, remand without vacatur is not prejudicial.

Finally, there would be no harmful impacts to the environment if the Court grants remand without vacatur. *Nat'l Family Farm Coal. v. U.S. Env't Prot. Agency*, 960 F.3d 1120, 1144–45 (9th Cir. 2020). No such harm will occur because no coal leasing has occurred in the planning areas since before the ARMPAs issued and no new coal lease applications have been received since the plans were approved. *See* ECF No. 60-1 ¶ 6; ECF No. 60-2 ¶ 6. And as Federal Defendants have previously explained, no future coal leasing is currently expected within the life of the plans. *See* Def.'s Summ. J. Mem. 17–19.

## CONCLUSION

Because BLM has determined that a remand of the decisions approving the Buffalo and Miles City ARMPAs would be appropriate to consider comments received on the federal coal-leasing program and to analyze different alternative allocations, and has committed to reviewing those decisions through the administrative process, the Court should remand to the agency without vacatur.

Respectfully submitted this 4th day of March, 2022.

>TODD KIM
>Assistant Attorney General
>Environment & Natural Resources Division
>
>*/s/ Arwyn Carroll*
>ARWYN CARROLL (MA Bar 675926)
>Trial Attorney, Natural Resources Section
>United States Department of Justice
>Environment and Natural Resources Div.
>P.O. Box 7611
>Washington, D.C. 20044-7611
>Phone:  202-305-0465
>Fax:  202-305-0506
>arwyn.carroll@usdoj.gov
>
>LUTHER L. HAJEK (CO Bar 44303)
>Trial Attorney, Natural Resources Section
>United States Department of Justice
>Environment and Natural Resources Div.
>999 18th St., South Terrace, Suite 370
>Denver, CO 80202
>Phone: (303) 844-1376
>Fax: (303) 844-1350
>luke.hajek@usdoj.gov

13

LEIF M. JOHNSON
United States Attorney

MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North, Suite 3200
Billings, MT 59101
Phone: (406) 247-4667
Fax: (406) 657-6058
mark.smith3@usdoj.gov

*Counsel for Federal Defendant*

## CERTIFICATE OF WORD COUNT

I certify that this memorandum complies with LR 7.1(d). It contains 2,967 words, as counted using the word count feature of Microsoft Word, excluding the caption, table of contents, table of authorities, table of acronyms, and certificate of word count.

/s/ *Arwyn Carroll*
ARWYN CARROLL
U.S. Department of Justice