Shiloh S. Hernandez
Earthjustice
313 East Main Street
P.O. Box 4743
Bozeman, MT 59772-4743
(406) 586-9649
shernandez@earthjustice.org

Melissa A. Hornbein
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hornbein@westernlaw.org

*Attorneys for Plaintiffs*

Nathaniel Shoaff (*pro hac vice*)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5610
nathaniel.shoaff@sierraclub.org

*Attorney for Plaintiff Sierra Club*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS et al., | Case No. 4:20-cv-00076-BMM |
| Plaintiffs, | |
| vs. | **PLAINTIFFS' RESPONSE TO BLM'S MOTION FOR VOLUNTARY REMAND** |
| UNITED STATES BUREAU OF LAND MANAGEMENT, | |
| Defendant, | |
| and | |
| STATE OF WYOMING, | |
| Intervenor-Defendant. | |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. ii

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION .........................................................................................1

BACKGROUND ...........................................................................................3

LEGAL STANDARDS .................................................................................7

ARGUMENT ..............................................................................................10

I.   BLM'S NONCOMMITTAL ELEVENTH-HOUR MOTION FOR
     VOLUNTARY REMAND SHOULD BE DENIED...................................10

II.  ALTERNATIVELY, IF THIS COURT GRANTS VOLUNTARY
     REMAND, IT SHOULD IMPOSE SIDEBOARDS...................................20

III. CONSERVATION GROUPS HAVE NOT REQUESTED
     VACATUR. ..........................................................................................21

CONCLUSION ...........................................................................................21

CERTIFICATE OF COMPLIANCE..........................................................23

# TABLE OF AUTHORITIES

## CASES

*Am. Waterways Operators v. Wheeler*,
   427 F. Supp. 3d 95 (D.D.C. 2019) .......................................................... 11, 12, 16

*American Forest Resource Council v. Ashe*,
   946 F. Supp. 3d 1 (D.D.C. 2013) ........................................................18

*Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Norton*,
   527 F. Supp. 2d 130 (D.D.C. 2007) ................................................8, 15

*Cal. Cmtys. Against Toxics v. EPA*,
   688 F.3d 989 (9th Cir. 2012)...............................................................7

*Chlorine Chemistry Council v. EPA*,
   206 F.3d 1286 (D.C. Cir. 2000) ............................................... 9, 11, 17

*Citizens Against Pellissippi Parkway Extension v. Mineta*,
   375 F.3d 412 (6th Cir. 2004)................................................................9

*Confederated Tribes of Grand Ronde Cmty. v. Salazar*,
   No. CIV.A. 11-284 RWR, 2012 WL 3757655 (D.D.C. Aug. 29, 2012).............18

*Dieffenbacher v. DeVos*,
   No. EDCV17342VAPKKX, 2017 WL 4786096 (C.D. Cal. June 9,
   2017).................................................................................... 10, 12

*Friends of the Earth v. Laidlaw*,
   528 U.S. 167 (2000) ............................................................ 11, 17, 19

*Guam Pres. Tr. v. Gregory*,
   No. CV 10-00677, 2011 WL 13248292 (D. Haw. June 30, 2011).................9, 13

*In re NRDC*,
   956 F.3d 1134 (9th Cir. 2020) .......................................................9, 15

*Keltner v. United States*,
   148 Fed. Cl. 552 (2020) .............................................................. passim

iii

*Limnia, Inc. v. U.S. Dep't of Energy*,
   857 F.3d 379 (D.C. Cir. 2017) ...................................................................... 10, 12

*Lutheran Church-Missouri Synod v. FCC*,
   141 F.3d 344 (D.C. Cir. 1998) ........................................................... 9, 11, 17, 18

*Miss. River Transmission Corp. v. FERC*,
   969 F.2d 1215 (D.C. Cir. 1992) ................................................................. passim

*Motor Vehicle Mfrs. v. State Farm*,
   463 U.S. 29 (1983) .............................................................................................11

*TransWest Express LLC v. Vilsack*,
   No. 19-CV-3603-WJM-STV, 2021 WL 1056513 (D. Colo. Mar. 19,
   2021).................................................................................... 17, 19, 20, 21

*Util. Solid Waste Activities Grp. v. EPA*,
   901 F.3d 414 (D.C. Cir. 2018) ................................................................... passim

