MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North
Suite 3200
Billings, MT 59101
Ph: (406) 247-4667
Fax: (406) 657-6058
mark.smith3@usdoj.gov

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

ARWYN CARROLL (MA Bar 675926)
LUTHER L. HAJEK (CO Bar 44303)
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044-7611
Ph: (202) 305-0465
Fax: (202) 305-0506
arwyn.carroll@usdoj.gov
luke.hajek@usdoj.gov

*Counsel for Federal Defendant*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS, *et al.*, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 4:20-cv-00076-BMM-JTJ |
| v. | )<br>) **FEDERAL DEFENDANT'S REPLY**<br>) **BRIEF IN SUPPORT OF ITS** |
| U.S. BUREAU OF LAND MANAGEMENT, | ) **MOTION FOR REMAND**<br>) **WITHOUT VACATUR** |
| Defendant, and | ) |
| STATE OF WYOMING, | ) |
| Intervenor Defendant. | ) |

The United States Bureau of Land Management (BLM) seeks a voluntary remand to allow it to revisit its decisions approving the 2019 Approved Resource Management Plan Amendments (ARMPA) prepared by the Miles City Field Office (MCFO) and Buffalo Field Office (BFO). *See* ECF No. 62. The Court has discretion when addressing a motion for voluntary remand, but the rule in the Ninth Circuit Court of Appeals is that "[g]enerally, courts only refuse voluntarily requested remand when the agency's request is frivolous or made in bad faith." *Cal. Communities Against Toxics v. U.S. EPA*, 688 F.3d 989, 992 (9th Cir. 2012); *see also Neighbors Against Bison Slaughter v. Nat'l Park Serv.*, No. CV 19-128-BLG-SPW, 2021 WL 717094, at *2 (D. Mont. Feb. 5, 2021) (granting voluntary remand finding no frivolity or bad faith, despite plaintiffs' concerns about prolonged litigation).

Plaintiffs have not argued in their response that the BLM's request is frivolous *or* in bad faith. Rather, Plaintiffs argue that the request is insufficiently detailed, contend that they will be prejudiced, and complain that it was filed well into this action. But the request *is* sufficiently detailed to obtain remand, and the cases on which Plaintiffs rely for their prejudice and timing arguments do not support rejecting the agency's motion.

1

## I. BLM has committed to a process for revisiting the challenged decisions

As explained in its opening brief, BLM has committed to a process for revisiting the coal-allocation decisions challenged in this action. That includes initiating a resource management plan amendment process, through which BLM would consider an expanded range of alternatives to inform future allocation decisions for the plans. *See* Decl. of Theresa Hanley (Second Hanley Decl.) ¶¶ 6–7, ECF No. 63-1; Decl. of Andrew Archuleta (Archuleta Decl.) ¶¶ 6–7, ECF No. 63-2. As BLM has consistently explained in this case, 43 C.F.R. § 1610.7-1 mandates that BLM use the coal-screening criteria of 43 C.F.R. § 3420.1-4 to determine which lands are unsuitable for future consideration of coal leasing. To that end, BLM is considering how the coal-screening criteria of 43 C.F.R. § 3420.1-4 can be adjusted to take climate-change issues more explicitly into account as a multi-use factor. Second Hanley Decl. ¶ 7; Archuleta Decl. ¶ 7. Finally, BLM will also prepare a new, supplemental NEPA analysis, which will afford an opportunity for public participation. Second Hanley Decl. ¶¶ 8–9; Archuleta Decl. ¶¶ 8–9.

Plaintiffs oppose remand, arguing that the agency has not confessed error or at this time committed to all of the relief that Plaintiffs seek in this action. *See* Pls.' Remand Mem. 10, 12–14, ECF No. 68. But BLM is not required to confess error to obtain remand. *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). Rather, it "might simply state that it has doubts about . . . that decision's relationship

2

to the agency's other policies." *Id.* Here, BLM has indicated a desire to revisit the coal-allocation decisions challenged in this action in connection with its broader review of the federal coal program.

And Plaintiffs have cited no case for the proposition that, to obtain voluntary remand, the agency must affirmatively commit to addressing each of Plaintiffs' *claims* or requests for relief. Rather, the cases they cite for that proposition, *see* Pls.' Remand Mem. 13, require only that the agency must commit to reviewing the *decision* that has been challenged. *Limnia, Inc. v. U.S. Dep't of Energy*, 857 F.3d 379, 387 (D.C. Cir. 2017) (denying remand because agency only committed to considering new, post-remand applications, and not the originally challenged decision); *see also Keltner v. United States*, 148 Fed. Cl. 552, 566 (2020) (describing *Limnia* as "one of the few" decisions denying voluntary remand after *SKF*); *Guam Pres. Tr. v. Gregory*, No. CV 10-00677, 2011 WL 13248292, at *5 (D. Haw. June 30, 2011) (denying motion for voluntary remand that did not address plaintiffs' request to participate in the decision-making process under the NHPA).

