Shiloh S. Hernandez
Earthjustice
313 East Main Street
P.O. Box 4743
Bozeman, MT 59772-4743
(406) 586-9649
shernandez@earthjustice.org

Melissa A. Hornbein
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hornbein@westernlaw.org

*Attorneys for Plaintiffs*

Nathaniel Shoaff (*pro hac vice*)
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5610
nathaniel.shoaff@sierraclub.org

*Attorney for Plaintiff Sierra Club*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| WESTERN ORGANIZATION OF RESOURCE COUNCILS et al., <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES BUREAU OF LAND MANAGEMENT, <br><br> Defendant, <br><br> and <br><br> STATE OF WYOMING, <br><br> Intervenor-Defendant. | Case No. 4:20-cv-00076-BMM <br><br><br> **PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR COSTS AND ATTORNEYS' FEES** |

## INTRODUCTION

Plaintiffs Western Organization of Resource Councils, Montana Environmental Information Center, Powder River Basin Resource Council, Northern Plains Resource Council, Center for Biological Diversity, and WildEarth Guardians (together, "Conservation Groups"[1]) respectfully file this brief in support of their motion for attorneys' fees, costs, and other expenses under the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412. On August 3, 2022, this Court granted Conservation Groups' motion for summary judgment (Doc. 71.) Federal Defendant U.S. Bureau of Land Management (BLM) and Defendant-Intervenor State of Wyoming appealed but subsequently moved to dismiss their appeal, which was dismissed on December 1, 2022. (Doc. 79.) This Court's judgment is now final. Fed. R. App. P. 41(a)(1)(B).

Because they prevailed, Conservation Groups now move for an award of costs and fees under EAJA. Conservation Groups and BLM will simultaneously file a joint motion to stay briefing on this fee motion for a period of 90 days, to enable the parties to seek settlement. If the parties are unable to reach an

---

[1] Plaintiff Sierra Club is not eligible for an award of fees and costs and, therefore, does not join this motion. Hernandez Decl. ¶ 4. Sierra Club has been represented by Nathaniel Shoaff throughout this litigation. The Conservation Groups do not seek any recovery for the time Mr. Shoaff spent on this case. The remaining plaintiffs would have pursued the instant litigation without participation by Sierra Club. *Id.*

agreement, they will propose to the Court a briefing schedule to resolve Plaintiffs' fee claim.

## ARGUMENT

**I.     Conservation Groups Are Entitled to an EAJA Fee Award.**

Congress enacted EAJA to eliminate the "financial disincentive" for challenges to government actions. *Commissioner INS v. Jean*, 496 U.S. 154, 163 (1990). EAJA was meant "to encourage litigants to vindicate their rights where any level of the adjudicating agency has made some error in law or fact and has thereby forced the litigant to seek relief from a federal court." *Li v. Keisler*, 505 F.3d 913, 919 (9th Cir. 2007) (citation omitted).

Under EAJA, a court shall award fees, costs, and other expenses to a prevailing party who is eligible for an award, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d). To obtain an EAJA award, a party must prove that it is eligible under EAJA. *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991).

**A.     Conservation Groups are eligible under EAJA.**

A party is eligible for attorneys' fees, costs, and other expenses under EAJA if it: (1) is a "prevailing party"; that (2) incurred costs of litigation against the federal government; and (3) it meets applicable size, net worth, or other criteria. 28

U.S.C. §§ 2412(d)(1)(A), (d)(2)(B). Conservation Groups satisfy the first criterion for eligibility under EAJA because they are a "prevailing party." A party prevails under EAJA if it "succeed[s] on any significant issue in litigation which achieves some of the benefits [it] sought in bringing suit." *U.S. v. Real Property Known As 22249 Dolorosa St.*, 190 F.3d 977, 981 (9th Cir. 1999) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Here, the Conservation Groups are prevailing parties, because they prevailed on each claim they argued on summary judgment[2] and obtained deferred vacatur, and a commitment from Federal Defendants to prepare a new coal screening and NEPA analysis, including analysis of no- and limited-coal leasing alternatives and additional analysis of the downstream combustion impacts of fossil fuels from the Powder River Basin. (Doc. 71 at 19.) The relief the Conservation Groups obtained surpasses the requirement that they achieve some of the relief they sought.