*W. Org. of Res. Councils v. BLM* (*WORC II*),
   No. CV 16-21-GF-BMM, 2018 WL 1475470 (D. Mont. Mar. 26,
   2018)........................................................................................... 3, 14, 20

## OTHER AUTHORITIES

Joshua Revesz, Voluntary Remands: A Critical Reassessment, 70 Admin.
   L. Rev. 361 (2018) ...................................................................... 8, 9, 12

## INTRODUCTION

The Bureau of Land Management's (BLM's) motion for voluntary remand, filed following full briefing on the merits and a mere ten days before the long-scheduled hearing, is too little too late. BLM states that remand is necessary because the agency received unidentified extra-record information in a different administrative review, five months ago. As a result, BLM asserts that it is entitled to what is in effect a dismissal of the instant action, against Plaintiffs' will, without a ruling on the merits, with no guarantee that it will address any of Conservation Groups' concerns on remand, and with no timeline for completing the process. This last-ditch effort to avoid defeat is, in fact, the paradigm of agency gamesmanship, and BLM's motion—as it currently stands—should be denied.

To be clear, Conservation Groups ultimately seek, and have sought from the beginning of this litigation, a remand to BLM—just not the empty proposal BLM now offers. Conservation Groups have litigated for the better part of a decade to make BLM follow the law in amending the Buffalo and Miles City Resource Management Plans ("RMPs" or "Plans") by (1) considering coal alternatives that do not contribute to climate disaster, including a no future coal leasing alternative, and (2) disclosing the widespread harm to public health caused by fossil fuel combustion. BLM has possessed the information supporting these claims— regarding climate impacts of coal and mortality and morbidity from fossil fuel

combustion—for years. BLM's carefully worded and yet indeterminate remand request provides zero certainty that the agency will address either of these issues on remand, raising the prospect that years will pass and BLM will not ultimately rectify the failures at issue in this action. As a result, under the proposed terms of BLM's open-ended remand request, Conservation Groups could again find themselves where they are right now, years into the future, back before this Court, with fully briefed claims, asking the Court to order BLM to analyze an alternative that would foreclose new coal leasing in the Buffalo and Miles City planning areas and to disclose the widespread public health impacts that result from burning fossil fuels produced under the Plans. This would not only be an enormous waste of the resources of Conservation Groups and the Court, it would be an injustice.

Accordingly, Conservation Groups ask this Court to deny BLM's motion for voluntary remand and issue an order on the merits of Conservation Groups' claims, which are now fully briefed. Alternatively, if this Court remands to BLM, the groups request that the Court include the following sideboards:

- Require BLM to complete the remand process for both Plans within 12 months of the Court's Order;

- Require BLM to evaluate, at a minimum, a reduced coal development alternative and a no future coal leasing alternative for each Plan;

- Require BLM to analyze and disclose the non-climate public health impacts of downstream fossil fuel combustion for each Plan; and

- This Court should retain jurisdiction through the completion of the remand processes.

## BACKGROUND

The instant case is already in its second iteration. In 2016, a subset of the Conservation Groups initially challenged BLM's Resource Management Plan Amendments for the Powder River Basin, which were issued in 2015. *W. Org. of Res. Councils v. BLM* (*WORC II*), No. CV 16-21-GF-BMM, 2018 WL 1475470, at *1 (D. Mont. Mar. 26, 2018). In 2018, this Court held that, among other things, BLM's decisions violated the National Environmental Policy Act (NEPA) because the agency failed to adequately evaluate: (1) reduced coal development alternatives to address concerns about the impacts of climate change, and (2) environmental consequences of downstream combustion of the vast amounts of fossil fuels approved for development under the Plans. *Id.* at *17-18.

In October 2019 BLM issued supplemental environmental impact statements (SEISs) for the Plans. (Doc. 1, ¶ 31.) Despite this Court's clear instructions, on remand, BLM again failed to conduct a meaningful analysis of reduced coal-mining alternatives and refused to consider *any* of the devastating non-climate harms to public health from downstream combustion of the vast amounts of fossil

fuels open to development in the RMPs. (Doc. 49 at 3-4.) As a result, Conservation

Groups were forced into this second round of litigation in 2020. (Doc. 1.)