Insofar as Plaintiffs contend that more is required, their contention finds no support in their cited cases. For example, while the court in *American Waterways Operators v. Wheeler* acknowledged that committing to consider the decision at issue is a "necessary" but "not always a sufficient condition," it denied the request on prejudice grounds which, as explained below, do not apply to this case. 427 F.

3

Supp. 3d 95, 99 (D.D.C. 2019). And while the court in *Lutheran Church-Missouri Synod v. Federal Communications Commission* denied remand, it did so because the agency had based its motion solely on a "policy statement" that (a) did not bind the agency and (b) on its face only applied to post-statement decisions, not decisions previously rendered. 141 F.3d 344, 349 (D.C. Cir. 1998). The agency offered similarly vague and non-binding bases in *Mississippi River Transmission Corp. v. FERC*, 969 F.2d 1215, 1217 n.2 (D.C. Cir. 1992). There, the court denied remand because the agency offered only a single sentence in support of its motion—that it wished to "reconsider the ruling in this case in light of its developing policies regarding as transportation." *Id.*

Here, as explained *supra*, BLM has made a commitment to revisit the decisions at issue here—including to consider an expanded range of coal-allocation alternatives and to prepare a new, supplemental NEPA analysis, as well as to evaluate how to more directly address climate-change concerns through the mandatory coal-screening process. And while BLM is still evaluating the next steps in its broader coal-leasing review based on the comments it received, the more general nature of its intent to reevaluate these decisions alongside that process should

not prevent voluntary remand because—unlike in *Mississippi River*—BLM has committed to engage in a specific process.[1]

## II.     Plaintiffs will not be prejudiced by voluntary remand

Plaintiffs' opposition on prejudice grounds reiterates much of the same argument: they contend that remand may lead to a return to court after that new process results in a new decision. But, as explained above, BLM has committed to revisiting its coal-allocation decisions and will issue a *new* decision following that planning process and a new supplemental NEPA analysis. If Plaintiffs have further concerns with *that* decision, the proper recourse is to challenge it once it is rendered—not for the Court to predetermine its outcome.

For that reason, *Keltner* does not support Plaintiffs' claims of prejudice from a voluntary remand before a merits decision in this case. Though the Court of Federal Claims acknowledged its discretion in addressing voluntary remand motions, it

---

[1] Plaintiffs alluded at oral argument to some alleged insufficiency in BLM's commitment to "considering" an expanded range of coal-allocation alternatives solely because BLM used the word "consider." But considering alternatives is what BLM does in the land-use-planning process, before ultimately selecting one. *See* 43 C.F.R. § 1610.4-5. And *consideration* of an expanded range of alternatives is precisely what Plaintiffs have sought in this litigation. *See* Pls.' Summ. J. Mem. 13–24, ECF No. 49. Plaintiffs have made no argument that BLM is obligated to commit to *selecting* a given alternative in seeking remand. To do so would be premature and requiring BLM to do so would be beyond this Court's jurisdiction. *See Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) (district court lacks jurisdiction, in agency-action review cases, to order specific outcome on remand).

ultimately denied remand because the agency in that case sought remand solely so that it could better explain its reasoning for having issued *that same* decision, *Keltner*, 148 Fed. Cl. at 566, which rendered the outcome of the agency action a foregone conclusion.

None of the other cases on which Plaintiffs rely support denying BLM's request for voluntary remand on prejudice grounds, either. In fact, Plaintiffs have cited no case in which a plaintiff was prejudiced from voluntary remand of a land-use-planning decision. Nor can they argue prejudice from the existence of the 2019 plans themselves, because: (a) Plaintiffs do not seek vacatur, *see* Pls.' Remand Mem. 21; (b) no new coal leases have issued under the 2019 plans and no new coal lease applications have been received by either field office since the plans were approved, Decl. of Kimber Liebhauser, ¶ 6, ECF No. 60-1; Decl. of Theresa Hanley ¶ 6, ECF No. 60-2; (c) as thoroughly explained in Federal Defendant's summary judgment brief, neither plan contemplated approval of new applications for leases submitted after the plans were approved, Def.'s Summ. J. Mem. 17–19, ECF No. 57; and (d) even if new leasing applications *were* received, additional NEPA analysis is required by regulation before they can issue—including evaluation of a no-leasing alternative, *see* 43 C.F.R. § 3425.3.