The Conservation Groups also satisfy the second criterion for eligibility: they incurred legal expenses and costs against federal agencies. 28 U.S.C. § 412(d)(2)(B). Finally, Conservation Groups satisfy the third criterion for eligibility: each is a non-profit organization registered under Section 501(c)(3) of

---

[2] Conservation Groups also raised a claim under the Federal Vacancies Reform Act. (*See* Doc. 37 at 25.) They did not, however, brief that claim on summary judgment. (*See* Doc. 49.)

the Internal Revenue Code and had fewer than 500 employees at the time this action was filed; or had a net worth that does not exceed $7,000,000 and had fewer than 500 employees at the time this action was filed. Hernandez Decl. ¶¶ 2–3.

### B. Federal Defendants' position was not substantially justified and no special circumstances make an award unjust.

"Once a party's eligibility has been proven, an award of fees is mandatory pursuant to EAJA unless the government's position is substantially justified or special circumstances exist that make an award unjust." *Love*, 924 F.2d at 1495 (*citing* 28 U.S.C. § 2412(d)(1)(A)). An agency bears the burden of proving its position was substantially justified. *Or. Nat. Res. Council v. Marsh*, 52 F.3d 1485, 1492 (9th Cir. 1995). The agency must make a "strong showing" in order to meet its burden. *Nat. Res. Def. Council v. Envt'l Prot. Agency*, 703 F.2d 700, 712 (3d Cir. 1983) (citing H.R. Rep. No. 1418 at 16, 18, 96th Cong., 2nd Sess. 8-9, *reprinted in* 1980 U.S. Code Cong. & Ad. News 4953, 4984, 4986-88). The agency also bears the burden of proving that any special circumstances make an award unjust. *Love*, 924 F.2d at 1495. BLM cannot meet either burden.

To determine if an agency's position was substantially justified, the court considers the reasonableness of the underlying government action and the position asserted by the agency in defending its validity. *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988). The fact that the government's litigation position may be justified is not enough—the court must also consider the underlying government conduct.

*Wilderness Soc'y v. Babbitt*, 5 F.3d 383, 388 (9th Cir. 1993); *Commissioner, INS v. Jean*, 496 U.S. 154, 158 n.7 (1990) (noting that Congress intended to provide for fees when unjustifiable agency action forces litigation, even when agency tries to avoid liability by reasonable behavior during litigation). Even when some aspects of the agency's position were substantially justified, the court may still find that the agency's overall position was not. *U.S. v. Marolf*, 277 F.3d 1156, 1164 (9th Cir. 2002) (reversing denial of attorneys' fees because district court focused solely on agency's litigation position).

      The Ninth Circuit has held that "it will be only a decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." *Thangaraja v. Gonzales*, 428 F.3d 870, 874-75 (9th Cir. 2005) (citation omitted); *Marsh*, 52 F.3d at 1492 (finding no substantial justification where agency prepared inadequate NEPA analysis). Indeed, even in cases presenting issues of first impression, agencies cannot establish substantial justification on that basis alone, because that would mean "that whenever [an agency] violates its own regulations, or assumably any clear legal rule, for the first time, the private party who succeeds in forcing government compliance nonetheless must be deprived of fees because the government gets an automatic

6

'first impression' free pass." *Gutierrez v. Barnhart*, 274 F.3d 1255, 1261 (9th Cir. 2001).

Here, BLM's position was not substantially justified. From the outset, BLM sought to defend decisions arising from and strongly resembling those this Court previously found to have violated NEPA. *See Western Organization of Resource Councils v. BLM* (*WORC II*), No. CV 16-21, 2018 WL 1475470 (D. Mont. Mar. 26, 2018). Moreover, after the Conservation Groups filed their final merits brief in the instant case (Doc. 59), BLM abandoned its defense of the challenged decisions and moved for voluntary remand. (Doc. 62). While BLM did not go so far as to admit error, it "identified 'substantial and legitimate concerns' with its decision[s]" approving the amended resource management plans. (Doc. 63 at 6). BLM further acknowledged that it would be "appropriate" to consider meaningful alternatives regarding coal development in the planning areas and suggested that its coal screening analysis should account for the climate impacts of coal combustion. (*Id.* at 7.)