Conservation Groups repeatedly reached out to BLM about remanding this

matter to the agency to rectify these errors without having to fully litigate the

merits a second time. Shoaff Decl. ¶¶ 10-14 (Exhibit A). Specifically, a subset of

Conservation Groups met with BLM and expressed a desire to resolve this case in

May and November 2021, and laid out a clear path for remand that would avoid

fully litigating the matter in communication with BLM's counsel in December

2021, and multiple times in in January 2022. *Id.* Prior to the close of merits

briefing on February 25, 2022, BLM did not engage with Conservation Groups in

any substantive discussion on the potential for a voluntary remand or the

parameters for such a process. *Id.* ¶ 15.

Simultaneously, in August 2021 BLM initiated a review of its national coal

leasing program. On October 5, 2021, Conservation Groups submitted several sets

of comments on the coal leasing program to BLM. *Id.* ¶¶ 3-4. Conservation

Groups' comments raised numerous issues, including the two concerns at issue in

this case—the need to reduce or eliminate coal leasing to avoid the worst impacts

of climate change and the need to disclose the widespread deleterious public health

impacts from downstream combustion of federal fossil fuels. *Id.* ¶ 5. Conservation

Groups' comments on the programmatic coal leasing review included much of the

4

information they had previously submitted to BLM for the RMP amendments at issue in this case. *See, e.g.*, BFO-AR-42-3455 to -3518; BFO-AR-461-8177 to -8215; BFO-AR-532-12072 to -12364.

Conservation Groups moved for summary judgment in the instant case on October 29, 2021. (Doc. 48.) This Court set a hearing on the motion for March 14, 2022. (Doc. 51.) In November, December, and January, before BLM filed a response brief, Conservation Groups again reached out to BLM about resolving the issues in this case without further litigation and briefing. Shoaff Decl. ¶¶ 12-14. BLM again declined to provide any substantive response to Conservation Groups' overture. *Id.* ¶ 15.

Following an extension, BLM filed its response and cross-motion for summary judgment on January 7, 2022. (Docs. 56, 57.) After receiving BLM's cross-motion, Conservation Groups again reached out to BLM about resolving this litigation, and BLM again chose not to offer any substantive response as to a potential voluntary remand and the appropriate parameters suggested by Conservation Groups. Shoaff Decl. ¶¶ 14-15. Consequently, Conservation Groups filed their combined reply-response brief on February 4, 2022. (Doc. 59.)

BLM's reply brief was due on February 25, 2022. (Doc. 58 at 2.) On February 25, BLM notified the Court that it intended to move for voluntary remand without vacatur. (Doc. 60 at 2.) One week later (ten days before oral argument),

5

BLM moved for voluntary remand without vacatur. (Doc. 62.) On March 4, 2022, BLM filed its motion for voluntary remand "in lieu of filing a reply in support of its cross-motion for summary judgment." (Doc. 63 at 1.) BLM premised its motion on unspecified extra-record "information received through other administrative processes"—the review of the coal leasing program. (*Id.* at 2.) BLM, however, declines to elaborate on what particular "new" information was received in the programmatic coal leasing review, nor does it even state what entities provided the information. Thus, it is unclear what, if any, information bearing on Conservation Groups' claims in the instant case is contained in the comments on the coal leasing review that was not also included in their extensive comments submitted on the RMPs.

BLM mentions an intention to "consider review of an expanded range of alternatives to inform future allocation decision for the plans." (*Id.* at 3.) The agency raises the possibility of considering "a no future coal leasing alternative" (Doc. 63-1, ¶ 6) or of "*potential* revision of the coal screening criteria to account for climate change more explicitly." (Doc. 63 at 6 (emphasis added).) However, the agency carefully avoids making any actual commitment to consider a no future leasing alternative or, indeed, any alternative that will reduce greenhouse gas emissions. (Doc. 63 at 3; Doc. 63-1, ¶¶ 6-7; Doc. 63-2, ¶¶ 6-7.) Instead, BLM

states only that it "*may* address Plaintiffs' concerns about coal leasing alternatives." (Doc. 63 at 5.)

BLM makes no commitment even to consider disclosing the pervasive harmful impacts to public health from downstream fossil fuel combustion, which, as noted, Conservation Groups raised at length in the October 5, 2021, comments on the federal coal program. (*See id.* at 7 (stating only that Plaintiffs "would have an opportunity to participate and raise their remaining concerns").) BLM notably offers no timeline for its requested remand process. (*See generally* Doc. 63 at 1-13; Doc. 63-1, ¶¶ 1-9; Doc. 63-2, ¶¶ 1-9.)