They rely instead only on cases, inapposite here, where plaintiffs had a monetary interest in a decision on the merits that would be prejudiced through further

delay without a decision from the agency. *See Assiniboine & Sioux Tribes of Fort Peck Indian Rsvr. v. Norton*, 527 F. Supp. 2d 130, 136 (D.D.C. 2007) (remand would prejudice plaintiff tribes, whose accounting and trust-mismanagement claims had long been pending); *Dieffenbacher v. DeVos*, No. EDCV17342VAPKKX, 2017 WL 4786096, at *2–3 (C.D. Cal. June 9, 2017) (plaintiff would be prejudiced where agency sought remand on challenge to decision to garnish wages without addressing plaintiff's application for student-loan forgiveness). And because Plaintiffs do not seek vacatur of the 2019 decisions, the cases they cite in which plaintiffs would be subject to regulatory uncertainty or a potentially invalid rule during the administrative process on remand are likewise inapposite. *See Am. Waterways Operators*, 427 F. Supp. 3d at 98 (remand would have thrown significant uncertainty on Washington State's plan to clean up Puget Sound and motorboat operators' compliance with regulatory requirements); *Chlorine Chemistry Council v. EPA*, 206 F.3d 1286, 1288 (D.C. Cir. 2000) (prejudice if rule remanded without vacatur because plaintiffs would be subject to potentially invalid rule during remand process). Finally, in *Utility Solid Waste Activities Group. v. Environmental Protection Agency*, the court declined to remand an EPA decision when the question of the scope of the EPA's authority—which was "intertwined with any exercise of agency discretion going forward"—remained pending. 901 F.3d 414, 436–37 (D.C.

Cir. 2018). That is simply not the case here, where Plaintiffs challenge only the agency's decision—and not its authority to make that decision.

## III. Remand is appropriate regardless of the motion's timing

Finally, the timing of BLM's motion for remand is not a basis for denying that motion in this case. As explained at oral argument, BLM moved for remand after making the decision to revisit the challenged coal-allocation decisions. And it did so after collating and summarizing some 77,000 comments received on its broader review of the federal coal-leasing program. BLM is still evaluating those comments and the next steps in that broader review process. *See* Second Hanley Decl. ¶ 5; Archuleta Decl. ¶ 5. It is appropriate for BLM to reevaluate these RMPs in that broader context.[2]

None of the cases Plaintiffs cite for their arguments about "eleventh-hour motions" support denying BLM's request for voluntary remand here, either. In fact, as explained above, *all* of the cases on which Plaintiffs rely for this proposition turned on other considerations. *See Keltner*, 148 Fed. Cl. at 566 (denying remand where the agency only sought to better explain the existing decision, not revisit it);

---

[2] Though Plaintiffs may wish that such a decision had been rendered earlier in this action, Plaintiffs' mere frustration is not a basis—in any case cited by either party—for denying a motion for voluntary remand. In any event, Plaintiffs' counsel never approached litigation counsel in this case about resolving this action, and provided terms in late December 2021 only in response to the latter's request.

*Miss. River Transmission*, 969 F.2d 1215 at 1217 n.2 (denying remand based on agency's vague, single-sentence basis); *Lutheran Church*, 141 F.3d at 349 (denying remand based on compliance with non-binding "policy statement"); *Util. Solid Waste Activities Grp.*, 901 F.3d at 436 (denying remand where question of agency's authority to make decision remained in question); *Chlorine Chemistry Council*, 206 F.3d at 1288 (denying remand where plaintiffs would be subject to invalid rule during remand); *Dieffenbacher*, 2017 WL 4786096, at *2–3 (denying remand because of financial prejudice to plaintiff). To the extent that the Court of Appeals for the District of Columbia Circuit took timing into account in *Mississippi. River Transmission,* it did so because the timing of the motions violated the court's local rule—which BLM's motion here has not done. 969 F.2d at 1217 n.2 (motion filed 2 days before oral argument, in violation of Local Rule 7(i)(1)).