Ultimately, this Court rejected BLM's "last-minute request for voluntary remand" as "frivolous" and marked by "a lack of good faith." (Doc. 71). The Court went on to conclude that BLM's failure to consider reasonable alternatives for coal development violated both NEPA and the "Court's prior order," which had directed BLM to conduct such an analysis. (Doc. 71 at 14). The Court emphasized

that its prior ruling had required BLM to "take into account climate change" when conducting the coal screening process. (*Id.* at 16 (citing *WORC II*, 2018 WL 1475470 at *17)). The Court found "no merit" in BLM's contrary arguments and explained that "BLM cannot exclude an alternative based on the agency's desire to support existing [coal] mining operations." (*Id.* at 15–17).

BLM's refusal to take a hard look at all foreseeable downstream emissions was also "arbitrary and capricious" in violation of NEPA, "especially in light of the Court's prior order." (*Id.* at 18). The Court rejected BLM's effort to read its prior order in *WORC II* so narrowly as to ignore downstream emissions that are responsible for immense public health harms. (*Id.* at 18). On remand, BLM ignored the "specific[] require[ment]" and "clear[] direct[ion]" of this Court's ruling in *WORC II*. (*Id.* at 19). This failure prevented BLM from conducting "informed decision-making" on remand. (*Id.* at 20 (citing *California v. Block* 690 F.2d 753, 761 (9th Cir. 1982))). These holdings demonstrate that this litigation could have been prevented had BLM not insisted on adopting a crabbed reading of this Court's prior ruling to avoid taking a hard look at the impacts of federal management of fossil fuels in the Powder River Basin.

For remedy, this Court ordered new coal screening and NEPA analyses on an expedited basis (later modestly extended) and required pending fossil fuel leases

to undergo "comprehensive environmental analyses" consistent with the Court's order. (Doc. 71 at 20; Doc. 74).

Thus, any fair reading of the record and the Court's decision confirm that BLM's positions before and during litigation were not substantially justified, as neither the "litigation position[s]," nor "underlying government conduct" were justified or supported by any substantial evidence in the administrative record.

Finally, the "special circumstances" exception to eligibility under EAJA is a "'safety valve' [that] … gives the court discretion to deny awards where equitable considerations dictate an award should not be made." H.R. Rep. No. 1418, 96th Cong., 2nd Sess. 5, 11, *reprinted in* 1980 U.S.C.C.A.N. 4984, 4990. "The burden of proving special circumstances … rests with the government." *Love*, 924 F.2d at 1495. The Conservation Groups are unaware of any special circumstances in this case that would make an award unjust. *Cf. Meinhold v. U.S. Dept. of Defense*, 123 F.3d 1275, 1277 n.1 (9th Cir. 1997) (noting that the court considered a party's "bad faith" in its consideration under EAJA).

## II.  Conservation Groups Seek Reasonable Rates and Time

EAJA provides that a court shall award "reasonable attorney fees" to prevailing parties. 28 U.S.C. § 2412(d)(2)(A). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably

expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433.

### A. Conservation Groups seek reasonable rates.

EAJA sets a base rate of $125 per hour, but provides that a court may award higher rates if it "determines that an increase in the cost of living or a special factor … justifies a higher fee." *Id*. The Ninth Circuit has recognized the EAJA base rate should be increased to account for cost-of-living increases. The Ninth Circuit calls the adjusted rate the "lodestar" and has approved it as "proper." *Real Property Known as 22249 Dolorosa Street*, 190 F.3d at 984-85. The lodestar is calculated by enhancing the base hourly rate of $125 under EAJA by the consumer price index for urban consumers for the year in which fees were earned. *Sorenson v. Mink*, 239 F.3d 1140, 1149 (9th Cir. 2001). The lodestar hourly rates for attorneys within the Ninth Circuit are $207.78 for 2020, $217.54 for 2021, and $231.49 for the first half of 2022.[3]

"Where a plaintiff has obtained excellent results, [its] attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. 435. Recognizing that EAJA rates might be too low to enable a litigant to obtain competent legal representation, EAJA provides for enhanced rates where special factors, such as the limited

---

[3] Statutory Maximum Rates Under the Equal Access to Justice Act, https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (visited Dec. 14, 2022).