## LEGAL STANDARDS

BLM misstates the relevant standard. The agency claims that "[c]ourts in the Ninth Circuit 'only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith.'" (Doc. 63 at 4 (quoting *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012)).) But what BLM presents as a categorical rule, is in fact only a rule of thumb, as the whole citation from *California Communities Against Toxics* makes clear: "*Generally*, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." 688 F.3d at 992 (emphasis added).

7

The practice and jurisprudence of voluntary remand—which developed principally in the D.C. Circuit—has advanced in recent years. The Court of Federal Claims summarized the current standard:

> The case law thus makes clear that where an agency requests a remand without confessing error, the agency must express some intent to reconsider the original agency decision that is the subject of the legal challenge, after which the court has discretion to grant or deny the motion. Where the agency's request is "substantial and legitimate," a court ordinarily should grant the motion; alternatively, where the agency's request is in bad faith or frivolous, a court should deny the motion. In between those relative extremes, the case law demonstrates that the trial court has substantial discretion depending on the timing of the government's motion, its representations regarding the reasons for a remand, the plaintiff's factual allegations viewed through the prism of the particular legal issues involved, and the overall fitness and completeness of the administrative record available for the Court's review.

*Keltner v. United States*, 148 Fed. Cl. 552, 563 (2020) (internal citation omitted); *see also* Joshua Revesz, Voluntary Remands: A Critical Reassessment, 70 Admin. L. Rev. 361, 362-66 (2018).

In exercising this "substantial discretion," *Keltner*, 148 Fed. Cl. at 563, over requests for voluntary remand, courts "consider whether remand would unduly prejudice the non-moving party." *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 436 (D.C. Cir. 2018). Such prejudice may occur due to, among other things, undue delay of a plaintiff's case. *E.g.*, *Assiniboine & Sioux Tribes of Fort Peck Indian Reservation v. Norton*, 527 F. Supp. 2d 130, 136 (D.D.C. 2007); *Guam Pres. Tr. v. Gregory*, No. CV 10-00677, 2011 WL 13248292, at *4 (D.

8

Haw. June 30, 2011) (explaining that an "attempted reconsideration must 'occur within a reasonable time'" (quoting *Citizens Against Pellissippi Parkway Extension v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004))); *cf. In re NRDC*, 956 F.3d 1134, 1139-40 (9th Cir. 2020) (demonstrating extent of prejudicial delay that can follow voluntary remand).

Courts have repeatedly held that last-minute requests for voluntary remand after merits briefing and on the eve of oral argument should be denied. *Miss. River Transmission Corp. v. FERC*, 969 F.2d 1215, 1217 n.2 (D.C. Cir. 1992) (denying motion and expressing "extreme displeasure" over motion for voluntary remand "filed two days before oral argument" with only vague statements about requested reconsideration); *Lutheran Church-Missouri Synod v. FCC*, 141 F.3d 344, 349 (D.C. Cir. 1998) (denying as an "unusual … ploy" "last second motion to remand" based on "post-argument 'policy statement'" where agency did not confess error or describe intentions on remand); *Util. Solid Waste Activities Grp.*, 901 F.3d at 437 (denying "last-minute request for a remand"); *Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1288 (D.C. Cir. 2000) (denying motion for voluntary remand filed "[a]fter briefing").

Courts may treat the eleventh-hour requests "with skepticism" for fear of "gamesmanship and foot-dragging." Revesz, Voluntary Remands, 70 Admin. L. Rev. at 373-74; *e.g.*, *Dieffenbacher v. DeVos*, No. EDCV17342VAPKKX, 2017

WL 4786096, at *2-3 (C.D. Cal. June 9, 2017) (denying motion for voluntary

remand that "appear[ed] to be an attempt to evade judicial review" and avoid a

"conclusive ruling"); *Keltner*, 148 Fed. Cl. at 566 (voluntary remand not

appropriate if agency simply "seek[s] to avoid a loss on the merits").

Similarly, denial of a request for voluntary remand is warranted when an

agency fails to "to profess intention to reconsider, re-review, or modify the original

agency decision that is the subject of the legal challenge." *Limnia, Inc. v. U.S.