### IV. The Court should not impose "sidebars"

Finally, Plaintiffs ask that, even if the Court does not rule on the merits—as it should not, now that BLM has committed to reconsidering its coal-allocation decisions and seeks remand for that purpose—it should impose "sideboards" or conditions on the agency's analysis on remand. *See* Pls.' Remand Mem. 20–21. But the processes BLM plans to undertake will establish the bounds for its analyses. BLM has committed to revisiting the coal-allocation decisions at issue in this case and conducting a new NEPA analysis. It will determine the scope of that analysis

9

through the appropriate NEPA scoping process, *see* 43 C.F.R. § 46.235, in which Plaintiffs may participate. And it will determine alternatives for consideration through the required coal-screening process. *See* 43 C.F.R. § 1610.7-1; 43 C.F.R. § 3420.1-4. A Court-imposed requirement that BLM evaluate certain specific alternatives would amount to inappropriately "dictating to the agency the methods, procedures, and time dimension of the needed inquiry," which the Supreme Court has consistently concluded "runs the risk of propelling the court into the domain which Congress has set aside exclusively for the administrative agency." *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 545 (1978) (quotation omitted).

Moreover, the specific conditions that Plaintiffs seek would in effect require BLM to ignore mandatory regulatory processes. For example, Plaintiffs ask the Court to require BLM to evaluate a "no future leasing alternative" but, as BLM has repeatedly explained, BLM is obligated by regulation to use the coal-screening process to determine which lands are suitable for future consideration for coal leasing. *See* 43 C.F.R. § 1610.7-1; 43 C.F.R. § 3420.1-4. BLM will comply with its regulations and the coal-screening process and, further, has determined that it would be appropriate to evaluate that coal-screening process to determine whether climate-change issues can be more explicitly accounted for. *See* Second Hanley Decl. ¶ 7, Archuleta Decl. ¶ 7. Following the appropriate processes may ultimately lead to

consideration of a no-leasing alternative. But *imposing* a requirement that BLM consider a "no future leasing" alternative would run afoul of the principle that "administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *FCC v. Schreiber*, 381 U.S. 279, 290 (1965) (quotation omitted); *see also Los Padres ForestWatch v. United States Forest Serv.*, 25 F.4th 649, 659 (9th Cir. 2022) (recognizing this principle in declining to order the agency to undertake a particular process).

For the same reason, the Court should not require BLM to consider a "reduced coal development alternative," as Plaintiffs request. BLM has already committed to considering an expanded range of coal-allocation alternatives. And Plaintiffs have never described precisely what they otherwise may mean by a "reduced leasing alternative" in the context of land-use planning, through which leases are neither sought nor approved.

Finally, the Court should not impose a time limit on the administrative process on remand or retain jurisdiction. "[A]bsent substantial justification, a court should not dictate time restraints on an agency's work as Congress has determined the methods and time dimensions necessary for an agency to fulfill its obligation." *Neighbors Against Bison Slaughter*, 2021 WL 717094, at *4. There is no substantial justification here, especially where no coal lease applications are pending and neither

existing plan contemplated approval of new applications for leases submitted after the plans were approved. *See* Def.'s Summ. J. Mem. 17–19. To the contrary, a time limit would constrain BLM's ability to (1) evaluate the coal-screening process to take into account climate-change issues more explicitly, as that may require either future rulemaking or development of additional guidance, Second Hanley Decl. ¶ 7, Archuleta Decl. ¶ 7, and (2) revisit these ARMPAs in the context of its broader review of the federal coal-leasing program.

## CONCLUSION

In short, no argument Plaintiffs have raised precludes voluntary remand in this case. In light of BLM's commitment to revisiting its coal-allocation decisions in the challenged actions, the Court should grant BLM's motion and allow the agency to revisit the land-use-planning process on remand.

Respectfully submitted this 23rd day of March, 2022.

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division

*/s/ Arwyn Carroll*
ARWYN CARROLL (MA Bar 675926)
Trial Attorney, Natural Resources Section
United States Department of Justice
Environment and Natural Resources Div.
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: 202-305-0465

12

Fax:  202-305-0506
arwyn.carroll@usdoj.gov

LUTHER L. HAJEK (CO Bar 44303)
Trial Attorney, Natural Resources Section
United States Department of Justice
Environment and Natural Resources Div.
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Phone: (303) 844-1376
Fax: (303) 844-1350
luke.hajek@usdoj.gov

LEIF M. JOHNSON
United States Attorney

MARK STEGER SMITH
Assistant U.S. Attorney
U.S. Attorney's Office
2601 Second Avenue North, Suite 3200
Billings, MT 59101
Phone: (406) 247-4667
Fax: (406) 657-6058
mark.smith3@usdoj.gov

*Counsel for Federal Defendant*

# CERTIFICATE OF WORD COUNT

I certify that this memorandum complies with LR 7.1(d). It contains 2,793 words, as counted using the word count feature of Microsoft Word, excluding the caption and certificate of word count.

/s/ *Arwyn Carroll*
ARWYN CARROLL
U.S. Department of Justice

13