availability of qualified attorneys for the case, are present. In *Pierce v. Underwood*, 487 U.S. 552 (1988), the Supreme Court clarified that rates above the EAJA base rate are allowed where an attorney is "'qualified for the proceedings' in some specialized sense." *Id*. at 572. According to the Supreme Court, this "refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Pierce v. Underwood*, 487 U.S. 552, 572 (1988). In turn, the Ninth Circuit has held that "[e]nvironmental litigation is an identifiable practice specialty that requires distinctive knowledge." *Love*, 924 F.2d at 1496. Further, "the combination of substantive legal knowledge and litigation expertise possessed by" attorneys at public interest environmental law firms such as Earthjustice and the Western Environmental Law Center "is found almost exclusively" in such firms. *Wash. Dep't of Wildlife v. Stubblefield*, 739 F.Supp. 1428, 1432 (W.D. Wash. 1989).

    A party seeking enhanced rates under EAJA must prove its attorneys (1) possess distinctive knowledge and skills developed through a practice specialty; (2) those skills were needed in the litigation; and (3) those skills were not available elsewhere at the statutory rate. *Love*, 924 F.2d at 1496. Here, the Conservation

Groups are represented by Shiloh Hernandez and Melissa Hornbein. Each satisfies the first criterion for enhanced rates.

Mr. Hernandez is a senior attorney at Earthjustice in Bozeman. Hernandez Decl. ¶ 1. He attended Vermont Law School, during which time he interned for the U.S. Environmental Protection Agency, and from which he graduated *magna cum laude* in 2008. *Id*. ¶ 9. After graduating, he clerked in the 18th Judicial District Court of Montana in Bozeman, and then at the Montana Supreme Court. *Id*. ¶ 10. Since 2011, Mr. Hernandez litigated environmental cases as a staff attorney at the Western Environmental Law Center and senior attorney with Earthjustice. *Id*. ¶¶ 10–11. Mr. Hernandez has demonstrated distinctive knowledge and skills related to environmental litigation developed through his practice specialty in environmental law.

Ms. Hornbein is a senior attorney at the Western Environmental Law Center in Helena, where she practices exclusively environmental litigation. Hornbein Decl. ¶¶ 1, 6. She graduated from the University of California, Hastings College of the Law in 2008 and obtained a M.S. in environmental studies from the University of Montana in 2009. *Id*. ¶ 3. From 2009 to 2010, Ms. Hornbein clerked for Justice Brian Morris at the Montana Supreme Court. *Id*. ¶ 4. From 2010 to 2015, she worked as an attorney at the Montana Department of Natural Resources and Conservation. *Id*. From 2015 to 2019, Ms. Hornbein was an Assistant U.S.

Attorney in the Civil Division of the U.S. Department of Justice, where she worked in part on federal environmental cases. *Id*. ¶ 5. She has distinctive knowledge and skills related to environmental litigation and a practice specialty in environmental law.

      Accordingly, the Conservation Groups' attorneys possess "distinctive knowledge and skills developed through a practice specialty" in environmental law. Second, their skills were needed in this complex case. *See Nat'l Wildlife Fed'n v. FERC*, 870 F.2d 542, 547 (9th Cir. 1989) (stating criterion and finding environmental law specialist deserved enhanced fees under EAJA). Third, their skills were not available elsewhere at the EAJA statutory rate. Hernandez Decl. ¶ 8.

      Given that the Conservation Groups' attorneys are entitled to enhanced fees under EAJA, the statute provides that "[t]he amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished. . . ." 28 U.S.C. § 2412(d)(2)(A). The District of Montana is the appropriate forum to determine prevailing market rates. *Crow Indian Tribe v. United States*, No. CV 17-89-M-DLC, 2021 WL 3142155, at *11 (D. Mont. July 26, 2021) (citing *Alliance for the Wild Rockies v. Krueger*, 2014 WL 46498, at *5 (D. Mt. Jan. 3, 2014)). When a case extends over many years, as this one did, "the District of Montana has historically deemed annual $10 wage increases to be

reasonable." *Id*. (citing *Native Ecosystems Council v. Krueger*, 2019 WL 1489839, at *4 (D. Mont. April 4, 2019)). Finally, when a case is appealed, as this one was, the District of Montana approves of "an additional $100 per hour for appellate work." *Id*. (citing *All. for the Wild Rockies v. Savage*, 2019 WL 2393425, at *7 (D. Mont. July 22, 2019)).