Dep't of Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017). This is because, absent a

commitment to address the challenged issues, voluntary remand functions as a

"dismiss[al] on the merits." *Id.* at 388.

## ARGUMENT

## I. BLM'S NONCOMMITTAL ELEVENTH-HOUR MOTION FOR VOLUNTARY REMAND SHOULD BE DENIED.

Here, BLM's eleventh-hour motion for voluntary remand should be denied.

Not only is BLM's request untimely, it is amorphous and non-committal—with no

guarantee to address the issues presently before the Court in this case—it contains

no express confession of error and offers no timeline for completion of the remand

process. As such, it raises significant concerns that the remand process will only

produce a lengthy delay and another round of litigation over the issues that are

presently teed up for resolution by this Court. This would prejudice Conservation

Groups, waste judicial resources, and should be denied.

Courts have long recognized that abandoning a case that has reached an advanced stage "may prove more wasteful than frugal." *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 170 (2000). Thus, courts look with skepticism on eleventh-hour agency requests for voluntary remand. *Miss. River Transmission Corp.*, 969 F.2d at 1217 n.2; *Lutheran Church-Missouri Synod*, 141 F.3d at 349; *Util. Solid Waste Activities Grp.*, 901 F.3d at 436; *Chlorine Chemistry Council*, 206 F.3d at 1288. This worry is pronounced here. Briefing is complete and oral argument is less than one week away. The Conservation Groups repeatedly reached out to BLM to explore resolution short of fully litigating the case, but BLM repeatedly chose not to engage in meaningful discussions prior to the close of merits briefing on February 25, 2022. Shoaff Decl. ¶¶ 9-15. Moreover, the unidentified extra-record information[1] on which BLM's premises its motion was available to the agency at least by early October 2021—five months ago, before any briefs were

---

[1] BLM's general reference to this unidentified, extra-record information is itself problematic. Generally, extra-record information may not be considered on judicial review under the Administrative Procedure Act (APA). *Motor Vehicle Mfrs. v. State Farm*, 463 U.S. 29, 50 (1983) (prohibiting "*post hoc* rationalizations"). It is not clear what, if any, substantive information was submitted in the coal leasing review that is not also included in Conservation Groups' comments on the RMPs in this instant case. *See Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95, 98 (D.D.C. 2019) (denying motion for voluntary remand where agency "identified nothing" new "that it was unaware of when it issued its decision"); *see* BFO-AR-42-3455 to -3518; BFO-AR-461-8177 to -8215; BFO-AR-532-12072 to -12364. Conspicuously, BLM declines to provide any details.

11

filed in this action. *Id.* ¶ 4. In these circumstances, as in the cases cited above, BLM's vague and unsubstantiated motion appears tactical and self-interested and should, consequently, be denied. *See also Dieffenbacher*, 2017 WL 4786096, at *2-3; *Keltner*, 148 Fed. Cl. at 566. This alone is a sufficient basis for denying BLM's motion.

BLM's motion should also be denied because it makes absolutely no commitment to address the issues that are currently before the Court. It is fundamental that an agency is not entitled to voluntary remand—which in effect operates like an involuntary dismissal of a plaintiff's case[2]—unless it "profess[es] intention to reconsider, re-review, or modify the original agency decision that is the subject of the legal challenge." *Limnia, Inc.*, 857 F.3d at 387; *see also Am. Waterways Operators*, 427 F. Supp. 3d at 98 ("An agency's professed intent to revisit the challenged decision is a necessary condition to obtain remand …."). Here, at most, BLM proposes that it "may"—or may not—"address Plaintiffs' concerns about coal leasing alternatives." (Doc. 63 at 5.) BLM professes even less with respect to Conservation Groups' concerns about impacts to public health from

---

[2] *See* Revesz, Voluntary Remands, 70 Admin. L. Rev. at 367-68 ("As a remedy, the voluntary remand is unique in American law. No other motion allows a defendant to rid itself of a lawsuit without refuting its opponent's legal contentions (as in a motion to dismiss) or without the opposing party's consent (as in a settlement).").