Here, Mr. Hernandez and Ms. Hornbein received their law degrees in 2008, and have in the 14 years since established themselves as experienced environmental litigators. Based on prevailing market rates in the District of Montana, both attorneys seek the same rates. They both seek $330 hourly in 2020; $340 hourly in 2021; and $350 hourly in 2022 for work in the district court. Hernandez Decl. ¶ 12, Ex. A; Hornbein Decl. ¶ 8, Ex. A. Their rates are consistent with, if not less than prevailing market rates in the District of Montana. *See*, *e.g.*, *Mont. Env't Info. Ctr. v. Mont. Dep't of Env't Quality*, No. DV 2019-34, slip op. at 27 (Mont. 16th Jud. Dist. Ct. May 13, 2022) (awarding Mr. Hernandez $350 per hour); *Native Ecosystems Council v. Krueger*, No. 9:12-cv-00027-DLC, 2019 WL 1489839 at *6 (April 4, 2018) (awarding a 2008 law school graduate $340 hourly for work in 2018 in the District of Montana).

B. **Conservation Groups seek reasonable time.**

As noted, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. A prevailing party's attorneys should be compensated "for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).[4]

The Ninth Circuit has held that "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). Mr. Hernandez seeks recovery for 224.5 hours and Ms. Hornbein for 147.9 hours for their work in this case. Hernandez Decl., ¶ 7, Ex. A; Hornbein Decl. ¶ 8, Ex. A. To properly document their time, each attorney must "simply list[] and identify the general subject matter of [their] time expenditures" on their timesheets. *Fischer v. SJB P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000). The Conservation Groups' attorneys surpass that test; each details each task performed on each day working

---

[4] At this juncture, Conservation Groups' attorneys have not included their time spent preparing their fee motion. If the Parties are unable to settle, however, Conservation Groups will include any time expended on fee briefing or negotiations in an amended motion. *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) (The time spent in establishing entitlement to an amount of fees awardable is compensable); *Crow Indian Tribe v. United States*, No. CV 17-117-M-DLC, 2021 WL 3142155, at *10 (D. Mont. July 26, 2021) (fees on fees compensable); *Sorenson v. Concannon*, 161 F. Supp. 2d 1164, 1169 (D. Or. 2001) (time spent attempting to settle fees compensable).

on this case. Hernandez Decl., Ex. A; Hornbein Decl., Ex. A. Each attorney also omits potentially non-compensable time. *Id.*; *see Hensley*, 461 U.S. at 437 (requiring good faith omissions). Of note in this respect, the Conservation Groups' attorneys omit all time they spent on their claim related to the Federal Vacancies Reform Act, which they did not bring forward on summary judgment. (*See* Doc. 37 at 25). In total, counsel for Plaintiffs exercised their billing judgment to exclude 60.6 hours of attorney time spent on this case. Hernandez Decl. ¶ 7, Ex. A; Hornbein Decl. ¶ 7, Ex. A, B.

In sum, Conservation Groups seek a total of **$127,528.00 in attorneys' fees**.

## III. Conservation Groups Are Entitled to Costs and Expenses.

EAJA authorizes an award of "costs" as enumerated at 28 U.S.C. § 1920, 28 U.S.C. § 2412(a)(1), as well as "other expenses," 28 U.S.C. § 2412(d)(1)(A). The Ninth Circuit has interpreted "other expenses" under EAJA to include "expenses normally billed to a client," such as telephone calls, postage, and attorney travel expenses. *Int'l Woodworkers of America v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1986). The Conservation Groups seek **$438.80 in costs and expenses**.

## CONCLUSION

The Court should award the Conservation Groups **$127,966.80** in attorneys' fees, costs, and other expenses under EAJA.

Respectfully submitted this 23rd day of December, 2022.

<u>*Melissa Hornbein*</u>
Melissa A. Hornbein
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
(406) 204-4861
hornbein@westernlaw.org

Shiloh S. Hernandez
Earthjustice
313 East Main Street
P.O. Box 4743
Bozeman, MT 59772-4743
(406) 586-9649
shernandez@earthjustice.org

*Attorneys for Plaintiffs*