fossil fuel combustion, offering only that "Plaintiffs would have an opportunity to participate and raise their remaining concerns." (*Id.* at 7.) This is not sufficient, particularly in light of BLM's position that non-climate public health impacts of fossil fuel combustion were properly excluded from consideration as "outside the scope" of the first remand process in this case. (Doc. 57 at 28.) While BLM need not admit error to obtain the unique remedy of voluntary remand, it must at least profess to revisit the issues that Conservation Groups have raised in this action. *See Limnia*, 857 F.3d at 387; *Am. Waterways Operators*, 427 F. Supp. 3d at 99.[3]

This shortcoming is all the more troubling, here, where BLM has offered only the vaguest explanation of *why* it suddenly determined that voluntary remand is appropriate based on unidentified information, supplied by an unidentified entity, in a different matter more than five months ago. (*See* Doc. 63 at 6 (stating that BLM's "substantial and legitimate concerns" are based on (unidentified) comments from the coal leasing review providing (unidentified) information that may "inform allocation decisions" (in some unidentified way) in the future).) BLM's assertions do not inspire confidence in Conservation Groups that their

---

[3] *See also Guam Pres. Tr.*, 2011 WL 13248292, at *5 (denying remand and reasoning: "Defendants want to have their cake and eat it too. They want to conduct the reconsideration process and they want to stay Plaintiffs' litigation of this case while they do so, but they only want to allow Plaintiffs a very limited role in the reconsideration process").

concerns will be addressed and resolved on remand. *See Miss. River Transmission Corp.*, 969 F.2d at 1217 n.2 (rejecting request for voluntary remand where "[n]o one reading [the agency's] motion could tell what FERC had in mind or what it intended to do with the case if it were returned").

These concerns, in turn, demonstrate the prejudice that an unfettered remand would cause to Conservation Groups. *See Util. Solid Waste Activities Grp.*, 901 F.3d at 436 (voluntary remand would "prejudice the vindication of [plaintiffs'] claim"). As noted, Conservation Groups have been forced to litigate for over six years because BLM has staunchly refused to (1) consider reasonable management alternatives for the Powder River Basin that do not contribute to the ongoing climate crisis and (2) disclose the widespread public mortality and morbidity caused by unabated combustion of billions of tons of coal and huge volumes of oil and gas from the Powder River Basin. *WORC II*, 2018 WL 1475470 at *1, 17-18. BLM now seeks a voluntary remand, but without offering any assurances that the agency will correct the errors identified by Conservation Groups in this case and identified by this Court in *WORC II*. Worse, BLM offers no timeline for completing this remand process. (*See* Doc. 63 at 1-13.) BLM does not even clarify if this remand process will occur concurrent to the agency's programmatic review of its coal leasing program, for which no future steps have been promised or publicly identified. (*See id.*)

14

Thus, the remand process could lead to years of additional administrative proceedings, which could ultimately result in a repeat of the litigation presently before this Court (because BLM has made no guarantee to consider reasonable reduced-coal development alternatives or to disclose the public health impacts of fossil fuel combustion). This delay would prejudice Conservation Groups' interests, waste this Court's time, and prolong the widespread harm to the public and the environment from unrestrained fossil fuel development in the Powder River Basin. This weighs heavily against BLM's motion for voluntary remand. *Assiniboine & Sioux Tribes of Fort Peck Indian Reservation*, 527 F. Supp. 2d at 136; *Util. Solid Waste Activities Grp.*, 901 F.3d at 436.[4]

BLM offers various arguments in support of its motion, but they cannot withstand scrutiny. First, while BLM intones about "substantial and legitimate concerns" as to RMP alternatives raised by the October 5, 2021, comments on the federal coal program (Doc. 63 at 6-7), the agency fails to provide any details regarding these new-found concerns. (*See* Doc. 63-1, ¶¶ 5-6; Doc. 63-2, ¶¶ 5-6.) The unidentified comments BLM cites from the programmatic coal leasing review were submitted over five months ago and there is no indication that the

---

[4] *See also Keltner*, 148 Fed. Cl. at 565 (denying voluntary remand that "would delay this case further and serve only to potentially improve the government's litigation posture"); *In re NRDC*, 956 F.3d at 1139-40 (agency delayed for over four years following voluntary remand).

15

unidentified information that has apparently changed BLM's mind was not already

available in the extensive comments submitted on the RMPs challenged in this

case. *See, e.g.*, BFO-AR-42-3455 to -3518; BFO-AR-461-8177 to -8215; BFO-

AR-532-12072 to -12364. Such superficial and indeterminate statements do not

justify the last-minute, open-ended voluntary remand requested by BLM. *E.g.*,

*Miss. River Transmission Corp.*, 969 F.2d at 1217 n.2; *Keltner*, 148 Fed. Cl. at 567

(finding justification for remand request insufficiently detailed).

Second, while BLM asserts that it "has committed to reconsidering the

decision challenged in this case" (Doc. 63 at 7), the agency has specifically

avoided committing to reconsider the two legal issues presented in this case,

regarding consideration of reduced coal alternatives and disclosure of health

impacts from downstream combustion. (*See id.* at 5-7 (hedging that BLM "may

address Plaintiffs' concerns about coal leasing alternatives" and making no

commitment to address downstream combustion). BLM's careful avoidance of any

commitments on these matters raises the prospects of further future litigation over

these identical issues, especially viewed in the context of this matter's procedural

history. *See Am. Waterways Operators*, 427 F. Supp. 3d at 98 (commitment to

revisit the challenged matter is "necessary condition" to voluntary remand).

Third, BLM's discussion about judicial economy (Doc. 63 at 7-8) misses the

mark because BLM has sought voluntary remand at the eleventh-hour. This Court

has already decided pretrial motions (Doc. 34), dispositive motions are fully

briefed (Docs. 49, 54, 57, 59, 60, 61), and argument is days away (Doc. 51).

Moreover, as noted, no efficiency is gained if, on remand, BLM continues to refuse

to address Conservation Groups' concerns. *See Util. Solid Waste Activities Grp.*,

901 F.3d at 436 (denying voluntary remand that would "prejudice the vindication"

of plaintiffs' claims).[5] Abandonment of this case at this advanced juncture would

be a waste of resources. *Friends of the Earth*, 528 U.S. at 170. BLM cites

*TransWest Express LLC v. Vilsack*, No. 19-CV-3603-WJM-STV, 2021 WL

1056513 (D. Colo. Mar. 19, 2021), but that case is distinguishable. There, unlike

here, the agency moved for voluntary remand "not long after the lawsuit was filed"

and, in so doing, committed to completing the remand process in a mere 60 days.

*Id.* at *4-5. Here, BLM moved for remand nearly two years after this case was filed

and after completion of merits briefing and, in so doing, has offered no timeline for

completing remand. (*See* Doc. 62.)

    Nor is BLM's next argument compelling. BLM argues that it has "serious

concerns with the lease sales" and that "continuing to litigate this case would also

interfere with BLM's ongoing reconsideration process by forcing the agency to

---

[5] *See also Miss. River Transmission Corp.*, 969 F.2d at 1217 n.2 (denying last
minute motion for voluntary remand); *accord Lutheran Church-Missouri Synod*,
141 F.3d at 349; *Util. Solid Waste Activities Grp.*, 901 F.3d at 437; *Chlorine
Chemistry Council*, 206 F.3d at 1288.

structure its administrative process around pending litigation." (Doc. 63 at 8.) First, there are no "lease sales" at issue here. Second, merits briefing concluded on February 25, 2022, one week before BLM filed its motion for voluntary remand. (Docs. 58, 62.) After the March 14, 2022, hearing (in just five days' time), there will be nothing further for BLM to "continue[] to litigate." Third, upon an order from this Court addressing the merits and appropriate remedy, there is unlikely to be "pending litigation" for BLM to structure its administrative process around, as the litigation will be complete. Moreover, courts recognize that, "[n]either a remand nor a stay … is necessary for federal defendants to review and reconsider [a prior] determination." *Confederated Tribes of Grand Ronde Cmty. v. Salazar*, No. CIV.A. 11-284 RWR, 2012 WL 3757655, at *1 (D.D.C. Aug. 29, 2012). Finally, BLM repeatedly ignored Conservation Groups' overtures to negotiations and maintained this litigation for nearly two years. Shoaff Decl. ¶¶ 9-15. That the agency failed to identify its supposed concerns about interference with its administrative process until the eve of argument suggests that this justification should be viewed with skepticism. *Miss. River Transmission Corp.*, 969 F.2d at 1217 n.2; *Lutheran Church-Missouri Synod*, 141 F.3d at 349; *Util. Solid Waste Activities Grp.*, 901 F.3d at 436-37.

The cases cited by BLM are not to the contrary. In *American Forest Resource Council v. Ashe*, unlike here, the agency admitted specific errors and

sought remand, prior to completion of merits briefing, to correct those errors. 946 F. Supp. 2d 1, 42-43 (D.D.C. 2013). Here, by contrast, BLM has not admitted any error, specific or otherwise, to justify its last-minute motion, and has made only the sparsest suggestions about reconsideration, which may or may not address the concerns Conservation Groups have raised here. (*See* Doc. 63 at 5-7.) And, as noted above, *TransWest Express*, 2021 WL 1056513, at *4-5, in which a prompt motion sought a discrete and bounded remand, is critically different from the case at bar.

Finally, BLM's passing reference to the public interest in furthering the purposes of NEPA is unavailing. (Doc. 63 at 9.) BLM has carefully avoiding making any commitments about the content of revised NEPA analyses, raising the prospect of the agency's continued failure to follow the law, which would only lead to additional and prolonged litigation. At this stage of litigation the more frugal path is resolution of the merits and clear instructions requiring to BLM to: (1) consider reduced coal leasing and no future leasing alternatives for each Plan, (2) disclose non-climate public health impacts of downstream fossil fuel combustion, and (3) complete both remand processes within 12 months of the Court's order. *See Friends of the Earth*, 528 U.S. at 170 (explaining that abandoning litigation at an advanced stage "may prove more wasteful").

## II.   ALTERNATIVELY, IF THIS COURT GRANTS VOLUNTARY REMAND, IT SHOULD IMPOSE SIDEBOARDS.

Conservation Groups believe that the most prudent course is resolution of the merits and clear instructions to BLM to conduct a lawful NEPA analysis on remand, including analysis of reduced and no future coal development alternatives and disclosure of non-climate public health impacts from downstream fossil fuel combustion. Any remand process ordered by this Court, whether upon granting BLM's motion for voluntary remand or as a result of a decision on the merits, should impose the following conditions to protect Conservation Groups' interests:

- BLM should be required to evaluate a reduced coal development alternative and a no future leasing alternative that would in fact reduce greenhouse gas emissions, as this Court indicated in *WORC II*, 2018 WL 1475470, at *17;

- BLM should be required to disclose non-climate public health impacts of downstream fossil fuel combustion, as indicated in *WORC II*, 2018 WL 1475470, at *18; and

- BLM should be required to complete the remand process in 12 months, *e.g.*, *TransWest Express*, 2021 WL 1056513, at *6 (remand for 60 days); and

- This Court should retain jurisdiction through the completion of the remand process. *E.g.*, *id.* (requiring status report prior to conclusion of remand).

## III.  CONSERVATION GROUPS HAVE NOT REQUESTED VACATUR.

Conservation Groups have not requested vacatur and accordingly do not respond to BLM's opposition to vacatur. (*See* Doc. 63 at 9-12.) Conservation Groups note, however, that BLM's statement that "no future coal leasing is currently expected within the life of the plans" (Doc. 63 at 12) is: (1) contradicted by the record, as explained in Conservation Groups' combined reply-response brief (Doc. 59 at 15 & n.8); (2) contradicted by BLM's argument that remand would "better inform the allocation decisions *for future leasing under these plans*" (Doc. 63 at 6 (emphasis added)); and (3) undermined by the fact that BLM wants to revisit coal alternatives (*id.* at 6-7), which would serve almost no purpose unless BLM anticipated future leasing within the life of the plans.

## CONCLUSION

For the foregoing reasons, this Court should, in its discretion, deny BLM's motion for voluntary remand.

Respectfully submitted this 9th day of March, 2022.

/s/ Shiloh Hernandez
Shiloh S. Hernandez
Earthjustice

21

313 East Main Street
P.O. Box 4743
Bozeman, MT 59772-4743
(406) 586-9649
shernandez@earthjustice.org

Melissa A. Hornbein
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hornbein@westernlaw.org

*Attorneys for Plaintiffs*

Nathaniel Shoaff (*pro hac vice*)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5610
nathaniel.shoaff@sierraclub.org

*Attorney for Plaintiff Sierra Club*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I hereby certify that the foregoing brief contains 4,914 words, excluding caption, certificate of compliance, tables, and signature block. I relied on the word count of the word-processing system used to prepare this brief.

/s/ Shiloh Hernandez
Shiloh Hernandez
